# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § <br> § | **CHAPTER 11 CASE** |
| **TXCO RESOURCES INC.,** *et al.,* | § | **CASE NO. 09-51807** |
| **Debtors.** | § <br> § <br> § | **Jointly Administered** |

**FIRST AMENDED PLANS OF REORGANIZATION FOR TXCO RESOURCES INC., ET AL., DEBTORS AND DEBTORS-IN-POSSESSION BASED ON (A) SALE OF DEBTORS' ASSETS OR, IN THE EVENT THE DEBTORS DO NOT CLOSE ON THE SALE OF THE DEBTORS' ASSETS, <u>(B) REORGANIZATION OF DEBTORS' OPERATIONS</u>**

By: */s/ Deborah D. Williamson*
Deborah D. Williamson
State Bar No. 21617500
Patrick L. Huffstickler
State Bar No. 10199250
Thomas Rice
State Bar No. 24025613
Meghan Bishop
State Bar No. 24055176

**COX SMITH MATTHEWS INCORPORATED**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**ATTORNEYS FOR THE DEBTORS AND THE DEBTORS-IN-POSSESSION**

# INTRODUCTION

TXCO Resources Inc. ("TXCO"), Eagle Pass Well Service, L.L.C. ("Eagle Pass"), TXCO Drilling Corp. ("Drilling"), Charro Energy, Inc. ("Charro"), Texas Tar Sands Inc. ("Tar Sands"), TXCO Energy Corp. ("Energy"), Output Acquisition Corp. ("Output"), OPEX Energy, LLC ("OPEX"), PPL Operating, Inc. ("PPL"), Maverick Gas Marketing, Ltd. ("Maverick Gas"), and Maverick-Dimmit Pipeline, Ltd. ("Maverick-Dimmit") (collectively, the "Debtors" or "Companies"), Debtors and Debtors-in-Possession in the above-captioned jointly administered chapter 11 reorganization cases pending before the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), hereby propose the *First Amended Plans of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession based on (a) Sale of the Debtors' Assets or, in the Event the Debtors do not Close on the Sale of the Debtors' Assets, (b) Reorganization of Debtors' Operations* (the "Plans") for the resolution of the outstanding claims against and interests in the Debtors. The DIP Lenders, as defined herein, are co-proponents of these Plans. Capitalized terms used herein shall have the meanings ascribed to such terms in Article I.

These reorganization cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. As set forth herein, each of the Plans contemplates the substantive consolidation of certain Debtors for voting and distribution purposes; however, the Plans also provide for the possible merger of certain Affiliated Debtors. Each Debtor is a proponent of the Plans contained herein within the meaning of Section 1129 of the Bankruptcy Code. The distributions to be made to claimants in each of such classes are set forth herein.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject either of the Plans cannot be solicited from the holder of a Claim or Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to claim and interest holders. In this case, the Disclosure Statement was approved by the Bankruptcy Court by order entered on December 18, 2009 and has been distributed simultaneously with these Plans to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, a discussion of the Debtors' history, business, properties and operations, projections for their operations, risk factors, a summary and analysis of the Plans, and certain related matters including among other things, the securities to be issued under the Plans.

**ALL HOLDERS OF CLAIMS AND INTEREST ARE ENCOURAGED TO READ THE PLANS AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT EITHER OF THE PLANS.**

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019, each of the Debtors expressly reserves its respective rights to alter, amend, modify, revoke or withdraw either of these Plans with respect to such Debtor, one or more times, prior to its substantial consummation.

**FIRST AMENDED PLAN OF REORGANIZATION FOR TXCO RESOURCES INC., ET AL., DEBTORS AND DEBTORS-IN-POSSESSION BASED ON SALE OF DEBTORS' ASSETS (THE "SALE PLAN")**

TABLE OF CONTENTS

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ....................................1

ARTICLE II ADMINISTRATIVE EXPENSES AND TAX PRIORITY CLAIMS...................13
2.1. Administrative Claims ........................................................................................13
2.2. Priority Tax Claims.............................................................................................13

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .........................................14
3.1. Classification of Claims Against and Interest in the Debtors ............................14

ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
            IMPAIRED AND NOT IMPAIRED BY THE PLAN ....................................15
4.1. Unimpaired Classes of Claims............................................................................15
4.2. Impaired Classes of Claims and Interests. .........................................................15

ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS ................15
5.1. Provisions For Treatment Of Claims And Interests............................................15

ARTICLE VI ACCEPTANCE OR REJECTION OF PLAN.........................................................28
6.1. Classes Entitled to Vote......................................................................................28
6.2. Acceptance by Impaired Classes ........................................................................28
6.3. Presumed Acceptances by Unimpaired Classes .................................................28
6.4. Classes Deemed to Reject Plan...........................................................................28
6.5. Summary of Classes Voting on the Plan.............................................................29
6.6. Special Provision Regarding Unimpaired Claims ..............................................29
6.7. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.................29

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN .........................................29
7.1. Sale of Assets......................................................................................................29
7.2. Substantive Consolidation ..................................................................................30
7.3. Restructuring Transactions .................................................................................31
7.4. Corporate Existence ............................................................................................31
7.5. Directors and Officers of Reorganized TXCO ..................................................33
7.6. Corporate Action.................................................................................................33
7.7. Revesting of Assets; Releases of Liens ..............................................................33
7.8. Cancellation of Interest; Issuance of New Common Stock ................................34
7.9. Authority .............................................................................................................34
7.10. P&A Bonding.......................................................................................................34
7.11. Employee Benefits...............................................................................................35
7.12. Exemption from Certain Transfer Taxes ............................................................35
7.13. Preservation of Rights of Action; Settlement ....................................................35
7.14. Retention of Subsequent Causes of Action.........................................................36

i

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED
    LEASES AND OTHER AGREEMENTS .......................................................37
8.1.   Assumption/Rejection..............................................................................37
8.2.   Pass-Through ...........................................................................................37
8.3.   Mineral Leases/Oil and Gas Leases........................................................37
8.4.   Assumed Executory Contracts and Unexpired Leases ............................38
8.5.   Preexisting Obligations to the Debtors Under Executory Contracts and
        Unexpired Leases.....................................................................................38
8.6.   Assumed Contracts and Leases, and Contracts and Leases Entered Into
        After Petition Date ...................................................................................38
8.7.   Reservation of Rights...............................................................................39
8.8.   Additional Cure Provisions......................................................................39
8.9.   Claims Based on Rejection of Executory Contracts and Unexpired Leases ....................39
8.10.  Survival of Indemnification and Corporation Contribution.....................40

ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS ...................................40
9.1.   Distributions for Claims and Interests Allowed as of Effective Date.................40
9.2.   Interest on Claims....................................................................................40
9.3.   Disbursements to Classes of Claims ........................................................40
9.4.   Record Date for Distributions..................................................................41
9.5.   Means of Cash Payment...........................................................................41
9.6.   Delivery of Distributions .........................................................................41
9.7.   Claims Paid or Payable by Third Parties .................................................42
9.8.   Claims Payable by Third Parties ..............................................................42
9.9.   Applicability of Insurance Policies ..........................................................42
9.10.  Withholding and Reporting Requirements ...............................................42
9.11.  Expunging of Certain Claims...................................................................43

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT  AND
    UNLIQUIDATED CLAIMS .......................................................................43
10.1.  Objections to Claims................................................................................43
10.2.  Estimation of Claims................................................................................43
10.3.  No Distributions Pending Allowance .......................................................44
10.4.  Disputed Claims Reserves. ......................................................................44
10.5.  Distributions After Allowance .................................................................44
10.6.  General Unsecured Claims .......................................................................44
10.7.  Compliance with Tax Requirements/Allocations .....................................45

ARTICLE XI ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE
    CLAIMS  45
11.1.  Professional Fee Claims...........................................................................45
11.2.  Administrative Claims .............................................................................46
11.3.  Administrative Ordinary Course Liabilities.............................................46
11.4.  Administrative Tax Claims.......................................................................46

ARTICLE XII CREDITOR TRUST .............................................................................47
12.1.  Generally.................................................................................................47

12.2.  Establishment of the Creditor Trust.................................................................47
12.3.  Purpose of the Creditor Trust......................................................................47
12.4.  Appointment and Powers of the Creditor Trust Board and Trustee ................47
12.5.  Payment of the Expenses Incurred by the Creditor Trust ..............................49
12.6.  Exculpation; Indemnification......................................................................49
12.7.  Retention of Funds Prior to Distribution......................................................49
12.8.  Distributions to Creditor Trust Beneficiaries................................................50
12.9.  Registry of Beneficial Interests...................................................................51
12.10. Termination of the Creditor Trust................................................................51
12.11. Resignation of the Creditor Trustee ............................................................51

ARTICLE XIII CONFIRMATION AND CONSUMMATION OF THE PLAN ........................52
13.1.  Conditions Precedent to Confirmation..........................................................52
13.2.  Conditions Precedent to Effective Date ........................................................52
13.3.  Substantial Consummation .........................................................................53
13.4.  Waiver of Conditions .................................................................................53
13.5.  Revocation, Withdrawal, Non-Consummation ..............................................53

ARTICLE XIV EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ............................53
14.1.  Compromise and Settlement .......................................................................53
14.2.  Satisfaction of Claims ...............................................................................54
14.3.  Exculpation and Limitation of Liability .......................................................54
14.4.  Good Faith ...............................................................................................55
14.5.  Discharge of Liabilities..............................................................................55
14.6.  Discharge of the Debtors ...........................................................................55
14.7.  Permanent Injunction .................................................................................56
14.8.  Releases by the Debtors, Reorganized TXCO and their Estates ......................56
14.9.  Releases by Holders of Claims and Interests.................................................57
14.10. Setoffs .....................................................................................................58
14.11. Recoupment ..............................................................................................58
14.12. Release of Liens ........................................................................................58
14.13. Satisfaction of Subordination Rights ...........................................................59

ARTICLE XV RETENTION OF JURISDICTION ........................................................59

ARTICLE XVI MISCELLANEOUS PROVISIONS.........................................................60
16.1.  Amendments and Modification.....................................................................60
16.2.  Payment of Statutory Fees .........................................................................60
16.3.  Binding Effect...........................................................................................61
16.4.  Term of Injunctions or Stay .......................................................................61
16.5.  Dissolution of Committee ...........................................................................61
16.6.  No Admissions ..........................................................................................61
16.7.  Governing Law ..........................................................................................61
16.8.  Subordination ...........................................................................................61
16.9.  Plan Supplement ........................................................................................62
16.10. Notices ....................................................................................................62
16.11. Severability of Plan Provision .....................................................................62

# PLAN SUPPLEMENT DOCUMENTS

1.      Amended and restated Certificate of Incorporation of TXCO Resources Inc.
2.      By-laws of TXCO Resources Inc.
3.      Creditors' Trust Agreement

## PLAN SCHEDULES

Plan Schedule I:        Board of Directors of Reorganized TXCO

Plan Schedule II:       Officers of Reorganized TXCO

Plan Schedule III:      Retained Causes of Action

Plan Schedule IV:       Rejected Executory Contracts and Unexpired Leases

Plan Schedule V:        Assumed Executory Contracts and Unexpired Leases

Plan Schedule VI:       Oil and Gas Leases

2782939.1

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.     Definitions.**

For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or Bankruptcy Rules, will have the meaning given to the term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.1.     "Acquisition Proposal"** means any proposal or offer for a merger, recapitalization, share exchange, debt-for-equity exchange, distribution of securities for the benefit of stakeholders of the Debtors, consolidation or similar transaction involving a sale or purchase (directly or through a proposed investment in equity securities, debt securities or claims of creditors) of all or substantially all of the Assets or all or substantially all of the Interests of the Debtors, other than the transactions contemplated by the terms of the Newfield PSA.  For the avoidance of doubt, an Acquisition Proposal does not include the Operational Plan.

**1.2.     "Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the business of the Debtors (including wages, salaries, and commissions for services rendered after the Petition Date), (b) Professional Fee Claims, (c) all fees and charges assessed against the Estates under Chapter 123 of title 28 of the United States Code, and (d) DIP Lender Claims to the extent not already paid or satisfied under the terms of the operative Plan.

**1.3.     "Administrative Claims Bar Date"** means, except as modified by Section 11.1 of the Plan, the deadline for filing proofs of Administrative Claims which shall be forty-five (45) days after the date on which the Debtors mail written notice of the occurrence of the Effective Date.

**1.4.     "Administrative Convenience Claim"** means an Unsecured Claim in an amount equal to or less than $6,000, or where a General Unsecured Creditor elects to reduce its General Unsecured Claim to an amount equal to or less than $6,000.

**1.5.     "Administrative Tax Claim"** means an Unsecured Claim by a governmental unit for taxes (and for interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

**1.6.     "Affiliate Debtors"** means all the Debtors, other than TXCO Resources Inc.

**1.7.     "Affiliates"** has the meaning given such term by section 101(2) of the Bankruptcy Code.

**1.8.** **"Allocated Value"** means the value of the Debtors' property as determined by Newfield in the Newfield PSA, or such value as set forth in any Superior Proposal.

**1.9.** **"Allowed Claim"** means a Claim or any portion thereof:

      (a)      if no proof of Claim has been timely filed, such amount of the Claim or group of Claims which has been scheduled by TXCO as liquidated in amount and not disputed or contingent and as to which no party in interest has filed an objection within the time required under this Plan, or otherwise fixed by the Bankruptcy Court, and which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

      (b)      if a proof of Claim has been filed by the Claims Bar Date, or is deemed timely filed by the Bankruptcy Court pursuant to Final Order, such amount of the Claim as to which any party in interest has not filed an objection within the time required under this Plan or otherwise fixed by the Bankruptcy Court and which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

      (c)      that has been allowed by a Final Order of the Bankruptcy Court; or

      (d)      that is expressly allowed in a liquidated amount in this Plan.

**1.10.** **"Allowed Class … Claim"** means an Allowed Claim in the particular Class described.

**1.11.** **"Assets"** means all assets of the Estates as of the Effective Date including "property of the estate" as described in section 541 of the Bankruptcy Code.

**1.12.** **"Avoidance Actions"** means Causes of Action arising under sections 502, 510, 541, 542, 543, 544, 545, 547 through 551 or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

**1.13.** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., including all amendments thereto, to the extent such amendments are applicable to the Case.

**1.14.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

**1.15.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Cases.

**1.16.** **"Bar Date"** means the deadline for filing proofs of claim established by the Notice of Bankruptcy as September 22, 2009, and any supplemental bar dates established by the Bankruptcy Court pursuant to a Final Order.

**1.17.** **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.18.** **"Cases"** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by TXCO, Eagle Pass, Drilling, Charro, Tar Sands, Energy, Output, OPEX, PPL, Maverick Gas, and Maverick-Dimmit on May 17, 2009, pending in the Bankruptcy Court and jointly administered under Case No. 09-51807.

**1.19.** **"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**1.20.** **"Causes of Action"** means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether know, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including Avoidance Actions unless otherwise waived by the Debtors or Reorganized TXCO.

**1.21.** **"Chapter 11 Case"** means (a) when used with reference to a particular Debtor, the chapter 11 case pending for the Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the chapter 11 cases pending for the Debtors in the Bankruptcy Court.

**1.22.** **"Claim"** means a claim against one of the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.23.** **"Claims Objection Deadline"** means as applicable (except for Administrative Claims) (a) the day that is the later of (i) the first Business Day that is one hundred eighty (180) days after the Effective Date, and (ii) as to proofs of claim filed after the Bar Date, the first Business Day that is one hundred eighty (180) days after a Final Order is entered deeming the late filed claim to be treated as timely filed, or (b) such later date as may be established by the Bankruptcy Court as may be requested by Reorganized TXCO.

**1.24.** **"Class"** means a category of holders of Claims or Interests as described in Article III of this Plan.

**1.25.** **"Collateral"** means any property or interest in property of the Estates that is subject to a valid and enforceable lien to secure a Claim.

**1.26.** **"Committee"** means the Official Committee of Unsecured Creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

**1.27.** **"Confirmation Date"** means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.28.** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

2782939.1

**1.29.** **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.30.** **"Consenting Junior Mineral Lien Claimant"** means a Junior Mineral Lien Claimant whose claim is listed on the Preliminary Non-Binding Junior Mineral Lien Determination that votes in favor of the Plan and does not object to confirmation of the Plan.

**1.31.** **"Consenting Senior Mineral Lien Claimant"** means a Senior Mineral Lien Claimant whose claims is listed on the Preliminary Non-Binding Senior Mineral Lien Determination that votes in favor of the Plan and does not object to confirmation of the Plan.

**1.32.** **"Creditor Trust"** means that certain trust that may be created pursuant to this Plan to be administered by the Creditor Trustee as set forth in Article XII.

**1.33.** **"Creditor Trust Agreement"** means that certain Creditor Trust Agreement that is to govern the Creditor Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Creditor Trust Assets shall be initially conveyed to the Creditor Trust and shall ultimately govern Distributions to holders of the beneficial interests in the Creditor Trust, as set forth in, and in a manner consistent with the terms of, this Plan.

**1.34.** **"Creditor Trust Assets"** means the Secured Trust Promissory Note and the New Common Stock of Reorganized TXCO.

**1.35.** **"Creditor Trustee"** means the trustee of the Creditor Trust.

**1.36.** **"Cure"** means the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the Committee and the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations required to be paid as a condition to the assumption of such agreement pursuant to the provisions of section 365 of the Bankruptcy Code, without interest, or such other amount as may be agreed upon by the Committee and the parties under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

**1.37.** **"Debtors"** means, collectively, TXCO Resources Inc. and the Affiliate Debtors.

**1.38.** **"Debtors' Adversary Proceeding"** means (i) that certain Complaint and Request for Declaratory Judgment filed by TXCO Resources Inc., *et al*, as plaintiffs, against Bank of Montreal, *et al*, as defendants, and pending in the Bankruptcy Court as Adversary Proceeding No. 09-5077, and (ii) any complaints filed by intervening parties in connection therewith.

**1.39.** **"Deemed Value"** means, in respect of the Purchase Price or a Superior Proposal, the aggregate dollar value to the Debtors of all Cash and non-cash (as applicable) consideration comprising the Purchase Price or Superior Proposal, as applicable, as determined by the Board of Directors of the Debtors after consultation with its financial and legal advisors, the Committee

2782939.1

and such other advisors as the Board of Directors of each of the Debtors chooses, in its sole discretion, to consult.

**1.40.** **"Definitive Agreement"** means a binding definitive written agreement, enforceable against the parties thereto, that effects the consummation of a Superior Proposal. A Definitive Agreement does not include an executed letter of intent or any other preliminary written agreement, nor does it include any oral or written agreement in principle or acceptance of an offer or bid by any Person.

**1.41.** **"DIP Lenders"** means those entities identified as "Lenders" in the DIP Loan and their successors and assigns.

**1.42.** **"DIP Loan"** means the Debtor-In-Possession Credit Agreement, dated as of June 15, 2009 by and among TXCO, and the Affiliate Debtors as Borrowers, the DIP Lenders as identified therein, as the Lenders, and the DIP Loan Agent.

**1.43.** **"DIP Loan Agent"** means BD Funding I, LLC, in its capacity as administrative agent under the DIP Loan.

**1.44.** **"Disallowed Claim"** means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order or pursuant to a settlement, or (b)(i) is Scheduled at zero or as contingent, disputed or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**1.45.** **"Disclosure Statement"** means the written disclosure statement (including all schedules thereto or referenced therein) that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented from time to time.

**1.46.** **"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that (a) have not been Scheduled by the Debtors or have been Scheduled at zero, or as contingent, unliquidated or disputed or (b) are the subject of a pending objection filed in the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order of the bankruptcy Court.

**1.47.** **"Disputed Claims Reserves"** means, as applicable, one or more reserves of Cash for distribution to holders of Allowed Claims to be reserved pending allowance of Disputed Claims in accordance with Article X of the Plan.

**1.48.** **"Distribution"** means any transfer under this Plan of Cash or other property or instruments.

**1.49.** **"Distribution Date"** means the date, as determined by Reorganized TXCO, upon which Distributions are made to holders of Allowed Claims entitled to receive Distributions under the Plan.

2782939.1

**1.50.** **"Distribution Record Date"** means the record date for purposes of making Distributions under the Plan on account of Allowed Claims or Interests, which shall be the same as the Voting Record Date.

**1.51.** **"Effective Date"** means the Business Day this Plan becomes effective upon satisfaction of the conditions precedent set forth in Section 14.2 of this Plan.

**1.52.** **"Estates"** means the bankruptcy estates of the Debtors as created under section 541 of the Bankruptcy Code.

**1.53.** **"Exchange Act"** means the Securities and Exchange Act of 1934, as amended.

**1.54.** **"Excluded Assets"** means those assets of the Debtors that are not sold pursuant to the Newfield PSA or a Superior Proposal.

**1.55.** **"Exhibit"** means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement.

**1.56.** **"Final Order"** means an order, decree or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended, and as to which order, decree or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing has been taken or is pending.

**1.57.** **"Former Preferred Shareholder Trust"** means that certain trust that may be created pursuant to this Plan to be administered by the Former Preferred Shareholder Trustee as set forth in Article XIII.

**1.58.** **"Former Preferred Shareholder Trust Agreement"** means that certain Former Preferred Shareholder Trust Agreement that is to govern the Former Preferred Shareholder Trust, pursuant to which, among other things, the Former Preferred Shareholder Trust Assets shall be initially conveyed to the Former Preferred Shareholder Trust and shall ultimately govern Distributions to holders of the beneficial interests in the Former Preferred Shareholder Trust, as set forth in, and in a manner consistent with the terms of, this Plan.

**1.59.** **"Former Preferred Shareholder Trust Assets"** means the remaining share of Reorganized TXCO Common Stock following termination of the Creditor Trust.

**1.60.** **"Former Preferred Shareholder Trustee"** means the trustee of the Former Preferred Shareholder Trust.

**1.61.** **"Fraud"** means a demonstration of actual fraud that requires a specific demonstration of a misrepresentation of a material fact with the intention to deceive, manipulate, defraud or induce action or inaction, where there is actual reliance on the misrepresentation by a person who, as a result of such reliance, suffers actual injury.

**1.62.** **"General Unsecured Claim"** means a Claim, however arising, including from the rejection of an executory contract or an unexpired lease, which is not an Administrative

2782939.1

Claim, Administrative Convenience Claim, DIP Loan Secured Claim, Priority Tax Claim, Administrative Tax Claim, Priority Non-Tax Claim, Secured Claim of a Junior Mineral Lien or Senior Mineral Lien, Secured Claim of Revolver Lenders, Secured Claim of Term Loan Lenders, or Secured Tax Claim.

**1.63. "Governance Documents"** means any and all documents related to corporate governance of Reorganized TXCO, including but not limited to, its certificate of incorporation, corporate bylaws and other organizational documents.

**1.64. "Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.65. "Intercompany Claim"** means any Claim arising prior to the Petition Date against a Debtor by another Debtor, excluding any Claim that Drilling may have against TXCO.

**1.66. "Interest"** means the right of any current or former holder or owner of any shares of TXCO Common Stock or TXCO Preferred Stock, or any other equity securities as defined in the Bankruptcy Code of any of the Debtors authorized and issued prior to the Petition Date.

**1.67. "IRS"** means the Internal Revenue Service of the United States of America.

**1.68. "JIB"** means Joint Interest Billing, which is the method for splitting the cost of drilling and operating a well between the working interest owners.

**1.69. "JIB Obligor"** means a Person that owes an Unpaid JIB.

**1.70. "JIB Payment"** means the *pro rata* payment to be made by the Debtors to a Mineral Subcontractor within 45 days of the Debtors receipt of an Unpaid JIB associated with a particular well.

**1.71. "Junior Mineral Lien"** means a lien claimed pursuant to Chapter 56 of the Texas Property Code by a mineral contractor or Mineral Subcontractor for unpaid labor, material or services upon property that the Revolver Lenders and Term Loan Lenders held perfected liens as of the Petition Date.

**1.72. "Junior Mineral Lien Claimant"** means the holder of a Junior Mineral Lien upon property that the Revolver Lenders and Term Loan Lenders held perfected liens as of the Petition Date.

**1.73. "Mineral Subcontractor"** means as defined in Texas Property Code § 56.001(4), a Person who (a) furnishes or hauls material, machinery, or supplies used in mineral activities under contract with a mineral contractor or subcontractor; (b) performs labor used in mineral activities under contract with a mineral contractor; or (c) performs labor used in mineral activities as an artisan or day laborer employed by a subcontractor.

**1.74. "Mortgaged Properties"** means those properties of the Debtors subject to liens securing the debt owed under the Revolver Loan, the Term Loan and, to the extent applicable, amounts owed to Junior Mineral Lien Claimants.

**1.75.** **"Mortgaged Property Debt"** means the full amount owed on the Revolver Loan, the Term Loan, and, to the extent applicable, the claims held by Junior Mineral Lien Claimants.

**1.76.** **"Net Unsecured Creditors Amount"** means the initial principal amount of the Secured Trust Promissory Note, which is equal to all General Unsecured Claims less the total of General Unsecured Claims satisfied under Class 9 as an Allowed Administrative Convenience Claim. The principal amount of the Secured Trust Promissory Note shall also be reduced by the amount of any Disallowed General Unsecured Claims.

**1.77.** **"New Common Stock"** means shares of common stock of Reorganized TXCO authorized under Section 7.3(b) of the Plan and under the amended Governance Documents of Reorganized TXCO.

**1.78.** **"Newfield"** means Newfield Exploration Company.

**1.79.** **"Newfield PSA"** means that certain Purchase and Sale Agreement dated November 6, 2009 by and between the Debtors and Newfield.

**1.80.** **"Non-Consenting Junior Mineral Lien Claimant"** means a Junior Mineral Lien Claimant who objects to confirmation of the Plan, votes against the Plan, or does not vote in connection with the Plan.

**1.81.** **"Non-Consenting Section 1111(b) Junior Mineral Lien Claimant"** means a Class of Junior Mineral Lien Claimants who assert a lien on Excluded Assets that elects to be treated in the Plan under section 1111(b) of the Bankruptcy Code.

**1.82.** **"Non-Consenting Section 1111(b) Senior Mineral Lien Claimant"** means a Class of Senior Mineral Lien Claimants who assert a lien on Excluded Assets that elects to be treated in the Plan under section 1111(b) of the Bankruptcy Code.

**1.83.** **"Non-Consenting Senior Mineral Lien Claimant"** means a Senior Mineral Lien Claimant who objects to confirmation of the Plan, votes against the Plan, or does not vote in connection with the Plan.

**1.84.** **"Non-Mortgaged Property"** means property of the Debtors that the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date.

**1.85.** **"Notice of Bankruptcy"** means the Notice of Chapter 11 Bankruptcy, Meeting of Creditors, & Deadlines that was filed by the Debtors on June 1, 2009.

**1.86.** **"Operational Plan"** means that certain Plan of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession based on Continued Operations by Reorganized TXCO, which the Debtors will request to confirm if the Sale Plan is not confirmed or closing does not occur as set forth in the Sale Plan.

**1.87.** **"Other Secured Claim"** means a Secured Claim not otherwise classified under the Plan.

2782939.1

**1.88. "Person"** means an individual, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, limited liability company, limited liability partnership, or other entity.

**1.89. "Petition Date"** means, as applicable, (i) May 17, 2009 with respect to those Debtors filing their voluntary petitions for relief in the Bankruptcy Court on such date, or (ii) May 18, 2009 with respect to those Debtors filing their voluntary petitions for relief in the Bankruptcy Court on such date.

**1.90. "Plan"** means this chapter 11 plan of reorganization for the Debtors as herein proposed, including all supplements, appendices and schedules thereto, either in its present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code.

**1.91. "Plan Schedule"** means a schedule annexed either to this Plan or as an appendix to the Disclosure Statement, as the same may be altered, amended or modified from time to time.

**1.92. "Plan Supplement"** means the supplement to the Plan containing the forms of the Secured Trust Promissory Note, Reorganized TXCO's Certificate of Incorporation and Bylaws, and the Creditor Trust Agreement.

**1.93. "Plan Supplement Filing Date"** means the date by which the Plan Supplement, and any Exhibits or Plan Schedules not filed with the Plan, shall be filed with the Bankruptcy Court, which date shall be at least five (5) days prior to the Voting Deadline.

**1.94. "Preliminary Non-Binding Junior Mineral Lien Determination"** means a preliminary list of the Junior Mineral Lien Claimants (by lease/class), which is attached as Exhibit S to the Disclosure Statement, wherein the Debtors tentatively identified whether a Junior Mineral Lien Claimant has complied with all statutory requirements necessary to perfect a Junior Mineral Lien. The Preliminary Non-Binding Junior Mineral Lien Determination will NOT include any attorney's fees or interest.

**1.95. "Preliminary Non-Binding Senior Mineral Lien Determination"** means a preliminary list of the Senior Mineral Lien Claimants (by non-mortgaged lease/class), which is attached as Exhibit R to the Disclosure Statement, wherein the Debtors tentatively identified whether a Senior Mineral Lien Claimant has complied with all statutory requirements necessary to perfect a Senior Mineral Lien. The Preliminary Non-Binding Senior Mineral Lien Determination will NOT include any attorney's fees or interest.

**1.96. "Priority Non-Tax Claim"** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.97. "Priority Tax Claim"** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.98. "Professional"** means any professional employed in the Cases pursuant to section 327, 328 or 1103 of the Bankruptcy Code.

**1.99.** **"Professional Fee Claim"** means a Claim under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional for services rendered or expenses incurred in the Cases on or prior to the Effective Date (including expenses of the members of the Committee incurred as members of the Committee in discharge of their duties as such).

**1.100.** **"Professional Fee Order"** means the order entered by the Bankruptcy Court on May 20, 2009, authorizing the interim payment of Professional Fee Claims, as may be amended from time to time prior to the entry on the docket of the Confirmation Order.

**1.101.** **"Released Party"** means (i) all directors, officers and employees of each of the Debtors from and after the Petition Date, (ii) the Committee and each member of the Committee in its representative capacity, (iii) Restructuring Professionals, and (iv) the DIP Loan Agent and DIP lenders, and, with respect to each of the foregoing, such Person's respective officers, directors, partners, members, employees, attorneys, financial advisors, accountants, investment bankers, agents, professionals and representatives retained by such Person.

**1.102.** **"Reorganized TXCO"** means TXCO Resources Inc., following substantive consolidation of all Debtors other than TXCO Drilling, Inc., as reorganized and to be reincorporated as a Texas corporation, pursuant to this Plan on or after the Effective Date.

**1.103.** **"Restructuring Professionals"** means, collectively, Administar Services Group LLC, Cox Smith Matthews Incorporated, DeGolyer and MacNaughton, FTI Consulting, Inc., Fulbright & Jaworski, L.L.P., Gardere Wynne Sewell LLP, Global Hunter Securities LLC, Grant Thornton LLP, KPMG LLP, Lonquist & Co. LLC and their respective Affiliates, members, partners, shareholders, officers, directors and employees.

**1.104.** **"Retained Actions"** means all Causes of Action which any Debtor may hold against any Person, other than any Causes of Action against a Released Party.

**1.105.** **"Revolver Lender"** means those entities identified as "Lenders" in the Revolver Loan and their successors and assigns.

**1.106.** **"Revolver Loan"** means that certain Amended and Restated Credit Agreement dated April 2, 2007 by and between TXCO, Output, Energy, and Tar Sands, as Borrowers and the Revolver Lenders as identified therein, as Lenders, and the Revolver Loan Agent, including any subsequent amendments thereto.

**1.107.** **"Revolver Loan Agent"** means Bank of Montreal, in its capacity as administrative agent under the Revolver Loan.

**1.108.** **"Scheduled"** means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

**1.109.** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Cases by the Debtors, as such schedules have been or may be further modified, amended or supplemented from time to time in accordance with Rule 1009 of the Bankruptcy Rules or Orders of the Bankruptcy Court.

**1.110. "Secured Claim"** means a Claim that is secured by a security interest in or lien upon property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.111. "Secured Tax Claim"** means a Secured Claim owing to a taxing authority.

**1.112. "Secured Trust Promissory Note"** means that certain promissory note to be issued to the Creditor Trust under this Plan.

**1.113. "Securities Act"** means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended.

**1.114. "Senior Mineral Lien"** means a lien claimed pursuant to Chapter 56 of the Texas Property Code by a mineral contractor or Mineral Subcontractor for unpaid labor, material or services upon property that the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date.

**1.115. "Senior Mineral Lien Claimant"** means the holder of a Secured Claim against the Debtors upon property that the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date.

**1.116. "Solicitation Order"** means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**1.117. "Substantial Contribution Claim"** means a Claim under section 503(b)(3-4) of the Bankruptcy Code and in accordance with applicable bankruptcy law.

**1.118. "Superior Proposal"** means a bona fide written Acquisition Proposal that the Debtors determine (after consultation with its legal and financial advisors) in good faith (i) is reasonably likely to be consummated in a timely manner, taking into account all factors deemed relevant by Debtors (including all legal, financial and regulatory aspects of the proposal and the person making the proposal), (ii) if consummated would, taking into account all factors deemed relevant by Debtors (including the amounts that would be owed to Newfield under *Section 9.2(b)* of the Newfield PSA (if any) and if, and only to the extent, the Newfield PSA has not been terminated prior to the execution of a Definitive Agreement in respect of such Acquisition Proposal, the costs reasonably likely to be incurred in connection with the negotiation of an Acquisition Proposal), is reasonably likely to result in a transaction more favorable to Debtors and their stakeholders than the transactions contemplated by the Newfield PSA and (iii) is reasonably likely to provide a Deemed Value to the Debtors and their bankruptcy estates that exceeds, by at least the Superior Proposal Threshold, the Deemed Value of the Newfield PSA and the transactions contemplated hereby.

**1.119. "Superior Proposal Threshold"** means recovery to General Unsecured Creditors equal or greater than $2,810,000 net of, *inter alia*, payment of the amounts payable to the Newfield under *Section 9.2(b)* of the Newfield PSA.

**1.120. "Term Loan"** means that certain Amended and Restated Term Loan Agreement dated April 2, 2007 by and between TXCO, Output, Energy, and Tar Sands, as Borrowers and the Term Loan Lenders as identified therein, as Lenders, and the Term Loan Agent, including any subsequent amendments thereto.

**1.121. "Term Loan Agent"** means Bank of Montreal, in its capacity as administrative agent under the Term Loan or such other Person as appointed by the Term Loan Lenders to act as successor administrative agent.

**1.122. "Term Loan Lender"** means those entities identified as "Lenders" in the Term Loan and their successors and assigns.

**1.123. "Unclaimed Property"** means any funds or property distributed to Creditors (together with any interest earned thereon) which are unclaimed as of one hundred eighty (180) days after a Distribution. Unclaimed Property will include, without limitation, Cash and any other property which is to be distributed pursuant to this Plan which has been returned as undeliverable without a proper forwarding address, or which was not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

**1.124. "Unimpaired Claim"** means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.125. "Unpaid JIB"** means a JIB payment owed to the Debtors that was outstanding as of the Petition Date and remains unpaid as of the Confirmation Hearing or has been collected by the Debtors post petition and placed in a segregated account.

**1.126. "Unsecured Claim"** means any Claim to the extent such Claim is not a Secured Claim.

**1.127. "U.S. Trustee"** means the Office of the United States Trustee, or a representative thereof.

**1.128. "Voting Deadline"** means January 19, 2010, as the last day and time for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order.

**1.129. "Voting Record Deadline"** means the date and time established by the Bankruptcy Court in the Solicitation Order for determining those holders of Claims against the Debtors entitled to vote on the Plan.

## Rules of Interpretation, Computation of Time and Governing Law

## B.     Rules of Interpretation.

For purposes of this Plan:  a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document

will be substantially in such form or substantially on such terms and conditions; c) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; d) unless otherwise specified, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation of this Plan; g) "after notice and a hearing," or a similar phrase has the meaning ascribed in Bankruptcy Code § 102; h) "includes" and "including" are not limiting; i) "may not" is prohibitive, and not permissive; j) "or" is not exclusive; and k) U.S. Trustee includes a designee of the U.S. Trustee.

## C.  Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## ADMINISTRATIVE EXPENSES AND TAX PRIORITY CLAIMS

### 2.1.  Administrative Claims

Subject to the provisions of Article XI of this Plan, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the holder of such Administrative Claim and the Debtors or Reorganized TXCO, as applicable, the holder of each Allowed Administrative Claim shall receive in full satisfaction, release, settlement and discharge of such Allowed Administrative Claim:  (A) cash equal to the unpaid portion of such Allowed Administrative Claim; or (B) in accordance with the terms of any written agreement between the Debtors or Reorganized TXCO, as applicable, regarding such Allowed Administrative Claim; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during these Cases will be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

### 2.2.  Priority Tax Claims

On, or as soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or Reorganized TXCO, (i) Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such different treatment as to which such holder and the Debtors or Reorganized TXCO, as applicable, will have agreed upon in writing.  To the extent the Debtors elect under section 1129(a)(9)(C) of the Bankruptcy Code to make regular installment payments in Cash, the holder of an Allowed Priority Tax Claim will receive quarterly payments on the last day of each quarter,

of principal and interest, at an interest rate of six and one-half per cent (6½ %) per annum with the final payment due on or before May 17, 2014. The first installment will be made at the end of the first full quarter after the Effective Date.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors. All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes as set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article II above.

A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class only for the purpose of voting on, and receiving distributions pursuant to, the Plan to the extent such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

**3.1.    Classification of Claims Against and Interest in the Debtors**

(a)    Class 1.        Class 1 consists of the Allowed DIP Loan Secured Claim.

(b)    Class 2.        Class 2 consists of the Allowed Secured Claims of holders of Senior Mineral Liens.

(c)    Class 3.        Class 3 consists of the Allowed Secured Claims of Revolver Lenders.

(d)    Class 4.        Class 4 consists of the Allowed Secured Claims of the Term Loan Lenders.

(e)    Class 5.        Class 5 consists of the Allowed Secured Claims of holders of Junior Mineral Liens.

(f)    Class 6.        Class 6 consists of the Allowed Secured Tax Claims.

(g)    Class 7.        Class 7 consists of the Allowed Priority Non-Tax Claims.

(h)    Class 8.        Class 8 consists of the Allowed General Unsecured Claims.

(i)    Class 9.        Class 9 consists of the Allowed Administrative Convenience Class Claims.

(j)    Class 10.      Class 10 consists of the Allowed Intercompany Claims.

| (k) | Class 11. | Class 11 consists of the Allowed Preferred Stock Interests. |
|-----|-----------|------------------------------------------------------------|
| (l) | Class 12. | Class 12 consists of the Allowed Common Stock Interests. |
| (m) | Class 13. | Class 13 consists of Allowed Other Secured Claims. |

## ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

**4.1.    Unimpaired Classes of Claims.**

The Classes listed below are Unimpaired by the Plan:

Class 1 (Allowed DIP Loan Secured Claim)
Class 3 (Allowed Secured Claims of Revolver Lenders)
Class 4 (Allowed Secured Claims of the Term Loan Lenders)
Class 6 (Allowed Secured Tax Claims)
Class 7 (Allowed Priority Non-Tax Claims)
Class 13 (Allowed Other Secured Claims)

**4.2.    Impaired Classes of Claims and Interests.**

The Classes listed below are impaired by the Plan:

Class 2 (Allowed Secured Claims of holders of Senior Mineral Liens)
Class 5 (Allowed Secured Claims of holders of Junior Mineral Liens)
Class 8 (Allowed General Unsecured Claims)
Class 9 (Allowed Administrative Convenience Class Claims)
Class 10 (Allowed Intercompany Claims)
Class 11 (Allowed Preferred Stock Interests)
Class 12 (Allowed Common Stock Interests)

## ARTICLE V
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**5.1.    Provisions For Treatment Of Claims And Interests**

(a)    <u>Class 1 Allowed DIP Loan Secured Claim</u>.  Notwithstanding any other term or provisions of this Plan to the contrary, the DIP Loan Secured Claim shall be allowed in full.  On the Closing Date, the Debtors will transfer to the DIP Loan Agent from their Cash, the funds necessary to satisfy in full the DIP Loan, including any and all accrued interest and charges.  In addition, on the Closing date, the Debtors will pay all fees and all reasonable attorneys' fees and expenses as agreed upon by the Debtors and the Committee or if there is a dispute, such amount as ordered by the Bankruptcy Court at the Confirmation Hearing.  Any and all liens asserted by the DIP Loan Lenders on Excluded Assets shall survive Confirmation and shall remain in place post-Effective Date pending the Bankruptcy Court's Final Order concerning the DIP Lenders' Secured Claims pursuant to section 506 of the Bankruptcy Code

and final payment of the DIP Lenders' claims in accordance therewith. To the extent any of the Excluded Assets subject to the DIP Loan Lenders' Liens are sold after the Effective Date by Reorganized TXCO but prior to the Bankruptcy Court's Final Order concerning the DIP Loan Lenders' Secured Claims, Reorganized TXCO can sell such Excluded Assets free and clear of any and all liens with such liens of the DIP Loan Lenders attaching to the proceeds from such sale. Reorganized TXCO shall provide notice of any such sale to the DIP Loan Lenders.

        (b)    <u>Class 2 Allowed Secured Claims of Mineral Lienholders on Non-Mortgaged Properties</u>. In connection with the treatment of the Claims under Class 2, the Debtors prepared the Preliminary Non-Binding Senior Mineral Lien Determination, which is Exhibit R to the Disclosure Statement. Treatment of certain Claims under Class 2 is based upon the Preliminary Non-Binding Senior Mineral Lien Determination.

<u>Treatment</u>

        1.    <u>Application of JIBs</u> – All Senior Mineral Lien Claimants that hold allowed claims on leases as either a mineral contractor or mineral subcontractor (as such terms are defined in Tex. Prop. Code § 56.001(4)) for a particular well will receive a JIB Payment. Immediately upon payment of an Unpaid JIB to the Debtors or Reorganized TXCO, the JIB Obligor will be deemed released of any and all claims and/or liens held or asserted by any Mineral Subcontractor including, without limitation, any claims under Texas Property Code § 56.043 or any other section of the Texas Property Code.

        2.    (a).    <u>Consenting Senior Mineral Lien Claimants</u> – The Debtors will not object to the extent, validity, or enforceability of the Senior Mineral Lien held by a Consenting Senior Mineral Lien Claimant as set forth in the Preliminary Non-Binding Senior Mineral Lien Determination and the Claims set forth therein will be Allowed Consenting Senior Mineral Lien Claims. Consenting Senior Mineral Lien Claimants will be treated as follows:

        (i)    <u>The Preference Credit</u> – To the extent that an Allowed Consenting Senior Mineral Lien Claimant received a payment in connection with one of the leases listed under Class 2(a-u) in the Disclosure Statement in the 90 days prior to the Petition Date, the claims of such Allowed Consenting Senior Mineral Lien Claimant will be reduced by an amount equal to fifty percent (50%) (or a lower percentage if agreed to by the Debtors or Reorganized Debtors) of the full amount of such payments, against the applicable Allowed Senior Mineral Lien Claim (or a lower percentage, if agreed to by the Debtors or Reorganized Debtors) (a "Class 2 Preference Credit"). Exhibit "Q" discloses the amounts which the Debtors paid to Senior

Mineral Lien Claimants during the 90 days prior to the Petition Date. If the Allowed Consenting Senior Mineral Lien Claimant has liens on multiple leases, the Class 2 Preference Credit will be allocated *pro rata* to all Senior Mineral Liens held by such Allowed Consenting Senior Mineral Lien Claimant. The Class 2 Preference Credit will be in full and complete satisfaction of any and all claims under 11 U.S.C. § 547 against any Allowed Consenting Senior Mineral Lien Claimant. Any Allowed Consenting Senior Mineral Lien Claimant shall have the option to elect not to participate in the Class 2 Preference Credit and Reorganized TXCO shall retain the right to assert any and all avoidance actions against such Allowed Consenting Senior Mineral Lien Claimant.

(ii)     Within thirty (30) days of the Effective Date, each Allowed Consenting Senior Mineral Lien Claim will be paid in full to the extent that the value of the Non-Mortgaged Property to which the Senior Mineral Lien has attached equals or exceeds the amount of the Senior Mineral Liens, based on the Preliminary Non-Binding Senior Mineral Lien Determination, less any Class 2 Preference Credit and/or JIB Payment (the "Net Allowed Senior Mineral Lien Claim"), as applicable. In the event the value of the Non-Mortgaged Property relating to such Senior Mineral Lien is less than the Net Allowed Senior Mineral Lien Claim, each Senior Mineral Lien Claimant shall receive a pro rata Distribution of the Allocated Value and any unpaid portion will be treated under Class 8 General Unsecured Claims. Consenting Senior Mineral Lien Claimants shall have no further claims under Class 2 against the Debtors, or against any party to an agreement or contract with any of the Debtors, other than claims to receive any applicable JIB payment if, when and as received by Reorganized TXCO.

2.     (b).     <u>Non-Consenting Senior Mineral Lien Claimants</u> – the Debtors and/or Reorganized TXCO, as applicable, reserve their right to further examine and/or to object to the extent, validity and/or enforceability of any lien and/or Claim asserted by such Non-Consenting Senior Mineral Lien Claimant. Non-Consenting Senior Mineral Lien Claimants will be treated as follows:

(i)     <u>Preferences</u> – The Debtors and/or Reorganized TXCO, as applicable, reserves the right to file Avoidance Actions against any and all Non-Consenting Senior Mineral Lien Claimants.

(ii)    <u>Claims Resolution Process</u> – Within 120 days after the Effective Date, Reorganized TXCO will begin to obtain a determination as to the value of any property securing the claims of Non-Consenting Senior Mineral Lien Claimants by filing a motion pursuant to Rule 9014 of the Bankruptcy Rules seeking a final ruling whether the liens of Non-Consenting Senior Mineral Lien Claimants attach to any interest acquired by a Debtor after the Petition Date (whether such interest is an increase in acreage, an increase in a working interest or attributable to a lease signed after the Petition Date) (the "Lien Motion"). Reorganized TXCO will also seek a determination as to whether they are entitled to recover from any property allegedly securing the claims of a Non-Consenting Senior Mineral Lien Claimant, the reasonable and necessary costs and expenses of preserving such property pursuant to 11 U.S.C. § 506(c). If no Lien Motion is filed, or if filed, once those issues are resolved by Final Order, the Debtors will file motions seeking determinations of the value of the property ultimately determined to secure each Non-Consenting Senior Mineral Lien Claim (the "Valuation Motion").

Within 30 days after the filing of each Valuation Motion, Reorganized TXCO shall schedule mediation and identify a mediator. Any Non-Consenting Senior Mineral Lien Claimant subject to a Valuation Motion may object in writing to the mediator selected by Reorganized TXCO not later than 30 days after being notified of the identity of the proposed mediator. In the absence of any agreement, the Bankruptcy Court will select a mediator if an objection has been filed within such 30 day period. Mediations will occur at a mutually agreeable location between Reorganized TXCO and the Non-Consenting Senior Mineral Lien Claimant asserting a lien in the property. If no mutually agreeable location can be determined, the mediation will occur in San Antonio, Texas. If the mediation is successful, the Non-Consenting Senior Mineral Lien Claimant shall be entitled to the treatment of its Allowed Non-Consenting Senior Mineral Lien Claim as set forth below. In the event mediation is unsuccessful, Reorganized TXCO will set a hearing before the Bankruptcy Court to consider the Valuation Motion.

Within 60 calendar days after entry of a Final Order determining the value of the property to which the liens attach and the total amount of all Allowed Non-Consenting Senior Mineral Lien Claims against such property, the

amount of the Allowed Non-Consenting Senior Mineral Lien Claims will be paid in full, including interest as allowed by law. Any deficiency claim will be treated as a Class 8 General Unsecured Claim.

2.  (c)  <u>Non-Consenting Section 1111(b) Senior Mineral Lien Claimants</u> – The Debtors and/or Reorganized TXCO, as applicable, reserve their right to further examine and/or to object to the extent, validity and/or enforceability of any lien and/or claim asserted by such Non-Consenting Section 1111(b) Senior Mineral Lien Claimant. Each member of the class of Non-Consenting Section 1111(b) Senior Mineral Lien Claimants will be treated as follows:

(i)  <u>Preferences</u> – The Debtors and/or Reorganized TXCO, as applicable, reserve the right to file Avoidance Actions against any and all Non-Consenting Section 1111(b) Senior Mineral Lien Claimants, including, without limitation, to assert that an 1111(b) election is an admission that the class is undersecured and/or that such class is estopped from denying that it is undersecured.

(ii)  <u>Claims Resolution Process</u> – Within 120 days after the Effective Date, Reorganized TXCO will begin to obtain a determination as to the value of any property securing the Claims of Non-Consenting Section 1111(b) Senior Mineral Lien Claimants by filing a Lien Motion. Reorganized TXCO will also seek a determination as to whether they are entitled to recover from any property allegedly securing the Claims of a Non-Consenting Section 1111(b) Senior Mineral Lien Claimant, the reasonable and necessary costs and expenses of preserving such property pursuant to 11 U.S.C. § 506(c). Once those issues are fully and finally resolved, the Debtors will file motions (the "Section 1111(b) Valuation Motion") seeking determinations of the value of the property to ultimately determine the value securing each Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Claim, if any.

Within 30 days after filing of each Section 1111(b) Valuation Motion, Reorganized TXCO shall schedule mediation and identify a mediator. Any of the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants subject to a Section 1111(b) Valuation Motion may object in writing to the mediator selected by Reorganized TXCO not later than 30 days after being notified of the identity of the proposed mediator. In the absence of any agreement,

2782939.1

the Bankruptcy Court will select a mediator if an objection has been filed within such 30 day period. Mediations will occur at a mutually agreeable location between Reorganized TXCO and the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants asserting a lien in the property. If no mutually agreeable location can be determined, the mediation will occur in San Antonio, Texas. If the mediation is successful, the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants shall be entitled to the treatment of its Allowed Non-Consenting Section 1111(b) Senior Mineral Lien Claim as set forth below. In the event mediation is unsuccessful, Reorganized TXCO will set a hearing before the Bankruptcy Court to consider the Section 1111(b) Valuation Motion.

Each Non-Consenting Section 1111(b) Senior Mineral Lien Claimant will retain a lien against the Excluded Property in which they had previously asserted a Senior Mineral Lien, for the full amount of their Allowed Non-Consenting Section 1111(b) Senior Mineral Lien Claim. Such Allowed Non-Consenting Section 1111(b) Senior Mineral Lien Claims will be paid the earlier of (a) upon sale of the property up to, but not to exceed, the full amount of the Allowed Non-Consenting Section 1111(b) Senior Mineral Lien Claim or (b) in full over a period of five years.

(c)     Class 3 Allowed Secured Claims of the Revolver Lenders. On the Closing Date, the Debtors will transfer to the Revolver Loan Agent from their Cash, the funds necessary to satisfy in full the Revolver Loan, including any accrued interest and charges. In addition, the Debtors will pay fees and reasonable attorneys' fees and expenses, as agreed upon by the Debtors and the Committee or if there is a dispute, such amount as ordered by the Bankruptcy Court at the Confirmation Hearing. Any and all liens asserted by the Revolver Lenders on Excluded Assets shall survive Confirmation and shall remain in place post-Effective Date pending the Bankruptcy Court's Final Order concerning the Revolver Lenders' Secured Claims pursuant to section 506 of the Bankruptcy Code and final payment of the Revolver Lenders' Claims in accordance therewith. To the extent any of the Excluded Assets subject to the Revolver Lenders' Liens are sold after the Effective Date by Reorganized TXCO but prior to the Bankruptcy Court's Final Order concerning the Revolver Lenders' Secured Claims, Reorganized TXCO can sell such Excluded Assets free and clear of any and all liens with such liens of the Revolver Lenders attaching to the proceeds from such sale. Reorganized TXCO shall provide notice of any such sale to the Revolver Lenders.

(d)     Class 4 Allowed Secured Claims of the Term Loan Lenders. On the Closing Date, the Debtors will transfer to each of the Term Lenders from their Cash, the funds necessary to satisfy in full the Term Loan, including any accrued interest and all reasonable costs, fees and expenses (less their pro-rata share of the Post-Confirmation Escrow referred to below), which payment shall be final and irrevocable. The Debtors shall reserve and escrow on

the Closing Date an amount attributable to a portion of the accrued but unpaid post-petition interest on the Term Loan equal to $5,000,000 (or such lesser amount as the Committee may agree or the Court may order), which amount shall be reserved and escrowed (the "Post-Confirmation Escrow").  The Post-Confirmation Escrow shall be released to the Term Lenders upon the Court's determination of the Term Lenders' right to all or any portion of the Post-Confirmation Escrow pursuant to Section 506 of the Bankruptcy Code (which determination shall include consideration of the value of assets under the TXCO Drilling Plan to the extent subject to the Term Loan Lenders Liens).  Subject to the provisions of Section 506 of the Bankruptcy Code, interest on the Term Loan debt in respect to the Post-Confirmation Escrow and other unpaid obligations shall, following confirmation of the Sale Plan, continue to accrue pending resolution of the parties' rights to the Post-Confirmation Escrow.  The Debtors or Reorganized TXCO shall establish a reasonable reserve to cover attorneys' fees and expenses that arise in connection with a determination of the Term Lender's secured claim pursuant to Section 506 of the Bankruptcy Code.  Any and all liens asserted by the Term Loan Lenders on Excluded Assets shall survive Confirmation and shall remain in place post-Effective Date pending the Bankruptcy Court's Final Order concerning the Term Loan Lenders' Secured Claims pursuant to section 506 of the Bankruptcy Code and final payment of the Term Loan Lenders' Claims in accordance therewith.  To the extent any of the Excluded Assets subject to the Term Loan Lenders' Liens are sold after the Effective Date by Reorganized TXCO but prior to the Bankruptcy Court's Final Order concerning the Term Loan Lenders' Secured Claims, Reorganized TXCO can sell such Excluded Assets free and clear of any and all liens with such liens of the Term Loan Lenders attaching to the proceeds from such sale.  Reorganized TXCO shall provide notice of any such sale to the Term Loan Lenders.

(e)    Class 5 Allowed Secured Claims of the Mineral Lien Holders on Mortgaged Properties.  In connection with the treatment of the Claims under Class 5, the Debtors prepared the Preliminary Non-Binding Junior Mineral Lien Determination, which is Exhibit S to the Disclosure Statement.  Treatment of certain Claims under Class 5 is based on the Preliminary Non-Binding Junior Mineral Lien Determination.

Treatment

1.    Application of JIBs – All Junior Mineral Lien Claimants that hold allowed claims on leases as either a mineral contractor or mineral subcontractor (as such terms are defined in Tex. Prop. Code § 56.001(4)) for a particular well will receive a JIB Payment. Immediately upon payment of an Unpaid JIB to the Debtors or Reorganized TXCO, the JIB Obligor will be deemed released of any and all claims by any Mineral Subcontractor including, without limitation, any claims under Texas Property Code § 56.043 or any other section of the Texas Property Code.

2.    (a).    Consenting Junior Mineral Lien Claimants – The Debtors will not object to the extent, validity, or enforceability of the Junior Mineral Lien held by such Consenting Junior Mineral Lien Claimant as set forth in the Preliminary Non-Binding Junior Mineral Lien Determination and the Claims set forth therein will

be deemed Allowed Junior Mineral Lien Claims. Consenting Junior Mineral Lien Claimants will be treated as follows:

(i)    <u>The Preference Credit</u> – To the extent that an Allowed Consenting Junior Mineral Lien Claimant received a payment in connection with one of the leases listed under Class 5(a-bb) in the Disclosure Statement in the 90 days prior to the Petition Date, the claims of such Allowed Consenting Junior Mineral Lien Claimant will be reduced by an amount equal to fifty percent (50%) (or a lower percentage if agreed to by the Debtors or Reorganized Debtors) of the full amount of such payments, against the applicable Allowed Junior Mineral Lien Claim (or a lower percentage, if agreed to by the Debtors or Reorganized Debtors) (a "Class 5 Preference Credit"). Exhibit "Q" discloses the amounts which the Debtors paid to Junior Mineral Lien Claimants during the 90 days prior to the Petition Date. If the Junior Mineral Lien Claimant asserts a lien on multiple leases, the Class 5 Preference Credit will be allocated *pro rata* to all Junior Mineral Liens held by such Consenting Junior Mineral Lien Claimant. The Class 5 Preference Credit will be in full and complete satisfaction of any and all claims under 11 U.S.C. § 547 against any Allowed Consenting Junior Mineral Lien Claimant. Any Allowed Consenting Junior Mineral Lien Claimant shall have the option to elect not to participate in the Class 5 Preference Credit and Reorganized TXCO shall retain the right to assert any and all avoidance actions against such Allowed Consenting Junior Mineral Lien Claimant.

(ii)    Within thirty (30) days of the Effective Date, each Allowed Consenting Junior Mineral Lien Claim will be paid to the extent that the value of the Mortgaged Properties equal or exceed the Mortgaged Property Debt, an amount equal to its Preliminary Non-Binding Junior Mineral Lien Determination less any Class 5 Preference Credit and/or JIB Payment (the "Net Allowed Junior Mineral Lien Claim"), as applicable. In the event the value of the Mortgaged Properties does not equal or exceed the Mortgaged Property Debt, the Net Allowed Junior Mineral Lien Claim will be treated under Class 8 General Unsecured Claims. Consenting Junior Mineral Lien Claimants shall have no further claims under Class 5 against the Debtors, or against any party to an agreement or contract with any of the Debtors, other than a claim to receive any applicable JIB Payment if, when and as received by Reorganized TXCO.

22

2.     (b).  <u>Non-Consenting Junior Mineral Lien Claimants</u> – Reorganized TXCO reserve their right to further examine and/or to object to the extent, validity and/or enforceability of any lien and/or Claim asserted by such Non-Consenting Junior Mineral Lien Claimant.  Non-Consenting Junior Mineral Lien Claimants will be treated as follows:

(i)     <u>Preferences</u> – The Debtors and/or Reorganized TXCO, as applicable, reserve the right to file Avoidance Actions against any and all Non-Consenting Junior Mineral Lien Claimants.

(ii)    <u>Claims Resolution Process</u> – Within 120 days after the Effective Date, Reorganized TXCO will begin to obtain a determination as to the value of any property securing the claims of Non-Consenting Junior Mineral Lien Claimants by filing a Lien Motion.  Reorganized TXCO will also seek a determination as to whether they are entitled to recover from any property allegedly securing the claims of the Non-Consenting Junior Mineral Lien Claimants, the reasonable and necessary costs and expenses of preserving such property pursuant to 11 U.S.C. § 506(c).  If no Lien Motion is filed, or if filed, once those issues are resolved by a Final Order, the Debtors will file motions seeking determinations of the value of the property ultimately determined to secure each Non-Consenting Junior Mineral Lien Claim (the "<u>Junior Valuation Motion</u>").  Reorganized TXCO will seek a determination as to the value of the interest to which the liens attach.

Within 30 days after filing the Junior Valuation Motion, Reorganized TXCO shall schedule mediation and identify a mediator.  Any Non-Consenting Junior Mineral Lien Claimant subject to a Junior Valuation Motion may object in writing to the mediator selected by Reorganized TXCO not later than 30 days after being notified of the identity of the proposed mediator.  In the absence of any agreement, the Bankruptcy Court will select a mediator if an objection has been filed within such 30 day period.  Mediations will occur at a mutually agreeable location between Reorganized TXCO and the Non-Consenting Junior Mineral Lien Claimants asserting a lien in the property.  If no mutually agreeable location can be determined, the mediation will occur in San Antonio, Texas.  If the mediation is successful, the Non-Consenting Junior Mineral Lien Claimant will be entitled to the treatment of its Allowed Non-Consenting Junior Mineral Lien Claim as

set forth below. In the event mediation is unsuccessful, Reorganized TXCO will set a hearing before the Bankruptcy Court to consider the Junior Valuation Motion.

Within sixty (60) days after entry of a Final Order determining the value of the property to which the liens attach and the total amount of the Allowed Non-Consenting Junior Mineral Lien Claims against such property, the amount of the Allowed Non-Consenting Junior Mineral Lien Claims will be paid in full, including interest as allowed by law. Any deficiency claim will be treated as a Class 8 General Unsecured Claim.

2. (c). <u>Non-Consenting Section 1111(b) Junior Mineral Lien Claimants</u> – The Debtors and/or Reorganized TXCO, as applicable, reserve their right to further examine and/or to object to the extent, validity and/or enforceability of any lien and/or Claim asserted by such Non-Consenting Section 1111(b) Junior Mineral Lien Claimants. Each member of the class of Non-Consenting Section 1111(b) Junior Mineral Lien Claimants will be treated as follows:

(i) <u>Preferences</u> – The Debtors and/or Reorganized TXCO, as applicable, reserve the right to file Avoidance Actions against any and all Non-Consenting Section 1111(b) Junior Mineral Lien Claimants including, without limitation, to assert that an 1111(b) election is an admission that the class is undersecured and/or that such class is estopped from denying that it is undersecured.

(ii) <u>Claims Resolution Process</u> – Within 120 days after the Effective Date, Reorganized TXCO will begin to obtain a determination as to the value of any property securing the claims of Non-Consenting Section 1111(b) Junior Mineral Lien Claimants by filing a Lien Motion. Reorganized TXCO will also seek a determination as to whether they are entitled to recover from any property allegedly securing the claims of the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants, the reasonable and necessary costs and expenses of preserving such property pursuant to 11 U.S.C. § 506(c). Once those issues are fully and finally resolved, Reorganized TXCO will file motions (the "Junior Section 1111(b) Valuation Motion") seeking determinations of the value of the property, including whether the remaining value of the property is of inconsequential value such that the class of Junior Mineral Claimants was not entitled to make an election under

section 1111(b) of the Bankruptcy Code, to ultimately determine the value securing each Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Claims, if any.

Within 30 days after filing the Junior Section 1111(b) Valuation Motion, Reorganized TXCO shall schedule mediation and identify a mediator. Any Non-Consenting Section 1111(b) Junior Mineral Lien Claimant subject to a Junior Section 1111(b) Valuation Motion may object in writing to the mediator selected by Reorganized TXCO not later than 30 days after being notified of the identity of the proposed mediator. In the absence of any agreement, the Bankruptcy Court will select a mediator if an objection has been filed within such 30 day period. Mediations will occur at a mutually agreeable location between Reorganized TXCO and the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants asserting a lien in the property. If no mutually agreeable location can be determined, the mediation will occur in San Antonio, Texas. If the mediation is successful, the Non-Consenting Section 1111(b) Junior Mineral Lien Claimant will be entitled to the treatment of its Allowed Non-Consenting Section 1111(b) Junior Mineral Lien Claim as set forth below. In the event mediation is unsuccessful, Reorganized TXCO will set a hearing before the Bankruptcy Court to consider the Junior Section 1111(b) Valuation Motion.

All Allowed Non-Consenting Section 1111(b) Junior Mineral Lien Claimants will retain a lien against the Excluded Property in which they had previously asserted a Junior Mineral Lien, for the full amount of their Allowed Non-Consenting Section 1111(b) Junior Mineral Lien Claim. Such Allowed Non-Consenting Section 1111(b) Junior Mineral Lien Claims will be paid the earlier of (a) upon sale of the property up to, but not to exceed, the full amount of the Allowed Non-Consenting Section 1111(b) Junior Mineral Lien Claim or (b) in full over a period of five years.

(f)     Class 6 Allowed Secured Tax Claims. Each holder of an Allowed Secured Tax Claim will receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Secured Tax Claim, as will have been determined by the Debtors or by Reorganized TXCO, as applicable, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Secured Tax Claim, (ii) treatment in a manner consistent with section 1129(a)(9)(D) of the Bankruptcy Code, or (iii) such different treatment as to which such holder and the Debtors or Reorganized TXCO, as applicable, will

25

have agreed upon in writing. To the extent the Debtors elect under section 1129(a)(9)(D) of the Bankruptcy Code to make regular installment payments in Cash, the holder of an Allowed Secured Tax Claim will receive quarterly payments on the last day of each quarter, of principal and interest, at an interest rate of six and one-half per cent (6½ %) per annum with the final payment due on or before May 17, 2014. The first installment will be made at the end of the first full quarter after the Effective Date. Each holder of an Allowed Secured Tax Claim shall retain the liens securing such Claim.

(g)     Class 7 Allowed Priority Non-Tax Claims.  Each holder of an Allowed Priority Non-Tax Claim will receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim, as will have been determined by the Debtors or by Reorganized TXCO, as applicable, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Priority Non-Tax Claim or (ii) such different treatment as to which such holder and the Debtors or Reorganized TXCO, as applicable, will have agreed upon in writing.

(h)     Class 8 Allowed General Unsecured Claims.  The holders of Claims in this class will be issued a Trust Certificate reflecting a *pro rata* interest in the Creditor Trust. The Creditor Trust will be issued the Secured Trust Promissory Note and one hundred percent of the New Common Stock of Reorganized TXCO.  The initial principal amount of the Secured Trust Promissory Note will be equal to all General Unsecured Claims less the total of General Unsecured Claims satisfied under Class 9 as an Allowed Administrative Convenience Claim. The principal amount of the Secured Trust Promissory Note shall also be reduced by the amount of any Disallowed General Unsecured Claims.  The Secured Trust Promissory Note shall have a maturity date of seven (7) years.  Principal and interest payments shall be made by Reorganized TXCO on a quarterly basis at the end of each quarter with the first payment due at the end of the first full quarter following the Effective Date.  Interest will be at an annual rate equal to the greater of six percent (6%) or LIBOR + 2% annually.  Principal payments shall be tied to the cash available for distribution by the Reorganized Debtors less a reasonable reserve established by the Board of Directors of Reorganized TXCO, with the full principal amount due on the maturity date.  The Secured Trust Promissory Note shall be secured by the granting of a first priority security interest in and upon all Excluded Assets, except those Excluded Assets that are subject to the lien of a Non-Consenting Section 1111(b) Senior Mineral Lien Claimant, wherein the lien on behalf of the Secured Trust Promissory Note will be junior.

(i)     Class 9 Allowed Administrative Convenience Claims. On, or as soon as reasonably practicable after, the later of (i) the Effective Date, or (ii) the date on which an Administrative Convenience Claim becomes Allowed Administrative Convenience Claim, each holder of an Allowed shall receive, in full satisfaction, settlement, and release of, and in exchange for such Allowed Administrative Convenience Claim, a single Cash payment equal to 100% of such Allowed Administrative Convenience Claim.  Additionally, any party with an Unsecured Claim exceeding $6,000 may elect treatment under Class 9 Allowed Administrative Convenience Claims by agreeing to reduce their Unsecured Claim to an amount that is less than or equal to $6,000.

(j)    Class 10 Intercompany Claims.  Except as to Drilling, all Intercompany Claims will be deemed discharged on the Effective Date.

(k)    Class 11 Preferred Stock.  Class 11 is comprised of all holders of Preferred Stock in the Debtors under the Sale Plan, including any party that indicated an intent to redeem their shares of Preferred Stock prior to the Petition Date.   Holders of Preferred Stock are impaired under the Sale Plan.  The Holders of Preferred Stock shall be separately classified based on whether the holder of such Interest exercised their right to redeem the Preferred Stock prior to the Petition Date.  On the Effective Date, all existing Preferred Stock shall, without any further action, be cancelled, annulled and extinguished and any certificates representing such Preferred Stock shall become null, void and of no force or effect.  Class 11 is impaired under the Sale Plan and is deemed to have rejected the Sale Plan.

1.     Class 11A Redeemed Preferred Stock

Class 11A shall be comprised of all holders of Preferred Stock that exercised their right to redeem their Preferred Interests prior to the Petition Date.  Class 11A claimants shall be given the right to purchase the Secured Trust Promissory Note and the New Common Stock of Reorganized Stock from the Creditor Trust at any point in time for the outstanding balance of the Secured Trust Promissory Note as of the date of purchase.  Reorganized TXCO will provide notice on a quarterly basis to Class 11A claimants of the current balance of the Secured Trust Promissory Note and the remaining assets of Reorganized TXCO.  In the event Reorganized TXCO intends to sell substantially all of its assets, Reorganized TXCO will give notice to Class 11A Claimants and an opportunity to buy the Secured Trust Promissory Note, for the then outstanding balance of the Secured Trust Promissory Note.  In the event Reorganized TXCO intends to sell an asset(s) having a value in excess of $100,000, Reorganized TXCO shall provide written notice to the Class 11A claimants of such intent and the Class 11A claimants shall have ten days to submit an offer to purchase such asset(s).  In the event Reorganized TXCO receives an unsolicited offer for the purchase of asset(s) exceeding $100,000, Reorganized TXCO will notify the Class 11A claimants of such offer, who will have the right to make an offer to purchase such asset(s).  Class 11A is impaired under the Sale Plan.

2.     Class 11B Preferred Stock

Class 11B shall be compromised of all holders of TXCO Preferred Stock that did not seek to redeem their shares of Preferred Stock.  Class 11B shall receive no property under the Sale Plan.  Class 11B is impaired under the Sale Plan.

(l)     Class 12 Common Stock. The holders of Class 12 Common Stock shall receive no Distribution under the Plan.  On the Effective Date, all existing Common Stock shall, without any further action, be cancelled, annulled and extinguished and any certificates representing such Common Stock shall become null, void and of no force or effect.  Holders of Common Stock shall retain no rights and receive no consideration on account thereof.

(m)     Class 13 Allowed Other Secured Claims.  Each holder of Class 13 Allowed Other Secured Claims shall receive, at the option of the Reorganized TXCO (i) turnover of the collateral securing such Allowed Other Secured Claim, (ii) payment in full of such Allowed Other Secured Claim, (iii) such other treatment as agreed to in writing between the holder of such Allowed Other Secured Claim and Reorganized TXCO, or (iv) treatment in any other manner such that the Allowed Other Secured Claim shall otherwise be an Unimpaired Claim.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF PLAN

### 6.1.     Classes Entitled to Vote

Subject to Sections 6.3 and 6.4 of this Plan, Claim and Interest holders in Impaired Classes of Claims and Interests are entitled to vote as a class to accept or reject the Plan.

### 6.2.     Acceptance by Impaired Classes

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan, shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept or reject the Plan.

### 6.3.     Presumed Acceptances by Unimpaired Classes

Classes 1, 3, 4, 6, 7 and 13 are Unimpaired by the Plan.  Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

### 6.4.     Classes Deemed to Reject Plan

Classes 10-12 are not entitled to receive or retain any property under the Plan. Claims and Interests in Impaired Classes that do not entitle the holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section

1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**6.5.    Summary of Classes Voting on the Plan**

As a result of the provisions of Sections 6.1, 6.3 and 6.4 of this Plan, the votes of holders in Classes 2(a) – 2(u), 5(a) – 5(bb), 8 and 9 will be solicited with respect to this Plan.

**6.6.    Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, nothing shall affect the Debtors' or Reorganized TXCO's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to Setoff Claims or recoupments against Unimpaired Claims.

**6.7.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

If any Class of Claims or Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall (a) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with Article XVII of the Plan. With respect to any Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1.    Sale of Assets**

The Plan contemplates the sale of substantially all of the assets of the Debtors, except for the Excluded Assets, to Newfield pursuant to the Newfield PSA, or such other party that submits the highest and best offer pursuant to a Superior Proposal. The Confirmation Order shall contain specific authority for the Debtors to sell and assign the assets pursuant to the terms of the Newfield PSA or pursuant to the terms of the highest and best offer approved by the Court if a Superior Proposal is submitted.

On the Closing Date, or as soon thereafter as practical, but no later than the Effective Date, the Debtors shall make the following transfers to:

(a)    A segregated account to establish the Administrative Claims Reserve for the benefit of the holders of Allowed Administrative Claims, whereby the Debtors shall deposit the amount necessary to pay such Allowed Claims in full upon entry of a Final Order;

(b)    The DIP Loan Agent, the funds necessary to satisfy in full the DIP Loan, including any accrued interest charges, fees and reasonable attorneys' fees and expenses, as agreed upon by the Debtors and the Committee or ordered by the Bankruptcy Court at the Confirmation Hearing;

2782939.1

(c)     The Revolver Loan Agent, the funds necessary to satisfy in full the Revolver Loan, including any accrued interest, charges, fees and reasonable attorneys' fees and expenses, as agreed upon by the Debtors and the Committee or ordered by the Bankruptcy Court at the Confirmation Hearing;

(d)     To each of the Term Lenders, their proportionate share of the funds necessary to satisfy in full the Term Loan, including any accrued interest, charges, fees and reasonable attorneys' fees and expenses, as agreed upon by the Debtors and the Committee or ordered by the Bankruptcy Court at the Confirmation Hearing, subject to the Post-Confirmation Escrow;

(e)     A segregated account for the Holders of Allowed Senior Mineral Lien Claimants, who have asserted liens against the Acquired Properties, whereby the Debtors shall deposit the amount necessary to pay such Allowed Claims in full upon entry of a Final Order;

(f)     A segregated account for the Secured Tax Claims Reserve for the benefit of Holders of Allowed Secured Tax Claims, whereby the Debtors shall deposit the amount necessary to pay such Allowed Claims in full upon entry of a Final Order; and

(g)     A segregated account for the Priority Claims Reserve for the benefit of Holders of Allowed Priority Claims, whereby the Debtors shall deposit the amount necessary to pay such Allowed Claims in full upon entry of a Final Order.

**7.2.    Substantive Consolidation**

(a)     Substantive Consolidation of the Debtors

The Debtors and their respective Estates, except for Drilling, shall be substantively consolidated for all purposes under the Plan.  As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), except for the Intercompany Claims held by Drilling, will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of each of the Debtors; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against each of the Debtors; (d) any Interest in any of the Debtors will be deemed an Interest in each of the Debtors; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors.  The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor are subject in the absence of substantive consolidation under this Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect.  Additionally, holders of Allowed Claims or Allowed Interests who assert identical

Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests.

(b)     Order Granting Substantive Consolidation

This Plan shall serve as a motion seeking entry of an order substantively consolidating the Cases, as described and to the extent set forth in this Section 7.2. Unless an objection to such substantive consolidation is made in writing by any creditor affected by the Plan as herein provided on or before five (5) days prior to the Voting Deadline, or such other date as may be fixed by the Court, an order approving the substantive consolidation described herein (which may be in the Confirmation Order) may be entered by the Court. However, an order shall only be entered if the Bankruptcy Court enters the Confirmation Order. In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

**7.3.     Restructuring Transactions**

(a)     Issuance of Secured Trust Promissory Note

On, or as soon as reasonably practicable after, the Effective Date, Reorganized TXCO shall issue the Secured Trust Promissory Note to the Creditor Trust. The Secured Trust Promissory Note shall be equal to 100% of the total amount owed as the Net Unsecured Creditors Amount. The Secured Trust Promissory Note shall have a maturity date of seven (7) years. Principal and interest payments shall be made by Reorganized TXCO on a quarterly basis at the end of each quarter with the first payment due at the end of the first full quarter following the Effective Date. Interest will be an annual rate equal to the greater of six percent (6%) or LIBOR plus 2% per annum. Principal payments shall be tied to the cash available for distribution by the Reorganized Debtors, less a reasonable reserve established by the Board of Directors or Reorganized TXCO, with the full principal amount due on the maturity date. The Secured Trust Promissory Note shall be secured by a first priority security interest in and upon all Excluded Assets, except those Excluded Assets that are subject to the lien of a Non-Consenting Section 1111(b) Senior Mineral Lien Claimant, wherein the lien on behalf of the Secured Trust Promissory Note will be junior.

(b)     New Common Stock for Reorganized TXCO

On the Effective Date, Reorganized TXCO shall issue one (1) share of New Common Stock of Reorganized TXCO to the Creditor Trust. The share of Reorganized TXCO common stock held by the Creditor Trust will entitle it to vote for all of the members of the Board of Directors of Reorganized TXCO.

(c)     Establishing the Creditor Trust

On the Effective date a Creditor Trust will be created as set forth in Article XII, which will hold the Secured Trust Promissory Note and the New Common Stock of Reorganized TXCO.

**7.4.     Corporate Existence**

(a)     Continued Corporate Existence

Following the Effective Date, the Debtors shall be merged into a single entity, in accordance with applicable non-bankruptcy law and pursuant to the amended Governance Documents.  Upon payment in full to the Holders of Allowed Claims against Drilling, Drilling will be dissolved and the assets of Drilling will become the property of Reorganized TXCO. After the Effective Date, the Reorganized TXCO will be free to act in accordance with applicable government laws, including, without limitation, sale of assets, mergers, dissolution, and name changes.

(b)     Governance Documents

1.     Amended Governance Documents

On the Effective Date, or as soon as reasonably practicable thereafter, Reorganized TXCO shall file amended Governance Documents with the Secretary of State of the State of Texas.

2.     Other General Corporate Matters

On the Effective Date or as soon as reasonably practicable thereafter, Reorganized TXCO may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that Reorganized TXCO determines is necessary or appropriate.

Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of Reorganized TXCO shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests, directors of the Debtors or Reorganized TXCO, as the case may be, or any other Entity.

32

### 7.5. Directors and Officers of Reorganized TXCO

The board of directors of Reorganized TXCO shall consist of three (3) directors initially selected by the Committee, the identity of whom shall be disclosed in the Plan Supplement; provided, however, that upon dissolution of the Committee, the Creditor Trustee shall be entitled to elect the directors of Reorganized TXCO. To the extent any such Person is an Insider (as defined in section 101(31) of the Bankruptcy Code), the nature of any compensation for such Person will also be disclosed prior to the Confirmation Hearing. Each of the Persons on the initial Board of Directors of Reorganized TXCO shall serve in accordance with the Amended Governance Documents of Reorganized TXCO, as the same may be amended from time to time.

Reorganized TXCO will initially have one officer selected by the Committee who will serve as both president and secretary; provided, however, that upon dissolution of the Committee, the Board of Directors of Reorganized TXCO shall be entitled to elect officers. The initial officer of Reorganized TXCO shall be disclosed in the Plan Supplement. To the extent any such Person is an Insider (as defined in section 101(31) of the Bankruptcy Code), the nature of any compensation for such Person will also be disclosed at such time. The initial officers shall serve in accordance with the Amended Governance Documents of Reorganized TXCO, as the same may be amended from time to time.

Subject to the terms and provisions of the Secured Trust Note and the lien documents related thereto, the officers and directors or Reorganized TXCO shall have full authority to make all decisions with regard to the management, retention, development and sale of the assets of Reorganized TXCO. The officers and directors shall have no fiduciary duty of any kind to the Class 11 claims nor to the Former Preferred Shareholder Trust, if created pursuant to the terms of this Plan. Reorganized TXCO and its officers and directors are authorized to manage the assets of Reorganized TXCO without regard to or consideration of the effect, if any, their decisions might have on Class 11 claimants or the Former Preferred Shareholder Trust, and they are expressly authorized to liquidate and sell all of the assets of Reorganized TXCO even if the sale does not generate any funds or distribution to the Former Preferred Shareholders Trust.

### 7.6. Corporate Action

On the Effective Date, the adoption of the Certificates of Incorporation or similar constituent documents, the adoption of the Bylaws, the selection of directors and officers (or persons serving in similar capacities) for Reorganized TXCO, and all other actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan). All matters provided for in the Plan involving the organizational structure of the Debtors or Reorganized TXCO, and any corporate action required by the Debtors or Reorganized TXCO in connection with the Plan, shall, as of the Effective Date, be deemed to have occurred and shall be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the security holders or directors of the Debtors and Reorganized TXCO.

### 7.7. Revesting of Assets; Releases of Liens

Except as otherwise set forth in the Plan, in the Plan Supplement or in the Confirmation Order, as of the Effective Date, all Excluded Assets shall revest in Reorganized TXCO free and clear of all Claims, Liens, encumbrances and other Interests except to the extent provided in the Plan. From and after the Effective Date, Reorganized TXCO may operate (or liquidate and wind up) its business and use, acquire and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, Reorganized TXCO may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

### 7.8. Cancellation of Interest; Issuance of New Common Stock

All Interests of the Debtors shall be cancelled and annulled on the Effective Date. Reorganized TXCO shall issue one (1) share of New Common Stock to the Creditor Trust. This share of Reorganized TXCO common stock will be entitled to vote for all of the members of the Board of Directors of Reorganized TXCO.

### 7.9. Authority

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors, their assets and operations.

### 7.10. P&A Bonding

RLI Insurance Company ("RLI") has issued a bond (the "Bond") on behalf of Debtor to cover obligations of Debtor arising from or out of the ownership and operation of its oil and gas properties, and activities related thereto (the "Bonding Program"). The obligations covered by the Bond include, but are not limited to, royalty obligations, plugging and abandonment obligations and penalties assessed for non-compliance with applicable rules and regulations governing ownership and operation of oil and gas properties. The Bonding Program includes, but is not limited to, bonds issued in regard to oil and gas properties in Texas and Louisiana ("the Leases"). Under the Bonding Program, bonds were issued to the Railroad Commission of Texas, Comptroller of The State of Texas, and the Louisiana Office of Conservation. The approximate principal sum outstanding under the Bonds is $424,484.00. The obligations of the Debtor in regard to the Bonds are evidenced by, among other things, the Bonds, a letter of credit and various indemnity agreements (the "Bond Documents"), or any other documents subsequently entered into between Debtor and RLI.

Pursuant to the Plan, Reorganized TXCO will continue to own and operate oil and gas properties, and, as a result, will need to keep the Bonding Program in place. The Debtor hereby assumes the indemnity agreements and letter of credit between it and RLI and the rights of RLI under the Bond Documents are unimpaired and shall pass through the Debtor's bankruptcy unaffected in any manner and will become the obligations of the Reorganized Debtor. Debtor shall pay to RLI accrued, but unpaid, bond fees in the amount of $7,451.00 on the Effective Date of the Plan or under such other payment terms as may be agreed to by RLI. Subsequent bond

fees shall be paid by the Reorganized Debtor when due as provided in the Bond Documents, or any other documents subsequently entered into between the Debtor and RLI.

Upon the Effective Date of the Plan, all proofs of claims filed in Debtor's Chapter 11 bankruptcy case by RLI shall be deemed withdrawn. To the extent any other provision in the Plan or Confirmation Order conflicts with the provisions of this section 7.10, this section shall control unless specifically agreed to otherwise by RLI. All obligations of all parties to RLI under the bond, indemnity agreement and related documents would be assumed. RLI's rights under these documents would pass through the bankruptcy unimpaired. There would be no release of any guarantors, indemnitors or other parties liable to RLI.

### 7.11. Employee Benefits

On and after the Effective Date, Reorganized TXCO intends to retain at least two employees in connection with its ongoing operations. As such, Reorganized TXCO will retain an interest in its health insurance plan, including any COBRA coverage that will be available to employees that are not retained by Reorganized TXCO. Reorganized TXCO may also: (1) honor, in the ordinary course of business, any employee benefits approved for payment after the Petition Date by Final Order of the Bankruptcy Court including but not limited to compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time, and any other Benefit Plan; and (2) honor, in the ordinary course of business, claims of employees employed as of the Effective Date for accrued vacation time arising prior or subsequent to the Petition Date; provided, however, that the Debtors' or Reorganized TXCO's performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter Reorganized TXCO's defenses, claims, any causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

### 7.12. Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers or mortgages from or by the Debtors to Reorganized TXCO or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.13. Preservation of Rights of Action; Settlement

(a)     Retention of Causes of Action

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise dealt with in the Plan or are expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all rights, claims, causes of action (including the Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall remain assets of and vest in Reorganized TXCO, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) neither the Debtors nor Reorganized TXCO waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter Reorganized TXCO's right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that the Debtors or Reorganized TXCO have, or may have, as of the Effective Date. Reorganized TXCO may commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, and counterclaims in their sole discretion, in accordance with what is in the best interests, and for the benefit, of Reorganized TXCO.

**7.14. Retention of Subsequent Causes of Action**

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan or the Confirmation Order shall preclude or estop Reorganized TXCO or its privies, as successors in interest to the Debtors and their privies, from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its or their rights in connection with the Causes of Action, irrespective of the identity of any interest, cause of action, or nexus of fact, issues or events which is now or which could have been asserted in these Cases, the present litigation, and those which may be asserted in any subsequent litigation brought by Reorganized TXCO or its privies. Moreover, the failure to commence any Retained Action prior to the Confirmation Date shall not constitute res judicata, judicial or collateral estoppel.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED
## LEASES AND OTHER AGREEMENTS

### 8.1.   Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases, including, but not limited to, those contracts and leases listed as being rejected on Plan Schedule IV will be rejected by Reorganized TXCO unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan or is identified on Plan Schedule V as an executory contract or unexpired lease being assumed pursuant to the Plan; (b) is the subject of a motion to assume filed on or before the Confirmation Hearing; or (c) has been previously rejected or assumed.

### 8.2.   Pass-Through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of Reorganized TXCO's business, but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory and/or non-executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of Reorganized TXCO and the counterparty unaltered and unaffected by the bankruptcy filings or Chapter 11 Cases.

### 8.3.   Mineral Leases/Oil and Gas Leases

To the extent any of the Debtors' Mineral Leases or Oil and Gas Leases constitutes an executory contract or unexpired lease of real property under section 365 of the Bankruptcy Code, such Mineral Leases or Oil and Gas Leases will be assumed by Reorganized TXCO. To the extent any of the Debtors' Mineral Leases or Oil and Gas Leases constitute contracts or other property rights not required to be assumed or rejected under section 365 of the Bankruptcy Code, except as provided in the Plan or Confirmation Order, such Mineral Leases or Oil and Gas Leases shall pass through the Chapter 11 Cases for the benefit of Reorganized TXCO and the counterparties to such Mineral Leases or Oil and Gas Leases.

Except for the defaults of a kind specified in sections 365(b)(2) and 541(c)(1) of the Bankruptcy Code (which defaults the applicable Debtors or Reorganized TXCO will not be required to cure), or as otherwise provided herein, the legal, equitable and contractual rights of the counterparties to such Mineral Leases or Oil and Gas Leases shall be unaltered by the Plan; if the Mineral Lease or Oil and Gas Lease is subject to the provisions of section 365 of the Bankruptcy Code, that to the extent a failure by the Debtors to pay or perform an obligation under such Mineral Lease or Oil and Gas Lease is a default under any applicable Mineral Lease or Oil and Gas Lease, such default shall be cured for all purposes by the payments provided for herein or Reorganized TXCO's subsequent performance of such obligation with such applicable Mineral Lease or Oil and Gas Lease otherwise remaining in full force and effect for the benefit of Reorganized TXCO. To the extent such payment is due and owing on the Effective Date, such

payment shall be made, in Cash, on the Distribution Date, or upon such other terms as may be agreed to by Reorganized TXCO, as the case may be. To the extent such payment is not due and owing on the Effective Date, such payment (a) will be made, in Cash, in accordance with the terms of any agreement between the parties, or as such payment becomes due and owing under (i) applicable non-bankruptcy law, or (ii) in the ordinary course of business of Reorganized TXCO, or (b) will be made upon other terms as may be agreed upon by Reorganized TXCO, as the case may be, and the Person to whom such payment is due. To the extent it is impossible for Reorganized TXCO to cure a default arising from any failure to perform a non-monetary obligation, and to the extent such non-monetary default can be cured, such default shall be cured by performance by the applicable Debtor at or after the time of assumption in accordance with the terms of the applicable Mineral Lease or Oil and Gas Lease with the applicable Mineral Lease or Oil and Gas Lease remaining in effect for the benefit of Reorganized TXCO. If there is a dispute as to any cure obligation (including cure payments) between Reorganized TXCO and the Lessor of a Mineral Lease or Oil and Gas Lease, Reorganized TXCO shall only have to pay or perform as provided in the Plan.

### 8.4. Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or is the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any claims that may arise in connection therewith.

### 8.5. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases

Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, Reorganized TXCO expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized TXCO, as applicable, from counterparties to rejected or repudiated executory contracts or unexpired leases.

### 8.6. Assumed Contracts and Leases, and Contracts and Leases Entered Into After Petition Date

Contracts and leases with third parties entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by Reorganized TXCO in the ordinary course of business.

### 8.7.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any of the Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized TXCO, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### 8.8.    Additional Cure Provisions

Except as otherwise provided under the Plan, any monetary amounts that must be cured as a requirement for assumption and/or assignment by any of the Debtors pursuant to the provisions of section 365 of the Bankruptcy Code, such cure shall be effected or otherwise satisfied by prompt payment of such monetary amount as contemplated by Section 365(b)(1)(A) of the Bankruptcy Code or as otherwise agreed to by the parties.  If there is a dispute regarding (a) the timing of any payment required in order to meet the promptness requirement of 365(b)(1), (b) the nature, extent or amount of any cure requirement, (c) the Debtors', Reorganized TXCO, or the Debtors' assignees ability to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (d) any other matter pertaining to assumption, cure will occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

### 8.9.    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be filed with the Claims Agent no later than thirty (30) days after the later of the Effective Date or the effective date of rejection.  Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any of the Debtors without the need for any objection by Reorganized TXCO or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims; provided, however, if the holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure the obligations under such rejected executory contract or lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value

2782939.1

of such holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

### 8.10. Survival of Indemnification and Corporation Contribution

Except as otherwise specifically provided herein or in the Plan, any obligations or rights of the Debtors to indemnify, defend or advance expenses to its present and former directors, officers, employees, agents or representatives under its certificate of incorporation, bylaws, policies, any agreement or under state law, or any agreement with respect to any claim, demand, suit, cause of action, or proceeding, are rejected and shall survive confirmation of the Plan, until such time as a Directors and Officers Liability Insurance Policy is put in place that provides for an Extended Reporting Period/Tail of six years from the date of Closing and a total policy limit of $15 million. The employees of the Debtors who become employed by Reorganized TXCO shall receive new indemnification by Reorganized TXCO in the ordinary course of its business. Allowed Claims against the Debtors for pre-Petition Date indemnifications shall be classified under the Plan as General Unsecured Claims and are payable as Class 8 Allowed General Unsecured Claims.

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1. Distributions for Claims and Interests Allowed as of Effective Date

Except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, distributions to be made on account of Allowed Claims and Allowed Interests as of the Effective Date shall be made on the Distribution Date, or as soon thereafter as practicable. New Stock issued under the Plan shall be deemed issued as of the Effective Date.

### 9.2. Interest on Claims

Unless otherwise specifically provided by the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, or applicable bankruptcy law, post-petition interest shall not accrue and shall not be paid on Allowed Claims. To the extent postpetition interest is payable on an Allowed Claim, the amount of such interest shall be determined as provided in (i) any contract between the holder of such Allowed Claim and any applicable Reorganizing Debtor, (ii) any applicable non-bankruptcy law or (iii) in the absence of (i) or (ii), the Prime Rate, as such rates in (i) through (iii) may be limited by applicable bankruptcy law.

### 9.3. Disbursements to Classes of Claims

Reorganized TXCO shall make all Distributions required under the Plan except Distributions to the Claims in Classes 1 and 3, which distributions shall be made to the DIP Lender Agent and the Revolver Loan Agent, respectively, who shall promptly deliver such distributions to the holders of such Claims in accordance with the provisions of this Plan and the applicable credit documents. Distributions made by Reorganized TXCO, as applicable, to the DIP Loan Agent and the Revolver Loan Agent, shall constitute Distributions to holders of Allowed DIP Loan Secured Claims and Allowed Secured Claims of the Revolver Lenders, as the

case may be, regardless of whether the DIP Loan Agent and/or the Revolver Loan Agent make subsequent distributions to such holders.

Additionally, Reorganized TXCO shall make distributions for Claims in Class 8, which distributions shall be made to the Creditor Trustee, who shall promptly deliver such distributions to the holders of such Claims in accordance with the provisions of this Plan and the applicable credit documents. Distributions made by Reorganized TXCO to the Creditors Trust, shall constitute distributions to holders of Allowed General Unsecured Claims, regardless of whether the Creditor Trust makes subsequent distributions to such holders.

### 9.4. Record Date for Distributions

As of the close of business on the Distribution Record Date, the registers for Claims and Interests should be closed, and there shall be no further changes in the holder of record of any Claim or Interest. Reorganized TXCO and the Creditor Trustee, as applicable, shall have no obligation to recognize any transfer of Claim or Interest occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those holders of record stated on the registers of Claims and/or Interests as of the close of business on the Distribution Record Date for distributions under the Plan.

### 9.5. Means of Cash Payment

Cash payments made pursuant to this Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

### 9.6. Delivery of Distributions

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made by Reorganized TXCO, the DIP Lender Agent, the Revolver Loan Agent, or the Creditor Trustee, as the case may be, (a) at the addresses set forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if Reorganized TXCO or the Creditor Trustee have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to Reorganized TXCO, as applicable, after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and Reorganized TXCO, as applicable, has not received a written notice of a change of address, (d) in the case of the holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer, or (e) at the addresses set forth in a properly completed letter of transmittal accompanying securities, if any, properly remitted to Reorganized TXCO. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until Reorganized TXCO, as applicable, or the appropriate indenture trustee, agent, or servicer is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions made through Reorganized TXCO or the indenture trustee, agent, or servicer, shall be returned to Reorganized TXCO until

such distributions are claimed. All claims for undeliverable distributions must be made on or before the first (1st) anniversary of the Effective Date, after which date all unclaimed property shall revert to Reorganized TXCO free of any restrictions thereon, except as provided in the Plan, and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

### 9.7. Claims Paid or Payable by Third Parties

(a) Claims Paid by Third Parties

The Debtors or Reorganized TXCO, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full or in part on account of such Claim from a party that is not a Debtor or Reorganized TXCO. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized TXCO on account of such Claim, such holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to Reorganized TXCO, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing Reorganized TXCO annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

### 9.8. Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any applicable insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the applicable insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 9.9. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors or Reorganized TXCO or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses

### 9.10. Withholding and Reporting Requirements

In connection with this Plan and all distributions hereunder, Reorganized TXCO shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### 9.11.   Expunging of Certain Claims

All Claims marked or otherwise designated as "contingent, unliquidated or disputed" on the Debtors' Schedules and for which no proof of claim has been timely filed, shall be deemed disallowed and such claim may be expunged without the necessity of filing a claim objection and without any further notice to, or action, order or approval of the Bankruptcy Court.

### ARTICLE X
### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
### AND UNLIQUIDATED CLAIMS

### 10.1.   Objections to Claims

The Debtors or Reorganized TXCO (or their authorized representatives), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims. From and after the Effective Date, Reorganized TXCO (or their authorized representatives) may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Reorganized TXCO (or their authorized representatives) also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.   Reorganized TXCO shall use commercially reasonable efforts to settle or otherwise reduce the amount of General Unsecured Claims.

As soon as practicable, but no later than the Claims Objection Deadline, Reorganized TXCO (or their authorized representatives) may file objections with the Bankruptcy Court and serve such objections on the creditors holding the Claims to which objections are made. Nothing contained herein, however, shall limit the right of Reorganized TXCO (or their authorized representatives) to object to Claims, if any, filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by Reorganized TXCO (or their authorized representatives) without notice or hearing.

### 10.2.   Estimation of Claims

Any Debtor, Reorganized TXCO (or their authorized representative), as applicable, may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the

estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized TXCO, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

### 10.3. No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

### 10.4. Disputed Claims Reserves.

Reorganized TXCO shall establish one or more Disputed Claims Reserves for the purpose of effectuating distributions to holders of Disputed Claims pending the allowance or disallowance of such claims in accordance with this Plan. Reorganized TXCO shall withhold the applicable Disputed Claims Reserves from the property to be distributed to particular classes under the Plan. The Disputed Claims Reserves shall be equal to 100% of the distributions to which holders of Disputed Claims in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and 9 would be entitled under this Plan as of such date if such Disputed Claims in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and 9 were Allowed Claims in their (a) Face Amount or (b) estimated amount of such Disputed Claim in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and 9 as approved in an order by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code. Reorganized TXCO may request estimation for any Disputed Claim including, without limitation, any Disputed Claim that is contingent or unliquidated. Nothing in this Plan or the Disclosure Statement shall be deemed to entitle the holder of a Disputed Claim to postpetition interest on such Claim.

### 10.5. Distributions After Allowance

Reorganized TXCO shall make payments and distributions to each holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such holder belongs and Section 9.6. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, Reorganized TXCO shall distribute to the holder of such Claim, as provided for in Section 9.6, the distribution (if any) that would have been made to such holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date. After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become property of Reorganized TXCO.

### 10.6. General Unsecured Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed

amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude Reorganized TXCO from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### 10.7.  Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, Reorganized TXCO shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, Reorganized TXCO (or their authorized representative) shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. Reorganized TXCO reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

## ARTICLE XI
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### 11.1.  Professional Fee Claims

(a)     On the Effective Date, the Debtors shall pay all amounts owing to Professionals for all outstanding amounts relating to prior periods through the Effective Date approved by the Bankruptcy Court in accordance with the Professional Fee Order; provided, however, that Professionals shall continue to prepare fee applications in accordance with the Professional Fee Order for services rendered and expenses incurred up to the Effective Date.  No later than fifteen (15) days prior to the Confirmation Hearing, each Professional shall estimate fees and expenses due for periods that have not been billed as of the anticipated Effective Date. Any party in interest shall have until the Confirmation Hearing to object to such estimate.  If no party objects to a Professional's estimate, then within ten (10) days of the Effective Date such Professional shall submit a bill and, provided that such bill is no more than the estimate, the fees and expenses shall be paid; provided, however, that Reorganized TXCO shall be authorized to pay a Professional's success fee only upon approval of such fee by the Bankruptcy Court.  On the Effective Date, Reorganized TXCO shall fund an escrow account in an amount equal to the aggregate amount of outstanding fee applications not ruled upon by the Bankruptcy Court as of the Effective Date plus the aggregate amount of all estimated fees and expenses due for periods that have not been billed as of the Effective Date.  Such escrow account shall be used by Reorganized TXCO to pay the remaining Professional Fee Claims owing to the Professionals as and when Allowed by the Bankruptcy Court.  When all Professional Fee Claims have been paid in full, amounts remaining in such escrow account, if any, shall be returned to Reorganized TXCO.

(b)     All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code for services

rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than Substantial Contribution Claims under section 503(b)(4) of the Bankruptcy Code) must be filed and served on Reorganized TXCO and their counsel no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on Reorganized TXCO and their counsel and the requesting Professional or other entity no later than 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

## 11.2.  Administrative Claims

The Confirmation Order will establish an Administrative Claims Bar Date for filing of all Administrative Claims, including Substantial Contribution Claims (but not including Professional Fee Claims or claims for the expenses of the members of the Committee or Administrative Claims), which date will be forty-five (45) days after the Effective Date. Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary course liabilities, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. A notice prepared by Reorganized TXCO will set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtors or Reorganized TXCO, as the case may be, shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.  Holders of Administrative Claims pursuant to section 503(b)(9) of the Bankruptcy Code were required to file proof of such a claim on or before August 21, 2009.

## 11.3.  Administrative Ordinary Course Liabilities

Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the applicable Debtors' businesses (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims. Such Administrative Claims, unless objected to by the applicable Debtors or Reorganized TXCO, shall be assumed and paid by Reorganized TXCO, in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim.

## 11.4.  Administrative Tax Claims

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be filed and served on Reorganized TXCO and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the filing of the tax return for such

taxes for such tax year or period with the applicable governmental unit. Any holder of any such Claim that is required to file a request for payment of such taxes and does not file and properly serve such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against Reorganized TXCO or its property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date. Any interested party desiring to object to an Administrative Claim for taxes must file and serve its objection on counsel to Reorganized TXCO and the relevant taxing authority no later than ninety (90) days after the taxing authority files and serves its application.

## ARTICLE XII
## CREDITOR TRUST

### 12.1.  Generally

The Plan proposes that on the Effective Date a Creditor Trust will be created which will hold the Secured Trust Promissory Note and the New Common Stock of Reorganized TXCO. The following description shall generally apply to the Creditor Trust created under the Plan.

### 12.2.  Establishment of the Creditor Trust

On the Effective Date, the Creditor Trustee shall execute the Credit Trust Agreement on behalf of the Creditor Trust.  The Debtors will transfer to the Creditor Trust the Secured Trust Promissory Note and the New Common Stock of Reorganized TXCO representing one hundred percent (100%) of the equity interest in Reorganized TXCO.  The Debtors will also execute any and all documents granting to the Creditor Trust a security interest in the Excluded Assets.

### 12.3.  Purpose of the Creditor Trust

The Creditor Trust shall exist after the Effective Date, with all the powers of a trust under applicable Texas law.  The Creditor Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on or after the Effective Date.

After the Effective Date, the Creditor Trust will own the Secured Trust Promissory Note and one hundred percent of the equity of Reorganized TXCO and shall have the flexibility to conduct any operations necessary to liquidate the Trust Property and to enhance or preserve the value of the Trust Property.

The officers and directors of Reorganized TXCO, and the Creditor Trustee, shall have no fiduciary duty of any kind to the Class 11.  Reorganized TXCO will have the duty to provide the notices to Class 11A claimants as set forth in Section 12.8 of this Plan.

### 12.4.  Appointment and Powers of the Creditor Trust Board and Trustee

Prior to the Effective Date, three individuals shall be selected by the Committee to serve on the Creditor Trust Board.  An individual shall be nominated by the Creditor Trust Board to act

as the initial Creditor Trustee under the Creditor Trust. The Creditor Trustee will serve from and after the Effective Date until a successor is duly elected or appointed by the Creditor Trust Board. The Creditor Trustee shall receive title to all Creditor Trust Assets that the Debtors transfer to the Creditor Trust, including but not limited to, and except as provided in the Plan, any interests held by the Creditor Trust in real and personal property, as well as any other consideration to be received by the Creditors pursuant to the terms of the Plan.

Pursuant to the Creditor Trust Agreement, the Creditor Trustee shall have the power and authority to perform the following acts, among others:

(a) Perfect and secure his/her right, title and interest to any and all Creditor Trust Assets;

(b) Reduce all of the Creditor Trust Assets to his possession and conserve, protect collect and liquidate or otherwise convert all Creditor Trust Assets into Cash;

(c) Distribute the net proceeds of Creditor Trust Assets as specified herein;

(d) Release, convey, subordinate or assign any right, title or interest in or to the Creditor Trust Assets;

(e) Pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Creditor Trust Assets, and to protect the Creditor Trust and the Creditor Trustee from liability;

(f) Deposit Creditor Trust funds and draw checks and make disbursements thereof;

(g) Employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Creditor Trustee may deem necessary. The Creditor Trustee shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance of such advice. The fees and expenses of all such professionals shall be charges as expenses of the Creditor Trust and shall be paid upon approval of the Creditor Trustee;

(h) Employ brokers, investment brokers, sales representatives or agents, or other Persons necessary to manage the Creditor Trust Assets;

(i) Exercise any and all powers granted the Creditor Trustee by any agreements or by Texas common law or any statute that serves to increase the extent of the powers granted to the Creditor Trustee hereunder;

(j) Take any action required or permitted by the Plan or the applicable Creditor Trust Agreement;

(k) Execute obligations, whether negotiable or non-negotiable;

(l) Sue and be sued;

(m)     Settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor or against the Creditor Trust;

(n)     Waive or release rights of any kind;

(o)     Appoint, remove and act through agents, managers and employees and confer upon them such power an authority as may be necessary or advisable;

(p)     Negotiate, renegotiate or enter into any contract or agreements binding the Creditor Trust, and to execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Creditor Trustee to be advisable in connection with the performance of his/her duties; and

(q)     In general, without in any manner limiting any of the foregoing, deal with the Creditor Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter.

### 12.5.    Payment of the Expenses Incurred by the Creditor Trust

The Creditor Trustee will be compensated for services at a rate to be determined by the Creditor Trust Board for his/her services.  Professionals retained by the Creditor Trust shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred.  The payment of the fees and expense of the Creditor Trust retained professionals shall be made in the ordinary course of business from assets of the Creditor Trust.

### 12.6.    Exculpation; Indemnification

The Creditor Trustee shall not be liable for actions taken or omitted in his capacity as the Creditor Trustee, except those acts arising out of fraud, willful misconduct, or gross negligence. The Creditor Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Creditor Trustee, except for any actions or inactions involving his own fraud, willful misconduct, or gross negligence.  Any indemnification claim of the Creditor Trustee shall be satisfied from the assets of the Creditor Trust.

The Creditor Trust shall, to the fullest extent permitted by Texas law, indemnify and hold harmless the officers, directors, agents, representatives, attorneys, professionals and employees of the Creditor Trust (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to, attorneys' fees and costs, arising out of or due to their actions or omissions with respect to the Creditor Trust or the implementation or administration of the Creditor Trust Agreement, if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Creditor Trust, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.

### 12.7.    Retention of Funds Prior to Distribution

The Creditor Trustee shall collect all funds constituting Creditor Trust Assets and, pending distribution, shall deposit funds with a federally insured financial institution that has banking services. The Creditor Trustee will deposit funds so that they are adequately insured. Notwithstanding the foregoing, the Creditor Trustee may invest all Cash funds received into the Creditor Trust (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the Unites States Trustee's Office, provided that the Creditor Trustee shall invest funds held in only demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as Treasury bills. The Creditor Trustee shall hold all such funds until they are distributed pursuant to the Plan to Creditors with Allowed Claims.

The Creditor Trustee will not be required to post bond or be audited or monitored except as otherwise expressly provide in the Creditor Trust Agreement. Forty-five (45) days after the end of each calendar year of the Creditor Trust and forty-five (45) days after termination of the Creditor Trust, the Creditor Trustee will file with the Bankruptcy Court an un-audited written report and account showing (i) the assets and liabilities of the Creditor Trust at the end of such year or upon termination; (ii) any changes in the Creditor Trust Assets that have not been previously reported, and (iii) any material action taken by the Creditor Trustee in the performance of his duties under the Creditor Trust Agreement that has not been previously reported.

### 12.8.    Distributions to Creditor Trust Beneficiaries

Within a reasonable period after receipt of a Cash distribution from Reorganized TXCO in connection with the Creditor Trust, the Creditor Trustee shall distribute such Cash, after deducting any costs and expenses associated with operation of the Creditor Trust, *pro rata* to each of the beneficiaries of such Creditor Trust.

Reorganized TXCO shall, at its cost and expense, and at the election of the Creditor Trustee, perform the following administrative tasks on behalf of the Creditor Trustee:

(i)     distribute quarterly payments due and owing on the Secured Trust Promissory Note directly to beneficiaries of the Creditors Trust on a pro-rata basis, with such payments credited to the amounts due and owing on the Secured Trust Promissory Note;

(ii)    maintain records as to the Creditor Trust beneficiaries and their beneficial interests;

(iii)   prepare and distribute periodic reports required to be provided to the beneficiaries of the Creditor Trust;

(iv)    perform other administrative tasks on behalf of the Creditor Trust as reasonably requested from time to time by the Creditor Trustee;

<blockquote>
<blockquote>
(v)      provide a quarterly statement to Class 11A claimants of the current balance of Secured Trust Promissory Note and the remaining assets of Reorganized TXCO;

(vi)     provide written notice of any intent to sell assets that exceed $100,000 to the Class 11A claimants; and

(vii)    provide written notice of any unsolicited offer to purchase assets of Reorganized TXCO that exceeds $100,000 in value to Class 11A claimants.
</blockquote>
</blockquote>

## 12.9.   Registry of Beneficial Interests

The Creditor Trustee shall establish and retain a registry of all beneficiaries of the Creditor Trust. The Creditor Trustee shall be responsible to maintain and update such registry; however, the Creditor Trustee shall not be obligated to update any beneficiaries name or address until receiving written correspondence from the party seeking to change the address for receipt of notices and distributions. The Creditor Trustee retains the right to request additional information to confirm the name and address of such party before making any modification to the registry.

The professionals employed by the Creditor Trust are expressly authorized to simultaneously represent Reorganized TXCO on any matter not directly adverse to the Creditor Trust.

## 12.10.   Termination of the Creditor Trust

The Creditor Trust shall remain and continue in full force and effect until the later of (a) all Trust Property has been wholly converted to Cash or abandoned and all costs, expenses, and obligations incurred in administering the Creditor Trust have been fully paid, and all remaining income and proceeds of the Trust Property have been distributed in payment of the claims of all Beneficiaries pursuant to the provisions of the Plan, but no later than after Reorganized TXCO has made the final principal and interest payment due under the Secured Trust Promissory Note; provided, that upon complete liquidation of the Trust Property and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Creditor Trust pursuant to the Plan prior to such date, the Creditor Trustee may, with approval of the Bankruptcy Court, sooner terminate the Creditor Trust. On the termination date of the Creditor Trust, the Creditor Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination. Upon termination and complete satisfaction of its duties under the Creditor Trust Agreement, the Creditor Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Creditor Trust other than those attributable to fraud, gross negligence or willful misconduct of the Creditor Trustee.

## 12.11.   Resignation of the Creditor Trustee

The Creditor Trustee may resign at any time by giving written notice to the Creditor Trust Board and such resignation shall be effective upon the date provided in such notice. In the case of the resignation of the Creditor Trustee, a successor Creditor Trustee shall thereafter be

appointed by the Creditor Trust Board, whereupon such resigning Creditor Trustee shall convey, transfer and set over to such successor Creditor Trustee by appropriate instrument or instruments all of the Trust Property then unconveyed or otherwise undisposed of and all other assets then in his possession the Creditor Trust Agreement. Without further act, deed or conveyance, a successor Creditor Trustee shall be vested with all the rights, privileges, powers and duties of the Creditor Trustee, except that the successor Creditor Trustee shall not be liable for the acts or omissions of his predecessor(s). Each succeeding Creditor Trustee may in like manner resign and another may in like manner be appointed in his place.

## ARTICLE XIII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### 13.1. Conditions Precedent to Confirmation

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 13.4 of the Plan:

(a)     The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to the Plan in form and substance reasonably acceptable to the Debtors.

(b)     The Confirmation Order shall be in form and substance reasonable acceptable to the Debtors, Newfield and the DIP Lenders.

### 13.2. Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 13.4 below:

(a)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors, Newfield and the DIP Lenders.

(b)     Closing shall have occurred under either the Newfield PSA or a Superior Proposal.

(c)     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(d)     There shall not be in effect on the Effective Date any (i) order entered by a court, (ii) any order, opinion, ruling or other decision entered by any other court or governmental entity, or (iii) any applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

(e)     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall remain pending.

(f)     All conditions to the consummation of the transactions contemplated by the Plan shall have been satisfied or waived.

2782939.1

(g)    In the event the Sale Plan is confirmed but has not gone effective by February 28, 2010 or upon termination of the Newfield PSA or a Superior Proposal, the Plan Proponents, on notice filed with the Court, may withdraw the Sale Plan, whereupon the Confirmation thereof shall no longer be effective.

### 13.3.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.4.    Waiver of Conditions

Each of the conditions set forth in Sections 13.1 and 13.2 of the Plan may be waived in whole or in part by written consent of the applicable Debtor.  As to the conditions regarding Newfield or the DIP Lenders, without any notice to other parties in interest or the Bankruptcy Court and without a hearing either Newfield and/or the DIP Lenders may waive any of the conditions set forth in Sections 13.1 and 13.2. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or Reorganized TXCO regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or Reorganized TXCO). The failure of the Debtors or Reorganized TXCO to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### 13.5.    Revocation, Withdrawal, Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XIV
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 14.1.    Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of,

2782939.1

or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

It is not the intent of the Debtors that confirmation of the Plan shall in any manner alter or amend any settlement and compromise between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Debtors may compromise and settle various claims against them and claims that they have against other Persons. The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, Reorganized TXCO may compromise and settle any Claims against them and claims they may have against other Persons without approval from the Bankruptcy Court where the amount in dispute is less than $500,000 or the Claim to be settled is less than $1,000,000.

## 14.2. Satisfaction of Claims

The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged, and released in full. Neither Reorganized TXCO, nor their Affiliates, shall be responsible for any pre-Effective Date obligations of the Debtors, except those expressly assumed by the Debtors or their Affiliates, as applicable. Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against Debtors and their Affiliates, their respective successors or assigns, or their Estates, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date. Additionally, under the Sale Plan, the transfer of Acquired Assets to Newfield or any other party pursuant to a Superior Proposal shall be made free and clear of any and all claims, liens, interests and encumbrances.

## 14.3. Exculpation and Limitation of Liability

Notwithstanding any other provision of the Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial

advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action whether in law or equity, whether for breach of contract, statute, or tort claim, against the Debtors, the Estates, Reorganized TXCO, the Committee, the DIP Lenders, the DIP Loan Agent, Newfield or any of their respective affiliates, representatives, present or former members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of, these Cases, the pursuit of Confirmation of the Plan, consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence.

### 14.4. Good Faith

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors have participated in good faith and in compliance with Section 1125(e) of the Bankruptcy Code in the offer and issuance of the New Common Stock under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the New Common Stock under the Plan.

### 14.5. Discharge of Liabilities

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, Reorganized TXCO shall be discharged from all Claims and Causes of Action to the fullest extent permitted by Section 1141 of the Bankruptcy Code, and all holders of Claims and Interests shall be precluded from asserting against Reorganized TXCO, its respective assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, REORGANIZED TXCO SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE, OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTORS AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO REORGANIZED TXCO.

### 14.6. Discharge of the Debtors

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and

liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto. As provided in Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against Reorganized TXCO or its property to the extent it relates to a discharged Claim.

### 14.7.   Permanent Injunction

**Except as otherwise provided in the Plan, from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors prior to the Effective Date are permanently enjoined from taking any of the following actions against the Debtors, Reorganized TXCO, Newfield, the Committee, the DIP Lenders, the DIP Loan Agent, the Term Loan Lenders, the Term Loan Agent, and the Estates on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.**

### 14.8.   Releases by the Debtors, Reorganized TXCO and their Estates

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors, Reorganized TXCO and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Debtors, Reorganized TXCO and their Estates, for themselves and on behalf of their respective successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each (i) Released Party and (ii) the Debtors', Reorganized TXCO's and their Estates' past and present directors, managers, officers, employees, attorneys and other representatives from any and all claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, causes of action, remedies, and liabilities of any kind or character whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, Reorganized TXCO, and their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, Reorganized TXCO or their respective Affiliates or Estates ever had, now has or hereafter can, shall or may have, or otherwise would have been

legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, against any (i) Released Party and (ii) the Debtors', Reorganized TXCO's and their Estates' current and former directors, managers, officers, employees, attorneys and other representatives arising from or relating to, directly or indirectly from, in whole or in part, the Debtors, the Debtors' restructuring, the Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements among any two or more of any of Debtors, Reorganized TXCO or any Released Party (and the acts or omissions of any other Released Party in connection therewith), the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence, including the management and operation of the Debtors, taking place on or before the Effective Date. Notwithstanding the foregoing, nothing in this Section 14.8 shall release any Released Party or other individual included within this release from liability for (i) any act or omission by such Released Party or other individual that is found by a court of law in a final, non-appealable judgment to constitute Fraud, willful misconduct, or gross negligence, or (ii) any obligation for borrowed money owed by a Released Party to the Debtors, Reorganized TXCO or their respective Affiliates or Estates.

### 14.9.    Releases by Holders of Claims and Interests

**Except as otherwise specifically provided in the Plan or the Confirmation Order, on and after the Effective Date, in consideration of the Distributions under the Plan, holders of Claims and Interests, for themselves and on behalf of their respective successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, causes of action, remedies, and liabilities of any kind or character whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, Reorganized TXCO or their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereafter arising, in law, equity or otherwise, that such Entity ever had, now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert (whether individually or collectively or directly or derivatively), against any Released Party arising from or relating to, directly or indirectly, in whole or in part, the Debtors, the Debtors' restructuring, the Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements among any two or more of any Debtor, Reorganized TXCO or any Released Party (and the acts or omissions of any other Released Party in connection therewith), the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence, including the management and operation of the Debtors, taking place on or before the Effective Date. Notwithstanding the foregoing, nothing in this Section shall release any Released Party from liability for any act or omission by such Released Party that is found by a court of law**

**in a formal, non-appealable judgment to constitute Fraud, willful misconduct, or gross negligence.**

### 14.10. Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, Reorganized TXCO may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before such distribution is made), any claims, rights, and causes of action of any nature that such Debtor or Reorganized TXCO, as applicable, may hold against the holder of such Allowed Claim, to the extent such claims, rights, or causes of action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, the neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by Reorganized TXCO of any such claims, rights, and causes of action that Reorganized TXCO may possess against such holder. In no event shall any holder of Claims or Interests be entitled to setoff any Claim or Interest against any claim, right, or cause of action of the Debtors or Reorganized TXCO, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

### 14.11. Recoupment

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or Reorganized TXCO, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### 14.12. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Reorganized TXCO's Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to Reorganized TXCO and its successors and assigns.

In addition to, and in no way a limitation of, the foregoing, to the extent the Debtors' property or assets are encumbered by mortgages, security interests or Liens of any nature for which any holder of such mortgages, security interests or Liens does not have an Allowed Claim

against such Debtor, such mortgages, security interests or Liens shall be deemed fully released and discharged for all purposes and such holder shall execute such documents as reasonably requested by Reorganized TXCO in form and substance as may be necessary or appropriate to evidence the release of any such mortgages, security interests or Liens of any nature. If such holder fails to execute such documents, Reorganized TXCO is authorized to execute such documents on behalf of such holder and to cause the filing of such documents with any or all governmental or other entities as may be necessary or appropriate to effect such releases.

### 14.13.  Satisfaction of Subordination Rights

All Claims against the Debtors and all rights and claims between or among Claim holders relating in any manner whatsoever to Claims against the Debtors, based upon any claimed subordination rights (if any), shall be deemed satisfied by the distributions under the Plan to Claim holders having such subordination rights, and such subordination rights shall be deemed waived, released, discharged and terminated as of the Effective Date.  Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any Claim holder by reason of any claimed subordination rights or otherwise, so that each Claim holder shall have and receive the benefit of the distributions in the manner set forth in the Plan.

## ARTICLE XV
## RETENTION OF JURISDICTION

Under Sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a)     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement or the Confirmation Order;

(b)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan, including, but not limited to any disputes regarding whether appropriate notice was provided to Class 11A claimants of the right to purchase assets of Reorganized TXCO;

(c)     hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(d)     issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order,

(e)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(f) hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement or the Confirmation Order;

(g) enforce all orders, judgments, injunctions, releases, exculpations and rulings entered in connection with the Chapter 11 Cases;

(h) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(i) hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtors and to enter or enforce any order requiring the filing of any such Claim before a particular date;

(j) hear and determine motions, application, adversary proceedings, contested matters and other litigation matters filed or commenced after the Effective Date, including proceedings with respect to the rights and claims of the Debtors to recover property under the applicable provisions of Chapter 5 of the Bankruptcy Code or to bring any Litigation Claims, or otherwise to collect or recover on account of any Litigation Claim;

(k) determine all applications, Claims, adversary proceedings and contested matters pending on the Effective Date; and

(l) enter a final decree closing the Chapter 11 Case.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

### 16.1. Amendments and Modification

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date; however, the treatment of the Class 1 Allowed DIP Loan Secured Claim and Class 4 Allowed Secured Claims of the Term Loan Lenders may not be modified without their express consent. After the Confirmation Date and prior to "substantial consummation" as provided in the Plan, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 16.2. Payment of Statutory Fees

2782939.1

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

### 16.3. Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, Reorganized TXCO, and all other parties-in-interest in these Cases.

### 16.4. Term of Injunctions or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

### 16.5. Dissolution of Committee

On the Effective Date, the Committee, if any, shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Cases.

### 16.6. No Admissions

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth in the Plan, including liability on any Claim.

### 16.7. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to Reorganized TXCO; provided, however, that corporate governance matters relating to the Debtors or Reorganized TXCO, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor or Reorganized TXCO.

### 16.8. Subordination

2782939.1

The right of the Debtors to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Interest that becomes a Subordinated Claim or subordinated Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim or subordinated Interest.

### 16.9. Plan Supplement

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court not later than ten (10) days prior to the Plan Voting Deadline or such other filing deadline as may be approved by the Bankruptcy Court. Holders of Claims or Interests may also obtain a copy of the Plan Supplement upon written request to the Debtors. Notwithstanding the foregoing, the Debtors may amend the Plan Supplement, and any attachments thereto, through and including the Confirmation Date.

### 16.10. Notices

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:
TXCO RESOURCES INC.
777 E. Sonterra Blvd.
Suite 350
San Antonio, Texas  78258

with a copy to:

Deborah D. Williamson
Cox Smith Matthews Incorporated
112 E. Pecan, Suite 1800
San Antonio, Texas  78205
Facsimile:  (210) 226-8395

### 16.11. Severability of Plan Provision

If, before the Confirmation Order, the Bankruptcy Court holds that any provision of the Plan is invalid, void or unenforceable, the Debtors, at their option and if acceptable to the Exit Facility Lender, may amend or modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable.

2782939.1

[Signature Page Immediately Follows]

Dated: December 18, 2009

Respectfully Submitted,

TXCO RESOURCES INC. AND ITS SUBSIDIARIES
AND AFFILIATES THAT ARE ALSO DEBTORS
AND DEBTORS-IN-POSSESSION IN THE
CHAPTER 11 CASES

By: _____
James E. Sigmon

Counsel:

By: _____
Deborah D. Williamson
State Bar No. 21617500
Patrick L. Huffstickler
State Bar No. 10199250
Thomas Rice
State Bar No. 24025613
Meghan Bishop
State Bar No. 24055176
Cox Smith Matthews Incorporated
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
554-5500
226-8395 (Fax)

**ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION**

64

**PLAN OF REORGANIZATION FOR TXCO RESOURCES INC., ET AL.,
DEBTORS AND DEBTORS-IN-POSSESSION BASED ON CONTINUED OPERATIONS
BY REORGANIZED TXCO (THE "OPERATIONAL PLAN")**

## TABLE OF CONTENTS

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ...................................1

ARTICLE II ADMINISTRATIVE EXPENSES AND TAX PRIORITY CLAIMS...................13
2.1.   Administrative Claims .................................................................................13
2.2.   Priority Tax Claims.....................................................................................13

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ........................................14
3.1.   Classification of Claims Against and Interest in the Debtors ...........................14

ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
          IMPAIRED AND NOT IMPAIRED BY THE PLAN .....................................15
4.1.   Unimpaired Classes of Claims......................................................................15
4.2.   Impaired Classes of Claims and Interests. ....................................................15

ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS .................15
5.1.   Provisions For Treatment Of Claims And Interests.........................................15

ARTICLE VI ACCEPTANCE OR REJECTION OF PLAN ..........................................................28
6.1.   Classes Entitled to Vote ..............................................................................28
6.2.   Acceptance by Impaired Classes ..................................................................28
6.3.   Presumed Acceptances by Unimpaired Classes ..............................................28
6.4.   Classes Deemed to Reject Plan.....................................................................28
6.5.   Summary of Classes Voting on the Plan.........................................................29
6.6.   Special Provision Regarding Unimpaired Claims ............................................29
6.7.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .................29

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN ........................................29
7.1.   Sale of Assets.............................................................................................29
7.2.   Substantive Consolidation ...........................................................................30
7.3.   Restructuring Transactions ..........................................................................31
7.4.   Corporate Existence ...................................................................................31
7.5.   Directors and Officers of Reorganized TXCO ...............................................33
7.6.   Corporate Action........................................................................................33
7.7.   Revesting of Assets; Releases of Liens .........................................................33
7.8.   Cancellation of Interest; Issuance of New Common Stock.................................34
7.9.   Authority ..................................................................................................34
7.10.  P&A Bonding.............................................................................................34
7.11.  Employee Benefits ......................................................................................35
7.12.  Exemption from Certain Transfer Taxes ........................................................35
7.13.  Preservation of Rights of Action; Settlement .................................................35
7.14.  Retention of Subsequent Causes of Action.....................................................36

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED
    LEASES AND OTHER AGREEMENTS ........................................................37
8.1.    Assumption/Rejection............................................................................37
8.2.    Pass-Through ........................................................................................37
8.3.    Mineral Leases/Oil and Gas Leases........................................................37
8.4.    Assumed Executory Contracts and Unexpired Leases ............................38
8.5.    Preexisting Obligations to the Debtors Under Executory Contracts and
    Unexpired Leases..................................................................................38
8.6.    Assumed Contracts and Leases, and Contracts and Leases Entered Into
    After Petition Date ...............................................................................38
8.7.    Reservation of Rights............................................................................39
8.8.    Additional Cure Provisions....................................................................39
8.9.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ....................39
8.10.    Survival of Indemnification and Corporation Contribution.............................40

ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS ..................................................40
9.1.    Distributions for Claims and Interests Allowed as of Effective Date................................40
9.2.    Interest on Claims.................................................................................40
9.3.    Disbursements to Classes of Claims ........................................................40
9.4.    Record Date for Distributions...................................................................41
9.5.    Means of Cash Payment..........................................................................41
9.6.    Delivery of Distributions .........................................................................41
9.7.    Claims Paid or Payable by Third Parties ...................................................42
9.8.    Claims Payable by Third Parties ..............................................................42
9.9.    Applicability of Insurance Policies ...........................................................42
9.10.    Withholding and Reporting Requirements ................................................42
9.11.    Expunging of Certain Claims...................................................................43

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT  AND
    UNLIQUIDATED CLAIMS ......................................................................43
10.1.    Objections to Claims..............................................................................43
10.2.    Estimation of Claims..............................................................................43
10.3.    No Distributions Pending Allowance .......................................................44
10.4.    Disputed Claims Reserves. .....................................................................44
10.5.    Distributions After Allowance .................................................................44
10.6.    General Unsecured Claims .....................................................................44
10.7.    Compliance with Tax Requirements/Allocations .......................................45

ARTICLE XI ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE
    CLAIMS  45
11.1.    Professional Fee Claims..........................................................................45
11.2.    Administrative Claims ............................................................................46
11.3.    Administrative Ordinary Course Liabilities................................................46
11.4.    Administrative Tax Claims ......................................................................46

ARTICLE XII CREDITOR TRUST ......................................................................47
12.1.    Generally..............................................................................................47

12.2. Establishment of the Creditor Trust ...................................................................47
12.3. Purpose of the Creditor Trust ...........................................................................47
12.4. Appointment and Powers of the Creditor Trust Board and Trustee ................47
12.5. Payment of the Expenses Incurred by the Creditor Trust ................................49
12.6. Exculpation; Indemnification ............................................................................49
12.7. Retention of Funds Prior to Distribution .........................................................49
12.8. Distributions to Creditor Trust Beneficiaries ..................................................50
12.9. Registry of Beneficial Interests ........................................................................51
12.10. Termination of the Creditor Trust ....................................................................51
12.11. Resignation of the Creditor Trustee .................................................................51

ARTICLE XIII CONFIRMATION AND CONSUMMATION OF THE PLAN ........................52
13.1. Conditions Precedent to Confirmation .............................................................52
13.2. Conditions Precedent to Effective Date ...........................................................52
13.3. Substantial Consummation ...............................................................................53
13.4. Waiver of Conditions ........................................................................................53
13.5. Revocation, Withdrawal, Non-Consummation .................................................53

ARTICLE XIV EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ...............................53
14.1. Compromise and Settlement .............................................................................53
14.2. Satisfaction of Claims .......................................................................................54
14.3. Exculpation and Limitation of Liability ...........................................................54
14.4. Good Faith .........................................................................................................55
14.5. Discharge of Liabilities .....................................................................................55
14.6. Discharge of the Debtors ...................................................................................55
14.7. Permanent Injunction ........................................................................................56
14.8. Releases by the Debtors, Reorganized TXCO and their Estates ......................56
14.9. Releases by Holders of Claims and Interests ...................................................57
14.10. Setoffs ...............................................................................................................58
14.11. Recoupment ......................................................................................................58
14.12. Release of Liens ................................................................................................58
14.13. Satisfaction of Subordination Rights ...............................................................59

ARTICLE XV RETENTION OF JURISDICTION .....................................................................59

ARTICLE XVI MISCELLANEOUS PROVISIONS ....................................................................60
16.1. Amendments and Modification .........................................................................60
16.2. Payment of Statutory Fees ................................................................................60
16.3. Binding Effect ...................................................................................................61
16.4. Term of Injunctions or Stay ..............................................................................61
16.5. Dissolution of Committee .................................................................................61
16.6. No Admissions ..................................................................................................61
16.7. Governing Law ..................................................................................................61
16.8. Subordination ....................................................................................................61
16.9. Plan Supplement ...............................................................................................62
16.10. Notices ..............................................................................................................62
16.11. Severability of Plan Provision ..........................................................................62

iii

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION .....................................1

ARTICLE II ADMINISTRATIVE EXPENSES AND TAX PRIORITY CLAIMS....................15
2.1.    Administrative Claims .................................................................................15
2.2.    Priority Tax Claims.....................................................................................15
2.3.    DIP Loan Claims.........................................................................................16

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .........................................16
3.1.    Classification of Claims Against and Interests in the Debtors .........................16

ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND  INTERESTS
        IMPAIRED AND NOT IMPAIRED BY THE PLAN ....................................17
4.1.    Unimpaired Classes of Claims.....................................................................17
4.2.    Impaired Classes of Claims and Interests. ....................................................17

ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS .................18
5.1.    Provisions For Treatment Of Claims And Interests.........................................18

ARTICLE VI ACCEPTANCE OR REJECTION OF PLAN.......................................................30
6.1.    Classes Entitled to Vote ..............................................................................30
6.2.    Acceptance by Impaired Classes ..................................................................31
6.3.    Presumed Acceptances by Unimpaired Classes ..............................................31
6.4.    Classes Deemed to Reject Plan.....................................................................31
6.5.    Summary of Classes Voting on the Plan........................................................31
6.6.    Special Provision Regarding Unimpaired Claims ...........................................31
6.7.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code..................31

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN ........................................32
7.1.    Certain Accounts and Payments ...................................................................32
7.2.    Substantive Consolidation ...........................................................................32
7.3.    Restructuring Transactions ..........................................................................33
7.4.    Corporate Existence ....................................................................................34
7.5.    Directors and Officers of Reorganized TXCO ...............................................34
7.6.    Corporate Action.........................................................................................35
7.7.    Revesting of Assets; Releases of Liens .........................................................35
7.8.    Cancellation of Interests; Issuance of New Common Stock..............................35
7.9.    Authority ....................................................................................................35
7.10.   P&A Bonding..............................................................................................36
7.11.   Employee Benefits.......................................................................................36
7.12.   Exemption from Certain Transfer Taxes .......................................................37
7.13.   Preservation of Rights of Action; Settlement .................................................37

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS,  UNEXPIRED
         LEASES AND OTHER AGREEMENTS .......................................................38
8.1.    Assumption/Rejection..................................................................................38
8.2.    Pass-Through ..............................................................................................38
8.3.    Mineral Leases/Oil and Gas Leases ..............................................................39

8.4. Assumed Executory Contracts and Unexpired Leases ......................................................39

8.5. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases....................................................................................................40

8.6. Assumed Contracts and Leases, and Contracts and Leases Entered Into After Petition Date ......................................................................................................40

8.7. Reservation of Rights...............................................................................................40

8.8. Additional Cure Provisions.......................................................................................40

8.9. Claims Based on Rejection of Executory Contracts and Unexpired Leases ....................41

8.10. Survival of Indemnification and Corporation Contribution..............................................41

8.11. Treatment of Change of Control Provisions ................................................................41

8.12. Compensation, Benefit, and Pension Programs .........................................................42

ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS ..................................................42

9.1. Distributions for Claims and Interests Allowed as of Effective Date................................42

9.2. Interest on Claims ....................................................................................................42

9.3. Disbursing Agent .....................................................................................................42

9.4. Record Date for Distributions ....................................................................................43

9.5. Means of Cash Payment...........................................................................................43

9.6. Delivery of Distributions ...........................................................................................43

9.7. Claims Paid or Payable by Third Parties ....................................................................43

9.8. Calculation of Distribution Amounts of Equity to be issued under the Plan.....................44

9.9. Expunging of Certain Claims.....................................................................................45

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS ..................................................................................................45

10.1. Objections to Claims................................................................................................45

10.2. Estimation of Claims................................................................................................45

10.3. No Distributions Pending Allowance ..........................................................................46

10.4. Disputed Claims Reserve .........................................................................................46

10.5. Distributions After Allowance ....................................................................................46

10.6. General Unsecured Claims........................................................................................46

10.7. Compliance with Tax Requirements/Allocations ..........................................................47

ARTICLE XI ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS   47

11.1. Professional Fee Claims............................................................................................47

11.2. Administrative Claims ...............................................................................................48

11.3. Administrative Ordinary Course Liabilities...................................................................48

11.4. Administrative Tax Claims .........................................................................................48

ARTICLE XII CREDITOR TRUSTS ...................................................................................49

12.1. Generally................................................................................................................49

12.2. Establishment of each Creditor Trust .........................................................................49

12.3. Purpose of the Creditor Trust....................................................................................49

12.4. Appointment and Powers of the Creditor Trustee ........................................................49

12.5. Payment of the Expenses Incurred by the Creditor Trust ..............................................51

12.6. Exculpation; Indemnification......................................................................................51

2782939.1

12.7. Retention of Funds Prior to Distribution ..................................................51
12.8. Distributions to Creditor Trust Beneficiaries..............................................52
12.9. Registry of Beneficial Interests...................................................................52
12.10. Termination of the Creditor Trusts ..............................................................52
12.11. Resignation of the Creditor Trustee .............................................................53
12.12. Status as Liquidation Trust ..........................................................................53

ARTICLE XIII CONFIRMATION AND CONSUMMATION OF THE PLAN .......................54
13.1. Conditions Precedent to Confirmation..........................................................54
13.2. Conditions Precedent to Effective Date ........................................................54
13.3. Substantial Consummation ............................................................................55
13.4. Waiver of Conditions.....................................................................................55
13.5. Revocation, Withdrawal, Non-Consummation ..............................................55

ARTICLE XIV EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ............................55
14.1. Compromise and Settlement ..........................................................................55
14.2. Satisfaction of Claims ...................................................................................57
14.3. Exculpation and Limitation of Liability ........................................................57
14.4. Good Faith .....................................................................................................57
14.5. Discharge of Liabilities..................................................................................58
14.6. Discharge of the Debtors ...............................................................................58
14.7. Permanent Injunction ....................................................................................58
14.8. Releases by the Debtors, Reorganized TXCO and their Estates ...................59
14.9. Releases by Holders of Claims and Interests ................................................60
14.10. Setoffs ...........................................................................................................60
14.11. Recoupment ...................................................................................................61
14.12. Release of Liens.............................................................................................61
14.13. Satisfaction of Subordination Rights ............................................................61

ARTICLE XV RETENTION OF JURISDICTION .................................................................62

ARTICLE XVI MISCELLANEOUS PROVISIONS................................................................63
16.1. Amendments and Modification.......................................................................63
16.2. Payment of Statutory Fees ............................................................................63
16.3. Binding Effect................................................................................................63
16.4. Term of Injunctions or Stay ..........................................................................63
16.5. Dissolution of Committee ..............................................................................64
16.6. No Admissions................................................................................................64
16.7. Governing Law ...............................................................................................64
16.8. Plan Supplement ............................................................................................64
16.9. Notices ...........................................................................................................64
16.10. Severability of Plan Provision ......................................................................66

2782939.1

## PLAN SUPPLEMENT DOCUMENTS

1.  Amended and Restated Certificate of Incorporation of TXCO Resources Inc.
2.  By-laws of TXCO Resources Inc.
3.  Creditor Trust Agreement
4.  Shareholder Agreement
5.  Western National Bank Agreement
6.  Exit Facility Credit Agreement
7.  Senior Secured Convertible Note Agreement
8.  First Lien Note Agreement
9.  Second Lien Note Agreement
10. New Intercreditor Agreement
11. New Shareholder Agreement
12. Form of Consenting Senior Mineral Lien Claimants Note
13. Form of Non-Consenting Senior Mineral Lien Claimants Note
14. Form of Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note
15. Form of Consenting Junior Mineral Lien Claimants Note
16. Form of Non-Consenting Junior Mineral Lien Claimants Note
17. Form of Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note

## PLAN SCHEDULES

Plan Schedule I:     Board of Directors of Reorganized TXCO
Plan Schedule II:    Officers of Reorganized TXCO
Plan Schedule III:   Retained Causes of Action
Plan Schedule IV:    Rejected Executory Contracts and Unexpired Leases
Plan Schedule V:     Assumed Executory Contracts and Unexpired Leases
Plan Schedule VI:    Oil and Gas leases

## PLAN EXHIBITS

Exhibit A:   Senior Secured Convertible Notes
Exhibit B:   Convertible Preferred A Shares
Exhibit C:   Consenting Senior Mineral Lien Claimants Note
Exhibit D:   Non-Consenting Senior Mineral Lien Claimants Note
Exhibit E:   Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note
Exhibit F:   First Lien Notes
Exhibit G:   First Lien Alternative Notes
Exhibit H:   New Common Stock
Exhibit I:   Convertible Preferred B Shares
Exhibit J:   Second Lien Notes
Exhibit K:   Consenting Junior Mineral Lien Claimants Note
Exhibit L:   Non-Consenting Junior Mineral Lien Claimants Note
Exhibit M:   Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note

2782939.1

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.     Definitions.**

For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or Bankruptcy Rules, will have the meaning given to the term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.1.     "Additional Convertible Preferred A Shares"** means Convertible Preferred A Shares that may be issued from time to time on or after the Effective Date by Reorganized TXCO in its sole discretion in each instance to any of the DIP Lenders or any other purchaser approved by each of the DIP Lenders, and in the amounts and at a cash purchase price to be agreed to at the time by Reorganized TXCO and the purchasers of such shares. The proceeds of the Additional Convertible Preferred A Shares will be used for working capital purposes and for payment of cure amounts under the Plan, provided the amount of proceeds utilized for working capital in any event will not exceed $25,000,000.

**1.2.     "Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the business of the Debtors (including wages, salaries, and commissions for services rendered after the Petition Date), (b) Professional Fee Claims, (c) all fees and charges assessed against the Estates under Chapter 123 of title 28 of the United States Code, and (d) DIP Lender Claims to the extent not already paid or satisfied under the terms of the operative Plan.

**1.3.     "Administrative Claims Bar Date"** means, except as modified by Section 11.1 of the Plan, the deadline for filing proofs of Administrative Claims which shall be forty-five (45) days after the date on which the Debtors mail written notice of the occurrence of the Effective Date.

**1.4.     "Administrative Tax Claim"** means an Unsecured Claim by a governmental unit for taxes (and for interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

**1.5.     "Affiliate Debtors"** means all the Debtors, other than TXCO Resources Inc.

**1.6.     "Affiliates"** has the meaning given such term by section 101(2) of the Bankruptcy Code.

**1.7.** **"Allowed Claim"** means a Claim or any portion thereof:

(a) if no proof of Claim has been timely filed, such amount of the Claim or group of Claims which has been scheduled by TXCO as liquidated in amount and not disputed or contingent and as to which no party in interest has filed an objection within the time required under this Plan, or otherwise fixed by the Bankruptcy Court, and which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(b) if a proof of Claim has been filed by the Claims Bar Date, or is deemed timely filed by the Bankruptcy Court pursuant to Final Order, such amount of the Claim as to which any party in interest has not filed an objection within the time required under this Plan or otherwise fixed by the Bankruptcy Court and which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(c) that has been allowed by a Final Order of the Bankruptcy Court; or

(d) that is expressly allowed in a liquidated amount in this Plan;

provided, however, that with respect to an Administrative Claim, "Allowed Claim" or "Allowed Administrative Claim" means an Administrative Claim as to which as timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if a written request is required) in each case as to which the Debtors, Reorganized TXCO, or any other party in interest (x) have not interposed a timely objection by the applicable claims objection deadline or (y) have interposed a timely objection and such objection has been settled, waived through payment, withdrawn, or has been denied by a Final Order of the Bankruptcy Court). For the purposes of determining the status (i.e., Allowed or Disputed) of a particular claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of claims, any claims that have not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or the Plan shall be deemed a "Disputed Claim" unless such claim is specifically identified by the Debtors as being an Allowed Claim.

**1.8.** **"Allowed Class … Claim"** means an Allowed Claim in the particular Class described.

**1.9.** **"Allowed Class 4 Claims"** has the meaning set forth in Section 5.1(d) of the Plan.

**1.10.** **"Amended Governance Documents"** the revised Certificate of Incorporation, By-Laws and related documents for Reorganized TXCO to be filed with the Plan Supplement by the Plan Supplement Filing Date.

**1.11.** **"Assets"** means all assets of the Estates as of the Effective Date including "property of the estate" as described in section 541 of the Bankruptcy Code.

**1.12.** **"Avoidance Actions"** means Causes of Action arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 or 553 of the Bankruptcy Code, or under similar or related

state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

**1.13.** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., including all amendments thereto, to the extent such amendments are applicable to the Case.

**1.14.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

**1.15.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Cases.

**1.16.** **"Bar Date"** means the deadline for filing proofs of claim established by the Notice of Bankruptcy as September 22, 2009, and any supplemental bar dates established by the Bankruptcy Court pursuant to a Final Order.

**1.17.** **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.18.** **"Cases"** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by TXCO, Eagle Pass, Drilling, Charro, Tar Sands, Energy, Output, OPEX, PPL, Maverick Gas, and Maverick-Dimmit on May 17, 2009, pending in the Bankruptcy Court and jointly administered under Case No. 09-51807.

**1.19.** **"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**1.20.** **"Causes of Action"** means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether know, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured and unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including Avoidance Actions unless otherwise waived by the Debtors or Reorganized TXCO.

**1.21.** **"Chapter 11 Case"** means (a) when used with reference to a particular Debtor, the chapter 11 case pending for the Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the chapter 11 cases pending for the Debtors in the Bankruptcy Court.

**1.22.** **"Claim"** means a claim against one of the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.23.** **"Claims Objection Deadline"** means as applicable (except for Administrative Claims)(a) the day that is the later of (i) the first Business Day that is one hundred eighty (180) days after the Effective Date, and (ii) as to proofs of claim filed after the Bar Date, the first Business Day that is one hundred eighty (180) days after a Final Order is entered deeming the

late filed claim to be treated as timely filed, or (b) such later date as may be established by the Bankruptcy Court as may be requested by the Debtors or Reorganized TXCO.

1.24. **"Class"** means a category of holders of Claims or Interests as described in Article III of this Plan.

1.25. **"Collateral"** means any property or interest in property of the Estates that is subject to a valid and enforceable lien to secure a Claim.

1.26. **"Committee"** means the Official Committee of Unsecured Creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

1.27. **"Confirmation Date"** means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.28. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.29. **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.30. **"Consenting Junior Mineral Lien Claimant"** means a Junior Mineral Lien Claimant with a Claim set forth in the Preliminary Non-Binding Junior Mineral Lien Determination, and that votes in favor of the Plan and does not object to confirmation of the Plan.

1.31. **"Consenting Junior Mineral Lien Claimants Note"** means a note with the principal terms and conditions provided under Exhibit K.

1.32. **"Consenting Senior Mineral Lien Claimant"** means a Senior Mineral Lien Claimant with a Claim set forth in the Preliminary Non-Binding Senior Mineral Lien Determination, and that votes in favor of the Plan and does not object to confirmation of the Plan.

1.33. **"Consenting Senior Mineral Lien Claimants Note"** means a note with the principal terms and conditions provided under Exhibit C.

1.34. **"Convenience Class Claim"** means an Unsecured Claim in an amount equal to or less than $6,000, or where a General Unsecured Creditor elects to reduce its Unsecured Claim to an amount equal to or less than $6,000.

1.35. **"Convertible Preferred A Shares"** means shares with the principal terms and conditions provided under Exhibit B.

1.36. **"Convertible Preferred B Shares"** means shares with the principal terms and conditions provided under Exhibit I.

**1.37.** **"Creditor Trust"** means any trust established for the benefit of creditors pursuant to this Plan to be administered by a Creditor Trustee as set forth in Article XII, and "Creditor Trusts" means all such Trusts.

**1.38.** **"Creditor Trust Agreement"** means any creditor trust agreement that will govern a Creditor Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Creditor Trust Assets shall be initially conveyed to the Creditor Trust and shall ultimately govern Distributions to holders of the beneficial interests in the Creditor Trust, as set forth in, and in a manner consistent with the terms of, this Plan.

**1.39.** **"Creditor Trust Assets"** means those assets contributed to a Creditor Trust intended to satisfy the Claims of the beneficiaries of the Creditor Trust.

**1.40.** **"Creditor Trustee"** means any trustee from time to time serving as trustee of a Creditor Trust.

**1.41.** **"Cure"** means the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

**1.42.** **"Debtors"** means, collectively, TXCO Resources Inc. and the Affiliate Debtors.

**1.43.** **"Debtors' Adversary Proceeding"** means (i) that certain Complaint and Request for Declaratory Judgment filed by TXCO Resources Inc., *et al*, as plaintiffs, against Bank of Montreal, *et al*, as defendants, and pending in the Bankruptcy Court as Adversary Proceeding No. 09-5077, and (ii) any complaints filed by intervening parties in connection therewith.

**1.44.** **"DIP Lenders"** means those entities identified as "Lenders" in the DIP Loan and their successors and assigns.

**1.45.** **"DIP Loan"** means the Debtor-In-Possession Credit Agreement, dated as of June 12, 2009 by and among TXCO, and the Affiliate Debtors as Borrowers, the DIP Lenders as identified therein, as Lenders, and the DIP Loan Agent.

**1.46.** **"DIP Loan Agent"** means BD Funding I, LLC, in its capacity as administrative agent under the DIP Loan.

**1.47.** **"Disallowed Claim"** means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order or pursuant to a settlement, or (b)(i) is Scheduled at zero or as contingent, disputed or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**1.48.** **"Disbursing Agent"** means Reorganized TXCO, as disbursing agent under the Plan, or an independent third party designated by Reorganized TXCO to serve in such capacity pursuant to Section 9.3 of the Plan.

**1.49.** **"Disclosure Statement"** means the written disclosure statement (including all schedules thereto or referenced therein) that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented from time to time.

**1.50.** **"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that (a) have not been Scheduled by the Debtors or have been Scheduled at zero, or as contingent, unliquidated or disputed or (b) are the subject of a pending objection filed in the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order of the bankruptcy Court.

**1.51.** **"Disputed Claims Reserves"** means, as applicable, one or more reserves of Cash and/or New Common Stock for distribution to holders of Allowed Claims to be reserved pending allowance of Disputed Claims in accordance with Article X of the Plan.

**1.52.** **"Distribution"** means any transfer under this Plan of Cash or other property or instruments.

**1.53.** **"Distribution Date"** means the date, as determined by the Debtors or Reorganized TXCO, upon which Distributions are made to holders of Allowed Claims entitled to receive Distributions under the Plan.

**1.54.** **"Distribution Record Date"** means the record date for purposes of making Distributions under the Plan on account of Allowed Claims or Interests, which shall be the same as the Voting Record Date.

**1.55.** **"Drilling"** means TXCO Drilling Corp., a Texas corporation.

**1.56.** **"Effective Date"** means the Business Day this Plan becomes effective as provided in Section 13.2 of this Plan.

**1.57.** **"Estates"** means the bankruptcy estates of the Debtors as created under section 541 of the Bankruptcy Code.

**1.58.** **"Exchange Act"** means the Securities and Exchange Act of 1934, as amended.

**1.59.** **"Exhibit"** means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement.

**1.60.** **"Existing Intercreditor Agreement"** means the Amended and Restated Intercreditor Agreement dated January 14, 2008 by and among certain of the Debtors, Bank of Montreal as administrative agent for the First Lien Obligations (as defined therein) and Bank of Montreal as administrative agent for the Second Lien Obligations (as defined therein).

**1.61.** **"Exit Facility"** means a working capital lending facility to be entered into by Reorganized TXCO on the Effective Date in the approximate amount of $16,000,000 and secured by a lien on substantially all assets of Reorganized TXCO, with a first priority lien over all secured obligations issued under the Plan, except for the liens of Western National Bank described in Section 5.1(a), the Consenting Senior Mineral Lien Claimants Note, the Non-Consenting Senior Mineral Lien Claimants Notes and the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Notes. The principal documents evidencing the facility will be filed with the Plan Supplement by the Plan Supplement Filing Date.

**1.62.** **"Final Order"** means an order, decree or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended, and as to which order, decree or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing has been taken or is pending.

**1.63.** **"First Lien Note"** means a note with the principal terms and conditions provided under Exhibit F.

**1.64.** **"First Lien Alternative Note"** means a note with the principal terms and conditions provided under Exhibit G.

**1.65.** **"Fraud"** means a demonstration of actual fraud that requires a specific demonstration of a misrepresentation of a material fact with the intention to deceive, manipulate, defraud or induce action or inaction, where there is actual reliance on the misrepresentation by a person who, as a result of such reliance, suffers actual injury.

**1.66.** **"General Unsecured Claim"** means a Claim, however arising, including from the rejection of an executory contract or an unexpired lease, which is not an Administrative Claim, Administrative Convenience Claim, DIP Loan Secured Claim, Priority Tax Claim, Administrative Tax Claim, Priority Non-Tax Claim, Senior Mineral Lien Claim, Secured Claim of Revolver Lenders, Secured Claim of Term Loan Lenders, Junior Mineral Lien Claim, or Secured Tax Claim.

**1.67.** **"Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.68.** **"Intercompany Claim"** means any Claim arising prior to the Petition Date against a Debtor by another Debtor.

**1.69.** **"Interest"** means the right of any current or former holder or owner of any shares of TXCO Common Stock or TXCO Preferred Stock, or any other equity securities as defined in the Bankruptcy Code of any of the Debtors authorized and issued prior to the Petition Date.

**1.70.** **"IRS"** means the Internal Revenue Service of the United States of America.

**1.71.** **"JIB"** means Joint Interest Billing, which is the method for splitting the cost of drilling and operating a well between the working interest owners.

**1.72.** **"JIB Obligor"** means a Person that owes an Unpaid JIB.

**1.73.** **"JIB Payment"** means the *pro rata* payment to be made by the Debtors to a Mineral Subcontractor within 45 days of the Debtors receipt of an Unpaid JIB associated with a particular well.

**1.74.** **"Junior Mineral Lien"** means a lien claimed pursuant to Chapter 56 of the Texas Property Code by a mineral contractor or Mineral Subcontractor for unpaid labor, material or services upon property that the Revolver Lenders and Term Loan Lenders held perfected liens as of the Petition Date, other than any such property abandoned by the Debtors before the Effective Date.

**1.75.** **"Junior Mineral Lien Claim"** means a Secured Claim asserted by a Junior Mineral Lien Claimant.

**1.76.** **"Junior Mineral Lien Claimant"** means the holder of a Junior Mineral Lien upon property that the Revolver Lenders and Term Loan Lenders held perfected liens as of the Petition Date.

**1.77.** **"Junior Valuation Motion"** shall have the meaning ascribed to it under section 5.1(e)(2)(b)(ii) of this Plan.

**1.78.** **"Mineral Subcontractor"** means as defined in Texas Property Code § 56.001(4), a Person who (a) furnishes or hauls material, machinery, or supplies used in mineral activities under contract with a mineral contractor or subcontractor; (b) performs labor used in mineral activities under contract with a mineral contractor; or (c) performs labor used in mineral activities as an artisan or day laborer employed by a subcontractor.

**1.79.** **"Net Allowed Senior Mineral Lien Claim"** shall have the meaning ascribed to it under section 5.1(b)(2)(a)(ii) of this Plan.

**1.80.** **"New Common Stock"** means shares of common stock of Reorganized TXCO described on Exhibit H.

**1.81.** **"New Intercreditor Agreement"** means an Intercreditor Agreement among the parties to the Exit Facility, the Senior Secured Convertible Notes, the First Lien Notes or First Lien Alternative Notes, as applicable, the Second Lien Notes, the Creditor Trustee for each Non-Consenting Junior Mineral Lien Claimants Note and the Creditor Trustee for each Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note, which Agreement shall describe the lien priorities on the terms set forth in the Plan and certain procedures in respect thereof, including the following: a 180-day standstill limiting the exercise of collateral-related remedies by lienholders (other than the holders of the then highest priority lienholder); the turnover to the highest priority lienholder of payments in respect of collateral; limitation on material amendments under the loan/note documents; provisions in the event of a subsequent insolvency or liquidation proceeding (such as terms related to certain finance and sale issues, relief from the automatic stay, adequate protection, reorganization securities, and allowance of post-petition interest); and certain other terms in concept similar to the terms of the Existing

8

Intercreditor Agreement. A copy of the New Intercreditor Agreement will be filed with the Plan Supplement on or before the Plan Supplement Filing Date.

**1.82.** **"New Shareholder Agreement"** means a Shareholder Agreement among Carlson Capital, L.P., CIT Bank, and Regiment Capital Special Situations Fund III LP, a copy of which will be filed with the Plan Supplement on or before the Plan Supplement Filing Date.

**1.83.** **"Non-Consenting Junior Mineral Lien Claimant"** means a Junior Mineral Lien Claimant who objects to confirmation of the Plan, votes against the Plan, or does not vote in connection with the Plan.

**1.84.** **"Non-Consenting Junior Mineral Lien Claimants Note"** means a note with the principal terms and conditions provided under Exhibit L.

**1.85.** **"Non-Consenting Section 1111(b) Junior Mineral Lien Claimant"** means a Junior Mineral Lien Claimant that elects to be treated in the Plan under section 1111(b) of the Bankruptcy Code.

**1.86.** **"Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note"** means a note with the principal terms and conditions provided under Exhibit M.

**1.87.** **"Non-Consenting Section 1111(b) Senior Mineral Lien Claimant"** means a Senior Mineral Lien Claimant that elects to be treated in the Plan under section 1111(b) of the Bankruptcy Code.

**1.88.** **"Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note"** means a note with the principal terms and conditions provided under Exhibit E.

**1.89.** **"Non-Consenting Senior Mineral Lien Claimant"** means a Senior Mineral Lien Claimant who objects to confirmation of the Plan, votes against the Plan, or does not vote in connection with the Plan.

**1.90.** **"Non-Consenting Senior Mineral Lien Claimants Note"** means a note with the principal terms and conditions provided under Exhibit D.

**1.91.** **"Non-Mortgaged Property"** means property of the Debtors that the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date.

**1.92.** **"Other Secured Claim"** means a Secured Claim not otherwise classified under the Plan.

**1.93.** **"Person"** means an individual, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, limited liability company, limited liability partnership, or other entity.

**1.94.** **"Petition Date"** means, as applicable, (i) May 17, 2009 with respect to those Debtors filing their voluntary petitions for relief in the Bankruptcy Court on such date, or (ii)

May 18, 2009 with respect to those Debtors filing their voluntary petitions for relief in the Bankruptcy Court on such date.

1.95. **"Plan"** means this chapter 11 plan of reorganization for the Debtors as herein proposed, including all supplements, appendices and schedules thereto, either in its present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code.

1.96. **"Plan Schedule"** means a schedule annexed either to this Plan or as an appendix to the Disclosure Statement, as the same may be altered, amended or modified from time to time.

1.97. **"Plan Supplement"** means a supplement to be annexed to the Plan on or before the Plan Supplement Filing Date, as the same may be altered, amended or modified from time to time.

1.98. **"Plan Supplement Filing Date"** means the date by which the Plan Supplement, and any Exhibits or Plan Schedules not filed with the Plan, shall be filed with the Bankruptcy Court, which date shall be February 8, 2010.

1.99. **"Post-Consummation Bidding Process"** means that while Reorganized TXCO shall be under no obligation after the Effective Date to initiate bidding as to their procurement of any good or service, nonetheless, if a Creditor receives Preferred Bidder Status pursuant to this Plan, for a period of three (3) years following the Effective Date, then if any Reorganized Debtor does initiate bidding as to any good or service, such Reorganized Debtor will implement the competitive bidding procedures, as outlined below, to be applied to the purchase of goods and services.

The only goods and services included in the competitive bidding procedures are: (1) Goods having a purchase price of $50,000.00 or more as evidenced by a contract, individual purchase order or a blanket purchase order, and (2) Services having an annual dollar value of $100,000.00 or more as evidenced by a contract, individual purchase order or a blanket purchase order. Specifically, excluded from such goods and services are purchases of agricultural products, electricity, fuels, transportation services, legal services, accounting services, appraisal services and brokerage services.

The Reorganized Debtor will obtain two or more written bids, quotes or proposals ("bids") as may be appropriate. If such good or service is provided by a Consenting Senior Mineral Lien Claimant or a Consenting Junior Mineral Lien Claimant and the Debtor was conducting business with such Consenting Senior Mineral Lien Claimant or Consenting Junior Mineral Lien Claimant as of the Petition Date (a "Claimant Vendor"), then such Claimant Vendor will be asked to submit a bid.

If such bid meets or exceeds other vendors' bids, the bid will be awarded to the Claimant Vendor. A Claimant Vendor will not be entitled to any subsequent bid notice once such Claimant Vendor has received a bid notice and either declined to provide a bid or did not provide a bid which met or exceeded other bids. The competitive bidding procedures are inapplicable in

circumstances where time constraints would not allow for such written bidding or notice provisions to be implemented.

**1.100. "Preference Credit"** has the meaning set forth in Section 5.1(b)(2a)(i) of the Plan.

**1.101. "Preferred Bidder Status"** means the right of a Consenting Senior Mineral Lien Claimant and a Consenting Junior Mineral Lien Claimant to participate in the Post-Consummation Bidding Process.

**1.102. "Preliminary Non-Binding Junior Mineral Lien Determination"** means a preliminary list of the Junior Mineral Lien Claimants (by lease/class), which is attached as Exhibit S to the Disclosure Statement, wherein the Debtors tentatively identified whether a Junior Mineral Lien Claimant has complied with all statutory requirements necessary to perfect a Junior Mineral Lien. The Preliminary Non-Binding Junior Mineral Lien Determination will NOT include any attorney's fees or interest.

**1.103. "Preliminary Non-Binding Senior Mineral Lien Determination"** means a preliminary list of the Senior Mineral Lien Claimants (by non-mortgaged lease/class), which is attached as an Exhibit to the Disclosure Statement, wherein the Debtors tentatively identified whether a Senior Mineral Lien Claimant has complied with all statutory requirements necessary to perfect a Senior Mineral Lien. The Preliminary Non-Binding Senior Mineral Lien Determination will NOT include any attorney's fees or interest.

**1.104. "Priority Non-Tax Claim"** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.105. "Priority Tax Claim"** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.106. "Professional"** means (a) any professional employed in the Cases pursuant to section 327, 328, 330 or 1103 of the Bankruptcy Code or otherwise and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Cases pursuant to section 503(b)(4) of the Bankruptcy Code and supported by both the (i) Debtors or Reorganized TXCO and (ii) the Committee.

**1.107. "Professional Fee Claim"** means a Claim under section 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Cases on or prior to the Effective Date (including expenses of the members of the Committee incurred as members of the Committee in discharge of their duties as such).

**1.108. "Professional Fee Order"** means the order entered by the Bankruptcy Court on May 20, 2009, authorizing the interim payment of Professional Fee Claims, as may be amended from time to time prior to the entry on the docket of the Confirmation Order.

**1.109.** **"Released Party"** means (i) all directors, officers and employees of each of the Debtors from and after the Petition Date, (ii) the Committee and each member of the Committee in its representative capacity, (iii) Restructuring Professionals, and (iv) the DIP Loan Agent and DIP lenders, and, with respect to each of the foregoing, such Person's respective officers, directors, partners, members, employees, attorneys, financial advisors, accountants, investment bankers, agents, professionals and representatives retained by such Person.

**1.110.** **"Reorganized TXCO"** means TXCO Resources Inc. as reorganized pursuant to this Plan.

**1.111.** **"Restructuring Professionals"** means, collectively, Administar Services Group LLC, Cox Smith Matthews Incorporated, DeGolyer and MacNaughton, FTI Consulting, Inc., Fulbright & Jaworski, L.L.P., Gardere Wynne Sewell LLP, Global Hunter Securities LLC, Grant Thornton LLP, KPMG LLP, Lonquist & Co. LLC and their respective Affiliates, members, partners, shareholders, officers, directors and employees.

**1.112.** **"Retained Actions"** means all Causes of Action which any Debtor may hold against any Person, other than any Causes of Action against a Released Party.

**1.113.** **"Revolver Lender"** means those entities identified as "Lenders" in the Revolver Loan and their successors and assigns.

**1.114.** **"Revolver Loan"** means that certain Amended and Restated Credit Agreement dated April 2, 2007 by and between TXCO, Output, Energy, and Tar Sands, as Borrowers and the Revolver Lenders as identified therein, as Lenders, and the Revolver Loan Agent, including any subsequent amendments thereto.

**1.115.** **"Revolver Loan Agent"** means Bank of Montreal, in its capacity as administrative agent under the Revolver Loan.

**1.116.** **"Scheduled"** means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

**1.117.** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Cases by the Debtors, as such schedules have been or may be further modified, amended or supplemented from time to time in accordance with Rule 1009 of the Bankruptcy Rules or Orders of the Bankruptcy Court.

**1.118.** **"Second Lien Note"** means a note with the principal terms and conditions provided under Exhibit J.

**1.119.** **"Secured Claim"** means a Claim that is secured by a security interest in or lien upon property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.120.** **"Secured Tax Claim"** means a Secured Claim owing to a taxing authority.

**1.121. "Securities Act"** means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended.

**1.122. "Senior Mineral Lien"** means a statutory mechanic's, materialmen's or mineral lien claimed by a mineral contractor or Mineral Subcontractor for unpaid labor, material or services upon property held by the Debtors as of the Petition Date upon which the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date, other than any such property abandoned by the Debtors before the Effective Date.

**1.123. "Senior Mineral Lien Claim"** means a Secured Claim asserted by a Senior Mineral Lien Claimant.

**1.124. "Senior Mineral Lien Claimant"** means the holder of a Senior Mineral Lien upon property that the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date.

**1.125. "Senior Secured Convertible Note"** means a note with the principal terms and conditions provided under Exhibit A.

**1.126. "Shareholders' Agreement"** means the shareholders' agreement, in substantially the form contained in the Plan Supplement to this Plan.

**1.127. "Solicitation Order"** means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**1.128. "Substantial Contribution Claim"** means a Claim under section 503(b)(3-4) of the Bankruptcy Code and in accordance with applicable bankruptcy law.

**1.129. "Term Loan"** means that certain Term Loan Agreement dated April 2, 2007 by and between TXCO, Output, Energy, and Tar Sands, as Borrowers and the Term Loan Lenders as identified therein, as Lenders, and the Term Loan Agent, including any subsequent amendments thereto.

**1.130. "Term Loan Agent"** means Bank of Montreal, in its capacity as administrative agent under the Term Loan or such other Person as appointed by the Term Loan Lenders to act as successor administrative agent.

**1.131. "Term Loan Lender"** means those entities identified as "Lenders" in the Term Loan and their successors and assigns.

**1.132. "TXCO Common Stock"** means all common equity and similar interests in TXCO Resources Inc.

**1.133. "TXCO Preferred Stock"** means all preferred equity and similar interests in TXCO Resources Inc.

2782939.1

**1.134. "Unclaimed Property"** means any funds or property distributed to Creditors (together with any interest earned thereon) which are unclaimed as of one hundred eighty (180) days after a Distribution. Unclaimed Property will include, without limitation, Cash and any other property which is to be distributed pursuant to this Plan which has been returned as undeliverable without a proper forwarding address, or which was not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

**1.135. "Unimpaired Claim"** means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.136. "Unpaid JIB"** means a JIB payment owed to the Debtors that was outstanding as of the Petition Date and remains unpaid as of the Confirmation Hearing or has been collected by the Debtors post petition and placed in a segregated account.

**1.137. "Unsecured Claim"** means any Claim to the extent such Claim is not a Secured Claim.

**1.138. "Unsecured Creditors Payment Option"** means a payment to be made to holders of Class 8 General Unsecured Claims within sixty (60) days of the Effective Date equal to 5 % of each dollar of their Allowed General Unsecured Claim.

**1.139. "U.S. Trustee"** means the Office of the United States Trustee, or a representative thereof.

**1.140. "Valuation Motion"** has the meaning ascribed to it in section 5.1(b)(2)(b)(ii) of the Plan.

**1.141. "Voting Deadline"** means February 19, 2010, as the last day and time for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order.

**1.142. "Voting Record Deadline"** means the date and time established by the Bankruptcy Court in the Solicitation Order for determining those holders of Claims against the Debtors entitled to vote on the Plan.

## Rules of Interpretation, Computation of Time and Governing Law

**B.     Rules of Interpretation.**

For purposes of this Plan:  a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document will be substantially in such form or substantially on such terms and conditions; c) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; d) unless otherwise specified, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; e) the words "herein" and "hereto" refer to this Plan in its

entirety rather than to a particular portion of this Plan; f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation of this Plan; g) "after notice and a hearing," or a similar phrase has the meaning ascribed in Bankruptcy Code § 102; h) "includes" and "including" are not limiting; i) "may not" is prohibitive, and not permissive; j) "or" is not exclusive; and k) U.S. Trustee includes a designee of the U.S. Trustee.

## C.    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## ADMINISTRATIVE EXPENSES AND TAX PRIORITY CLAIMS

### 2.1.    Administrative Claims

Subject to the provisions of Article XI of this Plan, and except as set forth in Section 2.3, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the holder of such Administrative Claim and the Debtors or Reorganized TXCO, as applicable, the holder of each Allowed Administrative Claim shall receive in full satisfaction, release, settlement and discharge of such Allowed Administrative Claim:  (A) cash equal to the unpaid portion of such Allowed Administrative Claim; or (B) payment in accordance with the terms of any written agreement between the Debtors or Reorganized TXCO, as applicable, regarding such Allowed Administrative Claim; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during these Cases will be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

### 2.2.    Priority Tax Claims

On, or as soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or Reorganized TXCO, (i) Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in a manner consistent with Section 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such different treatment as to which such holder and the Debtors or Reorganized TXCO, as applicable, will have agreed upon in writing.  To the extent the Debtors elect under Section 1129(a)(9)(C) of the Bankruptcy Code to make regular installment payments in Cash, the holder of an Allowed Priority Tax Claim will receive quarterly payments on the last day of each quarter, of principal and interest, at an interest rate of six and one-half per cent (6½ %) per annum with the final payment due on or before May 17, 2014.  The first installment will be made at the end of the first full quarter after the Effective Date.

15

### 2.3.   DIP Loan Claims

Notwithstanding any other term or provision of the Plan to the contrary, the DIP Loan Claims shall be deemed Allowed Secured Administrative Claims in the unpaid principal balance outstanding on the Effective Date, together with accrued and unpaid interest, fees and charges through the Effective Date, and on the Effective Date in full settlement, satisfaction, release and discharge thereof (i) the DIP Lenders shall receive their *pro rata* share of (A) Senior Secured Convertible Notes to be issued in the face principal amount of 50% of the unpaid principal balance, and accrued and unpaid interest, of the DIP Loan outstanding on the Effective Date (See Exhibit A), and (B) Convertible Preferred A Shares having a liquidation preference in the aggregate principal amount of 50% of the unpaid principal balance, and accrued and unpaid interest, of the DIP Loan outstanding on the Effective Date (See Exhibit B), and (ii) the DIP Loan Agent shall receive payment in Cash of all its charges, fees, and reasonable attorneys' fees and expenses of its counsel accrued and unpaid through the Effective Date.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors.  All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes as set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article II above.  Statutory mechanic's, materialmen's or mineral liens claimed by any mineral contractor or mineral subcontractor for unpaid labor, material or services upon property abandoned by the Debtors before the Effective Date are not classified under or treated by the Plan with respect to such property, but are otherwise classified and treated by the Plan to the extent such parties claim a lien against property not abandoned by the Debtors or otherwise hold an unsecured claim against the Debtors.

A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class only for the purpose of voting on, and receiving Distributions pursuant to, the Plan to the extent such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

### 3.1.   Classification of Claims Against and Interests in the Debtors

(a)   Class 1.      Class 1 consists of the Secured Claim of Western National Bank.

(b)   Class 2.      Class 2 consists of the Allowed Secured Claims of Senior Mineral Lien Claimants.

(c)     Class 3.     Class 3 consists of the Allowed Secured Claims of Revolver Lenders.

(d)     Class 4.     Class 4 consists of the Allowed Secured Claims of the Term Loan Lenders.

(e)     Class 5.     Class 5 consists of the Allowed Secured Claims of the Junior Mineral Lien Claimants.

(f)     Class 6.     Class 6 consists of the Allowed Secured Tax Claims.

(g)     Class 7.     Class 7 consists of the Allowed Priority Non-Tax Claims.

(h)     Class 8.     Class 8 consists of the Allowed General Unsecured Claims.

(i)     Class 9.     Class 9 consists of the Allowed Convenience Class Claims.

(j)     Class 10.     Class 10 consists of the Allowed Intercompany Claims.

(k)     Class 11.     Class 11 consists of the Allowed Preferred Stock Interests.

(l)     Class 12.     Class 12 consists of the Allowed Common Stock Interests.

(m)     Class 13.     Class 13 consists of the Allowed Other Secured Claims.

## ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND
## INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

**4.1.**     Unimpaired Classes of Claims.

The Classes listed below are Unimpaired by the Plan:

Class 6 (Allowed Secured Tax Claims)
Class 7 (Allowed Priority Non-Tax Claims)
Class 13 (Allowed Other Secured Claims)

**4.2.**     Impaired Classes of Claims and Interests.

The Classes listed below are impaired by the Plan:

Class 1 (Western National Bank)
Class 2 (Allowed Secured Claims of Senior Mineral Lien Claimants)
Class 3 (Allowed Secured Claims of Revolver Lenders)
Class 4 (Allowed Claims of the Term Loan Lenders)
Class 5 (Allowed Secured Claims of the Junior Mineral Lien Claimants)
Class 8 (Allowed General Unsecured Claims)
Class 9 (Allowed Convenience Class Claims)
Class 10 (Allowed Intercompany Claims)

17

Class 11 (Allowed Preferred Stock Interests)
Class 12 (Allowed Common Stock Interests)

## ARTICLE V
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**5.1.** Provisions For Treatment Of Claims And Interests

(a) <u>Class 1</u>. The secured claim of Western National Bank, which claim is secured by the pre-petition first priority lien of Western National Bank on Drilling's Rigs and related equipment, is classified as Class 1 under this Plan. The Allowed Secured Claim of Western National Bank shall be treated, at the election of Reorganized TXCO, either by (1) reinstatement of the existing Western National Bank debt to its pre-default state pursuant to Section 1124(2) of the Bankruptcy Code, (2) issuance of a note by Reorganized TXCO to Western National Bank in an amount equal to the amount of its Allowed Secured Claim with a five year maturity with payments of interest only to be due monthly on the last business day of the month (commencing on the last day of the first month after the Effective date) at the Prime Rate set out in the Wall Street Journal's money rate tables as of the Effective Date, or as otherwise set by the Bankruptcy Court at the Confirmation Hearing, with all outstanding principal and interest due on the fifth anniversary of the Effective Date, or (3) such other treatment of Western National Bank's Allowed Secured Claim as agreed to in writing between Drilling and/or Reorganized TXCO and Western National Bank with the terms of such agreed treatment to be set out in a Plan Supplement to be filed by the Debtors by the Plan Supplement Filing Date. Drilling and Western National Bank agreed during the pendency of Drilling's Bankruptcy Case that Drilling would, as adequate protection, pay the outstanding interest accrued on the Western National Bank obligation at the non-default rate of interest and Western National Bank agreed to waive any right to assert default interest in connection with its Claim.

(b) <u>Class 2 Allowed Secured Claims of Senior Mineral Lien Claimants</u>. In connection with the treatment of the Claims under Class 2, the Debtors prepared the Preliminary Non-Binding Senior Mineral Lien Determination. Treatment of certain Claims under Class 2 is based upon the Preliminary Non-Binding Senior Mineral Lien Determination.

<u>Treatment</u>

18

1. Application of JIBs – All Senior Mineral Lien Claimants that hold allowed claims on leases as either a mineral contractor or mineral subcontractor (as such terms are defined in Tex. Prop. Code § 56.001(4)) for a particular well will receive a JIB Payment. Immediately upon payment of an Unpaid JIB to the Debtors or Reorganized TXCO, the JIB Obligor will be deemed released of any and all claims and/or liens held or asserted by any Mineral Subcontractor including, without limitation, any claims under Texas Property Code § 56.043 or any other section of the Texas Property Code.

2. (a). Consenting Senior Mineral Lien Claimants – Reorganized TXCO, on behalf of the Debtors, will not object to the extent, validity, or enforceability of the Senior Mineral Lien held by a Consenting Senior Mineral Lien Claimant as set forth in the Preliminary Non-Binding Senior Mineral Lien Determination and the Claims set forth therein will be Allowed Consenting Senior Mineral Lien Claims. Consenting Senior Mineral Lien Claimants will be treated as follows:

   (i) The Preference Credit – To the extent that an Allowed Consenting Senior Mineral Lien Claimant received a payment in connection with one of the leases listed under Class 2(a-u) in the Disclosure Statement in the 90 days prior to the Petition Date, the claims of such Allowed Consenting Senior Mineral Lien Claimant will be reduced by an amount equal to fifty percent (50%) (or a lower percentage if agreed to by the Debtors or Reorganized Debtors) of the full amount of such payments, against the applicable Allowed Senior Mineral Lien Claim (or a lower percentage, if agreed to by the Debtors or Reorganized Debtors) (a "Class 2 Preference Credit"). Exhibit "Q" discloses the amounts which the Debtors paid to Senior Mineral Lien Claimants during the 90 days prior to the Petition Date. If the Allowed Consenting Senior Mineral Lien Claimant has liens on multiple leases, the Class 2 Preference Credit will be allocated *pro rata* to all Senior Mineral Liens held by such Allowed Consenting Senior Mineral Lien Claimant. The Class 2 Preference Credit will be in full and complete satisfaction of any and all claims under 11 U.S.C. § 547 against any Allowed Consenting Senior Mineral Lien Claimant. Any Allowed Consenting Senior Mineral Lien Claimant shall have the option to elect not to participate in the Class 2 Preference Credit and Reorganized TXCO shall retain the right to assert any and all avoidance actions against such Allowed Consenting Senior Mineral Lien Claimant.

19

(ii) Within thirty (30) days of the Effective Date, each Allowed Consenting Senior Mineral Lien Claimant shall (i) receive, at the election of such Claimant, either (A) its *pro rata* interest in a Creditor Trust holding the Consenting Senior Mineral Lien Claimants Note (See Exhibit C) in an amount equal to its Preliminary Non-Binding Senior Mineral Lien Determination less any Class 2 Preference Credit and/or JIB Payment, as applicable (the "<u>Net Allowed Senior Mineral Lien Claim</u>"), or (B) payment in Cash of an amount equal to twenty percent (20%) of its Net Allowed Senior Mineral Lien Claim, and (ii) have Preferred Bidder Status. The Consenting Senior Mineral Lien Claimants Note shall be payable to the Trustee of the Consenting Senior Mineral Lien Claimants Creditor Trust.

Consenting Senior Mineral Lien Claimants shall have no further claims against the Debtors or against any party to an agreement or contract with any of the Debtors other than its Distribution and any applicable JIB Payment if, when and as received by the Debtors or Reorganized TXCO.

2. (b). <u>Non-Consenting Senior Mineral Lien Claimants</u> – Reorganized TXCO, on behalf of the Debtors, reserves its right to further examine and/or to object to the extent, validity and/or enforceability of any lien and/or Claim asserted by such Non-Consenting Senior Mineral Lien Claimant. Non-Consenting Senior Mineral Lien Claimants will be treated as follows:

(i) <u>Preferences</u> – Reorganized TXCO, on behalf of the Debtors, reserves the right to file Avoidance Actions against any and all Non-Consenting Senior Mineral Lien Claimants.

(ii) <u>Claims Resolution Process</u> – Within 120 days after the Effective Date, Reorganized TXCO, on behalf of the Debtors, will begin to obtain a determination as to the value of any property securing the claims of Non-Consenting Senior Mineral Lien Claimants by filing a motion pursuant to Rule 9014 of the Bankruptcy Rules seeking a final ruling whether the liens of Non-Consenting Senior Mineral Lien Claimants attach to any interest acquired by a Debtor after the Petition Date (whether such interest is an increase in acreage, an increase in a working interest or attributable to a lease signed after the Petition Date) (the "Lien Motion"). Reorganized TXCO, on behalf of the Debtors, will also seek a determination as to whether the Debtors are entitled to recover from any property allegedly securing the claims

of a Non-Consenting Senior Mineral Lien Claimant, the reasonable and necessary costs and expenses of preserving such property pursuant to 11 U.S.C. § 506(c). If no Lien Motion is filed, or if filed, once those issues are resolved by Final Order, the Debtors will file motions seeking determinations of the value of the property ultimately determined to secure each Non-Consenting Senior Mineral Lien Claim (the "Valuation Motion").

Within 30 days after the filing of each Valuation Motion, Reorganized TXCO, on behalf of the Debtors, shall schedule mediation and identify a mediator. Any Non-Consenting Senior Mineral Lien Claimant subject to a Valuation Motion may object in writing to the mediator selected by Reorganized TXCO, on behalf of the Debtors, not later than 30 days after being notified of the identity of the proposed mediator. In the absence of any agreement, the Bankruptcy Court will select a mediator if an objection has been filed within such 30 day period. Mediations will occur at a mutually agreeable location between Reorganized TXCO, on behalf of the Debtors, and the Non-Consenting Senior Mineral Lien Claimant asserting a lien in the property. If no mutually agreeable location can be determined, the mediation will occur in San Antonio, Texas. If the mediation is successful, the Non-Consenting Senior Mineral Lien Claimant shall be entitled to the treatment of its Allowed Non-Consenting Senior Mineral Lien Claim as set forth below. In the event mediation is unsuccessful, Reorganized TXCO, on behalf of the Debtors, will set a hearing before the Bankruptcy Court to consider the Valuation Motion.

Within 60 calendar days after entry of a Final Order determining the value of the property to which the liens attach and the total amount of all Allowed Non-Consenting Senior Mineral Lien Claims against such property, each such Claimant shall receive its *pro rata* interest in a Creditor Trust holding the Non-Consenting Senior Mineral Lien Claimants Note with respect to such property (See Exhibit D). The Non-Consenting Senior Mineral Lien Claimants Note shall be payable to the Trustee of such Non-Consenting Senior Mineral Lien Claimants Creditor Trust who shall make Distributions to the Non-Consenting Senior Mineral Lien Claimants in accordance with their percentage interests in such Creditor Trust. Any deficiency claim shall be treated as a Class 8 General Unsecured Claim.

2782939.1

2.    (c).    <u>Non-Consenting Section 1111(b) Senior Mineral Lien Claimants</u> – Reorganized TXCO, on behalf of the Debtors, reserves its right to further examine and/or to object to the extent, validity and/or enforceability of any lien and/or claim asserted by such Non-Consenting Section 1111(b) Senior Mineral Lien Claimant. Each member of the class of Non-Consenting Section 1111(b) Senior Mineral Lien Claimants will be treated as follows:

(i)    <u>Preferences</u> – Reorganized TXCO, on behalf of the Debtors, reserves the right to file Avoidance Actions against any and all Non-Consenting Section 1111(b) Senior Mineral Lien Claimants, including, without limitation, to assert that an 1111(b) election is an admission that the class is undersecured and/or that such class is estopped from denying that it is undersecured.

(ii)    <u>Claims Resolution Process</u> – Within 120 days after the Effective Date, Reorganized TXCO, on behalf of the Debtors, will begin to obtain a determination as to the value of any property securing the Claims of Non-Consenting Section 1111(b) Senior Mineral Lien Claimants by filing a Lien Motion.    Reorganized TXCO, on behalf of the Debtors, will also seek a determination as to whether the Debtors are entitled to recover from any property allegedly securing the Claims of a Non-Consenting Section 1111(b) Senior Mineral Lien Claimant, the reasonable and necessary costs and expenses of preserving such property pursuant to 11 U.S.C. § 506(c).  Once those issues are fully and finally resolved, the Debtors will file motions (the "Section 1111(b) Valuation Motion") seeking determinations of the value of the property to ultimately determine the value securing each Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Claim, if any.

Within 30 days after filing of each Section 1111(b) Valuation Motion, Reorganized TXCO, on behalf of the Debtors, shall schedule mediation and identify a mediator. Any of the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants subject to a Section 1111(b) Valuation Motion may object in writing to the mediator selected by Reorganized TXCO, on behalf of the Debtors, not later than 30 days after being notified of the identity of the proposed mediator.  In the absence of any agreement, the Bankruptcy Court will select a mediator if an objection has been filed within such 30 day period.  Mediations will occur at a mutually agreeable location between Reorganized TXCO, on behalf of the Debtors, and the Non-

Consenting Section 1111(b) Senior Mineral Lien Claimants asserting a lien in the property. If no mutually agreeable location can be determined, the mediation will occur in San Antonio, Texas. If the mediation is successful, the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants shall be entitled to the treatment of its Allowed Non-Consenting Section 1111(b) Senior Mineral Lien Claim as set forth below. In the event mediation is unsuccessful, Reorganized TXCO, on behalf of the Debtors, will set a hearing before the Bankruptcy Court to consider the Section 1111(b) Valuation Motion.

Once a determination is reached on the value of the property to which the liens attach and the total amount of all Allowed Non-Consenting Section 1111(b) Senior Mineral Lien Claims against such property, Reorganized TXCO, on behalf of the Debtors, will execute a Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note. Holders of Non-Consenting Section 1111(b) Senior Mineral Lien Claims with respect to a particular piece of property will receive a pro rata interest in a Creditor Trust holding the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note (See Exhibit E). The Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note shall be payable to the Trustee of such Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Creditor Trust who shall make Distributions to the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants in accordance with their percentage interests in such Creditor Trust.

(c)     Class 3 Allowed Secured Claims of the Revolver Lenders. As of the Effective Date, the Class 3 Claims are deemed Allowed Secured Claims in the unpaid principal balance thereof outstanding on the Effective Date, together with accrued and unpaid interest, fees and expenses accrued through the Effective Date. In full settlement, satisfaction, release and discharge of the Allowed Class 3 Claims, each Revolving Loan Lender shall receive on the Effective Date its *pro rata* interest in (i) First Lien Notes issued in the face principal amount of the unpaid principal balance, and accrued and unpaid interest, of the Revolver Loans outstanding on the Effective Date (See Exhibit F), or (ii) to the extent that Class 3 makes an election under section 1111(b) of the Bankruptcy Code, First Lien Alternative Notes issued in the face principal amount of the unpaid principal balance, and accrued and unpaid interest, of the Revolver Loans outstanding on the Effective Date (See Exhibit G). In addition, the Debtors will pay to the Revolver Agent all of its charges, fees, and reasonable attorneys' fees and expenses of its counsel accrued and unpaid through the Effective Date. At the Confirmation Hearing, the Court will determine whether or not to invalidate the Existing Intercreditor Agreement and/or the subordination provisions thereunder. If the court determines to invalidate the Existing Intercreditor Agreement and/or the subordination provisions thereunder at the Confirmation

Hearing, the liens securing First Lien Notes or First Lien Alternative Notes, as applicable, shall be pari passu to the liens securing the Second Lien Notes. Regardless of the Court's determination and regardless of any election under section 1111(b) of the Bankruptcy Code, the Revolver Lenders shall be deemed to receive debt obligations in full satisfaction of the First Lien Obligations (as defined in the Existing Intercreditor Agreement). Notwithstanding Sections 14.7, 14.9 or any other term or provision of this Plan to the contrary, the Revolver Loan Lenders shall also retain the right both before and after the Confirmation Date to assert against the Revolver Loan Agent and its affiliates an action for breach of their respective obligations to the Revolver Loan Lenders under the Revolver Loan and applicable law.

(d) Class 4 Allowed Secured Claims of the Term Loan Lenders. As of the Effective Date, the Class 4 Claims are deemed Allowed Secured Claims in the aggregate amount of the unpaid principal balance of the Term Loan, together with unpaid interest, fees and expenses accrued through the Effective Date and shall be deemed Allowed Secured Claims to the extent of the value of the collateral securing the Term Loan (the "Allowed Class 4 Claims"). In full settlement, satisfaction, release and discharge of the Allowed Class 4 Claims, each Term Loan Lender shall receive on the Effective Date on account of its Allowed Secured Claims its *pro rata* share of: (a) 97.5% of the New Common Stock issued under the Plan (without giving effect, for this purpose, to New Common Stock issuable on conversion of preferred or note instruments) plus an additional number of shares of New Common Stock that would have been distributable to Allowed Class 8 Claims but for their election to receive the Unsecured Creditors Payment Option (the "Additional New Common Stock"), the Additional New Common Stock to be held by Reorganized TXCO in trust pending resolution of all Disputed general Unsecured Claims and a final determination of the total Allowed General Unsecured Claims, (b) Convertible Preferred B Shares having an aggregate liquidation preference in the amount of 64% of the unpaid principal balance of Term Loans held by Term Loan Lenders (See Exhibit I), and (c) Second Lien Notes in the aggregate unpaid principal balance of 35% of all Term Loans held by the Term Loan Lenders (See Exhibit J). In addition, on the Effective Date the Debtors shall pay in Cash all reasonable attorneys' fees and expenses of counsel to the Term Loan Lenders accrued and unpaid through the Effective Date. Notwithstanding Sections 14.1, 14.7, 14.9 or any other term or provision of this Plan to the contrary, the Debtors and Term Loan Lenders shall retain the right to contest the effectiveness of the Existing Intercreditor Agreement and subordination of their liens thereunder. Notwithstanding Sections 14.1, 14.7, 14.9 or any other term or provision of this Plan to the contrary, the Term Loan Lenders shall also retain the right both before and after the Confirmation Date to assert against the Term Loan Agent and its affiliates an action for breach of their respective obligations to the Term Loan Lenders under the Term Loan and applicable law.

(e) Class 5 Allowed Secured Claims of the Junior Mineral Lien Claimants. In connection with the treatment of the Claims under Class 5, the Debtors prepared the Preliminary Non-Binding Junior Mineral Lien Determination. Treatment of certain Claims under Class 5 is based on the Preliminary Non-Binding Junior Mineral Lien Determination.

Treatment

1. Application of JIBs – All Junior Mineral Lien Claimants that hold allowed claims on leases as either a mineral contractor or mineral

24

subcontractor (as such terms are defined in Tex. Prop. Code § 56.001(4)) for a particular well will receive a JIB Payment. Immediately upon payment of an Unpaid JIB to the Debtors or Reorganized TXCO, the JIB Obligor will be deemed released of any and all claims by any Mineral Subcontractor including, without limitation, any claims under Texas Property Code § 56.043 or any other section of the Texas Property Code.

2.     (a).    <u>Consenting Junior Mineral Lien Claimants</u> – The Debtors will not object to the extent, validity, or enforceability of the Junior Mineral Lien held by such Consenting Junior Mineral Lien Claimant as set forth in the Preliminary Non-Binding Junior Mineral Lien Determination and the Claims set forth therein will be deemed Allowed Junior Mineral Lien Claims. Consenting Junior Mineral Lien Claimants will be treated as follows:

(i)    <u>The Preference Credit</u> – To the extent that an Allowed Consenting Junior Mineral Lien Claimant received a payment in connection with one of the leases listed under Class 5(a-bb) in the Disclosure Statement in the 90 days prior to the Petition Date, the claims of such Allowed Consenting Junior Mineral Lien Claimant will be reduced by an amount equal to fifty percent (50%) (or a lower percentage if agreed to by the Debtors or Reorganized Debtors) of the full amount of such payments, against the applicable Allowed Junior Mineral Lien Claim (or a lower percentage, if agreed to by the Debtors or Reorganized Debtors) (a "Class 5 Preference Credit"). Exhibit "Q" discloses the amounts which the Debtors paid to Junior Mineral Lien Claimants during the 90 days prior to the Petition Date. If the Junior Mineral Lien Claimant asserts a lien on multiple leases, the Class 5 Preference Credit will be allocated *pro rata* to all Junior Mineral Liens held by such Consenting Junior Mineral Lien Claimant. The Class 5 Preference Credit will be in full and complete satisfaction of any and all claims under 11 U.S.C. § 547 against any Allowed Consenting Junior Mineral Lien Claimant. Any Allowed Consenting Junior Mineral Lien Claimant shall have the option to elect not to participate in the Class 5 Preference Credit and Reorganized TXCO shall retain the right to assert any and all avoidance actions against such Allowed Consenting Junior Mineral Lien Claimant.

(ii)    Within thirty (30) calendar days after the Effective Date, each Consenting Junior Mineral Lien Claimant shall (i) receive its *pro rata* interest in a Creditor Trust holding the Consenting Junior Mineral Lien Claimants Note (See

25

Exhibit K) in an amount equal to its Allowed Junior Mineral Lien Claim, after reducing such Allowed Junior Mineral Lien Claim by any Class 5 Preference Credit and/or JIB Payment, as applicable, and (ii) have Preferred Bidder Status. The Consenting Junior Mineral Lien Claimants Note shall be payable to the Trustee of the Consenting Junior Mineral Lien Claimants Creditor Trust. The Trustee shall make Distributions to the Consenting Junior Mineral Lien Claimants in accordance with their percentage interests in such Creditor Trust.

2.    (b).    <u>Non-Consenting Junior Mineral Lien Claimants</u> – Reorganized TXCO, on behalf of the Debtors, reserves its right to further examine and/or to object to the extent, validity and/or enforceability of any lien and/or Claim asserted by such Non-Consenting Junior Mineral Lien Claimant. Non-Consenting Junior Mineral Lien Claimants will be treated as follows:

(i)    <u>Preferences</u> – Reorganized TXCO, on behalf of the Debtors, reserves the right to file Avoidance Actions against any and all Non-Consenting Junior Mineral Lien Claimants.

(ii)    <u>Claims Resolution Process</u> – Within 120 days after the Effective Date, Reorganized TXCO, on behalf of the Debtors, will begin to obtain a determination as to the value of any property securing the claims of Non-Consenting Junior Mineral Lien Claimants by filing a Lien Motion. Reorganized TXCO, on behalf of the Debtors, will also seek a determination as to whether the Debtors are entitled to recover from any property allegedly securing the claims of the Non-Consenting Junior Mineral Lien Claimants, the reasonable and necessary costs and expenses of preserving such property pursuant to 11 U.S.C. § 506(c). If no Lien Motion is filed, or if filed, once those issues are resolved by a Final Order, the Debtors will file motions seeking determinations of the value of the property ultimately determined to secure each Non-Consenting Junior Mineral Lien Claim (the "<u>Junior Valuation Motion</u>"). Reorganized TXCO, on behalf of the Debtors, will seek a determination as to the value of each interest to which the liens attach.

Within 30 days after filing the Junior Valuation Motion, Reorganized TXCO, on behalf of the Debtors, shall schedule mediation and identify a mediator. Any Non-Consenting Junior Mineral Lien Claimant subject to a Junior Valuation Motion may object in writing to the

26

mediator selected by Reorganized TXCO, on behalf of the Debtors, not later than 30 days after being notified of the identity of the proposed mediator. In the absence of any agreement, the Bankruptcy Court will select a mediator if an objection has been filed within such 30 day period. Mediations will occur at a mutually agreeable location between Reorganized TXCO, on behalf of the Debtors, and the Non-Consenting Junior Mineral Lien Claimants asserting a lien in the property. If no mutually agreeable location can be determined, the mediation will occur in San Antonio, Texas. If the mediation is successful, the Non-Consenting Junior Mineral Lien Claimant will be entitled to the treatment of its Allowed Non-Consenting Junior Mineral Lien Claim as set forth below. In the event mediation is unsuccessful, Reorganized TXCO, on behalf of the Debtors, will set a hearing before the Bankruptcy Court to consider the Junior Valuation Motion.

Within sixty (60) days after entry of a Final Order determining the value of the property to which the liens attach and the total amount of the Allowed Non-Consenting Junior Mineral Lien Claims against such property, each such Claimant shall receive its *pro rata* interest in a Creditor Trust holding the Non-Consenting Junior Mineral Lien Claimants Note with respect to such property (See Exhibit L). The Non-Consenting Junior Mineral Lien Claimants Note shall be payable to the Trustee of the Non-Consenting Junior Mineral Lien Claimants Creditor Trust for such property, who shall make Distributions to the Non-Consenting Junior Mineral Lien Claimants from such Creditor Trust in accordance with their percentage interests. Any deficiency claim will be treated as a Class 9 General Unsecured Claim.

2.    (c).    <u>Non-Consenting Section 1111(b) Junior Mineral Lien Claimants</u> – Reorganized TXCO, on behalf of the Debtors, reserves its right to further examine and/or to object to the extent, validity and/or enforceability of any lien and/or Claim asserted by such Non-Consenting Section 1111(b) Junior Mineral Lien Claimants. Each member of the class of Non-Consenting Section 1111(b) Junior Mineral Lien Claimants will be treated as follows:

(i)    <u>Preferences</u> – the right to file Avoidance Actions against any and all Non-Consenting Section 1111(b) Junior Mineral Lien Claimants including, without limitation, to assert that an 1111(b) election is an admission that the class is undersecured and/or that such class is estopped from

denying that it is undersecured.

(ii)  Claims Resolution Process – Within 120 days after the Effective Date, Reorganized TXCO, on behalf of the Debtors, will begin to obtain a determination as to the value of any property securing the claims of Non-Consenting Section 1111(b) Junior Mineral Lien Claimants by filing a Lien Motion.  Reorganized TXCO, on behalf of the Debtors, will also seek a determination as to whether the Debtors are entitled to recover from any property allegedly securing the claims of the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants, the reasonable and necessary costs and expenses of preserving such property pursuant to 11 U.S.C. § 506(c).  Once those issues are fully and finally resolved, Reorganized TXCO, on behalf of the Debtors, will file motions (the "Junior Section 1111(b) Valuation Motion") seeking determinations of the value of the property, including whether the remaining value of the property is of inconsequential value such that the class of Junior Mineral Claimants was not entitled to make an election under section 1111(b) of the Bankruptcy Code, to ultimately determine the value securing each Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Claims, if any.

Within 30 days after filing the Junior Section 1111(b) Valuation Motion, Reorganized TXCO, on behalf of the Debtors, shall schedule mediation and identify a mediator. Any Non-Consenting Section 1111(b) Junior Mineral Lien Claimant subject to a Junior Section 1111(b) Valuation Motion may object in writing to the mediator selected by Reorganized TXCO, on behalf of the Debtors, not later than 30 days after being notified of the identity of the proposed mediator.  In the absence of any agreement, the Bankruptcy Court will select a mediator if an objection has been filed within such 30 day period.  Mediations will occur at a mutually agreeable location between Reorganized TXCO, on behalf of the Debtors, and the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants asserting a lien in the property.  If no mutually agreeable location can be determined, the mediation will occur in San Antonio, Texas.  If the mediation is successful, the Non-Consenting Section 1111(b) Junior Mineral Lien Claimant will be entitled to the treatment of its Allowed Non-Consenting Section 1111(b) Junior Mineral Lien Claim as set forth below.  In the event mediation is unsuccessful, Reorganized TXCO, on behalf of the Debtors, will set a

28

hearing before the Bankruptcy Court to consider the Junior Section 1111(b) Valuation Motion.

Once a determination is reached on the value of the property to which the liens attach and the total amount of all Allowed Non-Consenting Section 1111(b) Junior Mineral Lien Claims against such property, Reorganized TXCO, on behalf of the Debtors, will execute a "Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note." Holders of Non-Consenting Section 1111(b) Junior Mineral Lien Claims will receive their *pro rata* interest in a Creditor Trust holding the Non-Consenting Section 1111 (b) Junior Mineral Lien Claimants Note with respect to such property (See Exhibit M). The Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note shall be payable to the Trustee of the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Creditor Trust. The Trustee shall make Distributions to the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants in accordance with their percentage interests in such Creditor Trust.

(f) <u>Class 6 Allowed Secured Tax Claims</u>. Each holder of an Allowed Secured Tax Claim will receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Secured Tax Claim, as will have been determined by the Debtors or by Reorganized TXCO, as applicable, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Secured Tax Claim, (ii) treatment in a manner consistent with section 1129(a)(9)(D) of the Bankruptcy Code, or (iii) such different treatment as to which such holder and the Debtors or Reorganized TXCO, as applicable, will have agreed upon in writing. To the extent the Debtors elect under Section 1129(a)(9)(D) of the Bankruptcy Code to make regular installment payments in Cash, the holder of an Allowed Secured Tax Claim will receive quarterly payments on the last day of each quarter, of principal and interest, at an interest rate of six and one-half per cent (6½ %) per annum with the final payment due on or before May 17, 2014. The first installment will be made at the end of the first full quarter after the Effective Date. Each holder of an Allowed Secured Tax Claim shall retain the liens securing such Claim.

(g) <u>Class 7 Allowed Priority Non-Tax Claims</u>. Each holder of an Allowed Priority Non-Tax Claim will receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim, as will have been determined by the Debtors or by Reorganized TXCO, as applicable, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Priority Non-Tax Claim or (ii) such different treatment as to which such holder and the Debtors or Reorganized TXCO, as applicable, will have agreed upon in writing.

(h)     Class 8 Allowed General Unsecured Claims.  Each holder of Allowed General Unsecured Claims shall have the option to receive either (a) a discounted payment, equal to 5% of the amount of its Allowed general Unsecured Claim (the "Unsecured Creditors Payment Option"), or (b) a number of shares of New Common Stock equal to what would be the holder's *pro rata* share of 2.5% of the New Common Stock issuable on conversion of preferred or note instruments) if all Allowed General Unsecured Claims opted to receive New Common Stock.  The New Common Stock shall be held by Reorganized TXCO in trust pending a final determination of the total pool of Allowed General Unsecured Claims, after which it shall be distributed to the holders entitled thereto.

(i)     Class 9 Convenience Class Claims.  Each holder of an Allowed Convenience Class Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for such Allowed Convenience Class Claim, a single Cash payment equal to its *pro rata* share of $1,000,000, not to exceed its Allowed Convenience Class Claim.  Any party with an Unsecured Claim exceeding $6,000 may elect treatment under Class 9 Allowed Convenience Class Claims by agreeing to reduce its Unsecured Claim to an amount that is less than or equal to $6,000.

(j)     Class 10 Intercompany Claims.  All Intercompany Claims will be deemed discharged on the Effective Date.

(k)     Class 11 Preferred Stock.  The holders of Class 11 Preferred Stock shall receive no Distribution under the Plan.  On the Effective Date, all existing Preferred Stock (including, but not limited to, the Common Stock) shall, without any further action, be cancelled, annulled and extinguished and any certificates representing such Preferred Stock shall become null, void and of no force or effect.  The holders of Preferred Stock shall retain no rights and receive no consideration on account thereof.

(l)     Class 12 Common Stock.  The holders of Class 12 Common Stock shall receive no Distribution under the Plan.  On the Effective Date, all existing Common Stock shall, without any further action, be cancelled, annulled and extinguished and any certificates representing such Common Stock shall become null, void and of no force or effect.  Holders of Common Stock shall retain no rights and receive no consideration on account thereof.

(m)     Class 13 Allowed Other Secured Claims.  Each holder of Class 13 Allowed Other Secured Claims shall receive, at the option of the Reorganized TXCO (i) turnover of the collateral securing such Allowed Other Secured Claim, (ii) payment in full of such Allowed Other Secured Claim, (iii) such other treatment as agreed to in writing between the holder of such Allowed Other Secured Claim and Reorganized TXCO, or (iv) treatment in any other manner such that the Allowed Other Secured Claim shall otherwise be an Unimpaired Claim.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF PLAN

### 6.1.     Classes Entitled to Vote

Subject to Sections 6.3 and 6.4 of this Plan, Claim and Interest holders in Impaired Classes of Claims and Interests are entitled to vote as a class to accept or reject the Plan.

**6.2.     Acceptance by Impaired Classes**

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan, shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept or reject the Plan.

**6.3.     Presumed Acceptances by Unimpaired Classes**

Classes 6, 7 and 13 are Unimpaired by the Plan.  Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**6.4.     Classes Deemed to Reject Plan**

Classes 10-12 are not entitled to receive or retain any property under the Plan. Claims and Interests in Impaired Classes that do not entitle the holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**6.5.     Summary of Classes Voting on the Plan**

As a result of the provisions of Sections 6.1, 6.3 and 6.4 of this Plan, the votes of holders in Classes 1-5 and 8-9 will be solicited with respect to this Plan.

**6.6.     Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, nothing shall affect the Debtors' or Reorganized TXCO's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to Setoff Claims or recoupments against Unimpaired Claims.

**6.7.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

If any Class of Claims or Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall (a) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with Article XVI of the Plan. With respect to any Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that

2782939.1

the Bankruptcy Court confirm or "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code.

# ARTICLE VII
# MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1. Certain Accounts and Payments

On or before the Effective Date, the Debtors anticipate making the following transfers to:

1. The Disbursing Agent to establish a segregated account for the Administrative Claims Reserve for the benefit of the holders of Allowed Administrative Claims;

2. The DIP Loan Agent, the funds necessary to satisfy in full all of its charges, fees and reasonable attorneys' fees and expenses of its counsel;

3. The Revolver Loan Agent, the funds necessary to satisfy in full all of its charges, fees and reasonable attorneys' fees and expenses of its counsel;

4. Counsel to the Term Loan Lenders, the funds necessary to satisfy in full the reasonable attorneys' fees and expenses of such counsel; and

5. The Disbursing Agent to establish a segregated account for the Priority Claims Reserve for the benefit of the holders of Allowed Priority Claims.

### 7.2. Substantive Consolidation

(a) Substantive Consolidation of the Debtors

The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan. As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract) will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of each of the Debtors; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against each of the Debtors; (d) any Interest in any of the Debtors will be deemed an Interest in each of the Debtors; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor are subject in the absence of substantive consolidation under this Plan, provided,

2782939.1

however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect. Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests.

(b)     Order Granting Substantive Consolidation

This Plan shall serve as a motion seeking entry of an order substantively consolidating the Cases, as described and to the extent set forth in this Section 7.2. Unless an objection to such substantive consolidation is made in writing by any creditor affected by the Plan as herein provided on or before five (5) days prior to the Voting Deadline, or such other date as may be fixed by the Court, an order approving the substantive consolidation described herein (which may be in the Confirmation Order) may be entered by the Court. However, an order shall only be entered if the Bankruptcy Court enters the Confirmation Order. In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

**7.3.     Restructuring Transactions**

(a)     Issuance of Notes; New Intercreditor Agreement and Existing Intercreditor Agreement

On the Effective Date, Reorganized TXCO shall issue in accordance with the Distribution provisions of the Plan the Senior Secured Convertible Notes, the First Lien Notes or the First Lien Alternative Notes, as applicable, and the Second Lien Notes and enter into the related collateral documentation. At the times and to the extent set forth in Sections 5.1(b) and (e) of the Plan, Reorganized TXCO shall also issue to the applicable Creditor Trust the Consenting Senior Mineral Lien Claimants Note, the Non-Consenting Senior Mineral Lien Claimants Notes, the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes, the Consenting Junior Mineral Lien Claimants Note, the Non-Consenting Junior Mineral Lien Claimants Notes, and the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes and enter into the related collateral documentation and the New Intercreditor Agreement. The holders of Allowed Claims subject to the New Intercreditor Agreement shall execute and be bound thereby pursuant to Sections 1141(a) and 1142(b) of the Bankruptcy Code. Nothing contained in this Plan shall be deemed to modify or affect any of the terms or provisions of the Existing Intercreditor Agreement to the extent they are valid and enforceable among the Revolver Lenders and Term Loan Lenders.

(b)     New Capital Stock for Reorganized TXCO

Reorganized TXCO shall issue the New Common Stock as a Distribution to the holders of Allowed Class 4 and Class 8 Claims, together with Convertible Preferred A Shares

33

distributable to holders of DIP Loan Claims and Convertible Preferred B Shares distributable to holders of Allowed Class 4 Claims, all in accordance with the Distribution provisions of the Plan. Reorganized TXCO reserves the right to issue in its discretion Additional Convertible Preferred A Shares on the Effective Date or thereafter.

    (c)  Establishing the Creditor Trusts

  As required by Sections 5.1 (b) and (e) of the Plan, Creditor Trusts will be created, as set forth in Article XII, to hold the applicable promissory notes to be issued by Reorganized TXCO pursuant to such Sections.

   **7.4.**  **Corporate Existence**

    (a)  Continued Corporate Existence

  On the Effective Date, all the Debtors shall have merged into TXCO Resources, Inc., with TXCO Resources, Inc. being the surviving entity. On the Effective Date, Reorganized TXCO shall have no subsidiaries and shall cease to be a public company.

    (b)  Amended Governance Documents

  On the Effective Date, or as soon as reasonably practicable thereafter, Reorganized TXCO shall file Amended Governance Documents with the Delaware Secretary of State.

    (c)  Other General Corporate Matters

  On the Effective Date or as soon as reasonably practicable thereafter, Reorganized TXCO may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that Reorganized TXCO determines is necessary or appropriate.

  Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of Reorganized TXCO shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests, directors of the Debtors or Reorganized TXCO, as the case may be, or any other Entity.

   **7.5.**  **Directors and Officers of Reorganized TXCO**

The composition and size of the initial board of directors of Reorganized TXCO shall be disclosed in the Plan Supplement. Each of the Persons on the initial Board of Directors of Reorganized TXCO shall serve in accordance with the Amended Governance Documents of Reorganized TXCO, as the same may be amended from time to time.

The initial officers of Reorganized TXCO shall be disclosed in the Plan Supplement. To the extent any such Person is an Insider (as defined in section 101(31) of the Bankruptcy Code), the nature of any compensation for such Person will also be disclosed at such time. The initial officers shall serve in accordance with the Amended Governance Documents of Reorganized TXCO, as the same may be amended from time to time.

### 7.6. Corporate Action

On the Effective Date, the adoption of the Certificate of Incorporation or similar constituent documents, the adoption of the Bylaws, the selection of directors and officers (or persons serving in similar capacities) for Reorganized TXCO, and all other actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan). All matters provided for in the Plan involving the organizational structure of the Debtors or Reorganized TXCO, and any corporate action required by the Debtors or Reorganized TXCO in connection with the Plan, shall, as of the Effective Date, be deemed to have occurred and shall be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the security holders or directors of the Debtors and Reorganized TXCO; provided, however, that certain corporate actions shall be subject to the terms of the Shareholders' Agreement.

### 7.7. Revesting of Assets; Releases of Liens

Except as otherwise set forth in the Plan, in the Plan Supplement or in the Confirmation Order, as of the Effective Date, all property of the Debtors shall revest in Reorganized TXCO free and clear of all Claims, Liens, encumbrances and other Interests except to the extent provided in the Plan. From and after the Effective Date, Reorganized TXCO may operate its businesses and use, acquire and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, Reorganized TXCO may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

### 7.8. Cancellation of Interests; Issuance of New Common Stock

All Interests of the Debtors shall be cancelled and annulled on the Effective Date. Reorganized TXCO shall issue the shares of New Common Stock for Distributions in accordance with the Plan.

### 7.9. Authority

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors, their assets and operations.

### 7.10.  P&A Bonding

RLI Insurance Company ("RLI") has issued a bond (the "Bond") on behalf of Debtor to cover obligations of Debtor arising from or out of the ownership and operation of its oil and gas properties, and activities related thereto (the "Bonding Program").  The obligations covered by the Bond include, but are not limited to, royalty obligations, plugging and abandonment obligations and penalties assessed for non-compliance with applicable rules and regulations governing ownership and operation of oil and gas properties.  The Bonding Program includes, but is not limited to, bonds issued in regard to oil and gas properties in Texas and Louisiana ("the Leases").  Under the Bonding Program, bonds were issued to the Railroad Commission of Texas, Comptroller of The State of Texas, and the Louisiana Office of Conservation.  The approximate principal sum outstanding under the Bonds is $424,484.00.  The obligations of the Debtor in regard to the Bonds are evidenced by, among other things, the Bonds, a letter of credit and various indemnity agreements (the "Bond Documents"), or any other documents subsequently entered into between Debtor and RLI.

Pursuant to the Plan, Debtor will continue to own and operate oil and gas properties, and, as a result, will need to keep the Bonding Program in place. The Debtor hereby assumes the indemnity agreements and letter of credit between it and RLI and the rights of RLI under the Bond Documents are unimpaired and shall pass through the Debtor's bankruptcy unaffected in any manner and will become the obligations of the Reorganized Debtor.  Debtor shall pay to RLI accrued, but unpaid, bond fees in the amount of $7,451.00 on the Effective Date of the Plan or under such other payment terms as may be agreed to by RLI.  Subsequent bond fees shall be paid by the Reorganized Debtor when due as provided in the Bond Documents, or any other documents subsequently entered into between the Debtor and RLI.

Upon the Effective Date of the Plan, all proofs of claims filed in Debtor's Chapter 11 bankruptcy case by RLI shall be deemed withdrawn.  To the extent any other provision in the Plan or Confirmation Order conflicts with the provisions of this section 7.10, this section shall control unless specifically agreed to otherwise by RLI.  All obligations of all parties to RLI under the bond, indemnity agreement and related documents would be assumed.  RLI's rights under these documents would pass through the bankruptcy unimpaired.  There would be no release of any guarantors, indemnitors or other parties liable to RLI.

### 7.11.  Employee Benefits

On and after the Effective Date, Reorganized TXCO intends to retain employees in connection with its ongoing operations.  As such, Reorganized TXCO will retain an interest in its health insurance plan, including any COBRA coverage that will be available to employees that are not retained by Reorganized TXCO.  Reorganized TXCO may also: (1) honor, in the ordinary course of business, any unrejected contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Disclosure Statement or order entered by the Bankruptcy Court approving a pleading seeking payment of, for, among other things, compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who

served in such capacity at any time, and any other Benefit Plan; and (2) honor, in the ordinary course of business, claims of employees employed as of the Effective Date for accrued vacation time arising prior or subsequent to the Petition Date; provided, however, that the Debtors' or Reorganized TXCO's performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter Reorganized TXCO's defenses, claims, any causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

### 7.12. Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers or mortgages from or by the Debtors to Reorganized TXCO or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.13. Preservation of Rights of Action; Settlement

(a) Retention of Causes of Action

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise dealt with in the Plan or are expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all rights, claims, causes of action (including the Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall remain assets of and vest in Reorganized TXCO, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) neither the Debtors nor Reorganized TXCO waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principles of law or equity, without limitation, any principles of judicial

estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter Reorganized TXCO's right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that the Debtors or Reorganized TXCO have, or may have, as of the Effective Date. Reorganized TXCO may commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, and counterclaims in their sole discretion, in accordance with what is in the best interests, and for the benefit, of Reorganized TXCO.

(b)     Retention of Subsequent Causes of Action

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan or the Confirmation Order shall preclude or estop Reorganized TXCO, as successor in interest to the Debtors, from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its or their rights in connection with the Causes of Action, irrespective of the identity of any interest, cause of action, or nexus of fact, issues or events which is now or which could have been asserted in these Cases, the present litigation, and those which may be asserted in any subsequent litigation brought by Reorganized TXCO.  Moreover, the failure to commence any Retained Action prior to the Confirmation Date shall not constitute res judicata, judicial or collateral estoppel.

# ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND OTHER AGREEMENTS

### 8.1.     Assumption/Rejection

On the Effective Date, to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases, including, but not limited to, those contracts and leases listed as being assumed on Plan Schedule V will be deemed assumed by the Debtors unless such executory contract or unexpired lease: (a) is identified on Plan Schedule IV as an executory contract or unexpired lease being rejected pursuant to the Plan; (b) is the subject of a motion to reject filed on or before the Confirmation Hearing; or (c) has been previously rejected.  The Debtors reserve the right to amend Plan Schedule IV at any time before the Effective Date to reflect additional executory contracts and unexpired leases that they will reject under the Plan.

### 8.2.     Pass-Through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of Reorganized TXCO's business, but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory and/or non-executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of

Reorganized TXCO and the counterparty unaltered and unaffected by the bankruptcy filings or Chapter 11 Cases.

**8.3.    Mineral Leases/Oil and Gas Leases**

To the extent any of the Debtors' mineral leases or oil and gas leases constitutes an executory contract or unexpired lease of real property under section 365 of the Bankruptcy Code, such mineral leases or oil and gas leases will be assumed by Reorganized TXCO unless specifically listed on Plan Schedule IV, as amended through the Effective Date.  To the extent any of the Debtors' mineral leases or oil and gas leases constitute contracts or other property rights not assumable under section 365 of the Bankruptcy Code, except as provided in the Plan or Confirmation Order, such mineral leases or oil and gas leases shall pass through the Chapter 11 Cases for the benefit of Reorganized TXCO and the counterparties to such mineral leases or oil and gas leases, provided that prior to the Effective Date the Debtors retain the right to abandon any of such leases.

Except for the defaults of a kind specified in sections 365(b)(2) and 541(c)(1) of the Bankruptcy Code (which defaults the applicable Debtors or Reorganized TXCO will not be required to cure), or as otherwise provided herein, the legal, equitable and contractual rights of the counterparties to such mineral leases or oil and gas leases shall be unaltered by the Plan; provided, however, that to the extent a failure by the Debtors to pay or perform an obligation under such mineral lease or oil and gas lease (whether or not such mineral lease or oil and gas lease is subject to the provisions of section 365 of the Bankruptcy Code) is a default under any applicable mineral lease or oil and gas lease, such default shall be cured for all purposes by the payments provided for herein or Reorganized TXCO's subsequent performance of such obligation with such applicable mineral lease or oil and gas lease otherwise remaining in full force and effect for the benefit of Reorganized TXCO. To the extent such payment is due and owing on the Effective Date, such payment shall be made, in Cash, on the Distribution Date, or upon such other terms as may be agreed to by Reorganized TXCO, as the case may be. To the extent such payment is not due and owing on the Effective Date, such payment (a) will be made, in Cash, in accordance with the terms of any agreement between the parties, or as such payment becomes due and owing under (i) applicable non-bankruptcy law, or (ii) in the ordinary course of business of Reorganized TXCO, or (b) will be made upon other terms as may be agreed upon by Reorganized TXCO, as the case may be, and the Person to whom such payment is due. To the extent it is impossible for Reorganized TXCO to cure a default arising from any failure to perform a non-monetary obligation, such default shall be cured by performance by the applicable Debtor at or after the time of assumption in accordance with the terms of the applicable mineral lease or oil and gas lease with the applicable mineral lease or oil and gas lease remaining in effect for the benefit of Reorganized TXCO. If there is a dispute as to any cure obligation (including cure payments) between Reorganized TXCO and the Lessor of a mineral lease or oil and gas lease, Reorganized TXCO shall only have to pay or perform as provided in the Plan.

**8.4.    Assumed Executory Contracts and Unexpired Leases**

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such

39

executory contract or unexpired lease, and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or is the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any claims that may arise in connection therewith.

**8.5.     Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, Reorganized TXCO expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized TXCO, as applicable, from counterparties to rejected executory contracts or unexpired leases.

**8.6.     Assumed Contracts and Leases, and Contracts and Leases Entered Into After Petition Date**

Contracts and leases with third parties entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by Reorganized TXCO in the ordinary course of business.

**8.7.     Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any of the Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized TXCO, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**8.8.     Additional Cure Provisions**

Except as otherwise provided under the Plan, any monetary amounts that must be cured as a requirement for assumption and/or assignment by any of the Debtors, such cure shall be effected or otherwise satisfied by prompt payment of such monetary amount as contemplated by Section 365(b)(1)(A) of the Bankruptcy Code or as otherwise agreed to by the parties.  If there is a dispute regarding (a) the timing of any payment required in order to meet the promptness

40

requirement of 365(b)(1), (b) the nature, extent or amount of any cure requirement, (c) the Debtors', Reorganized TXCO, or the Debtors' assignees ability to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (d) any other matter pertaining to assumption, cure will occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

### 8.9. Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be filed with the claims agent no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any of the Debtors without the need for any objection by Reorganized TXCO or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims, provided, however, if the holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure the obligations under such rejected executory contract or lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

### 8.10. Survival of Indemnification and Corporation Contribution

Except as otherwise specifically provided herein or in the Plan, any obligations or rights of the Debtors to indemnify, defend or advance expenses to its present and former directors, officers, employees, agents or representatives under its certificate of incorporation, bylaws, policies, any agreement or under state law, or any agreement with respect to any claim, demand, suit, cause of action, or proceeding, shall survive confirmation of the Plan. The employees of the Debtors who become employed by Reorganized TXCO shall receive indemnification by Reorganized TXCO in the ordinary course of its business. Claims against the Debtors for indemnification shall be classified under the Plan as General Unsecured Claims and are payable as Class 8 Allowed General Unsecured Claims.

### 8.11. Treatment of Change of Control Provisions

The entry of the Confirmation Order, consummation of the Plan, and/or any other acts taken to implement the Plan shall not constitute a "change in control" under any provision of any contract, agreement or other document which provides for the occurrence of any event, the granting of any right, or any other change in then-existing relationship between the parties upon a change in control

### 8.12. Compensation, Benefit, and Pension Programs

All employee compensation, benefit and pension plans, and employment agreements or settlements reached thereunder of the Debtors, including benefit plans and programs subject to Sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' respective obligations under each such Retained Plan shall survive Confirmation of this Plan.

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1. Distributions for Claims and Interests Allowed as of Effective Date

Except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, Distributions to be made on account of Allowed Claims and Allowed Interests as of the Effective Date shall be made on the Distribution Date, or as soon thereafter as practicable. New Common Stock to be issued under the Plan shall be deemed issued as of the Effective Date.

### 9.2. Interest on Claims

Unless otherwise specifically provided by Section 2.3 and Sections 5.1(c) and (d) of the Plan, by the Confirmation Order, or by any other order of the Bankruptcy Court, or applicable bankruptcy law, post-petition interest shall not accrue and shall not be paid on Allowed Claims. To the extent postpetition interest is payable on an Allowed Claim, the amount of such interest shall be determined as provided in (i) any contract between the holder of such Allowed Claim and any applicable Reorganizing Debtor, (ii) any applicable non-bankruptcy law or (iii) in the absence of (i) or (ii), the Prime Rate, as such rates in (i) through (iii) may be limited by applicable bankruptcy law.

### 9.3. Disbursing Agent

The Disbursing Agent shall make all Distributions required under the Plan.

If the Disbursing Agent is an independent third party designated by Reorganized TXCO to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for Distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from Reorganized TXCO on terms acceptable to Reorganized TXCO. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. If so ordered, all costs and expenses of procuring any such bond shall be paid by Reorganized TXCO.

All cash required for Distributions shall be maintained in a separate segregated account maintained by Reorganized TXCO in an amount sufficient to make such Distributions, which account shall not be deemed property of Reorganized TXCO except to the extent Reorganized TXCO is entitled to any surplus thereof in accordance with the terms and provisions of the Plan.

### 9.4. Record Date for Distributions

As of the close of business on the Distribution Record Date, the registers for Claims and Interests should be closed, and there shall be no further changes in the holder of record of any Claim or Interest. Reorganized TXCO and the Creditor Trustees, as applicable, shall have no obligation to recognize any transfer of Claim or Interest occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those holders of record stated on the registers of Claims and/or Interests as of the close of business on the Distribution Record Date for Distributions under the Plan.

### 9.5. Means of Cash Payment

Cash payments made pursuant to this Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

### 9.6. Delivery of Distributions

Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims and Allowed Interests shall be made by the Disbursing Agent (a) at the addresses set forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if Reorganized TXCO have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent, as applicable, after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and the Disbursing Agent, as applicable, has not received a written notice of a change of address, (d) in the case of the holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer, or (e) at the addresses set forth in a properly completed letter of transmittal accompanying securities, if any, properly remitted to Reorganized TXCO. If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent, as applicable, or the appropriate indenture trustee, agent, or servicer is notified of such holder's then current address, at which time all missed Distributions shall be made to such holder without interest. Amounts in respect of undeliverable Distributions made through the Disbursing Agent or the indenture trustee, agent, or servicer, shall be returned to Reorganized TXCO until such Distributions are claimed. All claims for undeliverable Distributions must be made on or before the first (1st) anniversary of the Effective Date, after which date all unclaimed property shall revert to Reorganized TXCO free of any restrictions thereon, except as provided in the Plan, and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

### 9.7. Claims Paid or Payable by Third Parties

(a) Claims Paid by Third Parties

The Debtors or Reorganized TXCO, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full or in part on account of such Claim from a party that is not a Debtor or Reorganized TXCO. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized TXCO on account of such Claim, such holder shall, within two (2) weeks of receipt thereof, repay or return the Distribution to Reorganized TXCO, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such holder to timely repay or return such Distribution shall result in the holder owing Reorganized TXCO annualized interest at the federal judgment rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

(b)     Claims Payable by Third Parties

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any applicable insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the applicable insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     Applicability of Insurance Policies

Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors or Reorganized TXCO or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses

(d)     Withholding and Reporting Requirements

In connection with this Plan and all Distributions hereunder, Reorganized TXCO shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized TXCO shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**9.8.     Calculation of Distribution Amounts of Equity to be issued under the Plan**

No fractional shares or interests of any equity shall be issued or distributed under the Plan. Each Person entitled to receive equity will receive the total number of whole shares or

interests to which such Person is entitled. Whenever any Distribution to a particular Person would otherwise call for Distribution of a fraction of a share or interest, the actual Distribution of shares or interests of such equity shall be rounded to the next higher or lower whole number as follows: (a) fractions one-half or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half shall be rounded to the next lower whole number. The total number of shares of New Common Stock to be distributed to holders entitled to receive such Distribution, shall be adjusted as necessary to account for the rounding provided in the Plan. No consideration shall be provided in lieu of fractional shares rounded down.

### 9.9. Expunging of Certain Claims

All Claims marked or otherwise designated as "contingent, unliquidated or disputed" on the Debtors' Schedules and for which no proof of claim has been timely filed, shall be deemed disallowed and such claim may be expunged without the necessity of filing a claim objection and without any further notice to, or action, order or approval of the Bankruptcy Court.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED,
## CONTINGENT AND UNLIQUIDATED CLAIMS

### 10.1. Objections to Claims

Reorganized TXCO, on behalf of the Debtors, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims. From and after the Effective Date, Reorganized TXCO may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Reorganized TXCO also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law. Reorganized TXCO shall use commercially reasonable efforts to settle or otherwise reduce the amount of General Unsecured Claims.

As soon as practicable, but no later than the Claims Objection Deadline, Reorganized TXCO may file objections with the Bankruptcy Court and serve such objections on the creditors holding the Claims to which objections are made. Nothing contained herein, however, shall limit the right of Reorganized TXCO to object to Claims, if any, filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by Reorganized TXCO without notice or hearing.

### 10.2. Estimation of Claims

Reorganized TXCO, on behalf of the Debtors, may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on

45

such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, Reorganized TXCO, on behalf of the Debtors, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

### 10.3.  No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

### 10.4.  Disputed Claims Reserve

Reorganized TXCO shall establish one or more Disputed Claims Reserves for the purpose of effectuating distributions to holders of Disputed Claims pending the allowance or disallowance of such claims in accordance with this Plan.   Reorganized TXCO shall withhold the applicable Disputed Claims Reserves from the property to be distributed to particular classes under the Plan.  The Disputed Claims Reserves shall be equal to 100% of the distributions to which holders of Disputed Claims in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and 9 would be entitled under this Plan as of such date if such Disputed Claims in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and 9 were Allowed Claims in their (a) Face Amount or (b) estimated amount of such Disputed Claim in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and 9 as approved in an order by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code.  Reorganized TXCO may request estimation for any Disputed Claim including, without limitation, any Disputed Claim that is contingent or unliquidated.  Nothing in this Plan or the Disclosure Statement shall be deemed to entitle the holder of a Disputed Claim to postpetition interest on such Claim.

### 10.5.  Distributions After Allowance

Reorganized TXCO shall make payments and Distributions to each holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, Reorganized TXCO shall distribute to the holder of such Claim the Distribution (if any) that would have been made to such holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date. After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become property of Reorganized TXCO.

### 10.6.  General Unsecured Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the

extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude Reorganized TXCO from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### 10.7. Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, Reorganized TXCO shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, Reorganized TXCO (or their authorized representative) shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. Reorganized TXCO reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

## ARTICLE XI
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### 11.1. Professional Fee Claims

(a)     On the Effective Date, the Debtors shall pay all amounts owing to Professionals for all outstanding amounts relating to prior periods through the Effective Date approved by the Bankruptcy Court in accordance with the Professional Fee Order; provided, however, that Professionals shall continue to prepare fee applications in accordance with the Professional Fee Order for services rendered and expenses incurred up to the Effective Date. No later than fifteen (15) days prior to the Confirmation Hearing, each Professional shall estimate fees and expenses due for periods that have not been billed as of the anticipated Effective Date. Any party in interest shall have until the Confirmation Hearing to object to such estimate. If no party objects to a Professional's estimate, then within ten (10) days of the Effective Date such Professional shall submit a bill and, provided that such bill is no more than the estimate, the fees and expenses shall be paid; provided, however, that Reorganized TXCO shall be authorized to pay a Professional's success fee only upon approval of such fee by the Bankruptcy Court. On the Effective Date, Reorganized TXCO shall fund an escrow account in an amount equal to the aggregate amount of outstanding fee applications not ruled upon by the Bankruptcy Court as of the Effective Date plus the aggregate amount of all estimated fees and expenses due for periods that have not been billed as of the Effective Date. Such escrow account shall be used by Reorganized TXCO to pay the remaining Professional Fee Claims owing to the Professionals as and when Allowed by the Bankruptcy Court. When all Professional Fee Claims have been paid in full, amounts remaining in such escrow account, if any, shall be returned to Reorganized TXCO.

47

(b)     All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code for services rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than Substantial Contribution Claims under section 503(b)(4) of the Bankruptcy Code) must be filed and served on Reorganized TXCO and their counsel no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on Reorganized TXCO and their counsel and the requesting Professional or other entity no later than 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

### 11.2.    Administrative Claims

The Confirmation Order will establish an Administrative Claims Bar Date for filing of all Administrative Claims, including Substantial Contribution Claims (but not including DIP Loan Claims, Professional Fee Claims or claims for the expenses of the members of the Committee or Administrative Claims), which date will be forty-five (45) days after the Effective Date. Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary course liabilities, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. A notice prepared by Reorganized TXCO will set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtors or Reorganized TXCO, as the case may be, shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.  Holders of Administrative Claims pursuant to section 503(b)(9) of the Bankruptcy Code were required to file proof of such a claim on or before August 21, 2009.

### 11.3.    Administrative Ordinary Course Liabilities

Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the applicable Debtors' businesses (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims. Such Administrative Claims, unless objected to by the applicable Debtors or Reorganized TXCO, shall be assumed and paid by Reorganized TXCO, in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim.

### 11.4.    Administrative Tax Claims

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be filed and served on Reorganized TXCO and any other party specifically

requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any holder of any such Claim that is required to file a request for payment of such taxes and does not file and properly serve such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against Reorganized TXCO or its property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date. Any interested party desiring to object to an Administrative Claim for taxes must file and serve its objection on counsel to Reorganized TXCO and the relevant taxing authority no later than ninety (90) days after the taxing authority files and serves its application.

## ARTICLE XII
## CREDITOR TRUSTS

### 12.1.   Generally

Separate Creditor Trusts will be created to hold the Consenting Senior Mineral Lien Claimants Note, the Non-Consenting Senior Mineral Lien Claimants Notes, the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Notes, the Consenting Junior Mineral Lien Claimants Note, the Non-Consenting Junior Mineral Lien Claimants Notes and the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes. The following description shall generally apply to each Creditor Trust created under the Plan.

### 12.2.   Establishment of each Creditor Trust

On or after the Effective Date, the Creditor Trustee shall execute the Credit Trust Agreement, and Reorganized TXCO will issue to the Creditor Trust the applicable promissory note. Except for the Creditor Trustee for the Consenting Junior Mineral Lien Claimants Note, the Creditor Trustee shall execute the applicable promissory note and collateral documentation on behalf of the Creditor Trust.

### 12.3.   Purpose of the Creditor Trust

The Creditor Trust shall exist after the Effective Date, with all the powers of a trust under applicable Texas law. The Creditor Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on or after the Effective Date.

After the Effective Date, the Creditor Trust will own the promissory notes issued to it and shall have the flexibility to conduct any operations necessary to liquidate the Creditor Trust assets and to enhance or preserve the value of the Creditor Trust assets.

### 12.4.   Appointment and Powers of the Creditor Trustee

Prior to the Effective Date, an individual shall be nominated to act as the initial Creditor Trustee under the Creditor Trust. The Creditor Trustee will serve from and after the Effective

49

Date until a successor is duly elected or appointed.  The Creditor Trustee shall receive title to the promissory notes issued to it.

Pursuant to the Creditor Trust Agreement, the Creditor Trustee shall have the power and authority to perform the following acts, among others:

(a)    Perfect and secure his/her right, title and interest to any and all Creditor Trust Assets;

(b)    Reduce all of the Creditor Trust Assets to his possession and conserve, protect collect and liquidate or otherwise convert all Creditor Trust Assets into Cash;

(c)    Distribute the net proceeds of Creditor Trust Assets as specified herein;

(d)    Release, convey or assign any right, title or interest in or to the Creditor Trust Assets;

(e)    Pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Creditor Trust Assets, and to protect the Creditor Trust and the Creditor Trustee from liability;

(f)    Deposit Creditor Trust funds and draw checks and make disbursements thereof;

(g)    Employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Creditor Trustee may deem necessary.  The Creditor Trustee shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance of such advice.  The fees and expenses of all such professionals shall be charged as expenses of the Creditor Trust and shall be paid upon approval of the Creditor Trustee;

(h)    Employ brokers, investment brokers, sales representatives or agents, or other Persons necessary to manage the Creditor Trust Assets;

(i)    Exercise any and all powers granted the Creditor Trustee by any agreements or by Texas common law or any statute that serves to increase the extent of the powers granted to the Creditor Trustee hereunder;

(j)    Take any action required or permitted by the Plan or the applicable Creditor Trust Agreement;

(k)    Execute obligations, whether negotiable or non-negotiable;

(l)    Sue and be sued;

(m)    Settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor or against the Creditor Trust;

(n)     Waive or release rights of any kind;

(o)     Appoint, remove and act through agents, managers and employees and confer upon them such power an authority as may be necessary or advisable;

(p)     Negotiate, renegotiate or enter into any contract or agreements binding the Creditor Trust, and to execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Creditor Trustee to be advisable in connection with the performance of his/her duties; and

(q)     In general, without in any manner limiting any of the foregoing, deal with the Creditor Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter.

### 12.5.  Payment of the Expenses Incurred by the Creditor Trust

The Creditor Trustee will be compensated for services provided at a rate determined by Reorganized TXCO and such trustee, subject to approval of the Bankruptcy Court after notice and hearing.  Professionals retained by the Creditor Trust shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred.  The payment of the fees and expenses of the Creditor Trust retained professionals shall be made in the ordinary course of business from assets of the Creditor Trust.

### 12.6.  Exculpation; Indemnification

The Creditor Trustee shall not be liable for actions taken or omitted in his capacity as the Creditor Trustee, except those acts arising out of fraud, willful misconduct, or gross negligence. The Creditor Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Creditor Trustee, except for any actions or inactions involving his own fraud, willful misconduct, or gross negligence.  Any indemnification claim of the Creditor Trustee shall be satisfied from the assets of the Creditor Trust.

The Creditor Trust shall, to the fullest extent permitted by Texas law, indemnify and hold harmless the officers, directors, agents, representatives, attorneys, professionals and employees of the Creditor Trust (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to, attorneys' fees and costs, arising out of or due to their actions or omissions with respect to the Creditor Trust or the implementation or administration of the Creditor Trust Agreement, if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Creditor Trust, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.

### 12.7.  Retention of Funds Prior to Distribution

The Creditor Trustee shall collect all funds constituting Creditor Trust Assets and, pending distribution, shall deposit funds with a federally insured financial institution that has

banking services. The Creditor Trustee will deposit funds so that they are adequately insured. Notwithstanding the foregoing, the Creditor Trustee may invest all Cash funds received into the Creditor Trust (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the Unites States Trustee's Office, provided that the Creditor Trustee shall invest funds held in only demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as Treasury bills.

The Creditor Trustee will not be required to post bond or be audited or monitored except as otherwise expressly provide in the Creditor Trust Agreement. Forty-five (45) days after the end of each calendar year of the Creditor Trust and forty-five (45) days after termination of the Creditor Trust, the Creditor Trustee will file with the Bankruptcy Court an un-audited written report and account showing (i) the assets and liabilities of the Creditor Trust at the end of such year or upon termination; (ii) any changes in the Creditor Trust Assets that have not been previously reported, and (iii) any material action taken by the Creditor Trustee in the performance of his duties under the Creditor Trust Agreement that has not been previously reported.

### 12.8. Distributions to Creditor Trust Beneficiaries

Within a reasonable period after receipt of any payments on the promissory notes issued by Reorganized TXCO to the Creditor Trust, the Creditor Trustee shall distribute such Cash, after deducting any costs and expenses associated with operation of the Creditor Trust, pro rata to each of the beneficiaries of such Creditor Trust.

### 12.9. Registry of Beneficial Interests

The Creditor Trustee shall establish and retain a registry of all beneficiaries of the Creditor Trust. The Creditor Trustee shall be responsible to maintain and update such registry; however, the Creditor Trustee shall not be obligated to update any beneficiaries name or address until receiving written correspondence from the party seeking to change the address for receipt of notices and Distributions. The Creditor Trustee retains the right to request additional information to confirm the name and address of such party before making any modification to the registry.

### 12.10. Termination of the Creditor Trusts

Each Creditor Trust shall remain and continue in full force and effect until the later of (a) Creditor Trust assets has been wholly converted to Cash or abandoned and all costs, expenses, and obligations incurred in administering the Creditor Trust have been fully paid, and all remaining income and proceeds of the Creditor Trust assets have been distributed in payment of the claims of all Beneficiaries pursuant to the provisions of the Plan, but no later than after Reorganized TXCO have made the final principal and interest payment due under the applicable promissory notes issued to the Creditor Trust; provided, that upon complete liquidation of the Creditor Trust assets and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Creditor Trust pursuant to the Plan prior to such date, the Creditor Trustee may, with approval of the Bankruptcy Court, sooner terminate the Creditor Trust. On the

termination date of the Creditor Trust, the Creditor Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination. Upon termination and complete satisfaction of its duties under the Creditor Trust Agreement, the Creditor Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Creditor Trust other than those attributable to fraud, gross negligence or willful misconduct of the Creditor Trustee.

### 12.11. Resignation of the Creditor Trustee

The Creditor Trustee may resign at any time by giving written notice to the Bankruptcy Court and such resignation shall be effective upon the date provided in such notice. In the case of the resignation of the Creditor Trustee, a successor Creditor Trustee shall thereafter be appointed by the beneficiaries of the Creditor Trust, whereupon such resigning Creditor Trustee shall convey, transfer and set over to such successor Creditor Trustee by appropriate instrument or instruments all of the Creditor Trust assets then unconveyed or otherwise undisposed of and all other assets then in his possession the Creditor Trust Agreement. Without further act, deed or conveyance, a successor Creditor Trustee shall be vested with all the rights, privileges, powers and duties of the Creditor Trustee, except that the successor Creditor Trustee shall not be liable for the acts or omissions of his predecessor(s). Each succeeding Creditor Trustee may in like manner resign and another may in like manner be appointed in his place.

### 12.12. Status as Liquidation Trust

For federal income tax purposes, it is intended that each Creditor Trust be classified as a liquidation trust under section 301.7701-4 of the Procedure and Administration Regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they received a Distribution of an undivided interest in the trust assets, to the extent of their interest therein, and then contributed such interests to the Creditor Trust. The Creditor Trust Agreement shall (i) state that the primary purpose of the Creditor Trust is to liquidate the trust assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is generally not more than five (5) years from the date of creation of the Creditor Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within six months of the beginning of the extended term.

The Creditor Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidation Trust. The Trustee shall file all federal tax returns for the Creditor Trust as a grantor trust pursuant to section 1.671-4(a) of the Procedure and Administration Regulations.

Each Creditor Trust Agreement, substantially in the form of the Creditor Trust Agreement included in the Plan Supplement, and all of its provisions (i) are hereby incorporated as if explicitly set forth in this Plan, and (ii) shall be deemed approved by the Bankruptcy Court upon entry of the Confirmation Order.

2782939.1

# ARTICLE XIII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### 13.1. Conditions Precedent to Confirmation

The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors and each of the DIP Lenders, and as to the Exit Facility, the provisions of the Confirmation Order applicable to the Exit Facility are acceptable to the Exit Facility lenders, and shall include a finding of fact that the Debtors, Released Parties, and their respective present and former members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Bankruptcy Code and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

### 13.2. Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 13.4 below:

(a)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to each of the DIP Lenders and, as to the Exit Facility, the Exit Facility lenders.

(b)     The Exit Facility loan documents, in form and substance acceptable to the Exit Facility lenders, shall have been executed and delivered by all parties thereto, and all conditions precedent to consummation thereof shall have been waived or satisfied in the manner permitted thereunder.

(c)     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(d)     There shall not be in effect on the Effective Date any (i) order entered by a court, (ii) any order, opinion, ruling or other decision entered by any other court or governmental entity, or (iii) any applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

(e)     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall remain pending.

(f)     The Bankruptcy Court shall have dismissed the Debtors' Adversary Proceeding with prejudice.

(g)     Any provider of debt or equity financing to Reorganized TXCO in connection with the Plan, including, without limitation, the terms and conditions of such financing, shall be acceptable to each of the DIP Lenders and each of Black Diamond Offshore, Ltd, Double Black Diamond Offshore, Ltd., CIT Middle Market Loan Trust III, and Regiment Capital Special Situations Fund III LP in its sole and absolute discretion.

(h)     All conditions to the consummation of the transactions contemplated by the Plan shall have been satisfied or waived.

### 13.3.   Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.4.   Waiver of Conditions

Each of the conditions set forth in Sections 13.1 and 13.2 of the Plan may be waived in whole or in part by written consent of the applicable Debtor and all of the DIP Lenders.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors, Reorganized TXCO or any of the DIP Lenders regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or Reorganized TXCO). The failure of the Debtors Reorganized TXCO or any of the DIP Lenders to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### 13.5.   Revocation, Withdrawal, Non-Consummation

The Debtors and the DIP Lenders reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors and the DIP Lenders revoke or withdraw the Plan, or if Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XIV
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 14.1.   Compromise and Settlement

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), and in consideration for the classification, Distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the

Debtors, their Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

Without limiting the generality of the foregoing, the treatment of Claims in Classes 2, 3, 4, 5 and 8 under this Plan is a good faith compromise and settlement of all the rights of the Debtors, the holders of Claims and Interests in the Estates (collectively, "Creditors") and the Estates asserted in the Debtors' Adversary Proceeding. In consideration of such settlement and compromise, on the Effective Date the Debtor shall be deemed to have withdrawn the Debtors' Adversary Proceeding with prejudice, and each of the Debtors, on their own behalf and as representative of the Debtors' Estates, and each of the Creditors shall be deemed to have waived, released and discharged, and shall be permanently enjoined from initiating or continuing, any claim, action, employment of process, or any act to collect, offset, recoup, or recover, any and all claims, obligations, rights, Causes of Action, Avoidance Actions and liabilities, whether based in tort, fraud, contract or otherwise, known or unknown, that they possessed, possess or may possess prior to the Effective Date against any of the Revolver Lenders or Term Lenders (collectively, "Lenders"), any such parties acting in an agency capacity ("Agents"), or any of their respective past or present officers, directors, managers, members, employees, representatives, counsel, advisors, consultants or other agents, successors or assigns and that arise from or are related to the Amended and Restated Credit Agreement, dated April 2, 2007, as amended, or the Term Loan Agreement, dated April 2, 2007, as amended, or any predecessor credit or loan agreements thereto, the other documents, instruments and agreements related thereto, and whether or not the same are set forth in the Debtors' Adversary Proceeding, provided that the foregoing release shall not apply to any action or omission that constitutes actual Fraud or criminal conduct under any applicable statute. In the event that the Plan is not confirmed or does not become effective, (x) neither the Agents and Lenders or the Debtors shall be deemed to have waived any right or remedy with respect to the Debtors' Adversary Proceeding, (y) nothing herein or in the Disclosure Statement shall be deemed an admission against interest by any of them, and (z) pursuant to Federal Rule of Evidence 408, the fact or terms of this compromise and settlement shall not be admissible in the Debtors' Adversary Proceeding or any other proceeding commenced with respect to the rights of the Agents and Lenders under the Credit Agreements and related documents, instruments and agreements. The Plan shall serve as a motion to approve such compromise and settlement of the Debtors' Adversary Proceeding, and entry of the Confirmation Order shall constitute such approval.

It is not the intent of the Debtors that confirmation of the Plan shall in any manner alter or amend any settlement and compromise between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Debtors may compromise and settle various claims against them and claims that they have against other Persons. The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, Reorganized TXCO may compromise and settle any

Claims against them and claims they may have against other Persons without approval from the Bankruptcy Court where the amount in dispute is less than $500,000 or the Claim to be settled is less than $1,000,000.

### 14.2. Satisfaction of Claims

The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged, and released in full. Neither Reorganized TXCO, nor their Affiliates, shall be responsible for any pre-Effective Date obligations of the Debtors, except those expressly assumed by the Debtors or their Affiliates, as applicable. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against Debtors and their Affiliates, their respective successors or assigns, or their Estates, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

### 14.3. Exculpation and Limitation of Liability

Notwithstanding any other provision of the Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action whether in law or equity, whether for breach of contract, statute, or tort claim, against the Debtors, the Estates, Reorganized TXCO, the Committee, the DIP Lenders, the DIP Loan Agent, or any of their respective affiliates, representatives, present or former members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of, these Cases, the pursuit of Confirmation of the Plan, consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence.

### 14.4. Good Faith

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors and the Exit Facility lenders have participated in good faith and in compliance with Section 1125(e) of the Bankruptcy Code in the offer and issuance of the New Common Stock under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the New Common Stock under the Plan.

### 14.5. Discharge of Liabilities

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, Reorganized TXCO shall be discharged from all Claims and Causes of Action to the fullest extent permitted by Section 1141 of the Bankruptcy Code, and all holders of Claims and Interests shall be precluded from asserting against Reorganized TXCO, its respective assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, REORGANIZED TXCO SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE, OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTORS AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO REORGANIZED TXCO.

### 14.6. Discharge of the Debtors

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto. As provided in Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against Reorganized TXCO or its property to the extent it relates to a discharged Claim.

### 14.7. Permanent Injunction

**Except as otherwise provided in the Plan, from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors prior to the Effective Date are permanently enjoined from taking any of the following actions against the Debtors, Reorganized TXCO, the Committee, the DIP Lenders, the DIP Loan Agent, the Term Loan Lenders, the Term Loan Agent, and the Estates on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place,**

any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.

### 14.8. Releases by the Debtors, Reorganized TXCO and their Estates

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors, Reorganized TXCO and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Debtors, Reorganized TXCO and their Estates, for themselves and on behalf of their respective successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each (i) Released Party and (ii) the Debtors', Reorganized TXCO's and their Estates' past and present directors, managers, officers, employees, attorneys and other representatives from any and all claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, causes of action, remedies, and liabilities of any kind or character whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, Reorganized TXCO, and their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, Reorganized TXCO or their respective Affiliates or Estates ever had, now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, against any (i) Released Party and (ii) the Debtors', Reorganized TXCO's and their Estates' current and former directors, managers, officers, employees, attorneys and other representatives arising from or relating to, directly or indirectly from, in whole or in part, the Debtors, the Debtors' restructuring, the Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements among any two or more of any of Debtors, Reorganized TXCO or any Released Party (and the acts or omissions of any other Released Party in connection therewith), the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence, including the management and operation of the Debtors, taking place on or before the Effective Date. Notwithstanding the foregoing, nothing in this Section 3.8(h) shall release any Released Party or other individual included within this release from liability for (i) any act or omission by such Released Party or other individual that is found by a court of law in a final, non-appealable judgment to constitute Fraud, willful misconduct, or gross negligence or (ii) any obligation for borrowed money owed by a Released Party to the Debtors, Reorganized TXCO or their respective Affiliates or Estates.

2782939.1

### 14.9.    Releases by Holders of Claims and Interests

**Except as otherwise specifically provided in the Plan or the Confirmation Order, on and after the Effective Date, in consideration of the Distributions under the Plan, holders of Claims and Interests, for themselves and on behalf of their respective successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, causes of action, remedies, and liabilities of any kind or character whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, Reorganized TXCO or their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereafter arising, in law, equity or otherwise, that such Person ever had, now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert (whether individually or collectively or directly or derivatively), against any Released Party arising from or relating to, directly or indirectly, in whole or in part, the Debtors, the Debtors' restructuring, the Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements among any two or more of any Debtor, Reorganized TXCO or any Released Party (and the acts or omissions of any other Released Party in connection therewith), the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence, including the management and operation of the Debtors, taking place on or before the Effective Date. Notwithstanding the foregoing, nothing in this Section shall release any Released Party from liability for any act or omission by such Released Party that is found by a court of law in a formal, non-appealable judgment to constitute Fraud, willful misconduct or gross negligence.**

### 14.10.   Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, Reorganized TXCO may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any claims, rights, and causes of action of any nature that such Debtor or Reorganized TXCO, as applicable, may hold against the holder of such Allowed Claim, to the extent such claims, rights, or causes of action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, the neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by Reorganized TXCO of any such claims, rights, and causes of action that Reorganized TXCO may possess against such holder. In no event shall any holder of Claims or Interests be entitled to setoff any Claim or Interest against any claim, right, or cause of action of the Debtors or Reorganized TXCO, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and

2782939.1

notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

### 14.11. Recoupment

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or Reorganized TXCO, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### 14.12. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of Reorganized TXCO's Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to Reorganized TXCO and its successors and assigns.

In addition to, and in no way a limitation of, the foregoing, to the extent the Debtors' property or assets are encumbered by mortgages, security interests or Liens of any nature for which any holder of such mortgages, security interests or Liens does not have an Allowed Claim against such Debtor, such mortgages, security interests or Liens shall be deemed fully released and discharged for all purposes and such holder shall execute such documents as reasonably requested by Reorganized TXCO in form and substance as may be necessary or appropriate to evidence the release of any such mortgages, security interests or Liens of any nature. If such holder fails to execute such documents, Reorganized TXCO is authorized to execute such documents on behalf of such holder and to cause the filing of such documents with any or all governmental or other entities as may be necessary or appropriate to effect such releases.

### 14.13. Satisfaction of Subordination Rights

Except as otherwise expressly provided in the Plan, all Claims against the Debtors and all rights and claims between or among Claim holders relating in any manner whatsoever to Claims against the Debtors, based upon any claimed subordination rights (if any), shall be deemed satisfied by the Distributions under the Plan to Claim holders having such subordination rights, and such subordination rights shall be deemed waived, released, discharged and terminated as of the Effective Date. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any Claim holder by reason of any claimed subordination rights or otherwise, so that each Claim holder shall have and receive the benefit of the Distributions in the manner set forth in the Plan.

2782939.1

# ARTICLE XV
## RETENTION OF JURISDICTION

Under Sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a)     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement or the Confirmation Order;

(b)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan, including, without limitation, the Creditor Trusts and Creditor Trust Agreements, but excluding all contracts, instruments and other agreements evidencing or governing indebtedness, collateral, or equity securities Distributed pursuant to this Plan;

(c)     hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(d)     issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order,

(e)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(f)     hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement or the Confirmation Order;

(g)     enforce all orders, judgments, injunctions, releases, exculpations and rulings entered in connection with the Chapter 11 Cases;

(h)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(i)     hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtors and to enter or enforce any order requiring the filing of any such Claim before a particular date;

(j)     hear and determine motions, application, adversary proceedings, contested matters and other litigation matters filed or commenced after the Effective Date, including

62

proceedings with respect to the rights and claims of the Debtors to recover property under the applicable provisions of Chapter 5 of the Bankruptcy Code or to bring any litigation claims, or otherwise to collect or recover on account of any litigation claim;

(k)     determine all applications, Claims, adversary proceedings and contested matters pending on the Effective Date; and

(l)     enter a final decree closing the Chapter 11 Case.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

### 16.1.  Amendments and Modification

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date; however, neither this paragraph nor the treatment of the DIP Loan Claims or Class 4 Allowed Secured Claims of the Term Loan Lenders may be modified without the express written consent of the holders of such Claims. After the Confirmation Date and prior to "substantial consummation" as provided in the Plan, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 16.2.  Payment of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

### 16.3.  Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, Reorganized TXCO, and all other parties-in-interest in these Cases.

### 16.4.  Term of Injunctions or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions

or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

### 16.5.    Dissolution of Committee

On the Effective Date, the Committee, if any, shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Cases.

### 16.6.    No Admissions

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth in the Plan, including liability on any Claim.

### 16.7.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to Reorganized TXCO; provided, however, that corporate governance matters relating to the Debtors or Reorganized TXCO, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor or Reorganized TXCO.

### 16.8.    Plan Supplement

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court not later than the Plan Supplement Filing Date, or such other filing deadline as may be approved by the Bankruptcy Court. Holders of Claims or Interests may also obtain a copy of the Plan Supplement upon written request to the Debtors. Notwithstanding the foregoing, the Debtors may amend the Plan Supplement, and any attachments thereto, through and including the Confirmation Date.

### 16.9.    Notices

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

64

If to the Debtors:

TXCO RESOURCES INC.
777 E. Sonterra Blvd.
Suite 350
San Antonio, Texas  78258

with a copy to:
Deborah D. Williamson
Cox Smith Matthews Incorporated
112 E. Pecan, Suite 1800
San Antonio, Texas  78205
Facsimile:  (210) 226-8395
If to the DIP Lenders:

Regiment Capital Special Situations Fund III LP
222 Berkeley Street, 13th Floor
Boston, Massachusetts  02116
Attn:   Kyle O'Neill
Facsimile:  (617) 488-1688

CIT Bank
383 Main Avenue, 6th Floor
Norwalk, Connecticut  06851
Attn:   Patrick Flynn
Facsimile:  (203) 840-3329

BD Funding I, LLC
2100 McKinney Avenue, 16th Floor
Dallas, Texas  75201
Attn:   Carlson Bank Debt Team
Facsimile:  (214) 242-4599

LTD/DLT Longhorn Corp.
2100 McKinney Avenue, 16th Floor
Dallas, Texas  75201
Attn:   Carlson Bank Debt Team
Facsimile:  (214) 242-4599

With a copy to (which shall not constitute notice):
James Donnell
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166-4193
Facsimile:  (212) 294-4700

### 16.10.  Severability of Plan Provision

If, before the Confirmation Order, the Bankruptcy Court holds that any provision of the Plan is invalid, void or unenforceable, the Debtors, at their option and if acceptable to the Exit Facility lender and the DIP Lenders, may amend or modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable.

[Signature Page Immediately Follows]

66

Dated:     December 18, 2009

Respectfully Submitted,

TXCO RESOURCES INC. AND ITS SUBSIDIARIES
AND AFFILIATES THAT ARE ALSO DEBTORS
AND DEBTORS-IN-POSSESSION IN THE
CHAPTER 11 CASES

By: _____
James E. Sigmon

Counsel:

By: _____
Deborah D. Williamson
State Bar No. 21617500
Patrick L. Huffstickler
State Bar No. 10199250
Thomas Rice
State Bar No. 24025613
Meghan Bishop
State Bar No. 24055176
Cox Smith Matthews Incorporated
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
554-5500
226-8395 (Fax)

**ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION**

67

# EXHIBIT A: SENIOR SECURED CONVERTIBLE NOTES

The Senior Secured Convertible Notes shall include the following principal terms and conditions:

(a) ***Principal Amount*** – 50% of the outstanding balance of the DIP Loan including accrued interest through the Effective Date.

(b) ***Maturity*** – Due and payable in full on the first month following sixty (60) months after the Effective Date.

(c) ***Interest*** – From the Effective Date through the final maturity date, four percent per annum.

(d) ***Interest Payments*** – All interest shall be capitalized and added to the principal amount of the Senior Secured Convertible Notes on a monthly basis, in arrears.

(e) ***Amortization Payments*** – Absent an event of default,[1] no principal payments shall be due prior to the final maturity date of the Senior Secured Convertible Notes. Upon an event of default, the principal balance of the Senior Secured Convertible Notes shall be due in full.

---

[1] The Senior Secured Convertible Notes shall be subject to the following events of default: (i) the failure of Reorganized TXCO to pay, when and as required to be paid, any amount due herein within ten calendar days after the same becomes due and payable; (ii) Reorganized TXCO (aa) generally fails to pay, or admits in writing its inability to pay, its debts as they become due, subject to applicable grace periods, if any, whether at stated maturity or otherwise; (bb) commences any insolvency proceedings with respect to itself; or (cc) takes any action to effectuate or authorize any of the foregoing; (iii) any involuntary insolvency proceeding is commenced or filed against Reorganized TXCO, or any writ, judgment, warrant of attachment, execution or similar process, is issued or levied against all or a substantial part of Reorganized TXCO's property, and any such proceeding or petition shall not be dismissed or stayed, or such writ, judgment, warrant of attachment, execution or similar process shall not be released, vacated or fully bonded within 60 days after commencement, filing or levy; (iv) Reorganized TXCO shall file an answer admitting the material allegations of a petition against it in any insolvency proceeding, or an order for relief (or similar order under non-U.S. law) is ordered in any insolvency proceeding; (v) Reorganized TXCO consents to the appointment of a receiver, trustee, custodian, conservator, liquidator, mortgagee in possession (or agent therefor), or other similar Person for itself or a substantial portion of its property or business; (vi) one or more non-interlocutory judgments, non-interlocutory orders, decrees or arbitration awards is entered against Reorganized TXCO involving in the aggregate a liability (to the extent not covered by independent third-party insurance as to which the insurer has not denied coverage) as to any single or related series of transactions, incidents or conditions, of $10,000,000 or more, and the same shall remain unsatisfied, unvacated and unstayed pending appeal for a period of 60 consecutive days after the entry thereof; or (vii) any default by Reorganized TXCO under any other existing secured indebtedness.

2782939.1

(f) **Call Rights** – Subject to providing each holder of the Senior Secured Convertible Notes two weeks written notice, Reorganized TXCO shall have the right, in its sole and absolute discretion, to prepay or repay in whole or in part the obligations under the Senior Secured Convertible Notes at any time while the Senior Secured Convertible Notes remains outstanding by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g) **Security** – The Senior Secured Convertible Notes shall be secured by a lien on substantially all of the property of Reorganized TXCO, junior to the liens on such property of Western National Bank, the Consenting Senior Mineral Lien Claimants Note, the Non-Consenting Senior Mineral Lien Claimants Notes, the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Notes, and the Exit Facility, and senior to the liens on such property of the First Lien Notes, the Second Lien Notes, the Non-Consenting Junior Mineral Lien Claimants Notes and the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes.

(h) **Conversion to Equity** – Any holder of the Senior Secured Convertible Notes shall have the right, at any time, at the holder's option, to convert the then outstanding principal and accrued interest owed to such holder to New Common Stock at a conversion ratio of 1 share of New Common Stock for each $1.00 of principal and accrued interest owed to such holder under its Senior Secured Convertible Note, which ratio shall be subject to adjustment as provided below as a result of an adjustment in the then effective conversion price.

(i) **Anti-dilution Protection** – In the event of any stock splits, stock dividends, reorganizations, and the like, there will be a proportional adjustment in the conversion price and the number of shares of New Common Stock into which the Senior Secured Convertible Notes are convertible to the extent necessary to prevent dilution of the holder's conversion rights.

(j) **Intercreditor Agreement** – The Senior Secured Convertible Notes shall be subject to the terms and provisions of the New Intercreditor Agreement.

(k) **Governing Law** – New York

2782939.1

# EXHIBIT B: CONVERTIBLE PREFERRED A SHARES

Issuer:                  Reorganized TXCO ("Company")

Securities:          Class A Convertible Preferred Shares (the "Shares"), having a par value of $0.01 per share and a liquidation value of $1.00 per Share (the "Liquidation Value").

Total Shares:       Pursuant to the Amended Governance Documents, the Company will authorize, and will at all times after the Effective Date reserve and keep available out of its authorized but unissued Class A Convertible Preferred Shares, a sufficient number of Shares as may be required for the issuance of Shares contemplated by the Plan, including the Additional Class A Convertible Preferred Shares that may be issued in the discretion of Reorganized TXCO on or after the Effective Date.

Dividends:          Cumulative preferred dividends accruing at a rate of 5% per annum on the sum of the Liquidation Value. As long as any Shares remain outstanding, the Company will not redeem or make any distributions with respect to any of its equity securities other than the Shares without the consent of the holders of at least 70% of the aggregate Shares outstanding. The Shares will participate on an as-if-converted basis in any dividends paid by the Company with respect to its common stock.

Conversion:        Each holder of Shares will have the option at any time and from time to time to convert all or any portion of its Shares into New Common Stock at a conversion ratio of one share of New Common Stock for each Share to be converted, which ratio shall be subject to adjustment as provided below as a result of an adjustment in the then effective conversion price. Upon conversion, the converting holder will be entitled to receive (i) the New Common Stock into which the converted Shares are then convertible, and (ii) all accrued and unpaid dividends on the converted Shares through the date of conversion (payable, at the Company's option, in cash or additional shares of New Common Stock).

Mandatory
Conversion:       All outstanding Shares will automatically convert upon the consummation of a "Qualified Public Offering" as defined in the Amended Governance Documents

Anti-dilution
Protection:        Subject in each case to standard exceptions, the holders will be entitled to customary weighted-average anti-dilution protection with respect to issuances or deemed issuances of common stock (or warrants, options, or other rights to acquire the Company's common stock or securities convertible into the Company's common stock) at a price per share less than the conversion price then in effect. In the event of any stock splits,

stock dividends, reorganizations, and the like, there will be a proportional adjustment in the conversion price and the number of shares of New Common Stock into which the Shares are convertible to the extent necessary to prevent dilution of the Share's conversion rights.

**Liquidation Preference:**

Upon a liquidation, dissolution, or winding up of the Company (whether voluntary or involuntary), the Shares will be entitled to be paid, prior to any distributions to the Company's common stock and Class B Convertible Preferred Shares, a liquidation preference equal to the greater of: (i) its Liquidation Value (together with all accrued and unpaid dividends thereon) and (ii) the amount that the holders would be entitled to receive in such liquidation event in respect of the common stock into which the Shares are then convertible.

**Voting Rights:**

Holders of the Shares will have the right to vote with the holders of New Common Stock on all matters, on an as if converted basis. The holders of at least 70% of the aggregate number of Shares outstanding will have the right to approve any merger, sale of all or substantially all of the assets of the Company, the issuance of any securities having rights, preferences or privileges senior to or on parity with the Shares or any amendment to the Certificate of Incorporation or By-Laws of the Company affecting the rights of the holders of Shares.

**Registration Rights:**

With respect to the shares of New Common Stock issued or issuable upon conversion of the Shares (the "Registrable Shares"), the holders will be entitled to the following customary registration rights: (i) after the Company's initial public offering, at least one long-form demand registration, (ii) unlimited S-2 and S-3 (or other short form) demand registrations, if available, and (iii) "piggyback" registration rights with respect to all other Company registrations, subject to customary "cutback" amounts by the underwriters. All registration expenses (other than underwriting discounts and commissions) will be borne by the Company in any demand or piggyback registration.

**Approved Sales/ Drag-Along:**

In the event that holders of at least 70% of the Company's aggregate outstanding Convertible Preferred A Shares and the holders of at least 70% of the Company's aggregate outstanding Convertible Preferred B Shares (the "Triggering Holders") approve a sale of the Company, whether by way of merger, consolidation, sale of all or substantially all assets, or otherwise (each, an "Approved Sale"), or the Triggering Holders agree to sell their Shares to a third party (each, a "Transfer"), each holder of Shares shall, if requested by the Triggering Holders, consent to and vote for such Approved Sale and, if applicable, and if requested by the Triggering Holders, shall sell or convert its Shares in connection with such Approved Sale or Transfer.

71

**EXHIBIT C: CONSENTING SENIOR MINERAL LIEN CLAIMANTS NOTE**

The Consenting Senior Mineral Lien Claimants Note shall be issued to the Consenting Senior Mineral Lien Claimants Creditor Trust and shall include the following principal terms and conditions:

(a)   ***Principal Amount*** – The total amount of the Net Allowed Senior Mineral Lien Claims held by Senior Mineral Lien Claimants who elect to receive a beneficial interest in the Consenting Senior Mineral Lien Claimants Creditor Trust and whose Class accepts the Plan (a "Consenting Mineral Lien Class") plus (ii) the amount of any Net Allowed Senior Mineral Lien Claims held by Consenting Mineral Lien Claimants who elect to receive a beneficial interest in the Consenting Senior Mineral Lien Claimants Creditor Trust and who vote to accept the Plan where their Class does not accept the Plan.

(b)   ***Maturity*** – Due and payable in full on the first month following sixty (60) months after the Effective Date

(c)   ***Interest*** – From the Effective Date through the final maturity date, 3% per annum.

(d)   ***Interest Payments*** – Interest shall be capitalized and added to the principal amount of the Consenting Senior Mineral Lien Claimants Note on an annual basis, provided, however, that, commencing on the first annual payment date, 2% of accrued interest on the Consenting Senior Mineral Lien Claimants Note shall be paid in cash, on an annual basis, in arrears.

(e)   ***Amortization Payments*** – Absent an Event of Default,[2] no principal payments shall be due prior to the final maturity date of the Consenting Senior Mineral Lien

---

2 "Events of Default" are:  (a) the failure of Reorganized TXCO to pay, when and as required to be paid, any amount due herein within ten calendar days after the same becomes due and payable; (b) Reorganized TXCO (i) generally fails to pay, or admits in writing its inability to pay, its debts as they become due, subject to applicable grace periods, if any, whether at stated maturity or otherwise; (ii) commences any insolvency proceedings with respect to itself; or (iii) takes any action to effectuate or authorize any of the foregoing; (c) any involuntary insolvency proceeding is commenced or filed against Reorganized TXCO, or any writ, judgment, warrant of attachment, execution or similar process, is issued or levied against all or a substantial part Reorganized TXCO's property, and any such proceeding or petition shall not be dismissed or stayed, or such writ, judgment, warrant of attachment, execution or similar process shall not be released, vacated or fully bonded within 60 days after commencement, filing or levy; (d) Reorganized TXCO files an answer admitting the material allegations of a petition against it in any insolvency proceeding, or an order for relief (or similar order under non-U.S. law) is ordered in any insolvency proceeding; (e) Reorganized TXCO consents to the appointment of a receiver, trustee, custodian, conservator, liquidator, mortgagee in possession (or agent therefor), or other similar Person for itself or a substantial portion of its property or business; (f) one or more non-interlocutory judgments, non-interlocutory orders, decrees or arbitration awards is entered against Reorganized TXCO involving in the aggregate a liability (to the extent not covered by

Claimants Note. Upon an Event of Default, the principal balance of the Consenting Senior Mineral Lien Claimants Note shall be due in full.

(f) **_Call Rights_** – Subject to two weeks written notice, Reorganized TXCO shall have the right, in its sole and absolute discretion, to prepay or repay in whole or in part the obligations under the Consenting Senior Mineral Lien Claimants Note at any time while the Consenting Senior Mineral Lien Claimants Note remains outstanding by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g) **_Security_** – The Consenting Senior Mineral Lien Claimants Note shall be secured by a lien on all properties subject to the liens of the Consenting Senior Mineral Lien Claimants, junior to the lien on such properties of the applicable Non-Consenting Senior Mineral Lien Claimants Notes and Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Notes, and senior to all other liens on such properties (collectively the "<u>Consenting Senior Mineral Lien Claimants Collateral</u>").

(h) **_Collateral Substitution_** – The trustee shall consent to the sale, transfer or substitution of any Consenting Senior Mineral Lien Claimants Collateral so long as the assets received in the transaction equal or exceed the value of the assets sold, transferred or substituted.

(i) **Governing Law** – New York

---

independent third-party insurance as to which the insurer has not denied coverage) as to any single or related series of transactions, incidents or conditions, of $10,000,000 or more, and the same shall remain unsatisfied, unvacated and unstayed pending appeal for a period of 60 consecutive days after the entry thereof; or (g) a payment default by Reorganized TXCO under any other existing secured indebtedness.

2782939.1

**EXHIBIT D: NON-CONSENTING SENIOR MINERAL LIEN CLAIMANTS NOTE**

Each Non-Consenting Senior Mineral Claimants Note shall be issued to the applicable Creditor Trust and shall include the following principal terms and conditions:

(a)     *Principal Amount* – Each Non-Consenting Senior Mineral Lien Claimants Note shall have a principal amount equal to the lesser of (i) the total amount of all Allowed Non-Consenting Senior Mineral Liens against the property at issue and (ii) the value of the property securing the Allowed Non-Consenting Senior Mineral Lien Claims.

(b)     *Maturity* – Due and payable in full on the first month following sixty (60) months after the Effective Date.

(c)     *Interest* – From the Effective Date through the final maturity date, 2% per annum.

(d)     *Interest Payments* – Interest shall be capitalized and added to the principal amount of the Non-Consenting Senior Mineral Lien Claimants Note on an annual basis.

(e)     *Amortization Payments* – Absent an Event of Default,3 no principal payments shall be due prior to the final maturity date of the Non-Consenting Senior Mineral Lien Claimants Note.  Upon an Event of Default, the principal balance of the Non-Consenting Senior Mineral Lien Claimants Note shall be due in full.

(f)     *Call Rights* – Subject to two weeks written notice, Reorganized TXCO shall have the right, in its sole and absolute discretion, to prepay or repay in whole or in part the obligations under any Non-Consenting Senior Mineral Lien Claimants Note at any time while a Non-Consenting Senior Mineral Lien Claimants Note remains outstanding by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g)     *Security* – Each Non-Consenting Senior Mineral Lien Claimants Note shall be secured by a lien on the property subject to the liens of the applicable Non-Consenting Senior Mineral Lien Claimants, pari passu with the liens of any Section 1111(b) Senior Non-Consenting Mineral Lien Claimants Notes on such property, and senior to all other liens on such property (collectively the "Non-Consenting Senior Mineral Lien Claimants Collateral").

(h)     *Collateral Substitution* – The trustee shall consent to the sale, transfer or substitution of any Non-Consenting Senior Mineral Lien Claimants Collateral so long as the assets received in the transaction equal or exceed the value of the assets sold, transferred or substituted.

(i)     *Governing La*w – New York

---

3 "Event of Default" shall have the same meaning ascribed to Events of Default under the Consenting Senior Mineral Lien Claimants Note.

## EXHIBIT E: NON-CONSENTING SECTION 1111(B)
## SENIOR MINERAL LIEN CLAIMANTS NOTE

Each Non-Consenting Section 1111(b) Senior Mineral Claimants Note shall be issued to the applicable Creditor Trust and shall include the following principal terms and conditions:

(a)  *Principal Amount* – Each Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note shall have a principal amount equal to the total amount of all Allowed Non-Consenting Section 1111(b) Senior Mineral Liens against the property at issue.

(b)  *Maturity* – Due and payable in full on the first month following sixty (60) months after the Effective Date.

(c)  *Interest* – From the Effective Date through the final maturity date, 2% per annum.

(d)  *Interest Payments* – Interest shall be capitalized and added to the principal amount of the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note on an annual basis.

(e)  *Amortization Payments* – Absent an Event of Default,[4] no principal payments shall be due prior to the final maturity date of the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note.  Upon an Event of Default, the principal balance of the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note shall be due in full.

(f)  *Call Rights* – Subject to two weeks written notice, Reorganized TXCO shall have the right, in their sole and absolute discretion, to prepay or repay in whole or in part the obligations under any Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note at any time while a Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note remains outstanding by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g)  *Security* – Each Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Note shall be secured by a lien on the property subject to the liens of the applicable Non-Consenting Section 1111(b) Senior Mineral Lien Claimants, (i) pari passu with any Non-Consenting Senior Mineral Lien Claimants Notes that have a lien on such property, limited, however, to that portion of such Non-Consenting Senior Mineral Lien Claimants Notes that would be Allowed with respect to such property if the Claimants thereunder had timely elected the application of Section 1111(b) of the Bankruptcy Code with respect thereto, and (ii) otherwise senior to all other liens on such property, including any portion of Non-Consenting Senior Mineral Lien Claimants Notes not pari passu in

---

[4] "Event of Default" shall have the same meaning ascribed to Events of Default under the Consenting Senior Mineral Lien Claimants Note.

2782939.1

accordance with the preceding clause (i) (collectively the "<u>Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Collateral</u>").

(h)     ***Collateral Substitution*** – The trustee shall consent to the sale, transfer or substitution of any Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Collateral so long as the assets received in the transaction equal or exceed the value of the assets sold, transferred or substituted.

(i)     ***Governing Law*** – New York

76

# EXHIBIT F: FIRST LIEN NOTES

The First Lien Notes shall include the following principal terms and conditions:

(a) **Principal Amount** – $50 million

(b) **Maturity** – Due and payable in full on the first month following sixty (60) months after the Effective Date

(c) **Interest** – From the Effective Date through the final maturity date, 4% per annum.

(d) **Interest Payments** – All interest shall be paid in cash monthly in arrears commencing on the first business day of the first calendar month following the Effective Date.

(e) **Amortization Payments** – Absent an Event of Default,[5] no principal payments shall be due prior to the final maturity date of the First Lien Notes. Upon an Event of Default, the principal balance of the note shall be due in full.

(f) **Call Rights** – Reorganized TXCO shall have the right, in its sole and absolute discretion, to prepay or repay in whole or in part the obligations under the First Lien Notes at any time by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g) **Security** – The First Lien Notes shall be secured by a lien on substantially all of the property of Reorganized TXCO, senior to the liens on such property securing Western National Bank, the Second Lien Notes (or, as and to the extent set forth in Section 5.1(c) of the Plan, *pari passu* with the liens securing the Second Lien Notes), the Non-Consenting Junior Mineral Lien Claimants Notes and the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes, and junior to the liens securing the Exit Facility, the Senior Secured Convertible Notes, the Consenting Senior Mineral Lien Claimants Note, the Non-Consenting Senior Mineral Lien Claimants Notes and the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Notes.

(h) **Intercreditor Agreement** – The First Lien Notes shall be subject to the terms and provisions of the New Intercreditor Agreement.

(i) **Governing Law** – New York

---

[5] "Event of Default" shall have the same meaning ascribed to Events of Default under the Consenting Senior Mineral Lien Claimants Note.

2782939.1

# EXHIBIT G: FIRST LIEN ALTERNATIVE NOTES

The First Lien Alternative Notes shall include the following principal terms and conditions:

(a) **Principal Amount** – $50 million

(b) *Maturity* – Due and payable in full on the first month following sixty (60) months after the Effective Date

(c) *Interest* – From the Effective Date through the final maturity date, 4% per annum.

(d) *Interest Payments* – All interest shall be paid in cash monthly in arrears commencing on the first business day of the first calendar month following the Effective Date.

(e) *Amortization Payments* – Absent an Event of Default,[6] no principal payments shall be due prior to the final maturity date of the First Lien Alternative Notes. Upon an Event of Default, the principal balance of the note shall be due in full.

(f) *Call Rights* – Reorganized TXCO shall have the right, in its sole and absolute discretion, to prepay or repay in whole or in part the obligations under the First Lien Alternative Notes at any time by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g) *Security* – The First Lien Alternative Notes shall be secured by a lien on all pre-petition property of Reorganized TXCO in which the Revolver Lenders held a valid, perfected and unavoidable lien, and in the post-petition proceeds thereof, senior to the liens on such property securing the Second Lien Notes (or, as and to the extent set forth in Section 5.1(c) of the Plan, *pari passu* with the liens securing the Second Lien Notes), the Non-Consenting Junior Mineral Lien Claimants Notes and the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes, and junior to the liens on such property securing Western National Bank, the Exit Facility, the Senior Secured Convertible Notes, the Consenting Senior Mineral Lien Claimants Note, the Non-Consenting Senior Mineral Lien Claimants Notes and the Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Notes.

(h) *Intercreditor Agreement* – The First Lien Alternative Notes shall be subject to the terms and provisions of the New Intercreditor Agreement.

(i) *Governing Law* – New York

---

6 "Event of Default" shall have the same meaning ascribed to Events of Default under the Consenting Senior Mineral Lien Claimants Note.

2782939.1

## EXHIBIT H: NEW COMMON STOCK

| | |
|---|---|
| Issuer: | Reorganized TXCO (the "Company") |
| State of Incorporation: | Delaware |

Securities:  New Common Stock. Pursuant to the Amended Governance Documents, the Company will authorize, and will at all times after the Effective Date reserve and keep available out of its authorized but unissued shares of New Common Stock, a sufficient number of shares as may be required for the issuance of New Common Stock under the Plan, including New Common Stock issuable upon the conversion of all debt and equity securities of the Company that are convertible into New Common Stock., as contemplated by the Plan.

Voting Rights:  Except as otherwise provided by Delaware law or the terms applicable to the Convertible Preferred A Shares or the Convertible Preferred B Shares providing for separate class or series voting rights with respect to such preferred shares, the holders of the New Common Stock and the holders of the Convertible Preferred A Shares and the Convertible Preferred B Shares will vote together as a single class. Each holder of New Common Stock shall have one vote per share of New Common Stock held.

Approved Sale/ Drag-Along:  In the event that the holders of at least 70% of the Company's aggregate outstanding Convertible Preferred A Shares and the holders of at least 70% of the Company's aggregate outstanding Convertible Preferred B Shares (the "Triggering Holders") approve a sale of the Company, whether by way of merger, consolidation, sale of all or substantially all assets, or otherwise (each, an "Approved Sale"), or the Triggering Holders agree to sell their preferred shares to a third party (each, a "Transfer"), each holder of New Common Stock shall, if requested by the Triggering Holders, consent to and vote for such Approved Sale and, if applicable, and if requested by the Triggering Holders, shall sell or convert its New Common Stock in connection with such Approved Sale or Transfer.

## EXHIBIT I: CONVERTIBLE PREFERRED B SHARES

Issuer:                    Reorganized TXCO ("Company")

Securities:                Class B Convertible Preferred Shares (the "Shares"), having a par value of
                           $0.01 per share and a liquidation value of $1.00 per share (the
                           "Liquidation Value").

Total Shares:              Pursuant to the Amended Governance Documents, the Company will
                           authorize, and will at all times after the Effective Date reserve and keep
                           available out of its authorized but unissued Class B Convertible Preferred
                           Shares, a sufficient number of Shares as may be required for the issuance
                           of Shares contemplated by the Plan

Dividends:                 Cumulative preferred dividends accruing at a rate of 5% per annum on the
                           sum of the Liquidation Value.  As long as any Shares remain outstanding,
                           the Company will not redeem or make any distributions with respect to
                           any of its equity securities other than the Shares or the Company's Class A
                           Convertible Preferred Shares without the consent of the holders of at least
                           70% of the aggregate outstanding Shares.  The Shares will participate on
                           an as-if-converted basis in any dividends paid by the Company with
                           respect to its common stock.

Conversion:                Each holder of Shares will have the option at any time and from time to
                           time to convert all or any portion of its Shares into New Common Stock at
                           a conversion ratio of 0.77 shares of New Common Stock for each Share,
                           which ratio shall be subject to adjustment as provided below as a result of
                           an adjustment in the then effective conversion price.  Upon conversion,
                           the converting holder will be entitled to receive (i) the New  Common
                           Stock into which the converted Shares are then convertible, and (ii) all
                           accrued and unpaid dividends on the converted Shares through the date of
                           conversion (payable, at the Company's option, in cash or additional shares
                           of New Common Stock).

Mandatory
Conversion:                All outstanding Shares will automatically convert upon the consummation
                           of a "Qualified Public Offering" as defined in the Amended Governance
                           Documents.

Anti-dilution
Protection:                Subject in each case to standard exceptions, the holders will be entitled to
                           customary weighted-average anti-dilution protection with respect to
                           issuances or deemed issuances of the Company's common stock (or
                           warrants, options, or other rights to acquire the Company's common stock
                           or securities convertible into the Company's common stock) at a price per
                           share less than the conversion price then in effect.  In the event of any
                           stock splits, stock dividends, reorganizations, and the like, there will be a

proportional adjustment in the conversion price and the number of shares of New Common Stock into which the Shares are convertible to the extent necessary to prevent dilution of the Share's conversion rights.

Liquidation
Preference:

Upon a liquidation, dissolution, or winding up of the Company (whether voluntary or involuntary), the Shares will be entitled to be paid, prior to any distributions to the Company's common stock, but only after redemption in full of the Company's Class A Convertible Preferred Shares, a liquidation preference equal to the greater of: (i) its Liquidation Value (together with all accrued and unpaid dividends thereon) and (ii) the amount that the holders would be entitled to receive in such liquidation event in respect of the common stock into which the Shares are then convertible.

Voting Rights:

Holders of the Shares will have the right to vote with the holders of New Common Stock on all matters, on an as if converted basis. The holders of at least 70% of the aggregate number of Shares outstanding will have the right to approve any merger, sale of all or substantially all of the assets of the Company, the issuance of any securities having rights, preferences or privileges senior to or on parity with the Shares or any amendment to the Certificate of Incorporation or By-Laws of the Company affecting the rights of the holders of Shares.

Registration Rights:

With respect to the shares of New Common Stock issued or issuable upon conversion of the Shares (the "Registrable Shares"), the holders will be entitled to the following customary registration rights: (i) after the Company's initial public offering, at least one long-form demand registration, (ii) unlimited S-2 and S-3 (or other short form) demand registrations, if available, and (iii) "piggyback" registration rights with respect to all other Company registrations, subject to customary "cutback" amounts by the underwriters. All registration expenses (other than underwriting discounts and commissions) will be borne by the Company in any demand or piggyback registration.

Approved Sales/
Drag-Along:

In the event that the holders of at least 70% of the Company's aggregate outstanding Convertible Preferred A Shares and the holders of at least 70% of the Company's aggregate outstanding Convertible Preferred B Shares (the "Triggering Holders") approve a sale of the Company, whether by way of merger, consolidation, sale of all or substantially all assets, or otherwise (each, an "Approved Sale"), or the Triggering Holders agree to sell their Shares to a third party (each, a "Transfer"), each holder of Shares shall, if requested by the Triggering Holders, consent to and vote for such Approved Sale and, if applicable, and if requested by the Triggering Holders, shall sell or convert its Shares in connection with such Approved Sale or Transfer.

81

**EXHIBIT J: SECOND LIEN NOTES**

The Second Lien Notes shall include the following principal terms and conditions:

(a)     *Principal Amount* – The notes shall be equal to 35% of the full amount of the claims of the Term Loan Lenders.

(b)     *Maturity* – Due and payable in full on the first month following sixty (60) months after the Effective Date (the "<u>Final Maturity Date</u>").

(c)     *Interest* – From the Effective Date through the final maturity date, 5% per annum.

(d)     *Interest Payments* – All interest shall be paid in cash monthly in arrears commencing on the first business day of the first calendar month following the Effective Date.

(e)     *Amortization Payments* – Absent an Event of Default,7 no principal payments shall be due prior to the Final Maturity Date. Upon an Event of Default, the principal balance of the note shall be due in full.

(f)     *Call Rights* – Reorganized TXCO shall have the right, in its sole and absolute discretion, to prepay or repay in whole or in part the obligations under the Term Lender Note at any time after the earlier of (a) the Final Maturity Date, and (b) the date the First Lien Notes or First Lien Alternative Notes, as applicable, are paid in full. The obligations shall be prepaid or repaid in whole or in part by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g)     *Security* – The Second Lien Notes shall be secured by a lien on substantially all of the property of Reorganized TXCO, which lien will be senior to the lien on such property of the Non-Consenting Junior Mineral Lien Claimants Notes and the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes, and junior to all other liens on such property (or, as and to the extent set forth in Section 5.1(c) of the Plan, *pari passu* with the liens securing the First Lien Notes or First Lien Alternative Notes, as applicable, and otherwise junior to all other liens on such property).

(h)     *Intercreditor Agreement* – The Second Lien Notes shall be subject to the terms and provisions of the New Intercreditor Agreement.

(i)     **Governing Law** – New York

---

7 "Event of Default" shall have the same meaning ascribed to Events of Default under the Consenting Senior Mineral Lien Claimants Note.

2782939.1

# EXHIBIT K: CONSENTING JUNIOR MINERAL LIEN CLAIMANTS NOTE

The Consenting Junior Mineral Claimants Note shall include the following principal terms and conditions:

(a) ***Principal Amount*** – Twenty percent of the total amount of the Net Allowed Junior Mineral Lien Claims held by Junior Mineral Lien Claimants who vote in favor of the Plan.

(b) ***Maturity*** – Due and payable in full on the first month following sixty (60) months after the Effective Date.

(c) ***Interest*** – From the Effective Date through the final maturity date, 4% per annum.

(d) ***Interest Payments*** – Interest shall be capitalized and added to the principal amount of the Consenting Junior Mineral Lien Claimants Note on an annual basis.

(e) ***Amortization Payments*** – Absent an Event of Default,[8] no principal or interest payments shall be due prior to the final maturity date of the Consenting Junior Mineral Lien Claimants Note. Upon an Event of Default, the principal balance of the Consenting Junior Mineral Lien Claimants Note shall be due in full.

(f) ***Call Rights*** – Reorganized TXCO shall have the right, in its sole and absolute discretion, to prepay or repay in whole or in part the obligations under the Consenting Junior Mineral Lien Claimants Note at any time while the Consenting Junior Mineral Lien Claimants Note remains outstanding by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g) ***Security*** – The Consenting Junior Mineral Lien Claimants Note shall be unsecured.

(h) ***Governing Law*** – New York

---

[8] "Event of Default" shall have the same meaning ascribed to Events of Default under the Consenting Senior Mineral Lien Claimants Note.

2782939.1

# EXHIBIT L: NON-CONSENTING JUNIOR MINERAL LIEN CLAIMANTS NOTE

Each Non-Consenting Junior Mineral Claimants Note shall include the following principal terms and conditions:

(a) **_Principal Amount_** – The lesser of (i) the total of all Allowed Non-Consenting Junior Mineral Lien Claims against such property or (ii) the value of the property securing the Allowed Non-Consenting Junior Mineral Lien Claims.

(b) **_Maturity_** – Due and payable in full on the first month following sixty (60) months after the Effective Date.

(c) **_Interest_** – From the Effective Date through the final maturity date, 3% per annum.

(d) **_Interest Payments_** – Interest shall be paid in cash on the later of (i) the first business day of the first month following twelve (12) months after the Effective Date or (ii) twelve months after the date of execution by Reorganized TXCO of the applicable Non-Consenting Junior Mineral Claimants Note and annually thereafter until the maturity date.

(e) **_Amortization Payments_** – Absent an Event of Default,9 no principal payments shall be due prior to the final maturity date of the Non-Consenting Junior Mineral Lien Claimants Note. Upon an Event of Default, the principal balance of the Non-Consenting Junior Mineral Lien Claimants Note shall be due in full.

(f) **_Call Rights_** – Reorganized TXCO shall have the right, in their sole and absolute discretion, to prepay or repay in whole or in part the obligations under any Non-Consenting Junior Mineral Lien Claimants Note at any time while a Non-Consenting Junior Mineral Lien Claimants Note remains outstanding by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g) **_Security_** – Each Non-Consenting Junior Mineral Lien Claimants Note shall be secured by a lien on the property subject to liens of the applicable Non-Consenting Junior Mineral Lien Claimants, pari passu with any Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes that have a lien on such property, limited, however, to that portion of such Non-Consenting Junior Mineral Lien Claimants Notes that would be Allowed with respect to such property if the Claimants had timely elected the application of Section 1111(b) of the Bankruptcy Code with respect thereto, and (ii) otherwise junior to all other liens on such properties (the "<u>Non-Consenting Junior Mineral Lien Claimants Collateral</u>").

(h) **_Collateral Substitution_** – The trustee shall consent to the sale, transfer or substitution of any Non-Consenting Junior Mineral Lien Claimants Collateral so

---

9 "Event of Default" shall have the same meaning ascribed to Events of Default under the Consenting Senior Mineral Lien Claimants Note.

long as the assets received in the transaction equal or exceed the value of the assets sold, transferred or substituted.

(i) ***Intercreditor Agreement*** – The Non-Consenting Junior Mineral Lien Claimants Notes shall be subject to the terms and provisions of the New Intercreditor Agreement.

(j) ***Governing Law*** – New York

2782939.1

**EXHIBIT M: NON-CONSENTING SECTION 1111(B)
JUNIOR MINERAL LIEN CLAIMANTS NOTE**

Each Non-Consenting Section 1111(b) Junior Mineral Claimants Note shall include the following principal terms and conditions:

(a)     *Principal Amount* – Each Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note shall have a principal amount equal to the total amount of all Allowed Non-Consenting Section 1111(b) Junior Mineral Liens against the property at issue.

(b)     *Maturity* – Due and payable in full on the first month following sixty (60) months after the Effective Date.

(c)     *Interest* – From the Effective Date through the final maturity date, 2% per annum.

(d)     *Interest Payments* – Interest shall be capitalized and added to the principal amount of the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note on an annual basis.

(e)     *Amortization Payments* – Absent an Event of Default,10 no principal payments shall be due prior to the final maturity date of the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note. Upon an Event of Default, the principal balance of the Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note shall be due in full.

(f)     *Call Rights* – Subject to two weeks written notice, Reorganized TXCO shall have the right, in their sole and absolute discretion, to prepay or repay in whole or in part the obligations under any Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note at any time while a Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note remains outstanding by paying the sum of the outstanding principal amount being prepaid or repaid, plus accrued but unpaid interest as of the date of such payment.

(g)     *Security* – Each Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Note shall be secured by a lien on the property subject to the liens of the applicable Non-Consenting Section 1111(b) Junior Mineral Lien Claimants, (i) pari passu with any Non-Consenting Junior Mineral Lien Claimants Notes that have a lien on such property, limited, however, to that portion of such Non-Consenting Junior Mineral Lien Claimants Notes that would be Allowed with respect to such property if the Claimants thereunder had timely elected the application of Section 1111(b) of the Bankruptcy Code with respect thereto, (ii) senior to any portion of such Non-Consenting Junior Mineral Lien Claimants Notes not pari passu in accordance with the preceding clause (i), and (iii)

---

10 "Event of Default" shall have the same meaning ascribed to Events of Default under the Consenting Senior Mineral Lien Claimants Note.

otherwise junior to all other liens on such property (collectively the "<u>Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Collateral</u>").

(h)     ***Collateral Substitution*** – The trustee shall consent to the sale, transfer or substitution of any Non-Consenting Section 1111(b) Senior Mineral Lien Claimants Collateral so long as the assets received in the transaction equal or exceed the value of the assets sold, transferred or substituted.

(i)     ***Intercreditor Agreement*** – The Non-Consenting Section 1111(b) Junior Mineral Lien Claimants Notes shall be subject to the terms and provisions of the New Intercreditor Agreement

(j)     ***Governing Law*** – New York.

2782939.1