

The relief described hereinbelow is SO ORDERED.

Signed January 27, 2010.

_____
Ronald B. King
United States Chief Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | **CHAPTER 11** |
| | § | |
| **TXCO RESOURCES INC.**, *et al.*, | § | **Case No. 09-51807** |
| | § | |
| Debtors. | § | **Jointly Administered** |

### ORDER CONFIRMING SECOND AMENDED PLAN OF REORGANIZATION FOR TXCO RESOURCES INC., ET AL., DEBTORS AND DEBTORS-IN-POSSESSION BASED ON SALE OF DEBTORS' ASSETS, AS MODIFIED

A HEARING HAVING BEEN COMMENCED BEFORE THE COURT on January 25, 2010, and continuing on January 26, 2010 (the "Confirmation Hearing"), to consider confirmation of the *Second Amended Plan of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession based on Sale of Debtors' Assets, as Modified* (the "Plan"),[1] proposed by TXCO Resources Inc. ("TXCO"), Eagle Pass Well Service, L.L.C. ("Eagle Pass"), Charro Energy, Inc. ("Charro"), Texas Tar Sands Inc. ("Tar Sands"), TXCO Energy Corp.

---

[1] Capitalized terms used herein without definition have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

("Energy"), Output Acquisition Corp. ("Output"), OPEX Energy, LLC ("OPEX"), PPL Operating, Inc. ("PPL"), Maverick Gas Marketing, Ltd. ("Maverick Gas"), and Maverick-Dimmit Pipeline, Ltd. ("Maverick-Dimmit") (collectively, the "Debtors" or "Companies"), Debtors and Debtors-in-Possession in the above-captioned jointly administered chapter 11 reorganization cases pending before the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court");

IT FURTHER APPEARING TO THE COURT that the Debtors filed on December 18, 2009, the *First Amended Plans of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession Based on (A) Sale of Debtors' Assets or, in the Event the Debtors Do Not Close on the Sale of the Debtors' Assets, (B) Reorganization of Debtors' Operations* [Docket No. 946] (the "Initial Plan");

IT FURTHER APPEARING TO THE COURT that the *First Amended Disclosure Statement Regarding Plans of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession Based on (A) Sale of Debtors' Assets or, in the Event the Debtors Do Not Close on the Sale of the Debtors' Assets, (B) Reorganization of Debtors' Operations* [Docket No. 948] (the "Disclosure Statement") has been previously approved by the Court, pursuant to the *Order Approving (I) Disclosure Statement; (II) Record Date, Voting Deadline and Procedures for Temporary Allowance of Certain Claims; (III) Procedures for Filing Objections to Plans; (IV) Solicitation Procedures for Confirmation; and (V) Hearing Date to Consider Confirmation of Plans*, dated December 18, 2009 [Docket No. 945] (the "Disclosure Statement Order");

IT FURTHER APPEARING TO THE COURT that solicitation and noticing procedures with respect to the Initial Plan have been approved by the Court in the Disclosure Statement Order;

2

IT FURTHER APPEARING TO THE COURT that the Debtors have filed with the Court several Plan Supplements including (a) Plan Schedule III [Docket No. 1084] relating to Retained Causes of Action, (b) Plan Schedule IV [Docket No. 1083] relating to Rejected Executory Contracts and Unexpired Leases, (c) Plan Schedule V [Docket No. 1082] relating to Assumed Executory Contracts and Unexpired Leases, (d) Plan Schedule VI [Docket No. 1045] setting forth the Debtors' Oil and Gas Leases, and (e) Plan Schedule VII [Docket No. 1171] relating to the Liquidating Trust Agreement;

IT FURTHER APPEARING TO THE COURT that the Debtors have filed the *Second Amended Plans of Reorganization for TXCO Resources Inc., et al. Debtors and Debtors-in-Possession based on (A) Sale of Debtors' Assets or, in the event the Debtors Do Not Close on the Sale of the Debtors' Assets, (B) Reorganization of Debtors' Operations* [Docket No. 1183](the "Second Plan") wherein the Debtors proposed certain modifications to the Initial Plan;

IT FURTHER APPEARING TO THE COURT that the Debtors have filed the Plan, wherein the Debtors proposed further modifications to the Second Plan based on agreements with various parties and the rulings of the Court at the Confirmation Hearing;

IT FURTHER APPEARING TO THE COURT that the deadline for filing objections to the Initial Plan has passed and that objections have been filed by Capital Well Service, LLC, Sundown Energy LP, Fayette County, WRJ Oil & Gas, L.P., EnCana Oil & Gas (USA) Inc., St. Mary Land and Exploration Company, Baker Hughes Oilfield Operations, Inc., Schlumberger Technology Corporation, Total Production Services, Inc., X-Chem, Inc., Millennium E&P Resource Fund I, LLC, Patterson-UTI Drilling Company, LLC, Newmex Energy (USA) Inc., the MTE Claimants Group, 3-S Services, Stinger Wellhead Protection, Inc., Specialty Rental Tools & Supply, LLC, Schooner Petroleum Services, Inc., A-Z Terminal Corporation, Perforating

Services International, LLC, Top Notch Energy Services, Inc., Texas Southern Crane Services, LLC, the Ad Hoc Mineral Lien Group,[2] Western National Bank, the Texas Comptroller of Public Accounts, the Official Committee of Unsecured Creditors and the United States Trustee;

IT FURTHER APPEARING TO THE COURT that the deadline to file Default Notices in connection with the Debtors' transfer of their interests in the Mineral Leases and/or Oil and Gas Leases or the assumption, or the assumption and assignment of executory contracts or unexpired leases has passed and that Default Notices have been filed by Susan C. McCloskey; Apache Corporation; Bryan William Ammann et al.; Cage Minerals, Ltd. et al.; Capital Well Service, LLC; Charles W. Wilson et al.; Ciro Chittim; Continental Resources; Dorothea Chittim Oppenheimer; Douglas M. Vander Ploeg et al.; Elizabeth Wright Bondurant; Gary L. Box et al.; James C. Chittim; James A. Morrill, Executor of the Estate of Jack R. Chittim; JPMorgan Chase Bank, N.A., Trustee of the Ciro Chittim Testamentary Trust; JPMorgan Chase Bank, N.A., Trustee of the Dorothea C. Chittim Testamentary Trust; JPMorgan Chase Bank, N.A., Trustee of the James C. Chittim Testamentary Trust; JPMorgan Chase Bank, N.A., Trustee of the Jack Robert Chittim Testamentary Trust; JPMorgan Chase Bank, N.A., Trustee of the Tao Chittim Bennett Testamentary Trust; Millennium E&P Resource Fund I, LLC; Moro Creek Ranch; PGE Mineral Properties; Sage Energy Company; Tao C. Bennett; Mary Jane C. Fletcher; Penny C. Morrill; and Barbara Callan Chittim, James Callan Chittim, Tao Chittim Bennett and Ciro Chittim;

IT FURTHER APPEARING TO THE COURT that (i) the deadline for casting ballots to accept or reject the Initial Plan has passed; and (ii) Administar Services Group LLC, acting as

---

[2] Ad Hoc Mineral Lien Claimant Group consists of the following entities: Weatherford International; Weatherford US, L.P.; Precision Energy Services, Inc.; Weatherford Artificial Lift Systems, Inc.; Thomas Energy Services D/B/A Thomas Tools; Wood Group Management Services, Inc.; Allis-Chalmers Energy, through its Strata Directional Entity; RPC, Inc. (Thru Tubing Solutions); and BJ Services Company, U.S.A.

voting agent for the balloting permitted for all classes entitled to vote in connection with the Initial Plan, has filed herein the Declaration of Deborah VanSchoor Certifying Voting on, and Tabulation of, Ballots Accepting and Rejecting the Debtors' Plan of Reorganization (the "VanSchoor Declaration");

IT FURTHER APPEARING TO THE COURT that the Debtors have presented testimony, evidence and argument of counsel in support of confirmation of the Plan, and that additional testimony, evidence or argument of counsel has been presented by other parties in interest;

IT FURTHER APPEARING TO THE COURT that the Debtors have settled the objections filed by Capital Well Service, LLC, Sundown Energy LP, Fayette County, WRJ Oil & Gas, L.P., Baker Hughes Oilfield Operations, Inc., Schlumberger Technology Corporation, Total Production Services, Inc., X-Chem, Inc., Patterson-UTI Drilling Company, LLC, Newmex Energy (USA) Inc., the MTE Claimants Group, 3-S Services, Stinger Wellhead Protection, Inc., Specialty Rental Tools & Supply, LLC, Schooner Petroleum Services, Inc., A-Z Terminal Corporation, Perforating Services International, LLC, Top Notch Energy Services, Inc., Texas Southern Crane Services, LLC, the Ad Hoc Mineral Lien Group,[3] Western National Bank, and the Texas Comptroller of Public Accounts and have evidenced such settlement by either including specific language in the Plan or as set forth in this Order;

IT FURTHER APPEARING TO THE COURT that the Debtors have settled certain issues related to the Default Notices filed in connection with the Debtors' transfer of their interests in the Mineral Leases and/or Oil and Gas Leases as filed by Susan C. McCloskey;

---

[3] Ad Hoc Mineral Lien Claimant Group consists of the following entities: Weatherford International; Weatherford US, L.P.; Precision Energy Services, Inc.; Weatherford Artificial Lift Systems, Inc.; Thomas Energy Services D/B/A Thomas Tools; Wood Group Management Services, Inc.; Allis-Chalmers Energy, through its Strata Directional Entity; RPC, Inc. (Thru Tubing Solutions); and BJ Services Company, U.S.A.

5

Apache Corporation; Bryan William Ammann et al.; Cage Minerals, Ltd. et al.; Capital Well Service, LLC; Charles W. Wilson et al.; Ciro Chittim; Continental Resources; Dorothea Chittim Oppenheimer; Douglas M. Vander Ploeg et al.; Elizabeth Wright Bondurant; Gary L. Box et al.; James C. Chittim; James A. Morrill, Executor of the Estate of Jack R. Chittim; JPMorgan Chase Bank, N.A., Trustee of the Ciro Chittim Testamentary Trust; JPMorgan Chase Bank, N.A., Trustee of the Dorothea C. Chittim Testamentary Trust; JPMorgan Chase Bank, N.A., Trustee of the James C. Chittim Testamentary Trust; JPMorgan Chase Bank, N.A., Trustee of the Jack Robert Chittim Testamentary Trust; JPMorgan Chase Bank, N.A., Trustee of the Tao Chittim Bennett Testamentary Trust; Moro Creek Ranch; PGE Mineral Properties;  Sage Energy Company; Tao C. Bennett; Mary Jane C. Fletcher; Penny C. Morrill; and Barbara Callan Chittim, James Callan Chittim, Tao Chittim Bennett and Ciro Chittim as announced on the record at the Confirmation Hearing.

NOW, THEREFORE, based upon the Court's review of (a) the Disclosure Statement, (b) the Initial Plan, (c) the Plan Supplements, (d) the Second Plan, (e) the unresolved objections to confirmation of the Plan, (f) all of the evidence proffered or adduced at, filings in connection with, and arguments of counsel made at, the Confirmation Hearing, and (g) the entire record of the chapter 11 cases; and after due deliberation thereon and good cause appearing therefor, and for the reasons set forth on the record at the Confirmation Hearing,

IT IS HEREBY FOUND AND DETERMINED THAT:[4]

A.　　*Jurisdiction; Venue; Core Proceeding*.　The Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334.　Venue is proper pursuant

---

[4] The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to the proceeding by Fed. R. Bankr. P. 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

2811779.1

to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) over which the Court has exclusive jurisdiction.

B.     *Judicial Notice*. The Court takes judicial notice of the docket of the Debtors' chapter 11 cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed with, all orders entered by, and all evidence and argument made, proffered or adduced at the hearings held before the Court during the pendency of the chapter 11 cases.

C.     *Transmittal and Mailing of Solicitation Materials and Notices*. The solicitation materials and notices prescribed by the Disclosure Statement Order were served in compliance with the Disclosure Statement Order, and such service was adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other deadlines and matters required to be noticed pursuant to the Disclosure Statement Order was given in compliance with the Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice is or shall be required.

D.     *Adequacy of Solicitation Procedures*. All procedures used to distribute the solicitation materials to the appropriate creditors entitled to vote on the Plan and to tabulate the ballots returned by creditors were fair and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order. Votes for acceptance or rejection of the Plan were solicited and cast in good faith, and only after transmittal of a disclosure statement containing adequate information, and otherwise in compliance with 11 U.S.C. §§ 1125 and 1126 and Fed. R. Bankr. P. 3017 and 3018.

E.     *Good Faith Solicitation – 11 U.S.C. § 1125(e)*. Based on the record before the Court in the chapter 11 cases, the Debtors, their respective subsidiaries, the Debtors'

7

Professionals, the DIP Agent, the DIP Lenders, and any of their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel other advisors, successors or assigns, have acted in good faith within the meaning of 11 U.S.C. §§ 1125(e) and 1129(a)(3), and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in 11 U.S.C. § 1125, and entitled to the protections afforded by 11 U.S.C. § 1125(e).

F.     *Impaired Classes that have Voted to Accept or Reject the Plan*.  Under the Initial Plan, Classes 2, 5 and 8 were impaired and, as evidenced by the VanSchoor Declaration, which certified both the method and results of the voting, Classes 2, 5 and 8, including the distinct subclasses set forth under Classes 2 and 5, have voted to accept the Initial Plan pursuant to the requirements of 11 U.S.C. §§ 1124 and 1126.  The terms of the PSA and the Second Plan provide for payment in full to all creditors, including interest thereon.  The Court finds that Classes 2 and 5 are still impaired Classes under the Plan, who voted to accept the Plan.  As further described below, the Court also finds that Class 11A, which was previously deemed to have rejected the Initial Plan, is impaired under the Plan and has voted to accept the Plan. Thus, at least one impaired class of Claims has voted to accept the Plan.  Additionally, the Initial Plan included an administrative convenience class under Class 9; however, the payment in full to all creditors under the PSA and the Plan eliminated the necessity of Class 9, such that any ballots cast in connection with Class 9 were not counted and Class 9 is omitted from the Plan.

G.     *Classes Deemed to Have Accepted or Rejected the Plan*.  Classes 1, 3, 4, 6, 7 and 13 are not impaired under the Plan and are deemed to have accepted the Plan pursuant to

2811779.1

11 U.S.C. § 1126(f). Under the Initial Plan, Classes 10, 11 and 12 were not entitled to receive distributions and were thus deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g). Under the Plan, Classes 11 and 12 will receive payment on behalf of their interests, which is improved treatment for both classes, but is not a material modification requiring the Debtors to solicit the acceptance and/or rejection of the Plan from the holders of Interests in Classes 11 and 12. Class 11A Redeemed Preferred Stock did cast a provisional ballot accepting the Plan, such that an additional impaired Class of Interest has voted to accept the Plan pursuant to the requirements of 11 U.S.C. §§ 1124 and 1126.

H. *Debtors Releases, Exculpations and Injunctions*. The Court hereby finds that each of the release, exculpation and injunction provisions set forth in Article XIV of the Plan is (a) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) an essential means of implementing the Plan pursuant to section 11 U.S.C. § 1123(a)(5); (c) an integral element of the transactions incorporated into the Plan; (d) in the best interests of and confers material benefits upon, the Debtors, their Estates, and their Creditors; (e) important to the overall objectives of the Plan to finally resolve all claims among or against the key parties in interest in the chapter 11 cases with respect to the Debtors; and (f) consistent with 11 U.S.C. §§ 105, 1123 and 1129, and other applicable provisions of the Bankruptcy Code. The record of the Confirmation Hearing and the chapter 11 cases is sufficient to support the release, exculpation, and injunction provisions contained in the Plan.

I. *Plan Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(1)*. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(1).

(i) *Proper Classification – 11 U.S.C. §§ 1122, 1123(a)(1)*. Aside from Administrative Claims and Priority Tax Claims, which need not be classified, the

Plan designates 13 Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate among holders of Claims and Interests. Thus, the Plan satisfies 11 U.S.C. §§ 1122 and 1123(a)(1).

(ii)     *Specify Unimpaired Classes – 11 U.S.C. § 1123(a)(2)*.   Sections 4.1 and 6.3 of the Plan specify that Classes 1, 3, 4, 6, 7 and 13 are unimpaired under the Plan, thereby satisfying 11 U.S.C. § 1123(a)(2).

(iii)     *Specify Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3)*. Sections 4.2, 6.4 and 6.5 of the Plan designate Classes 2, 5, 8, 10, 11 and 12 as impaired; and Section 5.1 specifies the treatment of Claims and Interests in those Classes, thereby satisfying 11 U.S.C. § 1123(a)(3).

(iv)     *No Discrimination – 11 U.S.C. § 1123(a)(4)*.   The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying 11 U.S.C. § 1123(a)(4).

(v)     *Implementation of Plan -- 11 U.S.C. § 1123(a)(5)*.   The Plan provides adequate and proper means for its implementation, thereby satisfying 11 U.S.C. § 1123(a)(5).

(vi)     *Non-Voting Equity Securities – 11 U.S.C. § 1123(a)(6)*.   Section 7.4 of the Plan provides that the Governing Documents for Reorganized TXCO shall be amended to provide for the inclusion of provisions prohibiting the issuance of nonvoting equity securities. Thus, the requirements of 11 U.S.C. § 1123(a)(6) are satisfied.

(vii)     *Selection of Officers and Directors – 11 U.S.C. § 1123(a)(7)*.   At the Confirmation Hearing, the Debtors properly and adequately disclosed the identity and affiliations of all individuals proposed to serve on or after the Effective Date as officers or directors of Reorganized TXCO (subject to replacement or removal in accordance with the terms of the Governing Documents of Reorganized TXCO), and the manner of selection and appointment of such individuals is consistent with the interests of holders of Claims and Interests and with public policy and, accordingly satisfies the requirements of 11 U.S.C. § 1123(a)(7).

(viii)     *Additional Plan Provisions – 11 U.S.C. § 1123(b)*.   The Plan's additional provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

J.     <u>*Compliance with Fed. R. Bankr. P. 3016*</u>.   The Plan is dated and identifies the entities submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).   The filing of the Disclosure Statement with the Court satisfies Fed. R. Bankr. P. 3016(b).   Further, the Plan and

2811779.1

Disclosure Statement describe in specific and conspicuous language all acts to be enjoined and identify the entities that are subject to the injunction, satisfying Fed. R. Bankr. P. 3016(c) to the extent applicable.

K.        *Compliance with Fed. R. Bankr. P. 3017*.  The Debtors have given notice of the Confirmation Hearing as required by Fed. R. Bankr. P. 3017.  The Debtors have given notice of the Confirmation Hearing as required by Fed. R. Bankr. P. 3017(d) and the Disclosure Statement Order.  The solicitation materials prescribed by the Disclosure Statement Order were transmitted to the creditors entitled to vote or provisionally allowed to vote on the Plan in accordance with Fed. R. Bankr. P. 3017(d) and, with respect to the beneficial holders in Class 12, pursuant to Fed. R. Bankr. P. 3017(e).

L.        *Compliance with Fed. R. Bankr. P. 3018*.  The solicitation of votes to accept or reject the Plan satisfies Fed. R. Bankr. P. 3018.  The Plan was transmitted to all creditors entitled to vote or provisionally allowed to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the Plan, and the solicitation materials used and solicitation procedures followed comply with 11 U.S.C. §§ 1125 and 1126, thereby satisfying the requirements of Fed. R. Bankr. P. 3018.

M.        *Debtors' Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(2)*.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(2).

N.        *Plan Proposed in Good Faith -- 11 U.S.C. § 1129(a)(3)*.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying 11 U.S.C. § 1129(a)(3).  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan.  The

2811779.1

Debtors filed their chapter 11 cases and proposed the Plan with legitimate and honest purposes including, among other things, (i) preservation and maximization of the Debtors' business enterprise values through a reorganization under Chapter 11, and (ii) maximization of the recovery to creditors entitled thereto under the circumstances of these cases.

O.       *Payments for Services or Costs and Expenses – 11 U.S.C. § 1129(a)(4)*. All payments made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the chapter 11 cases, or in connection with the Plan and incident to the chapter 11 cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying 11 U.S.C. § 1129(a)(4).

P.       *Directors, Officers and Insiders – 11 U.S.C. § 1129(a)(5)*.   The Debtors have complied with 11 U.S.C. § 1129(a)(5).  The identity and affiliations of the persons that will serve as initial directors or officers of the Reorganized Debtors as of the Effective Date of the Plan have been fully disclosed at the Confirmation Hearing.  The election or appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Interests in the Debtors and with public policy.  The replacement or removal of the initial directors and officers of Reorganized TXCO shall be subject to the terms of the Governing Documents of Reorganized TXCO.  The identity of any insider that will be employed or retained by Reorganized TXCO and the nature of such insider's compensation have also been fully disclosed, to the extent applicable and presently determinable.

Q.       *No Rate Changes -- 11 U.S.C. § 1129(a)(6)*.   There is no regulatory commission having jurisdiction after confirmation of the Plan over the rates of the Debtors and

no rate change provided for in the Plan requiring approval of any such commission. Therefore, 11 U.S.C. § 1129(a)(6) is not applicable.

R. *Best Interests of Creditors – 11 U.S.C. § 1129(a)(7)*. The Plan satisfies 11 U.S.C. § 1129(a)(7). The liquidation analysis attached as Exhibit F to the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

S. *Deemed Acceptance or Rejection by Certain Classes -- 11 U.S.C. § 1129(a)(8)*. Classes 1, 3, 4, 6, 7 and 13 are Classes of unimpaired Claims and Interests that are conclusively presumed to have accepted the Plan under 11 U.S.C. § 1126(f). Under the Initial Plan, Classes 10, 11 and 12 were not entitled to receive distributions and were thus deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g). Under the Plan, Classes 11 and 12 will receive payment on behalf of their interests, which is improved treatment for both classes, but is not a material modification requiring the Debtors to solicit the acceptance and/or rejection of the Plan from the holders of Interests in Classes 11 and 12. Class 11A Redeemed Preferred Stock did cast a provisional ballot accepting the Plan, such that an additional impaired Class of Interest has voted to accept the Plan pursuant to the requirements of 11 U.S.C. §§ 1124 and 1126. Although 11 U.S.C. § 1129(a)(8) has not been satisfied with respect to Classes 10, 11 and 12, the Plan is confirmable because the Plan satisfies 11 U.S.C. § 1129(b) with respect to those Classes of Claims and Interests, as set forth below.

2811779.1

T.     *Treatment of Administrative, Priority and Tax Claims – U.S.C. § 1129(a)(9)*.  The treatment of Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims pursuant to Sections 2.1, 2.2, and 5.1(g) of the Plan satisfies the requirements of 11 U.S.C. §§ 1129(a)(9)(A), (B) and (C).  The treatment provided in Section 5.1(f) for tax claims that are Secured Tax Claims satisfies the requirements of 11 U.S.C. § 1129(a)(9)(D).

U.     *Acceptance by Impaired Class – 11 U.S.C. § 1129(a)(10)*.  Classes 2 and 5 are impaired Classes of Claims that voted to accept the Plan in accordance with 11 U.S.C. § 1126(e) and, to the Debtors' knowledge, does not contain insiders whose votes have been counted.  Therefore, the requirement of 11 U.S.C. § 1129(a)(10) that at least one Class of Claims against the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, has been satisfied.

V.     *Feasibility – 11 U.S.C. § 1129(a)(11)*.  The projections set forth in Exhibit X to the Disclosure Statement, as corrected and updated on the record, and other evidence proffered or adduced by the Debtors at the Confirmation Hearing with respect to feasibility are persuasive and credible, and establish that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Reorganized TXCO.  Accordingly, the Court finds that the Debtors have satisfied the requirements of 11 U.S.C. § 1129(a)(11).

W.     *Payment of Fees – 11 U.S.C. § 1129(a)(12)*.  All fees payable under 28 U.S.C. § 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to 16.12 of the Plan, thus satisfying the requirements of 11 U.S.C. § 1129(a)(12).

2811779.1

X.     *Continuation of Retiree Benefits – 11 U.S.C. § 1129(a)(13)*.  The Debtors do not have any retiree benefits within the meaning of 11 U.S.C. § 1114.  Thus, the requirements of 11 U.S.C. § 1129(a)(13) are not applicable.

Y.     *Appropriate Rate of Interest*.  The Plan provides for payment of all Allowed Secured Claims held by Claimants in Classes 1, 3 and 4 in full at Closing, in the unpaid principal balance thereof outstanding together with all accrued interest, fees and expenses, including all reasonable attorneys' fees.  Furthermore, the Plan provides for the payment of all Allowed Secured Claims held by Claimants in Classes 2, 5 and 13 in full, including reasonable attorneys' fees, but only to the extent allowed by the Court, and accrued interest at the Plan Rate.  The Plan further provides a procedure so that any claimant in Classes 2, 5 and 13 may seek payment of interest at a rate other than the Plan Rate.  Additionally, the Plan provides that Claimants in Class 6 will receive payment in full of all Allowed Secured Tax Claims, including interest six and one-half percent (6½%) per annum or such other interest rate as set forth in this Order.  The Plan provides that Claimants in Class 8 shall receive payment of their Allowed General Unsecured Claims in full, including reasonable attorneys' fees, but only to the extent allowed by the Court, and accrued interest at the Plan Rate.  The Plan further provides a procedure so that any Claimant in Class 8 may seek payment of interest at a rate other than the Plan Rate.  Furthermore, the Plan provides that Claimants in Class 7 will receive payment in full for such Allowed Priority Non-Tax Claims.  The Court finds that the Plan Rate is the appropriate rate of interest for Allowed Claims in Classes 2, 5, 8 and 13, subject to the Claimant's right to establish an alternate rate of interest for their Allowed Claim pursuant to the procedures outlined in the Plan.

2811779.1

Z.     _Valuation; Fair and Equitable; No Unfair Discrimination – 11 U.S.C._ _§ 1129(b)(2)(C)_.  The Plan provides that holders of Interests in Class 11B will be paid in full the stated value of their Allowed Interest.  Furthermore, the holders of Interests in Class 12 will not receive any distribution until the holders of Interests in Class 11B have been paid in full.  Additionally, the holders of Claims and/or Interests in Class 11A have agreed to subordinate their right to payment until the holders in Class 11B have received payment of the stated value of their Interests and $10 million has been distributed _pro rata_ to the holders of Interests in Class 12.  Accordingly, the requirements of 11 U.S.C. § 1129(b)(2)(C) are satisfied.  Therefore, the Plan does not discriminate unfairly and is fair and equitable with respect to all Allowed Interests as required by 11 U.S.C. § 1129(b)(1), and thus can be confirmed.

AA.     _Only One Plan – 11 U.S.C. § 1129(c)_.  In connection with the Initial Plan the Debtors filed an alternative Operational Plan, which the Court would only consider in the event the Debtors did not confirm and close on the sale of the Debtors' Assets under the Plan.  This Order shall confirm only the Plan as attached to this Order as Exhibit "A."  To the extent the Debtors and Purchasers do not close on the sale of the Debtors' Assets as contemplated by the Plan, the PSA and this Order, then this Confirmation Order will be revoked pursuant to 11 U.S.C. §§ 105 and 1144 and the assumption or rejection of executory contracts or unexpired leases effected by the Plan (if any), and any document or agreement executed pursuant to the Plan, shall be null and void.[5]  Accordingly, the requirements of 11 U.S.C. § 1129(c) have been satisfied.

---

[5] No part of this Order shall prejudice the Plan Proponents with regard to their designation of executory contracts or unexpired leases for assumption under the Operational Plan, to the extent necessary, nor shall any part of this Order have preclusive or prejudicial effect with respect to the Cure amounts that may be due under any assumed executory contracts or unexpired leases under the Operational Plan.

BB.  *Principal Purpose – 11 U.S.C. § 1129(d)*.  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of Section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  The Plan therefore satisfies the requirements of 11 U.S.C. § 1129(d).

CC.  *Executory Contracts*.  The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject each of their executory contracts and unexpired leases as set forth in Article VIII of the Plan.  Each pre- or post-Confirmation assumption, assumption and assignment of an executory contract or unexpired lease pursuant to Sections 8.1, 8.3, 8.4, 8.5, and 8.7 of the Plan shall be legal, valid and binding upon the Debtors, Reorganized TXCO or Purchasers and all nondebtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption, assumption and assignment, or rejection had been effectuated pursuant to an appropriate authorizing order of the Court entered before the Confirmation Date under 11 U.S.C. § 365.  Any assumption and assignment of an executory contract or unexpired lease under the Plan, including under Sections 8.1, 8.3, 8.4, 8.5, and 8.7 of the Plan, shall be binding upon the Debtors, Reorganized TXCO, the Purchasers, and nondebtor parties thereto only upon the occurrence of the Effective Date and the transfers to the Purchasers.

DD.  *Adequate Assurance*.  The Debtors have cured, or provided adequate assurance that the Reorganized TXCO will cure pursuant to the provisions of the Plan, defaults (if any) under or relating to each of the executory contracts and unexpired leases which are being assumed by the Debtors pursuant to the Plan.[6]

---

[6] No part of this Order shall prejudice the Plan Proponents with regard to their designation of executory contracts or unexpired leases for assumption under the Operational Plan, to the extent necessary, nor shall any part of this Order have preclusive or prejudicial effect with respect to the Cure amounts that may be due under any assumed executory contracts or unexpired leases under the Operational Plan.

2811779.1

EE.    *Mineral Leases/ Oil and Gas Leases*.    To the extent any of the Debtors'
Mineral Leases or Oil and Gas Leases constitutes an executory contract or unexpired lease of
real property under section 365 of the Bankruptcy Code, such Mineral Leases or Oil and Gas
Leases will be assumed and assigned by the Debtors and/or Reorganized TXCO to either the
Purchasers under the PSA or the Liquidating Trust, as applicable. To the extent any of the
Debtors' Mineral Leases or Oil and Gas Leases constitute contracts or other property rights not
required to be assumed or rejected under section 365 of the Bankruptcy Code, except as provided
in the Plan or Confirmation Order, such Mineral Leases or Oil and Gas Leases shall pass through
the Chapter 11 Cases for the benefit of the Debtors and/or Reorganized TXCO and the
counterparties to such Mineral Leases or Oil and Gas Leases, and the Debtors and/or
Reorganized TXCO is hereby authorized to transfer such Mineral Leases or Oil and Gas Leases
to either Anadarko, Newfield and/or the Liquidating Trust.  Except for the defaults of a kind
specified in sections 365(b)(2) and 541(c)(1) of the Bankruptcy Code (which defaults the
applicable Debtors or Reorganized TXCO will not be required to cure), or as otherwise provided
herein, the legal, equitable and contractual rights of the counterparties to such Mineral Leases or
Oil and Gas Leases shall be unaltered by the Plan, except that any provision restricting the
transfer of  such Mineral Leases or Oil and Gas Leases shall not apply to the Debtors' transfer to
either Anadarko, Newfield and/or the Liquidating Trust.  If the Mineral Lease or Oil and Gas
Lease is subject to the provisions of section 365 of the Bankruptcy Code, to the extent a failure
by the Debtors to pay or perform an obligation under such Mineral Lease or Oil and Gas Lease is
a default under any applicable Mineral Lease or Oil and Gas Lease, such default shall be cured
for all purposes by the payments provided for in the Plan or subsequent performance of such
obligation with such applicable Mineral Lease or Oil and Gas Lease otherwise remaining in full

2811779.1

force and effect. To the extent such payment is due and owing on the Effective Date, such payment shall be made, in Cash, on the Distribution Date, or upon such other terms as may be agreed to by Reorganized TXCO, the Disbursing Agent or the Trustee, as applicable. To the extent such payment is not due and owing on the Effective Date, such payment (a) will be made, in Cash, in accordance with the terms of any agreement between the parties, or as such payment becomes due and owing under (i) applicable non-bankruptcy law, or (ii) in the ordinary course of business of Reorganized TXCO or the Trustee, as applicable, or (b) will be made upon other terms as may be agreed upon by Reorganized TXCO or the Trustee, as the case may be, and the Person to whom such payment is due. To the extent it is impossible for Reorganized TXCO to cure a default arising from any failure to perform a non-monetary obligation, and to the extent such non-monetary default can be cured, such default shall be cured by performance by the applicable Debtor or the Purchasers, at or after the time of assumption in accordance with the terms of the applicable Mineral Lease or Oil and Gas Lease with the applicable Mineral Lease or Oil and Gas Lease remaining in effect. If there is a dispute as to any cure obligation (including cure payments) the lessor shall be entitled to payment and/or performance only as provided in the Plan.

FF. *Consent to Assignment of Leases.* Debtors provided notice to the counterparties to the Mineral Leases and/or Oil and Gas Leases that the Debtors' intend to transfer and assign their right, title and interest to their Mineral Leases and/or Oil and Gas Leases to either of the Purchasers in the *Notice Regarding Transfer of Oil and Gas Assets Under Purchase and Sale Agreement* (the "Notice of Assigned Oil and Gas Interests"), which was served on January 8, 2010 and the *Notice Regarding Retained Oil and Gas Assets* (the "Notice of Retained Oil and Gas Interests"), which was served on January 11, 2010. Both the Notice of

2811779.1

Assigned Oil and Gas Interests and the Notice of Retained Oil and Gas Interests were sufficient to put counterparties on notice that the Debtors intend to assign their Mineral Leases and/or Oil and Gas Leases. Therefore, to the extent a counter party did not file a Default Notice, such counter party is deemed to have consented to the assignment of the Debtors' interest in the Mineral Leases and/or Oil and Gas Leases and such assignment is binding on them in all respects.

GG.  *Operating Agreements*. With respect to any and all operating agreement, exploration agreement or participation agreement ("Operating Agreement") of the Debtors, as set forth in Plan Schedule V(A) and/or Exhibit A-3 to the PSA, such Operating Agreement will be assumed and assigned by Debtors.

HH.  *Consent to Assignment of Operating Agreements*.  Debtors provided notice to the counterparties to the Operating Agreements that the Debtors' intend to transfer and assign their right, title and interest in the Operating Agreements to the Purchasers in the *Notice Regarding Transfer of Agreements under Purchase and Sale Agreement* (the "Notice of Assigned Agreements"), which was served on all parties that received a copy of the Disclosure Statement on January 8, 2010.  Additionally, the Debtors filed Plan Schedule V on January 18, 2010, which included, *inter alia*, a listing of Operating Agreements to be assumed and assigned by the Debtors under the Plan.  The Debtors also served Plan Schedule V on the parties listed on Schedule V.  Each of the Notice of Assigned Agreements and Plan Schedule V was sufficient to put counterparties on notice that the Debtors intend to assign their position as Operator to Purchasers and/or the Liquidating Trust, as applicable.  Therefore, to the extent a counter party did not file a Default Notice, such counter party is deemed to have consented to the assignment

of Debtor's interest in the Operating Agreements to Purchasers and/or the Liquidating Trust, as applicable.

II.    _Seismic Agreements_.    With respect to the Seismic Agreements and underlying Seismic Data and Information to be transferred to Purchasers under the PSA (collectively, the "Seismic Agreements"), the Court finds as follows:

(i)    Under the PSA, all of the Debtors' Seismic Agreements and seismic contracts, and the underlying seismic data and information, related to the PSA Assets transferred to the Purchasers or lands in the vicinity thereof, is also transferred to the Purchasers (or, at the election of the Debtors and the Purchasers, to be retained by Reorganized TXCO);

(ii)    Debtors provided notice to the counterparties to the Seismic Agreements that the Seismic Agreements and the underlying Seismic Data and information and rights thereunder would be transferred to Purchasers in the _Notice of Transfer of Oil and Gas Assets_ which was served on January 8, 2010, and in the _Notice Regarding Transfer of Oil and Gas Assets Under Purchase and Sale Agreement_ on January 11, 2010 and in the _Supplemental Notice Regarding Transfer of Seismic Agreements, Licenses, Data and Information Under Purchase and Sale Agreement_ served on January 19, 2010 (collectively, the "Notices");

(iii)    Additional notice and a listing of the Seismic Agreements to be transferred to Purchasers pursuant to the PSA were set out in the Plan Supplement, Plan Schedule V(C).    Plan Schedule V(C) was filed with the Court and served on counterparties to the Seismic Agreements;

(iv)    In the _Supplemental Order Pursuant to 11 U.S.C. §§1123, 105 and 503(b) Approving Bid Protections Contained in Purchase and Sale Agreement Between TXCO Resources Inc. and Newfield Exploration Company and Extending Certain Other Deadlines Under the Disclosure Statement and Plans of Reorganization_ (the "Supplemental Order"), the Court established January 21, 2010 at 5:00 p.m., Central Time, as the deadline to file objections with respect to the assumption and assignment of Debtors' Seismic Agreements to Purchasers under the Plan.    The Notices and the Plan Schedule V specifically provided that counterparties to Debtors' Seismic Agreements who asserted a default under such Seismic Agreements or the inability of Debtors to transfer such Seismic Agreements were required to file objections by the January 21, 2010 deadline.    No objections were filed;

(v)    Debtors have performed their obligations under the Seismic Agreements and no monetary or non-monetary cure obligations are required with respect to the Debtors' Seismic Agreements.    The PSA had no allocation for the transfer of the Debtors' seismic data and none of the counterparties to Debtors' Seismic Agreements have a claim or the right to the proceeds to be received by Debtors under the PSA and no

counterparty to a Seismic Agreement is entitled to any fee, additional compensation, right to an injunction or other legal or equitable relief or remedy in connection with such transfer;

(vi)    There is no applicable non-bankruptcy law which excuses the counterparties to Debtors' Seismic Agreements from accepting performance from a party other than the Debtors.  The Seismic Agreements are general contractual agreements under Texas law.  There are no Texas or Federal statutes or common-law doctrines regarding Seismic Agreements which excuses the counterparties from such Seismic Agreements from accepting performance from Purchasers under the PSA.  The Seismic Agreements are not special relationship contracts and are not contracts providing for the extension of credit between the parties;

(vii)   Debtors may assume the Seismic Agreements pursuant to 11 U.S.C. §365(b) and have satisfied the cure and other obligations, or provided for the satisfaction of cure obligations and other obligations, imposed by 11 U.S.C. §365(b)(1)(A), (B) and (C);

(viii)  Pursuant to 11 U.S.C. §365(f)(1) and (2), Debtors may assign the Seismic Agreements to Purchasers under the PSA as Debtors have appropriately assumed the Seismic Agreements under the provision of the Bankruptcy Code and Purchasers have provided adequate assurance of future performance as assignees under the Seismic Agreements.  In this regard, Purchasers shall maintain the confidential nature of the Seismic Data and Information as provided in the Seismic Agreements as assumed and assigned under the Plan;

(ix)    The provisions of 11 U.S.C. §365(c) do not apply to the Seismic Agreements and do not prevent their assumption or assignment; and

(x)     With respect to all of the Debtors other Seismic Agreements which are part of the Excluded Assets and which are to be transferred to the Liquidating Trust created under the Plan, the assumption and assignment of any such Seismic Agreements (and the transfer of the underlying Seismic Data and Information) is appropriate as the Liquidating Trust is simply the successor by reorganization to Debtors under the provisions of the Plan.  Assumption and assignment is appropriate pursuant to 11 U.S.C. §365(b) and (f), as Debtors have satisfied their "cure" obligations under 11 U.S.C. §365(b) and the counterparties to such Seismic Agreements have been provided with adequate assurance of future performance by the Liquidating Trust.  Moreover, 11 U.S.C. §365(c) is not applicable to prevent such transfer.

JJ.     _Plan Modifications_.  The modifications to the Initial Plan and the Second

Plan as set forth in the Plan do not materially or adversely affect or change the treatment of any

holder of a Claim or Interest.   Accordingly, pursuant to Fed. R. Bankr. P. 3019, such

modifications do not require additional disclosure under 11 U.S.C. § 1125 or resolicitation of

2811779.1

acceptances or rejections under 11 U.S.C. § 1126, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Initial Plan. Disclosure of the modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these chapter 11 cases.

KK. *Substantive Consolidation*. The Court finds that substantive consolidation of the Debtors and their Estates in these Chapter 11 Cases as set forth in Section 7.2 of the Plan for the purposes of voting and making distributions under the Plan will (1) facilitate and maximize prompt distributions to the Debtors' creditors and (2) permit the Debtors' creditors to avoid the harm that likely would result absent substantive consolidation, as set forth in Section 7.2 of the Plan, and Confirmation of the Plan embodying it. The Court further finds that substantive consolidation, as set forth in Section 7.2 of the Plan, will not unduly harm any creditor or party-in-interest and is in the best interests of the Debtors, the Creditors and the Estates.

LL. *Conditions to Confirmation*. The conditions to Confirmation set forth in Section 13.1 of the Plan have been satisfied, waived or will be satisfied by entry of this Confirmation Order.

MM. *Conditions to Effective Date*. Each of the conditions to the Effective Date, as set forth in Section 13.2 of the Plan, is reasonably likely to be satisfied. The conditions to the Effective Date, as set forth in Section 13.2 of the Plan, shall be subject to waiver by the Debtors, with the consent of the DIP Lenders, as set forth in section 13.4 of the Plan, without notice or a hearing.

NN. *Retention of Jurisdiction*. The Court properly may retain jurisdiction over the matters set forth in Article XV of the Plan.

OO.  *Agreements and Other Documents*.  The Debtors have made adequate and sufficient disclosure of: (1) the adoption of new or amended and restated charter and by-laws or similar constituent documents for Reorganized TXCO; (2) the distributions to be made pursuant to the Plan; (3) the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents related to any of the foregoing; and (4) the other matters provided for under the Plan involving the corporate structure of Reorganized TXCO.

PP.  *Re-Sale Under 1145*.  The New Common Stock that is issued in reliance on section 1145 of the Bankruptcy Code may be resold by the holders thereof without registration unless the holder is an "underwriter" with respect to such securities, as defined in section 1145(b)(1) of the Bankruptcy Code; provided, however that any resale of the New Common Stock shall be subject to the provisions of any shareholders' rights agreement and the certificate and by-laws of Reorganized TXCO.

QQ.  *Preservation of Causes of Action*.  It is in the best interests of the creditors and interest holders that the causes of action that are not expressly released or assigned under the Plan be retained by Reorganized TXCO pursuant to Section 7.13 of the Plan, in order to maximize the value of the Debtors' Estates.  Additionally, the Debtors have agreed to release any and all Causes of Action under 11 U.S.C. §547.

RR.  *Burden of Proof*.  The Debtors, as proponents of the Plan, have met their burden of providing the elements of 11 U.S.C. §§ 1129(a) and (b) by a preponderance of the evidence.

SS.  *Satisfaction of Confirmation Requirements*.  The Plan satisfies the requirements for confirmation set forth in 11 U.S.C. § 1129.

2811779.1

TT. *Disputed Claims Reserve*. The Debtors are required, pursuant to section 10.4 of the Plan, to estimate all Disputed Claims prior to making any distribution to the holder of such Claims under the Plan in a manner to ensure that an adequate reserve would be available should each Disputed Claim become an Allowed Claim. Certain claims cannot be estimated based on information available to the Debtors and therefore may be reserved in their full face amount. Such reserve may not be relied upon to show that any Disputed Claim is either probable or estimable for any other purpose.

UU. *Transfers by Debtors to Liquidating Trust*. All transfers of property of the Debtors' estates, including without limitation, the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust shall be free and clear of all Liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Plan or this Confirmation Order.

VV. *Sale of Assets under the PSA*. With respect to the sale of the PSA Assets under the PSA and to be transferred to Purchasers thereunder, the Court finds as follows:

(i) The Purchasers are not an "insider" of the Debtors, as that term is defined in 11 U.S.C. § 101(31).

(ii) The Purchasers are purchasing the PSA Assets in good faith and are a good faith buyers within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to the protection of that provision, and otherwise have proceeded in good faith in all respects in connection with this proceeding in that: (a) Purchasers recognized that the Debtors were free to deal with any other party interested in acquiring the PSA Assets up to execution of the PSA; (b) Purchasers complied with the provisions in the Order Pursuant to 11 U.S.C. §§ 1123, 105 and 503(b) Approving Bid Protections Contained in Purchase and Sale Agreement between TXCO Resources Inc. and Newfield Exploration Company [Docket No. 813] (the "Bidding Protection Order"); (c) all payments to be made by the Purchasers and other agreements or arrangements entered into by the Purchasers with the Debtors in connection with the sale have been disclosed; (d) Purchasers have not violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) no common identity of directors or controlling stockholders exists between the Purchasers and any Debtor; and (f) the negotiation and execution of the PSA and any other agreements or instruments related thereto was at arm's-length and in good faith.

25

(iii)    The Debtors fully and properly marketed the Debtors' Assets prior to entry of the Bidding Protection Order.  Furthermore, the Debtors fully exercised all of their rights under the Newfield PSA, as defined in the Bidding Protection Order, to consider and negotiate any and all Acquisition Proposals, as defined in the Newfield PSA, to determine if there was a Superior Proposal, as defined in the Newfield PSA.

(iv)    The PSA constitutes the highest and best offer for the PSA Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the PSA constitutes the highest and best offer for the PSA Assets constitutes a valid and sound exercise of the Debtors' business judgment.

(v)    The PSA represents a fair and reasonable offer to purchase the PSA Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities has offered to purchase the PSA Assets for greater economic value to the Debtors' estates than the Purchasers.

(vi)    Approval of the Plan and the PSA and the consummation of the transactions contemplated thereby are in the best interest of the Debtors, their creditors, interest holders, estates and other parties in interest.

(vii)    The consideration provided by the Purchasers pursuant to the PSA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

(viii)    The Debtors have full corporate power and authority to execute and deliver the PSA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the PSA, except as otherwise set forth in the Plan and the PSA.

(ix)    The transfer of each of the PSA Assets to the Purchasers will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchasers with all right, title, and interest of the Debtors to the PSA Assets free and clear of all Liens accruing, arising or relating to any time prior to the Closing Date.

(x)    The Debtors may sell the PSA Assets to the Purchasers free and clear of all Liens against the Debtors, their estates or any of the PSA Assets because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. With respect to any and all entities asserting a Lien, including, without limitation, any options, pledges, security interests, claims, equities, reservations, third party rights, voting trusts or similar arrangements, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits registrations and authorizations or approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated on

2811779.1

or against the PSA Assets either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Lien, with such Lien to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable nonbankruptcy law permits the sale of the assets free and clear of such Lien, (iii) such Lien is in bona fide dispute, (iv) the price paid by the Purchasers for the PSA Assets is greater than the aggregate value of all liens on the PSA Assets; or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Lien, so that the conditions of section 363(f) of the Bankruptcy Code have been met.

(xi)    Those holders of Liens against the Debtors, their estate or any of the PSA Assets who did not object, or who withdrew their objections, to the Plan are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their Liens, if any, in each instance against the Debtors, its estates or any of the PSA Assets, attach to the cash proceeds of the sale ultimately attributable to the PSA Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

(xii)    The sale is a prerequisite to the Debtors' ability to confirm and consummate the Plan, and is made in contemplation of such Plan. Accordingly, the sale is a transfer pursuant to section 1146(a) of the Bankruptcy Code, which shall not be taxed under any law imposing a stamp tax or similar tax.

(xiii)    The Debtors and the Purchasers are authorized to make any non-material modifications to the PSA.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    Objections.    All objections to confirmation of the Plan that have not been withdrawn, resolved, waived or settled are overruled on the merits.

2.    Confirmation of Plan.    The Plan as modified is approved and confirmed in all respects under 11 U.S.C. § 1129, as stated on the record on January 26, 2010, at the conclusion of the Confirmation Hearing.

3.    Approval of Plan Modifications.    The modifications set forth in the Plan, as compared to the Initial Plan and the Second Plan, as well as modifications based on the rulings of the Court at the Confirmation Hearing, which are set out in the Plan attached hereto, are

approved. In accordance with 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, all holders of Claims who voted to accept the Initial Plan or who are conclusively presumed to have accepted the Initial Plan are deemed to have accepted the Plan. No holder of a Claim shall be permitted to change its vote as a consequence of the modifications resulting in this Plan. The Plan, as modified from the Initial Plan and the Second Plan, as set out herein and in the Plan attached hereto shall constitute the Plan and all references herein to the Plan shall mean the Plan as so modified.

4. <u>Incorporation of Terms and Provisions of Plan</u>. The terms and provisions of the Plan (and each of the documents referred to in the Plan, all exhibits, and addenda thereto) are incorporated by reference into and are an integral part of this Confirmation Order. Each term and provision of the Plan is valid, binding and enforceable as though fully set forth herein. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent. The failure specifically to include or reference any particular term or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Plan be confirmed in its entirety.

5. <u>Plan Classification Controlling</u>. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the ballots tendered to or returned by the Debtors' Creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, (c) may not be relied upon by any creditor or

interestholder as representing the actual classification of such Claims or Interests under the Plan for distributions purposes, and (d) shall not be binding on Reorganized TXCO, the Estates or the Debtors.

6.     <u>Binding Effect</u>.     Effective on the Effective Date or effective as of the Confirmation Date or any other date if so provided in the Plan, and except as expressly provided otherwise in this Confirmation Order, the Plan and its provisions shall be binding upon the Debtors, the Reorganized Debtors, any party in interest, any entity acquiring or receiving property or a distribution under the Plan and any holder of a Claim against or Interest in the Debtors, including all governmental entities, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan. Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan and all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. Additionally, entry of this Confirmation Order is deemed consent by any counterparty to a Mineral Lease and/or Oil and Gas Lease to the Debtors' assignment of the Debtors' right, title and interest in such Mineral Leases and/or Oil and Gas Leases, except as otherwise set forth in this Order. As evidence of such consent, a copy of this Order may be filed with any and all applicable state, federal or other governmental or regulatory authority and/or in any applicable governmental record. Furthermore, entry of this Confirmation Order is deemed consent by any counterparty to a Seismic Agreement to the Debtors' assignment of the Debtors' right, title and interest in such Seismic Agreement, except as otherwise set forth in this Order.

7.     <u>Implementing Provision for Priority Tax Claims</u>.     In the event a Priority Tax Claim is treated pursuant to 11 U.S.C. § 1129(a)(9)(C), interest shall be paid at the rate as of the

Effective Date at the applicable rate under non-bankruptcy law. In the event of a default on the payment of a Priority Tax Claim under the Plan, the governmental unit to which the payment is owed may pursue all administrative and judicial remedies under applicable law to collect the unpaid Priority Tax Claim.

8.  <u>Determination of Discharge</u>. Pursuant to Sections 14.6 and 14.7 of the Plan, as of the Effective Date, except as provided in the Plan or this Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or this Order, this Order is a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all TXCO Interests, pursuant to 11 U.S.C. §§ 524 and 1141, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

9.  <u>Contractual Interest</u>. The reference to "contractual interest" in Section 5.1 (c) of the Plan means the "Default Rate" (as defined in the Revolver Loan). The reference to "contractual interest" in Section 5.1 (d) of the Plan means the "Default Rate" (as defined in the Term Loan). The provisions of the Plan and the Cash Distributions provided to holders of Class 3 Allowed Secured Claims of the Revolver Lenders on the Closing Date shall fully satisfy, discharge and release any and all of the Debtors' Obligations under the Revolver Loan and is a "Discharge of the First Lien Obligations" (as defined in the Amended and Restated Intercreditor Agreement by and among certain Debtors, Bank of Montreal as First Lien Collateral Agent and

Bank of Montreal as Second Lien Collateral Agent). All payments made to holders of Class 1 Allowed DIP Loan Secured Claims shall be final and irrevocable. All payments made to holders of Class 3 Allowed Secured Claims of the Revolver Lenders shall be final and irrevocable. Pursuant to an agreement of the Parties announced on the record, which requires that Closing shall occur no later than February 12, 2010 and that no litigation involving the Revolver Lenders is commenced prior to the Closing, the amount of the outstanding professional fees and expenses payable to or on account of the Revolver Lenders shall be $1,125,000.000, payment of which is conditioned upon the delivery by Revolver Lenders of such releases and other documentation as is necessary or required to consummate the Plan. All payments made to holders of Class 4 Allowed Secured Claims of the Term Loan Lenders shall be final and irrevocable.

10.    <u>Cancellation of Old Securities</u>. Pursuant to Section 7.8 of the Plan, except as provided in the Plan or in this Order, on the Effective Date any and all obligations with respect to Interests in TXCO shall be deemed extinguished, cancelled and of no further force or effect.

11.    <u>Approval of Plan Releases and Exculpation; Injunction</u>. Each of the release, exculpation and injunction provisions set forth in Article XIV of the Plan is hereby approved, except as otherwise modified by this Order.

12.    <u>Plan Implementation Authorization</u>. The Debtors and Reorganized TXCO, and their respective directors, officers, members, agents and attorneys, are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file or record any contract, instrument, release, lease, grant of security, indenture or other agreement or document, including, without limitation, the Plan Documents, the Governance Documents, and all other documents referenced in the Plan, as the same may be modified, amended and supplemented (including such modifications to the draft form of the Plan Documents contained

in the Plan Supplement as necessary to satisfy the conditions to the effectiveness of the Plan), and to take any action necessary or appropriate to implement, effectuate, consummate or further evidence the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, including but not limited to any reincorporation, merger, consolidation, restructuring, disposition, liquidation, closure, dissolution, release, amendment or restatement of any bylaws, certificates of incorporation or other governing documents of the Debtors, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court. Any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. For the avoidance of doubt, Reorganized TXCO is hereby authorized from and after the date hereof to take all steps necessary to reincorporate as of the Effective Date, by whatever means or transactions available under applicable law, as a corporation organized and existing under the laws of the State of Delaware.

13. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto.

14. <u>Exemption from Certain Taxes</u>. Pursuant to 11 U.S.C. § 1146(a), neither (a) the transfer of the PSA Assets to the Purchasers, (b) the transfer of the Liquidating Trust Assets to the Liquidating Trust, (b) the issuance, transfer or exchange of notes or equity securities under

the Plan, (c) the creation of any mortgage, deed of trust, lien, pledge or other security interest, (d) the making or assignment of any contract, lease or sublease, nor (e) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, any merger agreements, any agreements of consolidation, restructuring, disposition, liquidation, or dissolution, any deeds, any bills of sale, or any transfers of tangible or intangible property, shall be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment. State and local governmental officials or agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. For the avoidance of doubt, the exemption hereunder specifically applies, without limitation, to all documents necessary to evidence and implement the transfers required under the PSA, including the transfer of the PSA Assets to the Purchasers, distributions under the Plan, including the Plan Documents, and all documents necessary to evidence and implement any of the transactions and actions described in the PSA, the Plan, the Plan Schedules or the Plan Supplements.

15. <u>Exemption from Securities Laws</u>. The exemption from the requirements of Section 5 of the Securities Act of 1933, and any state or local law requiring registration for the offer, sale, issuance, exchange or transfer of a security provided for in the Plan in exchange for Claims against or Interests in the Debtors, or registration of licensing of an issuer of, underwriter of, or broker dealer in, such security is authorized by 11 U.S.C. § 1145. The offer and sale of the New Common Stock is exempt from registration under 11 U.S.C. § 1145 and such securities are

2811779.1

freely tradable by the holders thereof except to the extent a holder is an "underwriter" as defined in 11 U.S.C. § 1145(b).

16. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any other amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

17. <u>Appointment of Directors and Officers</u>. Newfield shall have until February 9, 2010, to make an election regarding whether the New Common Stock of Reorganized TXCO will be transferred to Newfield. If Newfield elects to receive the ownership interest in Reorganized TXCO, then Newfield will elect and appoint of the three persons to the New Board to serve from and after the Effective Date as provided in the Plan, and in accordance with the terms of the Reorganized TXCO Governing Documents. Additionally, Newfield shall select an individual to serve as the initial President and Secretary of Reorganized TXCO. To the extent that Newfield does not elect to retain an ownership interest in Reorganized TXCO, then the Liquidating Trust elects and appoints Albert S. Conly as the sole member of the New Board and the President and Secretary of Reorganized TXCO. Any vacancy existing as of the Effective Date shall be filled in accordance with the terms of the Reorganized TXCO Governing Documents.

18. <u>Approval of Assumption or Rejection of Contracts and Leases</u>. Unless otherwise provided in an order of or in proceedings before the Court specifically dealing with (a) a contract or lease that is subject to assumption pursuant to Section 8.1, 8.3, 8.4, 8.5 or 8.7 of the Plan, the assumption of such contract or lease is hereby approved as of the Effective Date as proposed in such Section 8.1, 8.3, 8.4, 8.5 or 8.7; and (b) a contract that is subject to rejection pursuant to

Section 8.1, the rejection of such contract is hereby approved as of the Effective Date as proposed in such Section 8.1; *provided, however*, the Debtors' office leases with Granite Westchase Properties, Ltd. and Concord Terrace, LLC are rejected as of March 31, 2010.

19.     <u>Rejection Damages Bar Date</u>.  If the rejection pursuant to Section 8.1 results in a Rejection Damages Claim, then such Rejection Damages Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized TXCO or the properties of any of them unless a Proof of Claim is filed with the Claims Agent and served upon counsel to Reorganized TXCO no later than thirty (30) days after the later of the Effective Date or the effective date of rejection.

20.     <u>Administrative Claims Bar Date Notice</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized TXCO shall provide written notice of the Administrative Claims Bar Date in substantially the same manner and fashion as the Debtors provided written notice of the Disclosure Statement.

21.     <u>Resolution of Claims</u>.  Except as otherwise ordered by the Court, no later than the Claims Objection Deadline (unless extended by an order of the Bankruptcy Court), the Interested Parties, as the case may be, shall file objections to Claims with the Bankruptcy Court and serve such objections upon the holders of each of the Claims to which objections are made. Nothing contained herein, however, shall limit any Interested Parties right to object to Claims, if any, filed or amended after the Claims Objection Deadline.  Moreover, notwithstanding the expiration of the Claims Objection Deadline and unless subsequently ordered for good cause shown to shorten time, Interested Parties shall continue to have the right to amend any objections and to file and prosecute supplemental objections and counterclaims to a Disputed Claim until such

2811779.1

Disputed Claim is Allowed.  The Debtors, Reorganized TXCO or the Liquidating Trust, as the case may be, may amend their schedules at any time before their Chapter 11 Cases are closed.

22.     <u>Disputed Claims Reserve</u>.  The Disbursing Agent shall establish one or more Disputed Claims Reserves for the purpose of effectuating distributions to holders of Disputed Claims pending the allowance or disallowance of such claims in accordance with this Plan.  The Disbursing Agent shall withhold the applicable Disputed Claims Reserves from the property to be distributed to particular classes under the Plan. The Disputed Claims Reserves shall be equal to 100% of the distributions to which holders of Disputed Claims in Classes 2, 5, 6, 7, 8 and 13 would be entitled under this Plan as of such date if such Disputed Claims in Classes 2, 5, 6, 7, 8 and 13 were Allowed Claims in their (a) Face Amount or (b) estimated amount of such Disputed Claim in Classes 2, 5, 6, 7, 8 and 13 as approved in an order by the Bankruptcy Court pursuant to § 502(c) of the Bankruptcy Code.

23.     <u>Payment of Fees</u>.  All fees payable by the Debtors under 28 U.S.C. § 1930 shall be paid on, or as soon as reasonably practical after, the Effective Date, and neither the Debtors, their Estates, nor Reorganized TXCO shall thereafter be liable for the payment of any additional fees under 28 U.S.C. § 1930 other than with respect to TXCO's Chapter 11 Case.

24.     <u>Transfers by Debtors; Vesting of Assets</u>.  All transfers of property of the Debtors' estates, including the transfer of the PSA Assets, the Liquidating Trust Assets and the New Common Stock shall be free and clear of all Liens, charges, Claims, Interests, and other encumbrances, except as expressly provided in the Plan.  Pursuant to 11 U.S.C. §§ 1141(b) and (c), all property of each of the Debtors (excluding property that has been abandoned pursuant to the Plan or an order of the Bankruptcy Court) shall vest in each respective Reorganized Debtor or the Liquidating Trust or its successors or assigns, as the case may be, free and clear of all

Liens, charges, Claims, Interests, and other encumbrances, except as expressly provided in the Plan. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

25. <u>Distribution Record Date</u>. To facilitate the distribution process, when making any Cash payments under the Plan on the Effective Date or other required Distribution Date, the Debtors shall not be required to recognize, and may disregard without liability, any transfer of Claim that is not filed of record on the Court's docket as of the Confirmation Date. With respect to any transfer of Claim not so timely filed, the Debtors are authorized to recognize and deal for all purposes under the Plan only with the original holder of the Claim.

26. <u>Treatment is in Full Satisfaction</u>. Except as otherwise provided in the Plan, or agreed in writing or approved by the Court, effective as of the Effective Date, the treatment set forth in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim or Interest may have in or against the Debtors, the Estates, Reorganized TXCO, the Liquidating Trust, or their respective property. This treatment supersedes and replaces any agreements or rights those Persons may have in or against the Debtors, the Estates, Reorganized TXCO, the Liquidating Trust, or their respective property.

27. <u>Reservation of Rights Under Police and Regulatory Laws</u>. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the releases, discharges, settlements, satisfactions, injunctions, and preclusions set forth in this Confirmation Order or the Plan shall not impair the rights, claims or causes of action of governmental units against the Debtors under police and regulatory laws and regulations promulgated thereunder, and such rights, claims and causes of action shall not be discharged or otherwise adversely affected by the Plan, shall survive the chapter 11 cases as if they had not been commenced, and may be

determined or adjudicated before the respective administrative agency having jurisdiction or court of competent jurisdiction.

28. <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, contracts, instruments or other documents executed or entered into in connection with the Plan (except that any agreement, contract, instrument or other documents, that contains its own choice of law provision shall be governed by such choice of law provision), and any corporate governance matters (except that corporate governance matters relating to Debtors or Reorganized TXCO, as applicable not incorporated in Texas shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized TXCO, as applicable).

29. <u>Effect of Conflict Between Plan and Confirmation Order</u>. If there is any direct conflict between the terms of the Plan or the Plan Supplement and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

30. <u>Reversal</u>. Except to the extent this Order is revoked as provided in ¶AA herein, if any or all the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, in the absence of a stay of the Confirmation Order, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken in good faith under or in connection with the Plan prior to the Debtors' receipt of written notice of entry of any such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, in the absence of a stay of the Confirmation Order, any such act or obligation incurred or undertaken in good faith pursuant to, and in reliance

on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

31.     <u>Authorization to Consummate Plan</u>.   Subject to Sections 13.1 and 13.2 of the Plan, notwithstanding Fed. R. Bankr. P. 3020(e), this Confirmation Order shall take effect immediately upon entry and Closing may occur as early as January 10, 2010.

32.     <u>Failure to Consummate Plan and Substantial Consummation</u>.   If consummation of the Plan does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void.   In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall (a) constitute a waiver or release of any Claims by or against any Interests in the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, (c) constitute an admission of any sort by the Debtors or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto.   Upon the occurrence of the Effective Date with respect to the Debtors, the Plan shall be deemed substantially consummated as to the Debtors.

33.     <u>Notice of Entry of Confirmation Order</u>.   No later than ten (10) Business Days following the entry of this Confirmation Order, the Debtors shall serve notice of the entry of this Confirmation Order pursuant to Fed. R. Bankr. P. 2002(f)(7), 2002(k) and 3020(c) on all holders of Claims and Interests, the U.S. Trustee, and the parties named on the Limited Service List

2811779.1

maintained in these cases, by causing notice substantially in the form attached hereto as Exhibit "B" to be delivered to such parties by first-class mail, postage prepaid.

34.    <u>Notice of Effective Date</u>.  Within five (5) Business Days following the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the Effective Date with the Bankruptcy Court and serve a copy of such notice on the parties named on the Limited Service List maintained in these cases.

35.    <u>Retained Assets</u>.  To the extent the succession to assets of the Debtors by Reorganized TXCO pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to Reorganized TXCO (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest Reorganized TXCO with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject Reorganized TXCO to any liability by any reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

36.    <u>Injunction</u>.  Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of the Plan, the Debtors, and all Persons who have held, hold or may hold Claims or Interests and any successors, assigns, or representatives of the foregoing shall be precluded and permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or Claim against Reorganized TXCO, which they possessed or may possess prior to the Effective Date, (b) the enforcement,

attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or Claim against Reorganized TXCO, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any Claim, Interest or any other right or Claim against Reorganized TXCO, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims that are released hereby.

37. <u>Term of Bankruptcy Injunction or Automatic Stay</u>. The stay in effect in the Chapter 11 Cases pursuant to section 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunction set forth in the preceding paragraph and/or sections 524 and 1141 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that nothing herein shall bar the filing of financing documents (including uniform commercial code financing statements, security agreements, leases, mortgages, trust agreements, bills of sale, and applications for aircraft registration) or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

38. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in the Plan over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in Article XV of the Plan.

39. <u>Dissolution of Creditors' Committee</u>. The Creditors Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in

section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. On the Effective Date, unless otherwise ordered by the Bankruptcy Court, the Creditors' Committee shall be dissolved whereupon its members, professionals and agents shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation. All expenses of Creditors' Committee members and the fees and expenses of their professionals through the Effective Date shall be paid in accordance with the terms and conditions of the Professional Fee Order and the Plan. The Professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation and reimbursement of expenses rendered after the Effective Date, except for services rendered in connection with (i) the implementation of the transactions contemplated to occur on the Effective Date of the Plan and (ii) applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date pursuant to Section 11.1 of the Plan.

40.     <u>References to Plan Provisions</u>.  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this

Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

41.     <u>Separate Confirmation Orders</u>.  This Confirmation Order is and shall be deemed a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case for all purposes, except for Drilling.  The Clerk of the Court is directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the Debtors, except for Drilling.

42.     <u>Filing and Recording</u>.  This Confirmation Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any document or instruments.  Each and every federal, state and local government agency is hereby directed to accept any and all documents and instruments necessary, useful or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recoding tax, stamp tax, transfer tax or similar tax imposed by state or local law.

43.     <u>Exhibits to the Plan Will Operate as Controlling Documents</u>.  In the event of an inconsistency between the Plan and the Exhibits to the Plan (as may be modified), the Exhibits to the Plan will control; provided, however, that any discrepancies between the Plan, Exhibits to the Plan and this Confirmation Order shall be controlled by the Confirmation Order.

44.     Appointment of Trustee and Trust Committee.   The initial Trustee, Albert S. Conly, and the initial members of the Trust Committee, James Edward Kjorlien, Darrell Jones, Randy Hairr and Andrew Martin are hereby approved to serve as Trustee or members of the Trust Committee, respectively.  The form of the Liquidating Trust Agreement filed as part of the Plan Supplement be and is hereby approved.   The Retained Actions transferred to the Liquidating Trust are expressly preserved and shall be transferred by the Debtors to the Liquidating Trust on the Effective Date of the Plan, and the Trustee shall have authority and standing to pursue any such causes of action.   Any and all claims under 11 U.S.C. §547 are hereby released.

45.     Purchase of Liquidating Trust Assets.   In order to limit any indemnification claims as set forth in Section 8.12 of the Plan, the Trustee is hereby authorized to purchase with Cash any asset of the Debtors that constitutes a Liquidating Trust Asset, Directors and Officers Liability Insurance Policy, which shall contain an Extended Reporting Period/Tail of six years from the date of Closing and a total policy limit of $15 million.

46.     Appointment of the Disbursing Agent.   The Disbursing Agent, FTI Consulting Inc., as identified by the Debtors at the Confirmation Hearing, is hereby approved as the Disbursing Agent under the Plan.

47.     Resolution of Objection by Baker Hughes Oilfield Operations, Inc., Schlumberger Technology Corporation, X-Chem, Inc. and Total Production Services. To resolve the objections to the Plan filed by Baker Hughes Oilfield Operations, Inc., Schlumberger Technology Corporation, X-Chem, Inc. and Total Production Services, the Debtors and Baker Hughes Oilfield Operations, Inc. entered into the *Stipulation Resolving Baker Hughes Oilfield Operations, Inc.'s Objection to Confirmation* (Docket No. 1190); the Debtors and Schlumberger

Technology Corporation entered into the *Stipulation Resolving Schlumberger Technology Corporation's Objection to Confirmation* (Docket No. 1191); the Debtors and X-Chem, Inc. entered into the *Stipulation Resolving X-Chem, Inc.'s Objection to Confirmation* (Docket No. 1196); and the Debtors and Total Production Services entered into the *Stipulation Resolving Total Production Services, Inc.'s Objection to Confirmation* (Docket No. 1197), all of which are expressly incorporated into this Order for all purposes.

48. <u>Substantive Consolidation</u>. The substantive consolidation of the Debtors for Plan purposes, including voting and distribution purposes, is approved. Accordingly, for Plan purposes, (i) all guaranties of any Debtor of the payment, performance, or collection of another Debtor with respect to any Class of Claims or Interests shall be deemed eliminated and cancelled, (ii) any obligation of any Debtor and all guaranties with respect to any Class of Claims or Interests executed by one or more of the other Debtors and any joint or several liability of any of the Debtors, and all multiple Impaired Claims against the Debtors on account of such joint obligations shall be treated and Allowed only as a single Claim against the consolidated Debtors; and (iii) each Claim filed in the Chapter 11 Cases of any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a Claim against and an obligation of the consolidated Debtors. The substantive consolidation of the Debtors for Plan purposes shall not (a) affect the legal and corporate structures of the Debtors or Reorganized TXCO, subject to the right of the Debtors or the Reorganized TXCO to effect the Restructuring Transactions contemplated by the Plan, (b) cause any Debtor to be liable for any Claim or Interest under the Plan for which it otherwise is not liable, and the liability of any Debtor for any such Claim or Interest will not be affected by such substantive consolidation, (c) affect Intercompany Claims of

Debtors against Debtors, except as otherwise provided in the Plan, or (d) affect the Interests in the Affiliate Debtors, except as otherwise provided in the Plan.

49.     <u>The Claims against Peregrine Petroleum LLC</u>.  The claims and causes of action of the Debtors against Peregrine Petroleum L.L.C. as asserted in the adversary proceeding styled *TXCO Resources Inc. v. Peregrine Petroleum, L.L.C.*, Adv. Proc. No. 09-5125 pending in the United States Bankruptcy Court for the Western District of Texas (San Antonio Division) (the "Peregrine Lawsuit") are hereby retained by Reorganized TXCO, who shall be entitled to prosecute each of the claims and causes set forth in the Peregrine Lawsuit in accordance with Section 7.15 of the PSA.

50.     <u>The Liquidating Trust</u>.  On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the parties thereto, and all other necessary steps shall be taken to establish the Liquidating Trust.   The Liquidating Trust Assets shall be transferred to the Liquidating Trust in accordance with the provisions of the Plan.   The Trustee and Trust Committee shall be disclosed and approved by the Court prior to the Effective Date. Notwithstanding anything to the contrary herein, the transfer of the Retained Causes of Action to the Liquidating Trust does not diminish, and fully preserves, any rights and defenses a defendant would have if such Retained Causes of Action had been retained by the Debtors.

51.     <u>Approval of PSA</u>.  The PSA and all ancillary documents, and all of the terms and conditions thereof, as modified by the Plan or by this Confirmation Order, are hereby approved.

52.     <u>Authorization to Consummate Sale</u>.  Pursuant to the Plan, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of each of the PSA Assets to the Purchasers pursuant to and in accordance with the terms and conditions of the PSA, (ii) close the sale as contemplated in the PSA and this

Confirmation Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the PSA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the PSA and the sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the PSA, and such other ancillary documents.

53.    Authorization to Transfer Assets.  Pursuant to sections 105(a), 363(f) and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the PSA Assets on the Closing Date. Such PSA Assets shall be transferred to the Purchasers, upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such PSA Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of all Liens, Claims or other encumbrances with all such Liens, Claims or other encumbrances to attach to the net proceeds of the sale with the same validity, priority, force and effect that they now have as against such PSA Assets, subject to any claims and defenses the Debtors and its estate may possess with respect thereto.

54.    Authorization to Retain Assets not Transferred.  Any assets not transferred to the Purchasers or the Liquidating Trust pursuant to the Plan, including any Seismic Agreement related to the PSA Assets that the Purchasers have elected not to have transferred to them under the PSA, will be retained by Reorganized TXCO.

55.    Estoppel.  Except as expressly permitted or otherwise specifically provided by the PSA or this Confirmation Order, all persons and entities holding Liens or interests in the PSA Assets arising under or out of, in connection with, or in any way relating to the Debtor, the PSA Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the PSA Assets to the Purchasers, hereby are forever barred, estopped and permanently enjoined

from asserting against the Purchasers or its successors or assigns, their property or the PSA Assets, such persons' or entities' Liens or interests in and to the PSA Assets. On the Closing Date, each creditor shall execute such documents and take all other actions as may be necessary to release Liens on the PSA Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

56.    Prohibition on Interference.  All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the PSA Assets to the Purchasers in accordance with the terms of the PSA and this Confirmation Order.

57.    Surrender of PSA Assets.  All entities that are in possession of some or all of the PSA Assets on the Closing Date are directed to surrender possession of such PSA Assets to the Purchasers at the Closing of the PSA.

58.    Duty to Release Liens. f any person or entity, excluding the DIP Lenders, the Revolver Lenders, and the Term Lenders, which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the PSA Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtors are hereby authorized and directed to reserve the amount owed to such Claimant, and the Debtors and Purchasers are hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the PSA Assets.  In that regard, the Court hereby approves the form of the Release of

Lien as attached hereto as Exhibit "C" in connection with releasing any of any and all liens asserted by either a Senior Mineral Lien Claimant or a Junior Mineral Lien Claimant against property of the Debtors, any third-party counterparty of the Debtors, including, but not limited to Anadarko, St. Mary, EnCana, Newmex, Capital Well Service and any other JIB Obligor.

59.     _Assumption and Assignment of Assumed Contracts_.  The Debtors are authorized and directed at the Closing, to assume and assign each of the Assigned Contracts to the Purchasers free and clear of all claims, defaults and Liens.

60.     _Anti-Assignment Provisions_.  Any provisions in any executory contract and/or unexpired lease that is being assigned to the Purchasers under the PSA (the "Assigned Contracts"), including but not limited to any Assigned Contract, Seismic Agreements, Mineral Leases and/or Oil and Gas Leases as set forth in Plan Schedule V and/or Plan Schedule VI, that prohibits or conditions the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchasers of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchasers shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the applicable Assigned Contracts.  The Court specifically reserves jurisdiction to address any issues related to the assumption and assignment of the Mineral Leases, Oil and Gas Leases, Operating Agreements and the Seismic Agreements to the Purchasers.

2811779.1

61.    <u>Purchasers Substituted for Debtors</u>.  Upon the Closing and the payment of the relevant Cure Amounts, if any, the Purchasers shall be deemed to be substituted for the Debtors. The Assigned Contracts shall, as of the Closing Date, be valid and binding on the Purchasers and the other non-debtor counterparties thereto, and in full force and effect and enforceable in accordance with their respective terms. Following such assignment, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts. Upon the payment of the applicable Cure Amount, if any, and subject to the terms of the stipulation of the parties to any Assigned Contract filed with the Court, if any, (a) each Assigned Contract shall constitute a valid and existing interest in the property subject to such Assigned Contract, (b) none of the Debtors' rights will have been released or waived under any such Assigned Contracts, (c) the Assigned Contracts will remain in full force and effect, and (d) no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

62.    <u>Purchasers Adequate Assurance</u>. The Purchasers have provided adequate assurance of their future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

63.    <u>Claims Barred</u>.  Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchasers any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, or right to injunctive or other legal or equitable relief,

arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing.

64.     Purchasers Not Liable.   The Purchasers shall not have any liability or other obligation of the Debtors arising under or related to any of the PSA Assets prior to the Closing Date. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the PSA, the Purchasers shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and the Purchasers shall not have any successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the PSA Assets prior to the Closing. The Purchasers have given substantial consideration under the PSA for the benefit of the holders of Liens. The consideration given by the Purchasers shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchasers, which releases shall be deemed to have been given in favor of the Purchasers by all holders of Liens against the Debtors or the PSA Assets.

65.     Validity of Sale. The transactions contemplated by the PSA are undertaken by the Purchasers without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts), unless such authorization and such Sale

are duly stayed pending such appeal. The Purchasers are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

66.     TXCO Adequate Assurance. Reorganized TXCO and/or the Liquidating Trust has provided adequate assurance of their future performance under the relevant executory contracts and/or unexpired leases that are either assumed by Reorganized TXCO or assumed and assigned to the Liquidating Trust within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

67.     Assignment of Mineral Lease/Oil and Gas Leases.  Debtors are hereby authorized to transfer the Mineral Leases and Oil and Gas Leases to Anadarko, Newfield and/or the Liquidating Trust pursuant to the Plan.

68.     Assignment of Operating Agreements.  Debtors are hereby authorized to transfer any such Operating Agreement to Purchasers and/or the Liquidating Trust, as applicable.  In connection with the transfer to Purchasers and/or the Liquidating Trust, as applicable, and with regard to any provision in an assumed contract providing for one of the Debtors to be the operator under any joint operating agreement, Purchasers and/or the Liquidating Trust, as applicable, shall be deemed under such assumed contract to be the successor operator at the Closing, and shall thereupon have all the rights as operator thereunder, without any further action by the Debtors, Purchasers and/or the Liquidating Trust, as applicable or any of the other parties to such assumed contract.  Except as otherwise provided herein, the legal, equitable and contractual rights of the counterparties to any Operating Agreements shall not be altered by the Plan, except that any provision restricting the transfer of such Operating Agreements, or providing for the resignation or removal of the operator thereunder, shall not apply to the

Debtors' transfer to or assumption by Purchasers and/or the Liquidating Trust, as applicable, of the obligations as successor operator pursuant hereto. To the extent a failure by the Debtors to pay or perform an obligation under such Operating Agreements is a default under any applicable Operating Agreement, such default shall be cured for all purposes by the payments provided for in the Plan or subsequent performance of such obligation with such applicable Operating Agreement otherwise remaining in full force and effect.

69. <u>Amendment to PSA</u>. At Closing, Purchasers shall pay the lesser of (i) $310,000,000 or (ii) such amount as the Debtors estimate pursuant to Section 9.4 of the PSA, provided, however, if Closing does not occur on or before February 12, 2010, the Disbursing Agent and/or the Reorganized Debtor have the right to seek a determination from the Court that the Purchase Price, after the adjustments provided for in Section 2.3 of the PSA, should be higher and Purchasers shall have the right to oppose such a request seeking to increase the calculation of the Purchase Price beyond $310,000,000. The first sentence of Section 9.4(b) of the PSA shall be deemed modified to delete the "final calculation" and insert the phrase "estimated calculation." Except as provided herein, there is no modification or alteration of the rights and obligations under the PSA including, without limitation, the obligations under 9.4(b).

70. <u>Interest and Fee Reserve</u>. The Disbursing Agent shall reserve $12,000,000 from the Sale Proceeds (the "Interest and Fee Reserve"). The Interest and Fee Reserve shall be used for payment of (a) Post-Petition Interest and (b) attorneys' fees, costs and expenses for all creditors other than the Revolver, DIP and Term Lenders (the "Non-Bank Creditors") to the extent allowed or otherwise agreed to by Interested Parties (the "Allowed Interest and Fee Claims"). In the event that the Interest and Fee Reserve is insufficient to pay in full the Allowed Interest and Fee Claims of Non-Bank Creditors, such creditors shall retain their right to payment

in full from the Sale Proceeds and, to the extent necessary, from the Liquidated Trust Assets which are being transferred to the Trust. To the extent that there are funds remaining in the Interest and Fee Reserve after payment of all Allowed Interest and Fee Claims of all Non-Bank Creditors, such funds shall be treated as general proceeds from the sale and administered in accordance with the PSA.

71. <u>Resolution of Objections with Mineral Lien Claimants</u>. In connection with resolution of the objections to Confirmation of the Plan filed by Patterson-UTI Drilling Company, LLC, the MTE Claimants Group, 3-S Services, Stinger Wellhead Protection, Inc., Specialty Rental Tools & Supply, LLC, Schooner Petroleum Services, Inc., A-Z Terminal Corporation, Perforating Services International, LLC, Top Notch Energy Services, Inc., Texas Southern Crane Services, LLC, and the Ad Hoc Mineral Lien Group, the Debtors agree and the Court so orders that the Debtors shall file on or before February 15, 2010, an amended Exhibit R and an amended Exhibit S stating the principal amount owed to each of the parties listed therein, which the Debtors will pay, along with Post-Petition Interest at the Plan Rate, within fourteen (14) days of the Effective Date. Each of the Claimants listed therein shall retain the right under Section 5.1(b) and/or Section 5.1(e) of the Plan to assert that they are entitled to receive Post-Petition Interest at a rate other than the Plan Rate, as well as reasonable attorneys' fees in connection with the payment of their Allowed Secured Claim. The Debtors have agreed and the Court so orders that said Claimants herein are herby released from any and all claims of the Debtors and their Estates arising under 11 U.S.C. §547.

72. <u>Resolution of Objections by Capital Well Service, LLC</u>. The Debtors have agreed to pay the cure amount of $1,802,516.84 and reserve any additional amounts claimed by Capital Well Service as a disputed Cure amount, which will be treated under Section 8.10 of the Plan.

2811779.1

Additionally, the parties will retain the right to recoup amounts that may be owed under their agreements. Capital Well Service agrees that it shall have no Claims against TXCO Drilling and its Claim against TXCO Drilling is withdrawn.

73. <u>Confidentiality Agreements</u>. At Closing, the Debtors shall transfer to each of the Purchasers, individually, all of the Debtors' right, title and interest to the Confidentiality Agreement that was executed by each Purchaser, such that Newfield will be assigned the Newfield Confidentiality Agreement, including any rights thereunder, and Anadarko will be assigned the Anadarko Confidentiality Agreement, including any rights thereunder. As to all other Confidentiality Agreements that are transferred to the Purchasers under the Plan, the Purchasers shall have joint ownership, such that each Purchaser shall retain all rights under such Confidentiality Agreements.

74. <u>Agreement with Railroad Commission of Texas</u>. Within thirty (30) days after the date any sale contemplated by Section 7.1 of the Plan and this Order is closed, the Debtors and the Purchaser or any subsequent operator(s) of the wells shall execute two-signature P-4 forms (Certificate of Compliance and Transport Authority) satisfactory to the Texas Railroad Commission. Nothing in the Order approving this sale relieves the bankruptcy estate(s) from existing liability, if any, as an operator unless and until that liability is formally assumed by the filing of P-4 forms acceptable to the Railroad Commission of Texas. Notwithstanding any other provision in the Debtors' Plan or in this Order, nothing in the Plan or this Order shall relieve any purchaser or other transferee of the assets sold pursuant to the Plan from complying with all applicable rules and regulations of the Railroad Commission of Texas.

75. <u>Local Texas Tax Authorities</u>. Notwithstanding any provision in the Plan or this Confirmation Order to the contrary: (a) the Secured Tax Claims of the Local Texas Tax

Authorities[7] that become Allowed Secured Tax Claims shall receive such Allowed amount from the Sale Proceeds, including any amounts due pursuant to section 506(b) of the Bankruptcy Code, with interest accruing until paid in full at the statutory rate of 12% per annum as provided by section 511 of the Bankruptcy Code (interest shall accrue from the Petition Date for the year 2008 claim amount and from February 1, 2010 for the year 2009 related claim amount); (b) to the extent the Secured Tax Claims of the Local Texas Tax Authorities are not paid in full at closing, the Debtors shall deposit in a segregated account for the benefit of the Local Texas Tax Authorities, the amount necessary to pay such Allowed Claims in full, including any amount due under section 506(b) of the Bankruptcy Code and the Local Texas Tax Authorities' prepetition tax lien shall attach to such funds until such time as the Allowed amounts are paid in full; (c) the Local Texas Tax Authorities shall not be required to file an Administrative Claim for postpetition year 2010 taxes; (d) the Purchasers and/or their assigns of the PSA Assets being the subject of the PSA assume liability for the payment of the year 2010 postpetition taxes related to such PSA Assets; (e) the Local Texas Tax Authorities shall retain all statutory ad valorem tax liens that secure postpetition year 2010 ad valorem property taxes on (i) the Excluded Assets transferred to the Liquidating Trust and (ii) the PSA Assets being the subject of the PSA until such amounts owed are paid in full; (f) the Interested Parties shall have three months from the Effective Date for filing objections to Tax Claims held by the Local Texas Tax Authorities; otherwise such claims are deemed Allowed Secured Claims in the amounts claimed; and (g) in the event Liquidating Trust sells, conveys or transfers any Excluded Asset which is the subject of the Local Texas Tax Authorities' tax lien, the Liquidating Trust shall notify counsel for the Local

---

[7] "Local Texas Taxing Authorities" consists of the following Texas Tax Units: Archer County; Bexar County; City of Eagle Pass; Eagle Pass ISD; Harris County; Houston CAD; Madison County; Matagorda County; Maverick County; Rio Grande City CISD; San Patricio County; Starr County; Wood County; Zavala CAD; Fayette County; Flatonia ISD; LaGrange ISD and Fayette County Groundwater Conservation District.

Texas Tax Authorities of such sale, conveyance or transfer and the Liquidating Trust shall remit funds sufficient to satisfy in full any related tax debt.

76. <u>Limitation of Releases</u>. Notwithstanding any provision in the Plan or this Confirmation Order to the contrary, no party shall be released of any liability arising in connection with taxes that may be due and owing under Texas state law.

77. <u>Setoff Rights of Texas Comptroller of Public Accounts</u>. Notwithstanding any provision in the Plan or this Confirmation Order to the contrary, the Texas Comptroller of Public Accounts shall retain its right of setoff pursuant to section 553 of the Bankruptcy Code.

78. <u>Resolution of Objection by WRJ Oil & Gas, L.P.</u>. The Debtors agree and stipulate that the following Mineral Leases and/or Oil and Gas Leases are in force and effect only as to that acreage held by production:

(i) that certain Oil and Gas Lease dated August 2, 1999, by and between Theodosia Coppock, as Lessor, and The Exploration Company, as Lessee, a Memorandum of which is recorded in book 550, page 201, Official Records, Maverick County, Texas (the "Burr A Lease") is in force and effect only as to the wells capable of production and the acreage allocated therewith; and

(ii) that certain Oil and Gas Lease dated October 3, 1995 by and between the Estate of A.B. Alkek, as Lessor, and Ashtola Exploration Company, Inc., as Lessee, recorded in Book 410, page 01, Official Public Records, Maverick County, Texas (the "Alkek Lease") is in force and effect.

Furthermore, the Debtors will agree to reserve the amount of $25,000 as a disputed Cure reserve, until such time as the parties reach an agreement on the remediation costs or the Bankruptcy Court enters a Final Order regarding the amount of the Cure claim, if any, owed to WRJ Oil & Gas, L.P.

79.     Treatment of Class 11B Preferred Stock.  The Debtors, the Purchasers and the

Non-Redeeming Preferred Shareholders have agreed to the following treatment for the Allowed

Class 11B Claim:

>           (i)      To the extent not already paid in full, the Non-Redeeming
> Preferred Shareholders will receive up to $7,575,000 as their Allowed Class 11B Claim,
> which shall be comprised of the principal amount owed to the Non-Redeeming Preferred
> Shareholders of $7,500,000, plus the Class 11B Shareholders Attorneys Fee Claim.

>           (ii)     Within thirty (30) days of the Effective Date, the Trustee will pay
> $1 million to the Non-Redeeming Preferred Shareholders.

>           (iii)    The Trustee will engage a rig broker or such other professional to
> market and sell the drilling rigs within thirty (30) days of the Effective Date and shall use
> hi reasonable efforts to sell the drilling rigs on or before October 1, 2010.

>           (iv)     The first $1 million in net proceeds from the sale of any drilling rig
> will be placed in the Indemnification Reserve, with any remaining proceeds from the sale
> of the drilling rigs to be paid to the Non-Redeeming Preferred Shareholders.

>           (v)      Upon termination of the Indemnification Reserve and to the extent
> the Non-Redeeming Preferred Shareholders have yet to be paid in full for their Allowed
> Class 11B Claim, the Trustee shall pay the Indemnification Reserve to the Non-
> Redeeming Preferred Shareholders, subject to the right of the trustee to seek approval of
> the Bankruptcy Court to reduce such Distribution.

>           (vi)     The Trustee will be obligated to make quarterly Distributions from
> the Liquidating Trust Assets to the Non-Redeeming Preferred Shareholders beginning
> October 1, 2010, to the extent that sufficient funds are available in the sole discretion of
> the Trustee.

>           (vii)    The Trustee will use reasonable efforts to pay the Allowed Class
> 11B Claim in full on or before March 1, 2011.

>           (viii)   The Non-Redeeming Preferred Shareholders is authorized to select
> one member of the Trust Committee.

80.     Assumption and Assignment of Agreements with Millenium.  Nothing herein

shall constitute the assumption and assignment of the Joint Exploration Agreement and the Joint

Operating Agreement by and between Millennium E&P Resource Fund I, LLC and TXCO

Resources Inc.(collectively, the "Millenium Agreements"); instead, the Court will consider the

Debtors' ability to assume and assign the Millenium Agreements on February 11, 2010 and will

enter a separate order in regards to whether the Debtors can assume and assign the Millenium

Agreements.


# # #


**Order Submitted by:**
Deborah D. Williamson
State Bar No. 21617500
Patrick L. Huffstickler
State Bar No. 10199250
Thomas Rice
State Bar No. 24025613
Meghan E. Bishop
State Bar No. 24055176
**Cox Smith Matthews Incorporated**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**ATTORNEYS FOR DEBTORS**
**AND DEBTORS-IN-POSSESSION**

2811779.1

# Exhibit "A"

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § § | **CHAPTER 11 CASE** |
| **TXCO RESOURCES INC.,** *et al.,* | § | **CASE NO. 09-51807** |
| **Debtors.** | § § | **Jointly Administered** |
| | § | |

## SECOND AMENDED PLAN OF REORGANIZATION FOR TXCO RESOURCES INC., ET AL., DEBTORS AND DEBTORS-IN-POSSESSION BASED ON SALE OF THE DEBTORS' ASSETS, AS MODIFIED

By: */s/ Deborah D. Williamson*
　　　Deborah D. Williamson
　　　State Bar No. 21617500
　　　Patrick L. Huffstickler
　　　State Bar No. 10199250
　　　Thomas Rice
　　　State Bar No. 24025613
　　　Meghan Bishop
　　　State Bar No. 24055176

**COX SMITH MATTHEWS INCORPORATED**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**ATTORNEYS FOR THE DEBTORS AND THE DEBTORS-IN-POSSESSION**

# INTRODUCTION

TXCO Resources Inc. ("TXCO"), Eagle Pass Well Service, L.L.C. ("Eagle Pass"), TXCO Drilling Corp. ("Drilling"), Charro Energy, Inc. ("Charro"), Texas Tar Sands Inc. ("Tar Sands"), TXCO Energy Corp. ("Energy"), Output Acquisition Corp. ("Output"), OPEX Energy, LLC ("OPEX"), PPL Operating, Inc. ("PPL"), Maverick Gas Marketing, Ltd. ("Maverick Gas"), and Maverick-Dimmit Pipeline, Ltd. ("Maverick-Dimmit") (collectively, the "Debtors" or "Companies"), Debtors and Debtors-in-Possession in the above-captioned jointly administered chapter 11 reorganization cases pending before the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), hereby propose the *Second Amended Plan of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession based on Sale of the Debtors' Assets* (the "Plan") for the resolution of the outstanding claims against and interests in the Debtors. The DIP Lenders, as defined herein, are co-proponents of this Plan. Capitalized terms used herein shall have the meanings ascribed to such terms in Article I.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019, each of the Debtors expressly reserves its respective rights to alter, amend, modify, revoke or withdraw this Plan with respect to such Debtor, one or more times, prior to its substantial consummation.

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ..................................1

ARTICLE II ADMINISTRATIVE EXPENSES AND TAX PRIORITY CLAIMS...................13
2.1.    Administrative Claims ................................................................................13
2.2.    Priority Tax Claims....................................................................................13

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ...............................14
3.1.    Classification of Claims Against and Interest in the Debtors ............................14

ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
            IMPAIRED AND NOT IMPAIRED BY THE PLAN ...................................15
4.1.    Unimpaired Classes of Claims.......................................................................15
4.2.    Impaired Classes of Claims and Interests. ......................................................15

ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS .................16
5.1.    Provisions For Treatment Of Claims And Interests............................................16

ARTICLE VI ACCEPTANCE OR REJECTION OF PLAN.......................................23
6.1.    Classes Entitled to Vote ..............................................................................23
6.2.    Acceptance by Impaired Classes ...................................................................23
6.3.    Presumed Acceptances by Unimpaired Classes ..............................................23
6.4.    Classes Previously Deemed to Reject Plan.....................................................23
6.5.    Summary of Classes Voting on the Plan.........................................................23
6.6.    Special Provision Regarding Unimpaired Claims ...........................................23
6.7.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.................24

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN .........................24
7.1.    Sale of Assets............................................................................................24
7.2.    Substantive Consolidation ...........................................................................25
7.3.    Restructuring Transactions ..........................................................................26
7.4.    Corporate Existence....................................................................................27
7.5.    Directors and Officers of Reorganized TXCO ...............................................28
7.6.    Corporate Action........................................................................................28
7.7.    Revesting of Assets; Releases of Liens .........................................................28
7.8.    Cancellation of Interests .............................................................................29
7.9.    Authority...................................................................................................29
7.10.   P&A Bonding.............................................................................................29
7.11.   Employee Benefits......................................................................................30
7.12.   Exemption from Certain Transfer Taxes ........................................................30
7.13.   Preservation of Rights of Action; Settlement .................................................31

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED
            LEASES AND OTHER AGREEMENTS .......................................................32
8.1.    Assumption/Rejection..................................................................................32
8.2.    Pass-Through .............................................................................................32
8.3.    Mineral Leases/Oil and Gas Leases...............................................................32

| | | |
|---|---|---|
| 8.4. | Seismic Agreements | 33 |
| 8.5. | Assumed Executory Contracts and Unexpired Leases | 33 |
| 8.6. | Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases | 34 |
| 8.7. | Assumed Contracts and Leases, and Contracts and Leases Entered Into After Petition Date | 34 |
| 8.8. | Reservation of Rights | 34 |
| 8.9. | Additional Cure Provisions | 34 |
| 8.10. | Disputed Cure Reserve. | 35 |
| 8.11. | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 35 |
| 8.12. | Survival of Indemnification and Corporation Contribution | 35 |

ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS ...................................... 35

| | | |
|---|---|---|
| 9.1. | Distributions for Claims and Interests Allowed as of Effective Date | 35 |
| 9.2. | Disbursements to Classes of Claims | 36 |
| 9.3. | Record Date for Distributions | 36 |
| 9.4. | Means of Cash Payment | 36 |
| 9.5. | Delivery of Distributions | 36 |
| 9.6. | Claims Paid or Payable by Third Parties | 37 |
| 9.7. | Claims Payable by Third Parties | 38 |
| 9.8. | Applicability of Insurance Policies | 38 |
| 9.9. | Withholding and Reporting Requirements | 38 |
| 9.10. | Expunging of Certain Claims | 38 |

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS ...................................... 38

| | | |
|---|---|---|
| 10.1. | Objections to Claims | 38 |
| 10.2. | Estimation of Claims | 39 |
| 10.3. | Distributions Pending Allowance of Disputed Claim | 39 |
| 10.4. | Disputed Claims Reserves. | 39 |
| 10.5. | Distributions After Allowance | 40 |
| 10.6. | General Unsecured Claims | 40 |
| 10.7. | Compliance with Tax Requirements/Allocations | 40 |

ARTICLE XI ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS 41

| | | |
|---|---|---|
| 11.1. | Professional Fee Claims | 41 |
| 11.2. | Administrative Claims | 41 |
| 11.3. | Administrative Ordinary Course Liabilities | 42 |
| 11.4. | Administrative Tax Claims | 42 |

ARTICLE XII LIQUIDATING TRUST AND DISBURSING AGENT ...................................... 42

| | | |
|---|---|---|
| 12.1. | Generally | 42 |
| 12.2. | Establishment of the Liquidating Trust | 42 |
| 12.3. | Purpose of the Liquidating Trust | 43 |
| 12.4. | Appointment and Powers of the Trust Committee and Trustee | 43 |
| 12.5. | Payment of the Expenses Incurred by the Liquidating Trust | 45 |

12.6. Exculpation; Indemnification................................................................45
12.7. Retention of Funds Prior to Distribution .............................................45
12.8. Distributions to Liquidating Trust Beneficiaries ................................46
12.9. Representation of Trustee .....................................................................46
12.10. Termination of the Liquidating Trust ...................................................47
12.11. Resignation of the Trustee ...................................................................47
12.12. Appointment and Powers of the Disbursing Agent ..............................47
12.13. Payment of the Expenses Incurred by the Disbursing Agent ...............48
12.14. Exculpation; Indemnification of Disbursing Agent..............................48
12.15. Retention of Funds Prior to Distribution by Disbursing Agent ...........49
12.16. Distribution to Beneficiaries ................................................................49
12.17. Representation of Disbursing Agent......................................................50
12.18. Termination of the Disbursing Agent ...................................................50
12.19. Resignation of the Disbursing Agent ....................................................50

ARTICLE XIII CONFIRMATION AND CONSUMMATION OF THE PLAN ........................50
13.1. Conditions Precedent to Confirmation..................................................50
13.2. Conditions Precedent to Effective Date ................................................51
13.3. Substantial Consummation ...................................................................51
13.4. Waiver of Conditions.............................................................................51
13.5. Revocation, Withdrawal, Non-Consummation......................................52

ARTICLE XIV EFFECT OF THE PLAN ON CLAIMS AND INTERESTS .............................52
14.1. Compromise and Settlement .................................................................52
14.2. Satisfaction of Claims ...........................................................................53
14.3. Exculpation and Limitation of Liability ...............................................53
14.4. Good Faith .............................................................................................53
14.5. Discharge of Liabilities.........................................................................53
14.6. Discharge of the Debtors .......................................................................54
14.7. Permanent Injunction ............................................................................55
14.8. Releases by the Debtors, Reorganized TXCO and their Estates ...........55
14.9. Releases by Holders of Claims and Interests........................................56
14.10. Setoffs ...................................................................................................56
14.11. Recoupment ..........................................................................................57
14.12. Release of Liens ....................................................................................57
14.13. Satisfaction of Subordination Rights ...................................................58

ARTICLE XV RETENTION OF JURISDICTION .................................................................58

ARTICLE XVI MISCELLANEOUS PROVISIONS ................................................................59
16.1. Amendments and Modification..............................................................59
16.2. Payment of Statutory Fees ....................................................................59
16.3. Binding Effect........................................................................................59
16.4. Term of Injunctions or Stay ..................................................................60
16.5. Dissolution of Committee ......................................................................60
16.6. No Admissions.......................................................................................60
16.7. Governing Law ......................................................................................60

16.8.   Subordination ................................................................................................ 60
16.9.   Plan Supplement .............................................................................................. 60
16.10.  Notices ........................................................................................................... 61
16.11.  Severability of Plan Provision ....................................................................... 63
16.12.  U.S. Trustee Fees ........................................................................................... 63
16.13.  Default under the Plan .................................................................................... 63

2850243.1

**PLAN SUPPLEMENT DOCUMENTS**

1.     Amended and restated Certificate of Incorporation of Reorganized TXCO Resources Inc.

2.     By-laws of Reorganized TXCO Resources Inc.

PLAN SCHEDULES

Plan Schedule I:     Board of Directors of Reorganized TXCO

Plan Schedule II:     Officers of Reorganized TXCO

Plan Schedule III:     Retained Causes of Action

Plan Schedule IV:     Rejected Executory Contracts and Unexpired Leases

Plan Schedule V:     Assumed Executory Contracts and Unexpired Leases

Plan Schedule VI:     Oil and Gas Leases

Plan Schedule VII:     Liquidating Trust Agreement

2850243.1

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.     Definitions.**

For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or Bankruptcy Rules, will have the meaning given to the term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.    **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the business of the Debtors (including wages, salaries, and commissions for services rendered after the Petition Date), (b) Professional Fee Claims, (c) all fees and charges assessed against the Estates under Chapter 123 of title 28 of the United States Code, and (d) DIP Lender Claims to the extent not already paid or satisfied under the terms of the operative Plan.

1.2.    **"Administrative Claims Bar Date"** means, except as modified by Section 11.1 of the Plan, the deadline for filing proofs of Administrative Claims which shall be forty-five (45) days after the date on which the Debtors mail written notice of the occurrence of the Effective Date.

1.3.    **"Administrative Tax Claim"** means an Unsecured Claim by a governmental unit for taxes (and for interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.4.    **"Affiliate Debtors"** means all the Debtors, other than TXCO Resources Inc.

1.5.    **"Affiliates"** has the meaning given such term by section 101(2) of the Bankruptcy Code.

1.6.    "**Allowed Claim**" means a Claim or any portion thereof:

(a)     if no proof of Claim has been timely filed, such amount of the Claim or group of Claims which has been scheduled by TXCO as liquidated in amount and not disputed or contingent and as to which no objection has been filed by an Interested Party within the time required under this Plan, or otherwise fixed by the Bankruptcy Court, and which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(b)     if a proof of Claim has been filed by the Claims Bar Date, or is deemed timely filed by the Bankruptcy Court pursuant to Final Order, such amount of the Claim as to which any party in interest has not filed an objection within the time required under this Plan or

1

otherwise fixed by the Bankruptcy Court and which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

      (c)      that has been allowed by a Final Order of the Bankruptcy Court; or

      (d)      that is expressly allowed in a liquidated amount in this Plan.

**1.7.** **"Allowed Class … Claim"** means an Allowed Claim in the particular Class described.

**1.8.** **"Allowed Class 11B Claim"** means the Allowed Claim held by the Non-Redeeming Preferred Shareholders.

**1.9.** **"Allowed Interest"** means, with respect to any Interest, an Interest held by a party who was listed as a shareholder of record with TXCO on the Distribution Record Date or as allowed by Final Order of the Bankruptcy Court in response to the Notice of Holders of Interest in Class 11B and Class 12.

**1.10.** **"Anadarko"** means Anadarko E&P Company LP.

**1.11.** **"Assets"** means all assets of the Estates as of the Effective Date including "property of the estate" as described in section 541 of the Bankruptcy Code.

**1.12.** **"Avoidance Actions"** means Causes of Action arising under sections 502, 510, 541, 542, 543, 544, 545, 547 through 551 or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

**1.13.** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., including all amendments thereto, to the extent such amendments are applicable to the Case.

**1.14.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

**1.15.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Cases.

**1.16.** **"Bar Date"** means the deadline for filing proofs of claim established by the Notice of Bankruptcy as September 22, 2009, and any supplemental bar dates established by the Bankruptcy Court pursuant to a Final Order, except as otherwise provided in Section 8.11.

**1.17.** **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.18.** **"Capital Well Service"** means Capital Well Service, LLC.

**1.19.** **"Cases"** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by TXCO, Eagle Pass, Drilling, Charro, Tar Sands, Energy, Output, OPEX, PPL, Maverick Gas, and Maverick-Dimmit on or about May 17, 2009, pending in the Bankruptcy Court and jointly administered under Case No. 09-51807.

**1.20.** **"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**1.21.** **"Causes of Action"** means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether know, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including Avoidance Actions unless otherwise waived by the Debtors or Reorganized TXCO.

**1.22.** **"Chapter 11 Case"** means (a) when used with reference to a particular Debtor, the chapter 11 case pending for the Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the chapter 11 cases pending for the Debtors in the Bankruptcy Court.

**1.23.** **"Claim"** means a claim against one of the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.24.** **"Claims Objection Deadline"** means as applicable (except for Administrative Claims) (a) the day that is the later of (i) the first Business Day that is ninety (90) days after the Effective Date, and (ii) as to proofs of claim filed after the Bar Date, excluding those filed under Section 8.11, the first Business Day that is ninety (90) days after a Final Order is entered deeming the late filed claim to be treated as timely filed, or (b) such later date as may be established by the Bankruptcy Court as may be requested by Reorganized TXCO.

**1.25.** **"Class"** means a category of holders of Claims or Interests as described in Article III of this Plan.

**1.26.** **"Class 11B Shareholders Attorneys Fee Claim"** means the lesser of (i) reasonable attorneys' fees as allowed by the Court or approved by the Trustee or (ii) $75,000.00.

**1.27.** **"Closing Date"** means a date after the Confirmation Date by which the Debtors and the Purchasers will close on the transactions set forth in the PSA, which shall be no later than February 28, 2010, unless such condition is waived or extended in accordance with Section 13.4 herein.

**1.28.** **"Collateral"** means any property or interest in property of the Estates that is subject to a valid and enforceable lien to secure a Claim.

**1.29.** **"Committee"** means the Official Committee of Unsecured Creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

**1.30.** **"Confirmation Date"** means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.31.** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan; as such hearing may be adjourned or continued from time to time.

**1.32.** **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.33.** **"Cure"** means the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the Debtors, the Purchasers and the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations required to be paid as a condition to the assumption of such agreement pursuant to the provisions of section 365 of the Bankruptcy Code, without interest, or such other amount as may be agreed upon by the Debtors, the Purchasers and the parties under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

**1.34.** **"Debtors"** means, collectively, TXCO Resources Inc. and the Affiliate Debtors.

**1.35.** **"Debtors' Adversary Proceeding"** means (i) that certain Complaint and Request for Declaratory Judgment filed by TXCO Resources Inc., *et al*, as plaintiffs, against Bank of Montreal, *et al*, as defendants, and pending in the Bankruptcy Court as Adversary Proceeding No. 09-5077, and (ii) any complaints filed by intervening parties in connection therewith.

**1.36.** **"DIP Lenders"** means those entities identified as "Lenders" in the DIP Loan and their successors and assigns.

**1.37.** **"DIP Loan"** means the Debtor-In-Possession Credit Agreement, dated as of June 15, 2009 by and among TXCO, and the Affiliate Debtors as Borrowers, the DIP Lenders as identified therein, as the Lenders, and the DIP Loan Agent.

**1.38.** **"DIP Loan Agent"** means BD Funding I, LLC, in its capacity as administrative agent under the DIP Loan.

**1.39.** **"Disallowed Claim"** means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order or pursuant to a settlement, or (b)(i) is Scheduled at zero or as contingent, disputed or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**1.40.** **"Disbursing Agent"** shall mean the party who is responsible for, *inter alia*, paying Claims and disbursing funds from the Sale Proceeds Account.

**1.41.** **"Disclosure Statement"** means the written disclosure statement (including all schedules thereto or referenced therein) that relates to the Plan, as approved by the Bankruptcy

Court pursuant to section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented from time to time.

1.42. **"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that (a) have not been Scheduled by the Debtors or have been Scheduled at zero, or as contingent, unliquidated or disputed or (b) are the subject of a pending objection filed in the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.43. **"Disputed Claims Reserves"** means, as applicable, one or more reserves of Cash for Distribution to holders of Allowed Claims to be reserved pending allowance of Disputed Claims in accordance with Article X of the Plan.

1.44. **"Disputed Cure Reserve"** means, as applicable, a reserve of Cash for Distribution to parties whose Cure amount is disputed, to be reserved pending a determination of the amount of the Cure in accordance with Article VIII of the Plan.

1.45. **"Distribution"** means any transfer under this Plan of Cash or other property or instruments.

1.46. **"Distribution Date"** means the date, as determined by Reorganized TXCO, upon which Distributions are made to holders of Allowed Claims entitled to receive Distributions under the Plan. Such date shall be thirty (30) days after the later of either: (a) the Claims Objection Deadline or (b) a Final Order on a Disputed Claim.

1.47. **"Distribution Record Date"** means the record date for purposes of making Distributions under the Plan on account of Allowed Claims or Interests, which shall be the same as the Effective Date.

1.48. **"Effective Date"** means the same Business Day as the Closing Date.

1.49. **"EnCana"** means EnCana Oil & Gas (USA) Inc.

1.50. **"Estates"** means the bankruptcy estates of the Debtors as created under section 541 of the Bankruptcy Code.

1.51. **"Exchange Act"** means the Securities and Exchange Act of 1934, as amended.

1.52. **"Excluded Assets"** means those assets of the Debtors that are not sold to the Purchasers pursuant to the PSA.

1.53. **"Exhibit"** means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement.

1.54. **"Final Order"** means an order, decree or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended, and as to which order, decree or judgment (or any revision, modification or amendment thereof), the time to

appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing has been taken or is pending.

**1.55.** **"Fraud"** means a demonstration of actual fraud that requires a specific demonstration of a misrepresentation of a material fact with the intention to deceive, manipulate, defraud or induce action or inaction, where there is actual reliance on the misrepresentation by a person who, as a result of such reliance, suffers actual injury.

**1.56.** **"General Unsecured Claim"** means a Claim, however arising, including from the rejection of an executory contract or an unexpired lease, which is not an Administrative Claim, DIP Loan Secured Claim, Priority Tax Claim, Administrative Tax Claim, Priority Non-Tax Claim, Secured Claim of a Junior Mineral Lien Claimant or Senior Mineral Lien Claimant, Secured Claim of Revolver Lenders, Secured Claim of Term Loan Lenders, Other Secured Claim or Secured Tax Claim.

**1.57.** **"Governance Documents"** means any and all documents related to corporate governance of Reorganized TXCO, including but not limited to, its certificate of incorporation, corporate bylaws and other organizational documents.

**1.58.** **"Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.59.** **"Indemnification Reserve"** means a reserve established by the Trustee from the Liquidating Trust Assets to satisfy any obligations that the Debtors may have under Section 11.3 of the PSA to indemnify the Purchasers.

**1.60.** **"Initial Payment"** shall be the amount of $1,000,000 plus the Class 11B Shareholders Attorneys Fee Claim which is to be paid to the Non-Redeeming Preferred Shareholders on account of the Non-Redeeming Shareholders Claim within thirty (30) days of the Effective Date.

**1.61.** **"Intercompany Claim"** means any Claim arising prior to the Petition Date against a Debtor by another Debtor, excluding any Claim that Drilling may have against TXCO.

**1.62.** **"Interest"** means the right of any current or former holder or owner of any shares of TXCO Common Stock or TXCO Preferred Stock, or any other equity securities as defined in the Bankruptcy Code of any of the Debtors authorized and issued prior to the Petition Date.

**1.63.** **"Interested Party"** means only Reorganized TXCO, Anadarko, Newfield, the Trustee and the Disbursing Agent, whereby after the Effective Date, no other party shall have standing to object to any Claim or Interest.

**1.64.** **"IRS"** means the Internal Revenue Service of the United States of America.

**1.65.** **"JIB"** means Joint Interest Billing, which is the method for splitting the cost of drilling and operating a well between the working interest owners.

**1.66.** **"JIB Obligor"** means a Person that owes an Unpaid JIB.

**1.67.** **"JIB Payment"** means the *pro rata* payment to be made by the Debtors to a Mineral Subcontractor within 45 days of the Debtors receipt of an Unpaid JIB associated with a particular well.

**1.68.** **"Junior Mineral Lien"** means a lien claimed pursuant to Chapter 56 of the Texas Property Code by a mineral contractor or Mineral Subcontractor for unpaid labor, material or services upon property that the Revolver Lenders and Term Loan Lenders held perfected liens as of the Petition Date.

**1.69.** **"Junior Mineral Lien Claimant"** means the holder of a Junior Mineral Lien upon property that the Revolver Lenders and Term Loan Lenders held perfected liens as of the Petition Date.

**1.70.** **"Liquidating Trust"** means that certain trust that may be created pursuant to this Plan to be administered by the Trustee as set forth in Article XII.

**1.71.** **"Liquidating Trust Agreement"** means that certain Liquidating Trust Agreement that is to govern the Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Liquidating Trust Assets shall be initially conveyed to the Liquidating Trust and shall ultimately govern Distributions to holders of the beneficial interests in the Liquidating Trust, as set forth in, and in a manner consistent with the terms of, this Plan.

**1.72.** **"Liquidating Trust Assets"** means (i) the Excluded Assets, (ii) the assets of investments, if any, hereafter acquired by the Liquidating Trust, (iii) the Retained Causes of Action, and (iv) the proceeds of each of the foregoing, including, without limitation, any interest earned thereon, less any assets distributed or Trust Administrative Expenses incurred by the Trustee.

**1.73.** **"Mineral Subcontractor"** means as defined in Texas Property Code § 56.001(4), a Person who (a) furnishes or hauls material, machinery, or supplies used in mineral activities under contract with a mineral contractor or subcontractor; (b) performs labor used in mineral activities under contract with a mineral contractor; or (c) performs labor used in mineral activities as an artisan or day laborer employed by a subcontractor.

**1.74.** **"Mortgaged Properties"** means those properties of the Debtors subject to liens securing the debt owed under the Revolver Loan, the Term Loan and, to the extent applicable, amounts owed to Junior Mineral Lien Claimants.

**1.75.** **"Mortgaged Property Debt"** means the full amount owed on the Revolver Loan, the Term Loan, and, to the extent applicable, the claims held by Junior Mineral Lien Claimants.

**1.76.** **"New Common Stock"** means shares of common stock of Reorganized TXCO authorized under Section 7.3(a) of the Plan and under the amended Governance Documents of Reorganized TXCO.

**1.77.** **"New Subsidiary Common Stock"** means shares of common stock of an Affiliate Debtor authorized under Section 7.3(a) of the Plan and under the amended Governance Documents of such Affiliate Debtor.

**1.78.** **"Newfield"** means Newfield Exploration Company.

**1.79.** **"Newmex"** means Newmex Energy (USA) Inc. and its affiliates, including Pearl Exploration and Production Ltd., Pearl E&P Canada Ltd., Pearl Exploration and Production USA Ltd., Pearl Montana Exploration and Production Ltd., Valkyries Texas Corp. and Valkyries Texas Gas Ltd.

**1.80.** **"Non-Mortgaged Property"** means property of the Debtors that the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date.

**1.81.** **"Non-Redeeming Preferred Shareholders"** means O'Connor Global Multi-Strategy Alpha Master Limited, O'Connor Global Convertible Arbitrage II Master Limited and O'Connor PIPES Corporate Strategies Master Limited which are all of the members of Class 11B.

**1.82.** **"Non-Redeeming Preferred Shareholders Claim"** means $7,500,000 plus the Class 11B Shareholders Attorneys Fee Claim. For the avoidance of doubt, in no event shall the Non-Redeeming Preferred Shareholders Claim exceed $7,575,000.00.

**1.83.** **"Notice of Bankruptcy"** means the Notice of Chapter 11 Bankruptcy, Meeting of Creditors, & Deadlines that was filed by the Debtors on June 1, 2009.

**1.84.** **"Operational Plan"** means that certain Plan of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession based on Continued Operations by Reorganized TXCO, which the Debtors will request to confirm if the Sale Plan is not confirmed or closing does not occur as set forth in the Sale Plan.

**1.85.** **"Other Secured Claim"** means a Secured Claim not otherwise classified under the Plan.

**1.86.** **"Person"** means an individual, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, limited liability company, limited liability partnership, or other entity.

**1.87.** **"Petition Date"** means, as applicable, (i) May 17, 2009 with respect to those Debtors filing their voluntary petitions for relief in the Bankruptcy Court on such date, or (ii) May 18, 2009 with respect to those Debtors filing their voluntary petitions for relief in the Bankruptcy Court on such date.

**1.88.** **"Plan"** means this chapter 11 plan of reorganization for the Debtors as herein proposed, including all supplements, appendices and schedules thereto, either in its present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code.

**1.89.** **"Plan Rate"** means interest at a rate of five (5%) percent per annum.

**1.90.** **"Plan Schedule"** means a schedule annexed either to this Plan or as an appendix to the Disclosure Statement, as the same may be altered, amended or modified from time to time.

**1.91.** **"Plan Supplement"** means the supplement to the Plan containing the forms of Amended and restated Certificate of Incorporation of Reorganized TXCO Resources Inc. and By-laws of Reorganized TXCO Resources Inc. and any other Plan Schedules filed in connection with the Plan.

**1.92.** **"Plan Supplement Filing Date"** means the date by which the Plan Supplement, and any Exhibits or Plan Schedules not filed with the Plan, shall be filed with the Bankruptcy Court, which date shall be at least five (5) days prior to the Voting Deadline or such later date as set by the Bankruptcy Court.

**1.93.** **"Post-Petition Interest"** means interest on the principal amount of an Allowed Claim from May 17, 2009 to and including five (5) business days immediately prior to the date a Distribution is made on account of such Allowed Claim, and after the Effective Date, interest on any unpaid portion of such Allowed Claim and any unpaid post-petition interest. This definition will not apply to Distributions made to holders of Claims in Classes 1, 3, and 4.

**1.94.** **"Priority Non-Tax Claim"** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.95.** **"Priority Tax Claim"** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.96.** **"Professional"** means any professional employed in the Cases pursuant to section 327, 328 or 1103 of the Bankruptcy Code.

**1.97.** **"Professional Fee Claim"** means a Claim under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional for services rendered or expenses incurred in the Cases on or prior to the Effective Date (including expenses of the members of the Committee incurred as members of the Committee in discharge of their duties as such).

**1.98.** **"Professional Fee Order"** means the order entered by the Bankruptcy Court on May 20, 2009, authorizing the interim payment of Professional Fee Claims, as may be amended from time to time prior to the entry on the docket of the Confirmation Order.

**1.99.** **"PSA"** means that certain Purchase and Sale Agreement dated January 11, 2010 by and between the Debtors, as sellers, and Newfield and Anadarko, as purchasers.

**1.100.** **"PSA Assets"** means any Assets sold to the Purchasers under the PSA, and also includes any and all rights and interests of the Sellers in and to the confidentiality agreements assigned under the PSA and all rights relating to claims, causes of action, choses in action, rights of recovery, rights of setoff and rights of recoupment in connection with such confidentiality

agreements, whether arising or relating to any period prior to or after the Effective Time (as set forth in the PSA), and shall also include any Assets that are retained by Reorganized TXCO directly or indirectly for the benefit of the Purchasers.

**1.101. "Purchasers"** means Anadarko and Newfield, jointly and severally, as counterparties to the PSA and each individually as a Purchaser to the extent a particular Asset is transferred solely to either Newfield or Anadarko.

**1.102. "Released Parties"** means (i) all former and current directors, officers and employees of each of the Debtors, (ii) the Committee and each member of the Committee in its representative capacity, (iii) Restructuring Professionals, (iv) the DIP Loan Agent and DIP lenders, (v) the Revolver Lenders and the Revolver Loan Agent, and (vi) the Term Loan Lenders and the Term Loan Agent, and, with respect to each of the foregoing, such Person's respective officers, directors, partners, members, employees, attorneys, financial advisors, accountants, investment bankers, agents, professionals and representatives retained by such Person.

**1.103. "Reorganized TXCO"** means Reorganized TXCO Resources Inc., following substantive consolidation of all Debtors other than TXCO Drilling, Inc., as reorganized as a Delaware corporation, pursuant to this Plan on or after the Effective Date.

**1.104. "Restructuring Professionals"** means, collectively, Administar Services Group LLC, Cox Smith Matthews Incorporated, DeGolyer and MacNaughton, FTI Consulting, Inc., Fulbright & Jaworski, L.L.P., Gardere Wynne Sewell LLP, Global Hunter Securities LLC, Grant Thornton LLP, KPMG LLP, Lonquist & Co. LLC, William M. Cobb & Associates, Inc. and their respective Affiliates, members, partners, shareholders, officers, directors and employees.

**1.105. "Retained Causes of Action"** means all Causes of Action which any Debtor may hold against any Person, other than (i) any Causes of Action against a Released Party, and (ii) any Causes of Action which are PSA Assets.

**1.106. "Revolver Lender"** means those entities identified as "Lenders" in the Revolver Loan and their successors and assigns.

**1.107. "Revolver Loan"** means that certain Amended and Restated Credit Agreement dated April 2, 2007 by and between TXCO, Output, Energy, and Tar Sands, as Borrowers and the Revolver Lenders as identified therein, as Lenders, and the Revolver Loan Agent, including any subsequent amendments thereto.

**1.108. "Revolver Loan Agent"** means Bank of Montreal, in its capacity as administrative agent under the Revolver Loan.

**1.109. "St. Mary"** means St. Mary Land and Exploration Company.

**1.110. "Sale Proceeds"** means the amounts received by the Debtors in connection with the sale of Assets under the PSA.

**1.111. "Sale Proceeds Account"** means a segregated account to which the Debtors will deposit the Sale Proceeds following payment of the DIP Loan, the Revolver Loan and the Term

10

Loan and establishing the Administrative Claims Reserve and whereby the Disbursing Agent shall be authorized to pay all Allowed Claims. Under no circumstances will the Sale Proceeds Account become a Liquidating Trust Asset.

**1.112. "Scheduled"** means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

**1.113. "Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Cases by the Debtors, as such schedules have been or may be further modified, amended or supplemented from time to time in accordance with Rule 1009 of the Bankruptcy Rules or Orders of the Bankruptcy Court.

**1.114. "Secured Claim"** means a Claim that is secured by a security interest in or lien upon property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.115. "Secured Tax Claim"** means a Secured Claim owing to a taxing authority.

**1.116. "Securities Act"** means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended.

**1.117. "Seismic Agreements"** means any and all agreements and/or data that the Debtors own or have an interest in related to the interpretation of the composition, fluid content, extent and geometry of rocks in the subsurface, including, but not limited to those agreements set forth in Plan Schedule V(C).

**1.118. "Senior Mineral Lien"** means a lien claimed pursuant to Chapter 56 of the Texas Property Code by a mineral contractor or Mineral Subcontractor for unpaid labor, material or services upon property that the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date.

**1.119. "Senior Mineral Lien Claimant"** means the holder of a Secured Claim against the Debtors upon property that the Revolver Lenders and Term Loan Lenders do not hold perfected liens as of the Petition Date.

**1.120. "Solicitation Order"** means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**1.121. "Substantial Contribution Claim"** means a Claim under section 503(b)(3-4) of the Bankruptcy Code and in accordance with applicable bankruptcy law.

**1.122. "Tax Reserve"** means, as applicable, one or more reserves of Cash for distribution to holders of Allowed Tax Claims to be reserved pending allowance of Disputed Claims in accordance with Article X of the Plan.

**1.123.** **"Term Loan"** means that certain Amended and Restated Term Loan Agreement dated April 2, 2007 by and between TXCO, Output, Energy, and Tar Sands, as Borrowers and the Term Loan Lenders as identified therein, as Lenders, and the Term Loan Agent, including any subsequent amendments thereto.

**1.124.** **"Term Loan Agent"** means Bank of Montreal, in its capacity as administrative agent under the Term Loan or such other Person as appointed by the Term Loan Lenders to act as successor administrative agent.

**1.125.** **"Term Loan Lender"** means those entities identified as "Lenders" in the Term Loan and their successors and assigns.

**1.126.** **"Trust Committee"** means the advisory committee established pursuant to Article IX of the Liquidating Trust.

**1.127.** **"Trustee"** means the trustee of the Liquidating Trust.

**1.128.** **"Unclaimed Property"** means any funds or property distributed to Creditors (together with any interest earned thereon) which are unclaimed as of one hundred eighty (180) days after a Distribution. Unclaimed Property will include, without limitation, Cash and any other property which is to be distributed pursuant to this Plan which has been returned as undeliverable without a proper forwarding address, or which was not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

**1.129.** **"Unimpaired Claim"** means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.130.** **"Unpaid JIB"** means a JIB payment owed to the Debtors that was outstanding as of the Petition Date and remains unpaid as of the Confirmation Hearing or has been collected by the Debtors post petition and placed in a segregated account.

**1.131.** **"Unsecured Claim"** means any Claim to the extent such Claim is not a Secured Claim.

**1.132.** **"U.S. Trustee"** means the Office of the United States Trustee, or a representative thereof.

**1.133.** **"Voting Deadline"** means January 19, 2010, as the last day and time for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order.

**1.134.** **"Voting Record Deadline"** means the date and time established by the Bankruptcy Court in the Solicitation Order for determining those holders of Claims against the Debtors entitled to vote on the Plan.

2850243.1

**B.      Rules of Interpretation.**

For purposes of this Plan:  a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document will be substantially in such form or substantially on such terms and conditions; c) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; d) unless otherwise specified, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation of this Plan; g) "after notice and a hearing," or a similar phrase has the meaning ascribed in Bankruptcy Code § 102; h) "includes" and "including" are not limiting; i) "may not" is prohibitive, and not permissive; j) "or" is not exclusive; and k) U.S. Trustee includes a designee of the U.S. Trustee.

**C.      Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## ADMINISTRATIVE EXPENSES AND TAX PRIORITY CLAIMS

### 2.1.      Administrative Claims

Subject to the provisions of Article XI of this Plan, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement, the holder of each Allowed Administrative Claim shall receive in full satisfaction, release, settlement and discharge of such Allowed Administrative Claim:  (a) Cash equal to the unpaid portion of such Allowed Administrative Claim; or (b) in accordance with the terms of any written agreement regarding such Allowed Administrative Claim; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during these Cases will be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

### 2.2.      Priority Tax Claims

On, or as soon as reasonably practicable thereafter, the later of (a) the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the election of the

Disbursing Agent and Purchasers, (i) Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such different treatment agreed to in writing. To the extent the Debtors elect under section 1129(a)(9)(C) of the Bankruptcy Code to make regular installment payments in Cash, the holder of an Allowed Priority Tax Claim will receive quarterly payments on the last day of each quarter, of principal and interest, at an interest rate of six and one-half (6½ %) percent per annum with the final payment due on or before May 17, 2014. The first installment will be made at the end of the first full quarter after the Effective Date.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors. All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes as set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article II above.

A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class only for the purpose of voting on, and receiving distributions pursuant to, the Plan to the extent such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

**3.1.    Classification of Claims Against and Interest in the Debtors**

(a)    Class 1.        Class 1 consists of the Allowed DIP Loan Secured Claim.

(b)    Class 2.        Class 2 consists of the Allowed Secured Claims of Senior Mineral Lien Claimants.

(c)    Class 3.        Class 3 consists of the Allowed Secured Claims of Revolver Lenders.

(d)    Class 4.        Class 4 consists of the Allowed Secured Claims of the Term Loan Lenders.

(e)    Class 5.        Class 5 consists of the Allowed Secured Claims of Junior Mineral Lien Claimants.

(f)    Class 6.        Class 6 consists of the Allowed Secured Tax Claims.

(g)    Class 7.        Class 7 consists of the Allowed Priority Non-Tax Claims.

(h)    Class 8.        Class 8 consists of the Allowed General Unsecured Claims.

14

(i)     Class 9.        Omitted

(j)     Class 10.       Class 10 consists of the Allowed Intercompany Claims.

(k)     Class 11.       Class 11 consists of the Allowed Preferred Stock Interests.

(l)     Class 12.       Class 12 consists of the Allowed Common Stock Interests.

(m)     Class 13.       Class 13 consists of Allowed Other Secured Claims.

## ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

**4.1.    Unimpaired Classes of Claims.**

The Classes listed below are Unimpaired by the Plan:

Class 1 (Allowed DIP Loan Secured Claim)
Class 3 (Allowed Secured Claims of Revolver Lenders)
Class 4 (Allowed Secured Claims of the Term Loan Lenders)
Class 6 (Allowed Secured Tax Claims)
Class 7 (Allowed Priority Non-Tax Claims)
Class 13 (Allowed Other Secured Claims)

**4.2.    Impaired Classes of Claims and Interests.**

At the time the Bankruptcy Court entered the order approving the Disclosure Statement, the Classes listed below were Impaired by the Plan; however, the PSA and the Plan now provides for improved treatment for each of these Classes, such that they may not be impaired on the date of the Confirmation Hearing:

Class 2 (Allowed Secured Claims of holders of Senior Mineral Liens)
Class 5 (Allowed Secured Claims of holders of Junior Mineral Liens)
Class 8 (Allowed General Unsecured Claims)
Class 9 Omitted
Class 10 (Allowed Intercompany Claims)
Class 11 (Allowed Preferred Stock Interests)
Class 12 (Allowed Common Stock Interests)

2850243.1

# ARTICLE V
# PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

### 5.1.    Provisions For Treatment Of Claims And Interests

**After the Effective Date, only the Interested Parties will have standing to object to the allowance of any Claim or Interest.**

(a)    <u>Class 1 Allowed DIP Loan Secured Claim</u>.  Notwithstanding any other term or provisions of this Plan to the contrary, the DIP Loan Secured Claim shall be allowed in full in the unpaid principal balance then outstanding on the Closing Date, together with accrued and unpaid contractual interest, fees and expenses through the Closing Date.  On the Closing Date, the Debtors will transfer to the DIP Loan Agent from their Cash, the funds necessary to satisfy in full the DIP Loan, including any and all accrued interest at the contractual rate and charges.  In addition, on the Closing Date, the Debtors will pay all fees and all attorneys' fees and expenses unless the Debtors or the Committee dispute the reasonableness of such fees and expenses prior to the Confirmation Hearing.  If there is a dispute with regard to such fees and expenses, the Debtors shall pay on the Closing Date such amount as ordered by the Bankruptcy Court at the Confirmation Hearing.  All payments made under this Section 5.1(a) shall be final and irrevocable.

(b)    <u>Class 2 Allowed Secured Claims of Senior Mineral Lien Claimants</u>.  Each Senior Mineral Lien Claimant must execute and return to Reorganized TXCO, a full, complete and recordable release, in the form provided by the Debtors, of any and all liens asserted against property of the Debtors, any third-party counterparty of the Debtors, including, but not limited to Anadarko, St. Mary, EnCana, Newmex, Capital Well Service, and any other JIB Obligor, to the extent applicable.  Senior Mineral Lien Claimants shall cooperate with the Debtors in the preparation of the applicable release by providing such information or documentation as reasonably requested by the Debtors, so as to allow Debtors to appropriately prepare such release.  To the extent a Senior Mineral Lien Claimant does not return a release within thirty (30) days from the date that the Debtors and/or Reorganized TXCO provide the release, Reorganized TXCO and the Purchasers shall be authorized, but not obligated, to execute and file the release on behalf of such Senior Mineral Lien Claimant.  Reorganized TXCO shall retain each release until such time as the Disbursing Agent is able to distribute to such Senior Mineral Lien Claimant the principal amount of their Allowed Claim plus Post-Petition Interest at the Plan Rate, which shall be no earlier than the Effective Date, and only upon Distribution shall each release be recorded by Reorganized TXCO.  Each Senior Mineral Lien Claimant will receive on account of its Allowed Secured Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Secured Claim, either (i) Cash in an amount equal to the principal amount of such Allowed Secured Claim, plus any reasonable attorneys' fees, but only to the extent allowed by the Bankruptcy Court under applicable law and Post-Petition Interest at the Plan Rate on such Allowed Claim, determined as set forth below or (ii) such different treatment as to which such holder and the Debtors, the Trustee or Reorganized TXCO, as applicable, will have agreed upon in writing.

16

<u>Treatment</u>

1.     <u>Application of JIBs</u> – All Senior Mineral Lien Claimants that hold Allowed Claims on leases as either a mineral contractor or mineral subcontractor (as such terms are defined in Tex. Prop. Code § 56.001(4)) for a particular well will receive a JIB Payment. Immediately upon payment of an Unpaid JIB to the Debtors or Reorganized TXCO, the JIB Obligor will be deemed released of any and all claims and/or liens held or asserted by any Mineral Subcontractor including, without limitation, any claims under Texas Property Code § 56.043 or any other section of the Texas Property Code. The Plan reserves the right to satisfy the JIB Payment from the Sale Proceeds and upon receipt of the Unpaid JIB, such amounts will be deposited into the Sale Proceeds Account.

2.     <u>Post-Petition Interest and Payment in Full Plus Interest</u> – Except as established pursuant to the procedure set forth herein, Post-Petition Interest on Class 2 Allowed Secured Claims of Senior Mineral Lien Claimants shall be calculated at the Plan Rate. Any Senior Mineral Lien Claimant seeking (a) payment of Post-Petition Interest on such holder's Claim at a rate other than the Plan Rate and/or (b) reimbursement of attorneys' fees and other costs and expenses associated with such holder's Claim (or both) shall file a motion seeking such relief within thirty (30) days after the Effective Date. Any such motion must include all of the documentation upon which the Claimant relies including, but not limited to, any contract with the Debtors and invoices reflecting attorneys' fees and costs actually incurred, to establish the Claimant's entitlement to (a) Post-Petition Interest at a rate other than the Plan Rate and (b) attorneys' fees and other costs and expenses. **THE INCLUSION OF THE ENTITLEMENT TO THESE TYPES OF CLAIMS IN PROOFS OF CLAIM PREVIOUSLY FILED SHALL <u>ONLY</u> BE SUFFICIENT TO ESTABLISH SUCH CLAIMS WITHOUT A SUPPLEMENTAL FILING IF THE PROOF OF CLAIM STATES ON ITS FACE THE RATE OF INTEREST AND ACTUAL AMOUNT OF ATTORNEYS' FEES.** If the Proof of Claim does not state on its face the rate of interest and actual amount of attorneys' fees that accrued pre-petition, such amount shall be included in the amount set forth in the motion. Interested Parties shall have thirty (30) days from receipt of any such motion to file a response to the motion, which will also include any objection that the Interested Party has to the principal amount of such Claim.

2850243.1

(c)     Class 3 Allowed Secured Claims of the Revolver Lenders.  The Class 3 Claims shall be Allowed in full in the unpaid principal balance then outstanding on the Closing Date, together with accrued and unpaid contractual interest, fees and expenses through the Closing Date.  On the Closing Date, the Debtors will transfer to the Revolver Loan Agent from their Cash, the funds necessary to satisfy in full the Revolver Loan, including any and all accrued interest at the contractual rate and charges.  In addition, on the Closing Date, the Debtors will pay all fees and all attorneys' fees and expenses unless the Debtors or the Committee dispute the reasonableness of such fees and expenses prior to the Confirmation Hearing.  If there is a dispute with regard to such fees and expenses, the Debtors shall pay on the Closing Date such amount as ordered by the Bankruptcy Court at the Confirmation Hearing.  All payments made under this Section 5.1(c) shall be final and irrevocable.

(d)     Class 4 Allowed Secured Claims of the Term Loan Lenders.  The Class 4 Claims shall be Allowed in full in the unpaid principal balance then outstanding on the Closing Date, together with accrued and unpaid contractual interest, fees and expenses through the Closing Date.  On the Closing Date, the Debtors will transfer to each of the Term Lenders from their Cash, the funds necessary to satisfy in full the Term Loan, including any and all accrued interest at the contractual rate and charges.  In addition, on the Closing Date, the Debtors will pay all fees and all attorneys' fees and expenses unless the Debtors or the Committee dispute the reasonableness of such fees and expenses prior to the Confirmation Hearing.  If there is a dispute with regard to such fees and expenses, the Debtors shall pay on the Closing Date such amount as ordered by the Bankruptcy Court at the Confirmation Hearing.  All payments made under this Section 5.1(d) shall be final and irrevocable.

(e)     Class 5 Allowed Secured Claims of Junior Mineral Lien Claimant.  Each Junior Mineral Lien Claimant must execute and return to Reorganized TXCO, a full, complete and recordable release, in the form provided by the Debtors, of any and all liens asserted against property of the Debtors, any third-party counterparty of the Debtors, including, but not limited to Anadarko, St. Mary, EnCana, Newmex, Capital Well Service, and any other JIB Obligor, to the extent applicable.  Junior Mineral Lien Claimants shall cooperate with the Debtors in the preparation of the applicable release by providing such information or documentation as reasonably requested by the Debtors, so as to allow Debtors to appropriately prepare such release.  To the extent a Junior Mineral Lien Claimant does not return a release within thirty (30) days from the date that the Debtors and/or Reorganized TXCO provide the release, Reorganized TXCO and the Purchasers shall be authorized, but not obligated, to execute and file the release on behalf of such Junior Mineral Lien Claimant.  Reorganized TXCO shall retain each release until such time as the Disbursing Agent is able to distribute to such Junior Mineral Lien Claimant the principal amount of their Allowed Claim plus Post-Petition Interest at the Plan Rate, which shall be no earlier than the Effective Date, and only upon Distribution shall each release be recorded by the Reorganized Debtors.  Each Junior Mineral Lien Claimant will receive on account of its Allowed Secured Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Secured Claim, either (i) Cash in an amount equal to the principal amount of such Allowed Secured Claim, plus any reasonable attorneys' fees, but only to the extent allowed by the Bankruptcy Court under applicable law and Post-Petition Interest at the Plan Rate on such Allowed Claim, determined as set forth below or (ii) such different treatment as to which such holder and the Debtors, the Trustee or Reorganized TXCO, as applicable, will have agreed upon in writing.

<u>Treatment</u>

1.  <u>Application of JIBs</u> – All Junior Mineral Lien Claimants that hold Allowed Claims on leases as either a mineral contractor or mineral subcontractor (as such terms are defined in Tex. Prop. Code § 56.001(4)) for a particular well will receive a JIB Payment. Immediately upon payment of an Unpaid JIB to the Debtors or Reorganized TXCO, the JIB Obligor will be deemed released of any and all claims and/or liens held or asserted by any Mineral Subcontractor including, without limitation, any claims under Texas Property Code § 56.043 or any other section of the Texas Property Code. The Plan reserves the right to satisfy the JIB Payment from the Sale Proceeds and upon receipt of the Unpaid JIB, such amounts will be deposited into the Sale Proceeds Account.

2.  <u>Post-Petition Interest and Payment in Full Plus Interest</u> – Except as established pursuant to the procedure set forth herein, Post-Petition Interest on Class 5 Allowed Secured Claims of Junior Mineral Lien Claimants shall be calculated at the Plan Rate. Any Junior Mineral Lien Claimant seeking (a) payment of Post-Petition Interest on such holder's Claim at a rate other than the Plan Rate and/or (b) reimbursement of attorneys' fees and other costs and expenses associated with such holder's Claim (or both) shall file a motion seeking such relief within thirty (30) days after the Effective Date. Any such motion must include all of the documentation upon which the Claimant relies including, but not limited to, any contract with the Debtors and invoices reflecting attorneys' fees and costs actually incurred, to establish the Claimant's entitlement to (a) Post-Petition Interest at a rate other than the Plan Rate and (b) attorneys' fees and other costs and expenses. **THE INCLUSION OF THE ENTITLEMENT TO THESE TYPES OF CLAIMS IN PROOFS OF CLAIM PREVIOUSLY FILED SHALL <u>ONLY</u> BE SUFFICIENT TO ESTABLISH SUCH CLAIMS WITHOUT A SUPPLEMENTAL FILING IF THE PROOF OF CLAIM STATES ON ITS FACE THE RATE OF INTEREST AND ACTUAL AMOUNT OF ATTORNEYS' FEES.** If the Proof of Claim does not state on its face the rate of interest and actual amount of attorneys' fees that accrued pre-petition, such amount shall be included in the amount set forth in the motion. Interested Parties shall have thirty (30) days from receipt of any such motion to file a response to the motion, which will also include any objection that the Interested Party has to the principal amount of such Claim.

(f)     <u>Class 6 Allowed Secured Tax Claims</u>. Each holder of an Allowed Secured Tax Claim will receive, in full satisfaction, settlement, release, and discharge of and in exchange

for such Allowed Secured Tax Claim, as will have been determined by the Debtors, Reorganized TXCO, or the Trustee, as applicable, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Secured Tax Claim, (ii) treatment in a manner consistent with section 1129(a)(9)(D) of the Bankruptcy Code, or (iii) such different treatment as agreed to in writing. To the extent the Debtors elect under section 1129(a)(9)(D) of the Bankruptcy Code to make regular installment payments in Cash, the holder of an Allowed Secured Tax Claim will receive quarterly payments on the last day of each quarter, of principal and interest, at an interest rate of six and one-half per cent (6½ %) per annum with the final payment due on or before May 17, 2014. The first installment will be made at the end of the first full quarter after the Effective Date. Each holder of an Allowed Secured Tax Claim shall retain the liens securing such Claim.

(g)     <u>Class 7 Allowed Priority Non-Tax Claims</u>.  Each holder of an Allowed Priority Non-Tax Claim will receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Priority Non-Tax Claim or (ii) such different treatment as agreed to in writing.

(h)     <u>Class 8 Allowed General Unsecured Claims</u>.  Each holder of an Allowed General Unsecured Claim will receive on account of its Allowed Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash in an amount equal to the principal amount of such Allowed Claim, plus reasonable attorneys' fees but only to the extent allowed by the Court under applicable law and Post-Petition Interest at the Plan Rate on such Claim, determined as set forth below or (ii) such different treatment as agreed to in writing.

Except as established pursuant to the procedure set forth herein, Post-Petition Interest on Class 8 Allowed General Unsecured Claims shall be calculated at the Plan Rate. Any holder of an Allowed General Unsecured Claim seeking (a) payment of Post-Petition Interest on such holder's Claim at a rate other than the Plan Rate and/or (b) reimbursement of attorneys' fees and other costs and expenses associated with such holder's Claim (or both) shall file a motion seeking such relief within thirty (30) days after the Effective Date. Any such motion must include all of the documentation upon which the Claimant relies including, but not limited to, any contract with the Debtors and invoices reflecting attorneys' fees and costs actually incurred, to establish the Claimant's entitlement to (a) Post-Petition Interest at a rate other than the Plan Rate and (b) attorneys' fees and other costs and expenses. **THE INCLUSION OF THE ENTITLEMENT TO THESE TYPES OF CLAIMS IN PROOFS OF CLAIM PREVIOUSLY FILED SHALL <u>ONLY</u> BE SUFFICIENT TO ESTABLISH SUCH CLAIMS WITHOUT A SUPPLEMENTAL FILING IF THE PROOF OF CLAIM STATES ON ITS FACE THE RATE OF INTEREST AND ACTUAL AMOUNT OF ATTORNEYS' FEES.** If the Proof of Claim does not state on its face the rate of interest and actual amount of attorneys' fees that accrued pre-petition, such amount shall be included in the amount set forth in the motion. Interested Parties shall have thirty (30) days from receipt of any

such motion to file a response to the motion, which will also include any objection that the Interested Party has to the principal amount of such Claim.

(i)     Class 9.  Omitted.

(j)     Class 10 Intercompany Claims.  Except as to Drilling, all Intercompany Claims will be deemed discharged on the Effective Date.

(k)     Class 11 Preferred Stock.  Class 11 is comprised of all holders of Interests in Class 11 Preferred Stock in the Debtors under the Sale Plan, including any party that indicated intent to redeem their shares of Class 11 Preferred Stock prior to the Petition Date.  The holders of Class 11 Preferred Stock shall be separately classified based on whether the holder of such Interest exercised a right to redeem the Class 11 Preferred Stock prior to the Petition Date.  On the Effective Date, all existing Class 11 Preferred Stock shall, without any further action, be cancelled, annulled and extinguished and any certificates representing such Class 11 Preferred Stock shall become null, void and of no force or effect.

1.     Class 11A Redeemed Preferred Stock

Class 11A shall be comprised of all holders of Class 11 Preferred Stock that exercised their right to redeem their Interests prior to the Petition Date.  As of the Confirmation Hearing, all of the Class 11A Redeemed Preferred Stock had been acquired by Newfield, which shall be granted the sole beneficial interest in the Liquidating Trust.  Newfield has agreed that it shall receive no distribution on account of its Class 11A Redeemed Preferred Stock until such time as the holders of Class 11B Preferred Stock have been paid in full and $10 million has been distributed *pro rata* to the holders of Class 12 Common Stock.

2.     Class 11B Preferred Stock

Class 11B shall be compromised of all holders of Class 11B Preferred Stock that did not seek to redeem their Interests prior to the Petition Date.  Each holder of Class 11B Preferred Stock will receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Class 11B Preferred Stock, either (i) Distributions from the Liquidating Trust, as set forth in the Liquidating Trust Agreement, of Cash equal to the lesser of the (x) principle amount (*i.e.,* the stated value) of such Class 11B Preferred Stock or (y) the amount remaining in the Liquidating Trust, if any, after payment in full of all Allowed Claims, taxes, operating expenses and costs associated with liquidation of the Trust Assets; or (ii) such different treatment as agreed to in writing.

(l)     Class 12 Common Stock.  Class 12 is comprised of all holders of Common Stock in the Debtors under the Sale Plan.  On the Effective Date, all existing Common Stock

shall, without any further action, be cancelled, annulled and extinguished and any certificated or electronic shares representing such Common Stock shall become null, void and of no force or effect, and all such shares shall immediately be delisted from all exchanges and other trading facilities. Each holder of Class 12 Common Stock on the Distribution Record Date, will receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Class 12 Common Stock, their *pro rata* share of Cash remaining after payment in full of all Allowed Claims, the Class 11B Interest Holders, taxes, operating expenses and costs associated with liquidation of the Trust Assets up to, but not exceeding, $10 million from the Liquidating Trust. No Payments will be made to any holders of Class 12 Common Stock until after the amounts due to Class 11B Preferred Stock have been paid in full.

      (m)   <u>Class 13 Allowed Other Secured Claims</u>.  Each holder of Class 13 Allowed Other Secured Claims shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, at the option of the Debtors, Reorganized TXCO, or the Disbursing Agent, as applicable, (i) turnover of the collateral securing such Allowed Other Secured Claim, (ii) Cash in an amount equal to the outstanding principal amount of such Allowed Claim, plus reasonable attorneys' fees but only to the extent allowed by the Court under applicable law and Post-Petition Interest at the Plan Rate on such Claim, determined as set forth below, (iii) such other treatment as agreed to in writing, or (iv) treatment in any other manner such that the Allowed Other Secured Claim shall otherwise be an Unimpaired Claim.

      Except as established pursuant to the procedure set forth herein, Post-Petition Interest on Class 13 Allowed Other Secured Claims shall be calculated at the Plan Rate.  Any holder of an Allowed Other Secured Claims seeking (a) payment of Post-Petition Interest on such holder's Claim at a rate other than the Plan Rate and/or (b) reimbursement of attorneys' fees and other costs and expenses associated with such holder's Claim (or both) shall file a motion seeking such relief within thirty (30) days after the Effective Date. Any such motion must include all of the documentation upon which the Claimant relies including, but not limited to, any contract with the Debtors and invoices reflecting attorneys' fees and costs actually incurred, to establish the Claimant's entitlement to (a) Post-Petition Interest at a rate other than the Plan Rate and (b) attorneys' fees and other costs and expenses. **THE INCLUSION OF THE ENTITLEMENT TO THESE TYPES OF CLAIMS IN PROOFS OF CLAIM PREVIOUSLY FILED SHALL <u>ONLY</u> BE SUFFICIENT TO ESTABLISH SUCH CLAIMS WITHOUT A SUPPLEMENTAL FILING IF THE PROOF OF CLAIM STATES ON ITS FACE THE RATE OF INTEREST AND ACTUAL AMOUNT OF ATTORNEYS' FEES.** If the Proof of Claim does not state on its face the rate of interest and actual amount of attorneys' fees that accrued pre-petition, such amount shall be included in the amount set forth in the motion.  Interested Parties shall have thirty (30) days from receipt of any such motion to file a response to the motion, which will also include any objection that the Interested Party has to the principal amount of such Claim.

**ARTICLE VI**
**ACCEPTANCE OR REJECTION OF PLAN**

**6.1.    Classes Entitled to Vote**

Subject to Sections 6.3 and 6.4 of this Plan, Claim and Interest holders in Impaired Classes of Claims and Interests are entitled to vote as a class to accept or reject the Plan.

**6.2.    Acceptance by Impaired Classes**

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan, shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept or reject the Plan.

**6.3.    Presumed Acceptances by Unimpaired Classes**

Classes 1, 3, 4, 6, 7 and 13 are Unimpaired by the Plan.  Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**6.4.    Classes Previously Deemed to Reject Plan**

Classes 10-12 were not originally entitled to receive or retain any property under the Plan. Claims and Interests in Impaired Classes that do not entitle the holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.  Based on the PSA, the Plan now provides that Classes 11-12 may receive a distribution from the Excluded Assets.  Given that the treatment of such Classes is improved, the Debtors did not solicit votes from such Classes.

**6.5.    Summary of Classes Voting on the Plan**

As a result of the provisions of Sections 6.1, 6.3 and 6.4 of this Plan, the votes of holders in Classes 2(a) – 2(u), 5(a) – 5(bb), and 8 were solicited with respect to this Plan.

**6.6.    Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, nothing shall affect the Debtors' or Reorganized TXCO's rights and defenses, both legal and equitable, with respect to any

Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to Setoff Claims or recoupments against Unimpaired Claims.

### 6.7. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

If any Class of Claims or Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall (a) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with Article XVI of the Plan. With respect to any Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1. Sale of Assets

The Plan contemplates the sale and transfer of substantially all of the assets of the Debtors, except for the Excluded Assets and Retained Causes of Action, to Newfield and Anadarko pursuant to the PSA. The Confirmation Order shall contain specific authority for the Debtors to sell and assign the assets pursuant to the terms of the PSA.

The initial Disbursing Agent shall be FTI Consulting Inc. The Disbursing Agent shall be the sole signatory on the Sale Proceeds Account and any reserve or other accounts created with Sale Proceeds.

On the Closing Date, or as soon thereafter as practicable with regard to Sections 7.1(a) and 7.1(e), but no later than the Effective Date, the Debtors shall make the following transfers from the Sale Proceeds to:

(a)     A segregated account to establish the Administrative Claims Reserve for the benefit of the holders of Allowed Administrative Claims, whereby the Debtors shall deposit the amount necessary to pay such Allowed Claims in full upon entry of a Final Order;

(b)     The DIP Loan Agent, the funds necessary to satisfy in full the DIP Loan, including any accrued interest at the contractual rate, charges, fees and reasonable attorneys' fees and expenses, as agreed upon by the Debtors and the Committee or ordered by the Bankruptcy Court at the Confirmation Hearing;

(c)     The Revolver Loan Agent, the funds necessary to satisfy in full the Revolver Loan, including any accrued interest at the contractual rate, charges, fees and reasonable attorneys' fees and expenses, as agreed upon by the Debtors and the Committee or ordered by the Bankruptcy Court at the Confirmation Hearing;

(d)     To each of the Term Lenders, their proportionate share of the funds necessary to satisfy in full the Term Loan, including any accrued interest at the contractual rate, charges, fees and reasonable attorneys' fees and expenses, as agreed upon by the Debtors and the Committee or ordered by the Bankruptcy Court at the Confirmation Hearing; and

24

(e)     The Sale Proceeds Account, a deposit of the remaining Sale Proceeds, whereby the Disbursing Agent shall pay all remaining Allowed Claims in full, including Post-Petition Interest at the Plan Rate or such other rate as determined by the Bankruptcy Court in connection with the claims resolution process, upon entry of a Final Order.

### 7.2.     Substantive Consolidation

(a)     Substantive Consolidation of the Debtors

The Debtors and their respective Estates, except for Drilling, shall be substantively consolidated for all purposes under the Plan.  As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), except for the Intercompany Claims held by Drilling, will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of each of the Debtors; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against each of the Debtors; (d) any Interest in any of the Debtors will be deemed an Interest in each of the Debtors; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors.  The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor are subject in the absence of substantive consolidation under this Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect.  Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests.

(b)     Order Granting Substantive Consolidation

This Plan shall serve as a motion seeking entry of an order substantively consolidating the Cases, as described and to the extent set forth in this Section 7.2.  Unless an objection to such substantive consolidation is made in writing by any creditor affected by the Plan as herein provided on or before five (5) days prior to the Voting Deadline, or such other date as may be fixed by the Court, an order approving the substantive consolidation described herein (which may be in the Confirmation Order) may be entered by the Court.  However, an order shall only be entered if the Bankruptcy Court enters the Confirmation Order.  In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

### 7.3. Restructuring Transactions

(a) New Common Stock for Reorganized TXCO

On the Effective Date, Reorganized TXCO shall issue New Common Stock of Reorganized TXCO pursuant to an election made by Anadarko and Newfield, based on the following options:

1. Parent Company Option

   On the Effective Date, or as soon as reasonably practicable thereafter, Reorganized TXCO shall issue a total of two (2) shares of New Common Stock. One share of Reorganized TXCO Common Stock will be issued to Anadarko. This share shall be entitled to vote for only one member of the Board of Directors of Reorganized TXCO. The other share of Reorganized TXCO common stock will be issued to Newfield. This share shall be entitled to vote for only one member of the Board of Directors of Reorganized TXCO. Any shares of the Reorganized TXCO not issued to Anadarko and/or Newfield will be issued to the Liquidating Trustee. The New Common Stock of Reorganized TXCO will also be governed by the Reorganized TXCO Shareholders' Agreement, which will dictate the terms for appointing the third member of the Reorganized TXCO Board of Directors.

2. Subsidiary Company Option

   On the Effective Date, or as soon as reasonably practicable thereafter, Reorganized TXCO shall issue a single share of New Subsidiary Common Stock to the Liquidating Trust. Furthermore, Reorganized TXCO shall retain its interest in Drilling, as needed, or such other Affiliate Debtor as determined by Reorganized TXCO. Such Affiliate Debtor shall issue a total of five (5) shares of New Subsidiary Common Stock. One share of New Subsidiary Common Stock will be issued to Anadarko. One share of New Subsidiary Common Stock will be issued to Newfield. The remaining three (3) shares of New Subsidiary Common Stock will be issued to Reorganized TXCO.

(b) Establishing the Liquidating Trust

On the Effective Date a Liquidating Trust will be created as set forth in Article XII, which will hold the Liquidating Trust Assets. Furthermore, the Liquidating Trust will hold both shares of New Common Stock of Reorganized TXCO, if not issued to Anadarko and Newfield, depending on the election made by Anadarko and Newfield.

**7.4.    Corporate Existence**

(a)    Continued Corporate Existence

Following the Effective Date, the Debtors shall be merged into a single entity, except for Drilling, in accordance with applicable non-bankruptcy law and pursuant to the amended Governance Documents.  After the Effective Date, Reorganized TXCO will be free to act in accordance with applicable government laws, including, without limitation, sale of assets, mergers, dissolution, and name changes.

(b)    Governance Documents

1.    Amended Governance Documents

On the Effective Date, or as soon as reasonably practicable thereafter, Reorganized TXCO shall file amended Governance Documents with the Secretary of State of the State of Delaware. The amended Governance Documents will include provisions prohibiting issuance of any nonvoting securities on behalf of Reorganized TXCO.

2.    Other General Corporate Matters

On the Effective Date or as soon as reasonably practicable thereafter, Reorganized TXCO may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that Reorganized TXCO determines is necessary or appropriate.

Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of Reorganized TXCO shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests, directors of the

Debtors or Reorganized TXCO, as the case may be, or any other Entity.

### 7.5. Directors and Officers of Reorganized TXCO

In the event Anadarko and Newfield choose the Parent Company Option, the initial board of directors of Reorganized TXCO shall consist of three (3) directors. Under the Parent Company Option, one member shall be selected by Anadarko, one by Newfield and a third member shall be selected by the other two members of the Board of Directors as set forth in the Reorganized TXCO Shareholders' Agreement. In the event Anadarko and Newfield choose the Subsidiary Company Option, the initial board of directors of Reorganized TXCO shall consist of one director, who will be elected by the Trustee. To the extent any such Person is an Insider (as defined in section 101(31) of the Bankruptcy Code), the nature of any compensation for such Person will also be disclosed prior to the Confirmation Hearing. Each of the Persons on the initial Board of Directors of Reorganized TXCO shall serve in accordance with the Amended Governance Documents of Reorganized TXCO, as the same may be amended from time to time.

Reorganized TXCO will initially have one officer selected by the Trustee who will serve as both president and secretary. The initial officer of Reorganized TXCO will be indentified at the Confirmation Hearing. To the extent any such Person is an Insider (as defined in section 101(31) of the Bankruptcy Code), the nature of any compensation for such Person will also be disclosed at such time. The initial officers shall serve in accordance with the Amended Governance Documents of Reorganized TXCO, as the same may be amended from time to time.

### 7.6. Corporate Action

On the Effective Date, the adoption of the Certificates of Incorporation or similar constituent documents, the adoption of the Bylaws, the selection of directors and officers (or persons serving in similar capacities) for Reorganized TXCO, and all other actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan). All matters provided for in the Plan involving the organizational structure of the Debtors or Reorganized TXCO, and any corporate action required by the Debtors or Reorganized TXCO in connection with the Plan, shall, as of the Effective Date, be deemed to have occurred and shall be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the security holders or directors of the Debtors and Reorganized TXCO.

### 7.7. Revesting of Assets; Releases of Liens

Except as otherwise set forth in the Plan, in the Plan Supplement or in the Confirmation Order, as of the Effective Date, the Assets, if any, that are not Liquidating Trust Assets or PSA Assets shall revest in Reorganized TXCO free and clear of all Claims, Liens, encumbrances and other Interests except to the extent provided in the Plan. From and after the Effective Date, Reorganized TXCO, to the extent not dealt with by the Disbursing Agent, may operate (or liquidate and wind up) its business and use, acquire and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly

imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, Reorganized TXCO may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

From and after the Effective Date, the Disbursing Agent may operate (or liquidate and wind up) its business and use, acquire and dispose property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, Disbursing Agent may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

### 7.8. Cancellation of Interests

All Interests of the Debtors shall be cancelled and annulled on the Effective Date, except as set forth in this Plan. The Debtors will follow the applicable securities laws governing the deregistration of its publicly traded stock in connection with cancellation of its Interests.

### 7.9. Authority

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors, their assets and operations.

### 7.10. P&A Bonding

RLI Insurance Company ("RLI") has issued a bond (the "Bond") on behalf of Debtor to cover obligations of Debtor arising from or out of the ownership and operation of its oil and gas properties, and activities related thereto (the "Bonding Program"). The obligations covered by the Bond include, but are not limited to, royalty obligations, plugging and abandonment obligations and penalties assessed for non-compliance with applicable rules and regulations governing ownership and operation of oil and gas properties. The Bonding Program includes, but is not limited to, bonds issued in regard to oil and gas properties in Texas and Louisiana ("the Leases"). Under the Bonding Program, bonds were issued to the Railroad Commission of Texas, Comptroller of The State of Texas, and the Louisiana Office of Conservation. The approximate principal sum outstanding under the Bonds is $424,484.00. The obligations of the Debtor in regard to the Bonds are evidenced by, among other things, the Bonds, a letter of credit and various indemnity agreements (the "Bond Documents"), or any other documents subsequently entered into between Debtor and RLI.

Pursuant to the Plan, Reorganized TXCO or the Liquidating Trust will continue to own and operate oil and gas properties, and, as a result, will need to keep the Bonding Program in place. The Debtor hereby assumes the indemnity agreements and letter of credit between it and RLI and the rights of RLI under the Bond Documents are unimpaired and shall pass through the Debtor's bankruptcy unaffected in any manner and will become the obligations of the Reorganized Debtor or the Liquidating Trust, as applicable. Debtor shall pay to RLI accrued, but unpaid, bond fees in the amount of $7,451.00 on the Effective Date of the Plan or under such other payment terms as may be agreed to by RLI. Subsequent bond fees shall be paid by the

Reorganized Debtor when due as provided in the Bond Documents or any other documents subsequently entered into between the Debtor and RLI.

Upon the Effective Date of the Plan, all proofs of claims filed in Debtor's Chapter 11 bankruptcy case by RLI shall be deemed withdrawn. To the extent any other provision in the Plan or Confirmation Order conflicts with the provisions of this section 7.10, this section shall control unless specifically agreed to otherwise by RLI. All obligations of all parties to RLI under the bond, indemnity agreement and related documents would be assumed. RLI's rights under these documents would pass through the bankruptcy unimpaired. There would be no release of any guarantors, indemnitors or other parties liable to RLI.

### 7.11. Employee Benefits

On and after the Effective Date and until at least October 31, 2010, Reorganized TXCO intends to retain at least two employees in connection with its ongoing operations. As such, Reorganized TXCO will retain an interest in its health insurance plan, including any COBRA coverage that will be available to employees that are not retained by Reorganized TXCO. The Disbursing Agent may advance funds from the Sale Proceeds Account sufficient to allow Reorganized TXCO to (1) honor, in the ordinary course of business, any employee benefits approved for payment after the Petition Date by Final Order of the Bankruptcy Court including but not limited to compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time, and any other Benefit Plan; and (2) honor, in the ordinary course of business, claims of employees employed as of the Effective Date for accrued vacation time arising prior or subsequent to the Petition Date; provided, however, that the Debtors' or Reorganized TXCO's performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter Reorganized TXCO's defenses, claims, any causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

### 7.12. Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers or mortgages from or by the Debtors to Reorganized TXCO, the Liquidating Trust or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**7.13.** **Preservation of Rights of Action; Settlement**

(a)      Retention of Causes of Action

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise dealt with in the Plan or are expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code:  (1) any and all rights, claims, causes of action (including the Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall vest in Reorganized TXCO, the Purchasers, the Trustee or the Disbursing Agent, all as applicable, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) the Debtors, Reorganized TXCO, the Disbursing Agent, the Purchasers and the Trustee, as applicable, do not waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates:  (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter any right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that the Debtors, Reorganized TXCO, the Disbursing Agent, Purchasers or the Trustee, as applicable, have, or may have, as of the Effective Date.  Interested Parties may commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, and counterclaims in their sole discretion.  The Retained Causes of Action are transferred to the Liquidating Trust.

(b)      Retention of Subsequent Causes of Action

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan or the Confirmation Order shall preclude or estop Reorganized TXCO, the Purchasers, the Disbursing Agent or the Trustee or its privies, as successors in interest to the Debtors and their privies, from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its or their rights in connection with the Causes of Action, irrespective of the identity of any interest, cause of action, or nexus of fact, issues or events which is now or which could have been asserted in these Cases, the present litigation, and those

which may be asserted in any subsequent litigation brought by any Interested Party. Moreover, the failure to commence any Retained Causes of Action prior to the Confirmation Date shall not constitute res judicata, judicial or collateral estoppel.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED
## LEASES AND OTHER AGREEMENTS

### 8.1.  Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases, including, but not limited to, those contracts and leases listed as being rejected on Plan Schedule IV will be rejected by Reorganized TXCO unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan or is identified on Plan Schedule V as an executory contract or unexpired lease being assumed pursuant to the Plan; (b) is the subject of a motion to assume filed on or before the Confirmation Hearing; or (c) has been previously rejected or assumed.

### 8.2.  Pass-Through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of Reorganized TXCO's business, but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory and/or non-executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of Reorganized TXCO and the counterparty unaltered and unaffected by the bankruptcy filings or Chapter 11 Cases.

### 8.3.  Mineral Leases/Oil and Gas Leases

To the extent any of the Debtors' Mineral Leases or Oil and Gas Leases constitute an executory contract or unexpired lease of real property under section 365 of the Bankruptcy Code, such Mineral Leases or Oil and Gas Leases will be assumed or assumed and assigned by Reorganized TXCO. To the extent any of the Debtors' Mineral Leases or Oil and Gas Leases constitute contracts or other property rights not required to be assumed or rejected under section 365 of the Bankruptcy Code, except as provided in the Plan or Confirmation Order, such Mineral Leases or Oil and Gas Leases shall pass through the Chapter 11 Cases for the benefit of the Debtors and/or Reorganized TXCO and the counterparties to such Mineral Leases or Oil and Gas Leases, and the Debtors and/or Reorganized TXCO is hereby authorized to transfer such Mineral Leases or Oil and Gas Leases to either Anadarko, Newfield and/or the Liquidating Trust.

Except for the defaults of a kind specified in sections 365(b)(2) and 541(c)(1) of the Bankruptcy Code (which defaults the applicable Debtors or Reorganized TXCO will not be required to cure), or as otherwise provided herein, the legal, equitable and contractual rights of the counterparties to such Mineral Leases or Oil and Gas Leases shall be unaltered by the Plan, except that any provision restricting the transfer of such Mineral Leases or Oil and Gas Leases shall not apply to the Debtors' transfer to either Anadarko, Newfield and/or the Liquidating

Trust; if the Mineral Lease or Oil and Gas Lease is subject to the provisions of section 365 of the Bankruptcy Code, that to the extent a failure by the Debtors to pay or perform an obligation under such Mineral Lease or Oil and Gas Lease is a default under any applicable Mineral Lease or Oil and Gas Lease, such default shall be cured for all purposes by the payments provided for herein or subsequent performance of such obligation with such applicable Mineral Lease or Oil and Gas Lease otherwise remaining in full force and effect. To the extent such payment is due and owing on the Effective Date, such payment shall be made, in Cash, on the Distribution Date, or upon such other terms as may be agreed to by Reorganized TXCO or the Trustee, as the case may be. To the extent such payment is not due and owing on the Effective Date, such payment (a) will be made, in Cash, in accordance with the terms of any agreement between the parties, or as such payment becomes due and owing under (i) applicable non-bankruptcy law, or (ii) in the ordinary course of business of Reorganized TXCO or the Trustee, as applicable, or (b) will be made upon other terms as may be agreed upon by Reorganized TXCO or the Trustee, as the case may be, and the Person to whom such payment is due. To the extent it is impossible for Reorganized TXCO to cure a default arising from any failure to perform a non-monetary obligation, and to the extent such non-monetary default can be cured, such default shall be cured by performance by the applicable Debtor, at or after the time of assumption in accordance with the terms of the applicable Mineral Lease or Oil and Gas Lease with the applicable Mineral Lease or Oil and Gas Lease remaining in effect. If there is a dispute as to any cure obligation (including cure payments) the lessor shall be entitled to payment and/or performance only as provided in the Plan.

### 8.4.    Seismic Agreements

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors shall assign to Anadarko, Newfield and/or the Liquidating Trust all of their right, title and interest in any and all Seismic Agreements.  In the alternative, the Debtors' right, title and interest to any, some and/or all Seismic Agreements may be retained by Reorganized TXCO or transferred to an Affiliate Debtor.

### 8.5.    Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or is the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any claims that may arise in connection therewith.

**8.6.     Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, Reorganized TXCO and the Trustee expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized TXCO, as applicable, from counterparties to rejected or repudiated executory contracts or unexpired leases.  Additionally, the Debtors, the Trustee, the Disbursing Agent, Purchasers and/or Reorganized TXCO, as may be applicable, reserve the right to collect any amounts owed to the Debtors under such executory contract or unexpired lease.

**8.7.     Assumed Contracts and Leases, and Contracts and Leases Entered Into After Petition Date**

Contracts and leases with third parties entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by the applicable Interested Party or the Trustee in the ordinary course of business.

**8.8.     Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any of the Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, the Trustee or Reorganized TXCO, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**8.9.     Additional Cure Provisions**

Except as otherwise provided under the Plan, any monetary amounts that must be cured as a requirement for assumption and/or assignment by any of the Debtors pursuant to the provisions of section 365 of the Bankruptcy Code, such cure shall be effected or otherwise satisfied by prompt payment of such monetary amount as contemplated by Section 365(b)(1)(A) of the Bankruptcy Code or as otherwise agreed to by the parties.  If there is a dispute regarding (a) the timing of any payment required in order to meet the promptness requirement of 365(b)(1), (b) the nature, extent or amount of any cure requirement, (c) the Debtors', Reorganized TXCO's, the Trustee's or the Debtors' assignees ability to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (d) any other matter pertaining to assumption, cure will occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

2850243.1

### 8.10.  Disputed Cure Reserve.

A Disputed Cure Reserve shall be established for the purpose of effectuating Distributions to parties whose Cure amount is subject to dispute.  The Disputed Cure Reserve shall be equal to 100% of the (a) amount asserted by the Claimant or (b) such estimated amount as approved in an order by the Bankruptcy Court.  Reorganized TXCO, the Disbursing Agent or the Trustee may request estimation for any Cure.

### 8.11.  Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be filed with the Claims Agent no later than thirty (30) days after the later of the Effective Date or the effective date of rejection.  Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any of the Debtors without the need for any objection by any party in interest or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims; provided, however, if the holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure the obligations under such rejected executory contract or lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

### 8.12.  Survival of Indemnification and Corporation Contribution

Except as otherwise specifically provided herein or in the Plan, any obligations or rights of the Debtors to indemnify, defend or advance expenses to its present and former directors, officers, employees, agents or representatives under its certificate of incorporation, bylaws, policies, any agreement or under state law, or any agreement with respect to any claim, demand, suit, cause of action, or proceeding, shall survive confirmation of the Plan, until such time as a Directors and Officers Liability Insurance Policy is put in place that provides for an Extended Reporting Period/Tail of six years from the date of Closing and a total policy limit of $15 million is purchased with Cash that constitutes an Excluded Asset.  Allowed Claims against the Debtors for pre-Petition Date indemnifications shall be classified under the Plan as General Unsecured Claims and are payable as Class 8 Allowed General Unsecured Claims.

### ARTICLE IX
### PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1.  Distributions for Claims and Interests Allowed as of Effective Date

Except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, distributions to be made on account of Allowed Claims and Allowed Interests as of the Effective

Date shall be made on the Distribution Date. New Common Stock issued under the Plan shall be deemed issued as of the Effective Date.

### 9.2. Disbursements to Classes of Claims

The Debtors, Reorganized TXCO, the Disbursing Agent and/or the Trustee, as applicable, shall make all Distributions required under the Plan except Distributions to the Claims in Classes 1 and 3, which distributions shall be made to the DIP Lender Agent and the Revolver Loan Agent, respectively, who shall promptly deliver such distributions to the holders of such Claims in accordance with the provisions of this Plan and the applicable credit documents. Distributions made to the DIP Loan Agent and the Revolver Loan Agent, shall constitute Distributions to holders of Allowed DIP Loan Secured Claims and Allowed Secured Claims of the Revolver Lenders, as the case may be, regardless of whether the DIP Loan Agent and/or the Revolver Loan Agent make subsequent distributions to such holders.

Additionally, the Debtors and/or Reorganized TXCO shall deliver all of the Liquidating Trust Assets to the Liquidating Trust for the beneficial interest of Class 11A Redeemed Preferred Stock, subject to the obligations owing to the holders in Class 11B and Class 12 under the Plan. Thereafter, the Trustee shall make all Distributions to the holders of Class 11B Preferred Stock and Class 12 Common Stock, as applicable, in accordance with the provisions of this Plan. Distributions made by Reorganized TXCO to the Liquidating Trust, shall constitute distributions to holders Class 11A Redeemed Preferred Stock, regardless of whether the Trustee makes subsequent distributions to such holders but any valuation of such distribution shall be net of obligations owing to holders of Claims in Class 11B and Class 12.

### 9.3. Record Date for Distributions

As of the close of business on the Distribution Record Date, the registers for Claims and Interests will be closed, and except as to claims filed pursuant to Section 8.11 of the Plan, there shall be no further changes in the holder of record of any Claim or Interest. Except as to claims filed pursuant to Section 8.11 of this Plan, Reorganized TXCO, the Disbursing Agent and the Trustee, as applicable, shall have no obligation to recognize any transfer of Claim or Interest occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those holders of record stated on the registers of Claims and/or Interests as of the close of business on the Distribution Record Date for distributions under the Plan.

### 9.4. Means of Cash Payment

Cash payments made pursuant to this Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

### 9.5. Delivery of Distributions

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made by Reorganized TXCO, the DIP Lender Agent, the Revolver Loan Agent, the Disbursing Agent or the Trustee, as the case may be, (a) at the addresses set

forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if Reorganized TXCO, the Disbursing Agent or the Trustee have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to Reorganized TXCO, as applicable, after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and Reorganized TXCO, as applicable, has not received a written notice of a change of address, (d) in the case of the holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer, or (e) at the addresses set forth in a properly completed letter of transmittal accompanying securities, if any, properly remitted to Reorganized TXCO. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until Reorganized TXCO, as applicable, or the appropriate indenture trustee, agent, or servicer is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions made through Reorganized TXCO or the indenture trustee, agent, or servicer, shall be returned to Reorganized TXCO until such distributions are claimed. All claims for undeliverable distributions must be made on or before the first (1st) anniversary of the Effective Date, after which date all Unclaimed Property shall be free of any restrictions thereon, except as provided in the Plan, and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  All Unclaimed Property that was originally distributed from the Sale Proceeds shall be returned to the Sale Proceeds Account.

### 9.6. Claims Paid or Payable by Third Parties

(a)     Claims Paid by Third Parties

The Debtors, Reorganized TXCO, the Disbursing Agent or the Trustee as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full or in part on account of such Claim from a party that is not a Debtor, Reorganized TXCO, the Disbursing Agent or the Trustee.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, Reorganized TXCO, the Disbursing Agent or the Trustee on account of such Claim, such holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to Reorganized TXCO, the Disbursing Agent or the Trustee, as applicable, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing Reorganized TXCO, the Disbursing Agent or the Liquidating Trust, as applicable, annualized interest at the Plan Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

### 9.7. Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any applicable insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the applicable insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 9.8. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors, Reorganized TXCO, the Disbursing Agent or the Trustee or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses

### 9.9. Withholding and Reporting Requirements

In connection with this Plan and all distributions hereunder, Reorganized TXCO, the Disbursing Agent and the Trustee, as applicable, shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized TXCO, the Disbursing Agent and the Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### 9.10. Expunging of Certain Claims

All Claims marked or otherwise designated as "contingent, unliquidated or disputed" on the Debtors' Schedules and for which no proof of claim has been timely filed, shall be deemed disallowed and such claim may be expunged without the necessity of filing a claim objection and without any further notice to, or action, order or approval of the Bankruptcy Court.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

### 10.1. Objections to Claims

Interested Parties (or their authorized representatives), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims. From and after the Effective Date, Interested Parties (or their authorized representatives) may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Interested Parties (or their authorized representatives) also shall have the

right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law. Commercially reasonable efforts shall be used to settle or otherwise reduce the amount of General Unsecured Claims.

As soon as practicable, but no later than the Claims Objection Deadline, Interested Parties (or their authorized representatives) may file objections with the Bankruptcy Court and serve such objections on the creditors holding the Claims to which objections are made. Nothing contained herein, however, shall limit the right of Interested Parties (or their authorized representatives) to object to Claims, if any, filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion without notice or hearing.

### 10.2.  Estimation of Claims

The Disbursing Agent or the Trustee (or their authorized representative), as applicable, may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether a previous objection has been made to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, Interested Parties, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

### 10.3.  Distributions Pending Allowance of Disputed Claim

Subject to any requirement that a Claimant provide a release under Section 5.1 of this Plan, within ten (10) days of filing an objection to a Claim by any Interested Party, the Disbursing Agent shall pay the undisputed amount of such Claim plus interest at the Plan Rate; *provided, however*, such Distribution shall not be made any earlier than fourteen (14) days after the Effective Date.

### 10.4.  Disputed Claims Reserves.

One or more Disputed Claims Reserves shall be established for the purpose of effectuating distributions to holders of Disputed Claims pending the allowance or disallowance of such claims in accordance with this Plan. The applicable Disputed Claims Reserves shall be withheld from the property to be distributed to particular classes under the Plan. The Disputed Claims Reserves shall be equal to 100% of the distributions to which holders of Disputed Claims in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and 13 would be entitled under this Plan as of such date if such Disputed Claims in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and 13 were Allowed Claims in their (a) Face Amount or (b) estimated amount of such Disputed Claim in Classes 2(a-u), 5 (a-bb), 6, 7, 8 and

13 as approved in an order by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code.

### 10.5. Distributions After Allowance

Payments and distributions shall be made to each holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such holder belongs and Section 9.6. Within thirty (30) days of the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, Reorganized TXCO, the Trustee or the Disbursing Agent, as applicable, shall distribute to the holder of such Claim, as provided for in Section 9.6, the distribution (if any) that would have been made to such holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date. After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall be deposited into the Sale Proceeds Account.

### 10.6. General Unsecured Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude payment of Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### 10.7. Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, Reorganized TXCO, the Disbursing Agent and the Trustee shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and any distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, Reorganized TXCO, the Disbursing Agent and the Trustee (or their authorized representative) shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Plan hereby reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

2850243.1

# ARTICLE XI
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### 11.1.  Professional Fee Claims

(a)    On the Effective Date, the Debtors shall pay all amounts owing to Professionals for all outstanding amounts relating to prior periods through the Effective Date approved by the Bankruptcy Court in accordance with the Professional Fee Order; provided, however, that Professionals shall continue to prepare fee applications in accordance with the Professional Fee Order for services rendered and expenses incurred up to the Effective Date.  No later than fifteen (15) days prior to the Confirmation Hearing, each Professional shall estimate fees and expenses due for periods that have not been billed as of the anticipated Effective Date. Any party in interest shall have until the Confirmation Hearing to object to such estimate.  If no party objects to a Professional's estimate, then within ten (10) days of the Effective Date such Professional shall submit a bill and, provided that such bill is no more than the estimate, the fees and expenses shall be paid; provided, however, that payment of any Professional's success fee shall only be upon approval of such fee by the Bankruptcy Court.  On the Effective Date, Reorganized TXCO shall fund an escrow account in an amount equal to the aggregate amount of outstanding fee applications not ruled upon by the Bankruptcy Court as of the Effective Date plus the aggregate amount of all estimated fees and expenses due for periods that have not been billed as of the Effective Date.   Such escrow account shall be used pay the remaining Professional Fee Claims owing to the Professionals as and when Allowed by the Bankruptcy Court.  When all Professional Fee Claims have been paid in full, amounts remaining in such escrow account, if any, shall be deposited into the Sale Proceeds Account.

(b)    All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code for services rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than Substantial Contribution Claims under section 503(b)(4) of the Bankruptcy Code) must be filed and served on the Interested Parties and their counsel no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Interested Parties and their counsel and the requesting Professional or other entity no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

### 11.2.  Administrative Claims

The Confirmation Order will establish an Administrative Claims Bar Date for filing of all Administrative Claims, including Substantial Contribution Claims (but not including Professional Fee Claims or claims for the expenses of the members of the Committee or Administrative Claims), which date will be forty-five (45) days after the Effective Date. Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary course liabilities, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. A notice prepared by Reorganized TXCO will set

41

forth such date and constitute notice of this Administrative Claims Bar Date. Interested Parties, as applicable, as the case may be, shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims. Holders of Administrative Claims pursuant to section 503(b)(9) of the Bankruptcy Code were required to file proof of such a claim on or before August 21, 2009.

### 11.3.  Administrative Ordinary Course Liabilities

Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the applicable Debtors' businesses (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims. Such Administrative Claims, unless objected to by the applicable Interested Parties, shall be assumed and paid in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim.

### 11.4.  Administrative Tax Claims

All Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, will be paid on the later of (i) thirty (30) days following the Effective Date; (ii) thirty (30) days following the allowance of such Administrative Tax Claim or (iii) pursuant to the provisions of, and at the time provided in Section 505(b)(2) of the Bankruptcy Code.

## ARTICLE XII
## LIQUIDATING TRUST AND DISBURSING AGENT

### 12.1.  Generally

The Plan proposes that on the Effective Date a Liquidating Trust will be created which will hold the Liquidating Trust Assets and potentially the New Common Stock of Reorganized TXCO. The following description shall generally apply to the Liquidating Trust created under the Plan.

### 12.2.  Establishment of the Liquidating Trust

On the Effective Date, the Trustee shall execute the Liquidating Trust Agreement on behalf of the Liquidating Trust. The Debtors will transfer to the Liquidating Trust the Liquidating Trust Assets and potentially the New Common Stock of Reorganized TXCO representing one hundred percent (100%) of the equity interest in Reorganized TXCO. Additionally, the Liquidating Trust will establish the Indemnification Reserve, which shall initially hold $1 million, to satisfy any obligations that the Debtors may have under Section 11.3 of the PSA to indemnify the Purchasers.

### 12.3. Purpose of the Liquidating Trust

The Liquidating Trust shall exist after the Effective Date, with all the powers of a trust under applicable Texas law. The Liquidating Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on or after the Effective Date.

After the Effective Date, the Liquidating Trust will own the Liquidating Trust Assets and potentially one hundred percent of the equity of Reorganized TXCO and shall have the flexibility to conduct any operations necessary to liquidate the Liquidating Trust Assets and to enhance or preserve the value of the Liquidating Trust Assets.

### 12.4. Appointment and Powers of the Trust Committee and Trustee

Prior to the Effective Date, three individuals shall be selected to serve on the Trust Committee. The Trust Committee shall initially consist of: (i) two (2) members representing the holders of Class 11A Redeemed Preferred Stock; (ii) one (1) member representing the holders of Class 12 Common Stock, and shall in no event include any person or member of any Person to whom any Trust Administrative Expense is payable (other than pursuant to Section 9.5). Any action which is required or permitted to be taken by the Trust Committee pursuant to the Liquidating Trust Agreement shall be taken by the vote of a majority of the members of the Trust Committee.

To the extent the Trustee is required by the Trust to consult with the Trust Committee, such consultation is purely advisory. The Trustee shall not be required to act upon any direction or recommendation given by the Trust Committee, except to the extent the Trust Committee exercises its right to replace the Trustee.

At the Confirmation Hearing, the Debtors will identify an individual as nominated by Newfield to act as the initial Trustee under the Liquidating Trust. The Trustee will serve from and after the Effective Date until a successor is duly elected or appointed by the Trust Committee. The Trustee shall receive title to all Liquidating Trust Assets that the Debtors transfer to the Liquidating Trust, including but not limited to, and except as provided in the Plan, any interests held by the Liquidating Trust in real and personal property.

Pursuant to the Liquidating Trust Agreement, the Trustee shall have the power and authority to perform the following acts, among others:

(a)     Accept the Liquidating Trust Assets transferred and provided to the Liquidating Trust pursuant to the Liquidating Trust Agreement and the Plan;

(b)     Pay obligations under the Plan owing to holders of Class 11B Preferred Stock and Class 12 Common Stock;

(c)     Distribute Liquidating Trust Assets to Beneficiaries, as defined in the Liquidating Trust Agreement in accordance with the terms of this Liquidating Trust Agreement;

(d)     Perfect and secure his/her right, title and interest to any and all Liquidating Trust Assets;

(e)     Reduce all of the Liquidating Trust Assets to his possession and conserve, protect collect and liquidate or otherwise convert all Liquidating Trust Assets into Cash;

(f)     Distribute the net proceeds of Liquidating Trust Assets as specified herein;

(g)     Release, convey, subordinate or assign any right, title or interest in or to the Liquidating Trust Assets;

(h)     Pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Liquidating Trust Assets, and to protect the Liquidating Trust and the Trustee from liability;

(i)     Deposit Liquidating Trust funds and draw checks and make disbursements thereof;

(j)     Employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Trustee may deem necessary.  The Trustee shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance of such advice.  The fees and expenses of all such professionals shall be charges as expenses of the Liquidating Trust and shall be paid upon approval of the Trustee;

(k)     Employ brokers, investment brokers, sales representatives or agents, or other Persons necessary to manage the Liquidating Trust Assets;

(l)     Exercise any and all powers granted the Trustee by any agreements or by Texas common law or any statute that serves to increase the extent of the powers granted to the Trustee hereunder;

(m)     Take any action required or permitted by the Plan or the applicable Liquidating Trust Agreement;

(n)     Execute obligations, whether negotiable or non-negotiable;

(o)     Sue and be sued;

(p)     Settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor or against the Liquidating Trust;

(q)     Waive or release rights of any kind;

(r)     Appoint, remove and act through agents, managers and employees and confer upon them such power an authority as may be necessary or advisable;

(s)     Negotiate, renegotiate or enter into any contract or agreements binding the Liquidating Trust, and to execute, acknowledge and deliver any and all investments that are

necessary, required or deemed by the Trustee to be advisable in connection with the performance of his/her duties;

(t)     Borrow such sums of money at any time and from time to time for such periods of time upon such terms and conditions from such persons or corporations (including any fiduciary hereunder) for such purposes as may be deemed advisable, and secure such loans with any of the Trust Assets, so long as the terms of any such borrowing provide that no recourse shall be had to the Trustee, or any Debtors or Beneficiary on any such debt; and

(u)     In general, without in any manner limiting any of the foregoing, deal with the Liquidating Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter.

### 12.5.   Payment of the Expenses Incurred by the Liquidating Trust

The Trustee, including any successor Trustee, may commit the Liquidating Trust to and shall pay the Trustee from the Liquidating Trust Assets reasonable compensation, as approved by the Trust Committee, for its services rendered and reimbursement of expenses incurred. Professionals retained by the Liquidating Trust shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred.  The payment of the fees and expense of the Liquidating Trust retained professionals shall be made in the ordinary course of business from assets of the Liquidating Trust.

### 12.6.   Exculpation; Indemnification

The Trustee shall not be liable for actions taken or omitted in his capacity as the Trustee, except those acts arising out of fraud, willful misconduct, or gross negligence.  The Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Trustee, except for any actions or inactions involving his own fraud, willful misconduct, or gross negligence.  Any indemnification claim of the Trustee shall be satisfied from the assets of the Liquidating Trust.

The Liquidating Trust shall, to the fullest extent permitted by Texas law, indemnify and hold harmless the officers, directors, agents, representatives, attorneys, professionals and employees of the Liquidating Trust (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to, attorneys' fees and costs, arising out of or due to their actions or omissions with respect to the Liquidating Trust or the implementation or administration of the Liquidating Trust Agreement, if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Liquidating Trust, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.

### 12.7.   Retention of Funds Prior to Distribution

The Trustee shall collect all funds constituting Liquidating Trust Assets and, pending distribution, shall deposit funds with a federally insured financial institution that has banking services.  The Trustee will deposit funds so that they are adequately insured.  Notwithstanding

the foregoing, the Trustee may invest all Cash funds (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the Unites States Trustee's Office, provided that the Trustee shall invest funds held in only demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as Treasury bills. The Trustee shall hold all such funds until they are distributed pursuant to the Plan.

The Trustee will not be required to post bond or be audited or monitored except as otherwise expressly provide in the Liquidating Trust Agreement. Forty-five (45) days after the end of each calendar year of the Liquidating Trust and forty-five (45) days after termination of the Liquidating Trust, the Trustee will file with the Bankruptcy Court an un-audited written report and account showing (i) the assets and liabilities of the Liquidating Trust at the end of such year or upon termination; (ii) any changes in the Liquidating Trust Assets that have not been previously reported, and (iii) any material action taken by the Trustee in the performance of his duties under the Liquidating Trust Agreement that has not been previously reported.

### 12.8. Distributions to Liquidating Trust Beneficiaries

Within a reasonable period after receipt of sufficient Cash to make a Distribution, the Trustee shall distribute such Cash, after deducting any costs and expenses associated with operation of the Liquidating Trust, as provided by this Plan.

Reorganized TXCO may, at the election of the Trustee, perform the following administrative tasks on behalf of the Liquidating Trust:

(i)     distribute directly payments due and owing to either the holders of Class 11B Preferred Stock, holders of Class 12 Common Stock, and beneficiaries of the Liquidating Trust, as applicable;

(ii)    maintain records as to the Liquidating Trust beneficiaries and their beneficial interests;

(iii)   prepare and distribute periodic reports required to be provided to the beneficiaries of the Liquidating Trust; and

(iv)    perform other administrative tasks on behalf of the Liquidating Trust as reasonably requested from time to time by the Trustee.

### 12.9. Representation of Trustee

The professionals employed by the Liquidating Trust are expressly authorized to simultaneously represent any Interested Party on any matter not directly adverse to the Liquidating Trust.

### 12.10. Termination of the Liquidating Trust

The Liquidating Trust shall remain and continue in full force and effect until the later of (a) all Liquidating Trust Assets have been wholly converted to Cash or abandoned and all costs, expenses, and obligations incurred in administering the Liquidating Trust have been fully paid, and all remaining income and proceeds of the Liquidating Trust Assets have been distributed in accordance with the provisions of the Plan; provided, that upon complete liquidation of the Liquidating Trust Assets and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Liquidating Trust pursuant to the Plan prior to such date, the Trustee may, with approval of the Bankruptcy Court, sooner terminate the Liquidating Trust. On the termination date of the Liquidating Trust, the Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination. Upon termination and complete satisfaction of its duties under the Liquidating Trust Agreement, the Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Liquidating Trust other than those attributable to fraud, gross negligence or willful misconduct of the Trustee.

### 12.11. Resignation of the Trustee

The Trustee may resign at any time by giving written notice to the Trust Committee and such resignation shall be effective upon the date provided in such notice. In the case of the resignation of the Trustee, a successor Trustee shall thereafter be appointed by the Trust Committee, whereupon such resigning Trustee shall convey, transfer and set over to such successor Trustee by appropriate instrument or instruments all of the Liquidating Trust Assets then unconveyed or otherwise undisposed of and all other assets then in his possession the Liquidating Trust Agreement. Without further act, deed or conveyance, a successor Trustee shall be vested with all the rights, privileges, powers and duties of the Trustee, except that the successor Trustee shall not be liable for the acts or omissions of his predecessor(s). Each succeeding Trustee may in like manner resign and another may in like manner be appointed in his place.

### 12.12. Appointment and Powers of the Disbursing Agent

At the Confirmation Hearing, the Debtors will identify an individual to act as the initial Disbursing Agent under the Plan. The Disbursing Agent will serve from and after the Effective Date until a successor is duly elected or appointed by the Bankruptcy Court. The Disbursing Agent shall be the sole signatory over the Sale Proceeds Account and all related reserves.

The Disbursing Agent shall have the power and authority to perform the following acts, among others:

    (a)    Accept the Sale Proceeds and place them in the Sale Proceeds Account;

    (b)    Pay Allowed Claims under the Plan from the Sale Proceeds Account;

    (c)    Pay to Newfield and Anadarko their *pro rata* share of the balance, if any, remaining in the Sale Proceeds Account after payment in full of all obligations which are to be paid pursuant to the Plan;

(d)     Pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Sale Proceeds and to liquidate Claims;

(e)     Deposit Sale Proceeds and draw checks and make disbursements thereof;

(f)     Employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Disbursing Agent may deem necessary.  The Disbursing Agent shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance of such advice.  The fees and expenses of all such professionals shall be charges as expenses of the Sale Proceeds Account and shall be paid upon approval of the Purchasers;

(g)     Take any action required or permitted by the Plan;

(h)     Execute obligations, whether negotiable or non-negotiable;

(i)     Settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies related to Claims;

(j)     Waive or release rights of any kind;

(k)     Appoint, remove and act through agents, managers and employees and confer upon them such power an authority as may be necessary or advisable;

(l)     Execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Disbursing Agent to be advisable in connection with the performance of his/her duties; and

(m)     In general without in any manner limiting any of the foregoing, deal with the Sale Proceeds or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter.

## 12.13.  Payment of the Expenses Incurred by the Disbursing Agent

The Disbursing Agent, including any successor Disbursing Agent, may pay the Disbursing Agent from the Sale Proceeds Account reasonable compensation, as approved by the Purchasers, for its services rendered and reimbursement of expenses incurred.  Professionals retained by the Disbursing Agent shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred.  The payment of the fees and expense of the Disbursing Agent retained professionals shall be made in the ordinary course of business from assets of the Sale Proceeds Account.

## 12.14.  Exculpation; Indemnification of Disbursing Agent

The Disbursing Agent shall not be liable for actions taken or omitted in his capacity as the Disbursing Agent, except those acts arising out of fraud, willful misconduct, or gross negligence.  The Disbursing Agent shall be entitled to indemnification and reimbursement for all

losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as the Disbursing Agent, except for any actions or inactions involving his own fraud, willful misconduct, or gross negligence. Any indemnification claim of the Disbursing Agent shall be satisfied from the Sale Proceeds Account.

The Disbursing Agent shall, to the fullest extent permitted by Texas law, indemnify and hold harmless the Disbursing Agent, its agents, representatives, attorneys, professionals and employees of the Liquidating Trust (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to, attorneys' fees and costs, arising out of or due to their actions or omissions with respect to the Claims and the Sale Proceeds, if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Purchasers, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.

### 12.15. Retention of Funds Prior to Distribution by Disbursing Agent

The Disbursing Agent shall collect all funds constituting Sale Proceeds and, pending distribution, shall deposit funds with a federally insured financial institution that has banking services. The Disbursing Agent will deposit funds so that they are adequately insured. Notwithstanding the foregoing, the Disbursing Agent may invest all Cash funds (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the Unites States Trustee's Office, provided that the Disbursing Agent shall invest funds held in only demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as Treasury bills. The Disbursing Agent shall hold all such funds until they are distributed pursuant to the Plan.

The Disbursing Agent will not be required to post bond or be audited or monitored except as otherwise expressly provide in the Confirmation Order. Forty-five (45) days after final distribution of all Sale Proceeds, the Disbursing Agent will file with the Bankruptcy Court an un-audited written report and account showing all disbursements.

### 12.16. Distribution to Beneficiaries

Reorganized TXCO may, at the election of the Disbursing Agent, perform the following administrative tasks on behalf of the Disbursing Agent:

      (i)     distribute directly payments due and owing to the holders of Allowed Claims;

      (ii)    maintain records as to the Claims;

      (iii)   prepare and distribute any required periodic reports; and

      (iv)   perform other administrative tasks as reasonably requested from time to time by the Disbursing Agent.

### 12.17.  Representation of Disbursing Agent

The professionals employed by the Disbursing Agent are expressly authorized to simultaneously represent any Interested Party on any matter not directly adverse to the Disbursing Agent.

### 12.18.  Termination of the Disbursing Agent

The Disbursing Agent shall remain until all Sales Proceeds have been disbursed and all costs, expenses, and obligations incurred in administering the Sale Proceeds have been fully paid, and all remaining income and proceeds of the Sale Proceeds Account have been distributed in accordance with the provisions of the Plan; provided, that upon complete distribution of the Sale Proceeds Account and satisfaction as far as possible of all remaining obligations, liabilities and expenses of the Disbursing Agent pursuant to the Plan prior to such date, the Disbursing Agent may, with approval of the Bankruptcy Court, sooner terminate its engagement.  On the termination date of the Disbursing Agent, the Disbursing Agent will execute and deliver any and all documents and instruments reasonably requested to evidence such termination.  Upon termination and complete satisfaction of its duties under the Plan, the Disbursing Agent will forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Plan other than those attributable to fraud, gross negligence or willful misconduct of the Trustee.

### 12.19.  Resignation of the Disbursing Agent

The Disbursing Agent may resign at any time by giving written notice to the Purchasers and such resignation shall be effective upon the date provided in such notice.  In the case of the resignation of the Disbursing Agent, a successor Disbursing Agent shall thereafter be appointed by the Purchasers, whereupon such resigning Disbursing Agent shall convey, transfer and set over to such successor Disbursing Agent by appropriate instrument or instruments all of the Sale Proceeds Account then unconveyed or otherwise undisposed of and all other assets then in his possession.  Without further act, deed or conveyance, a successor Disbursing Agent shall be vested with all the rights, privileges, powers and duties of the Disbursing Agent, except that the successor Disbursing Agent shall not be liable for the acts or omissions of his predecessor(s).  Each succeeding Disbursing Agent may in like manner resign and another may in like manner be appointed in his place.

### ARTICLE XIII
### CONFIRMATION AND CONSUMMATION OF THE PLAN

### 13.1.  Conditions Precedent to Confirmation

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 13.4 of the Plan:

(a)    The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to the Plan in form and substance reasonably acceptable to the Debtors.

(b)     The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Purchasers and the DIP Lenders.

### 13.2.    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 13.4 below:

(a)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the DIP Lenders.

(b)     Closing shall have occurred under the PSA.

(c)     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(d)     There shall not be in effect on the Effective Date any (i) order entered by a court, (ii) any order, opinion, ruling or other decision entered by any other court or governmental entity, or (iii) any applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

(e)     The Bankruptcy Court shall have dismissed the Debtors' Adversary Proceeding with prejudice; *provided, however*, that any claims and/or defenses that the Interveners may have against the Debtors are preserved solely for the purposes of the claims resolution process.

(f)     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall remain pending.

(g)     All conditions to the consummation of the transactions contemplated by the Plan shall have been satisfied or waived.

(h)     In the event the Sale Plan is confirmed but has not gone effective by February 28, 2010 or upon termination of the PSA, the Plan Proponents, on notice filed with the Court, may withdraw the Sale Plan, whereupon the Confirmation thereof shall no longer be effective.

### 13.3.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.4.    Waiver of Conditions

Each of the conditions set forth in Sections 13.1 and 13.2 of the Plan may be waived in whole or in part by written consent of the applicable Debtor and the DIP Lenders.  As to the conditions regarding Anadarko, Newfield or the DIP Lenders, without any notice to other parties in interest or the Bankruptcy Court and without a hearing Anadarko, Newfield and the DIP

Lenders may collectively waive any of the conditions set forth in Sections 13.1 and 13.2. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or Reorganized TXCO regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or Reorganized TXCO). The failure of the Debtors or Reorganized TXCO to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### 13.5. Revocation, Withdrawal, Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XIV
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 14.1. Compromise and Settlement

It is not the intent of the Debtors that confirmation of the Plan shall in any manner alter or amend any settlement and compromise between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Disbursing Agent or Trustee, as applicable, may compromise and settle Claims against the Debtors and claims that they have against other Persons. The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, the Disbursing Agent, the Trustee and Reorganized TXCO may compromise and settle any Claims against them and claims they may have against other Persons upon reasonable notice to the Purchasers without approval from the Bankruptcy Court where the amount in dispute is less than $500,000; *i.e.,* that the difference between what is claimed and the amount which the Disbursing Agent, Trustee or Reorganized TXCO have asserted is owed is less than $500,000.

## 14.2.    Satisfaction of Claims

The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged, and released in full. Neither Reorganized TXCO, nor any of its successors or assigns, including any assets, properties or interests of Reorganized TXCO and its successors and assigns, shall be responsible for any pre-Effective Date obligations of the Debtors, except those expressly assumed by the Debtors or their Affiliates, as applicable. Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.  Additionally, under the Plan, the transfer of PSA Assets to the Purchasers and the transfer of Liquidating Trust Assets to the Liquidating Trust shall be made free and clear of any and all claims, liens, interests and encumbrances, with such claims, liens, interests and encumbrances attaching to the Sale Proceeds.

## 14.3.    Exculpation and Limitation of Liability

Notwithstanding any other provision of the Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action whether in law or equity, whether for breach of contract, statute, or tort claim, against the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property, for any act or omission in connection with, relating to, or arising out of, these Cases, the pursuit of Confirmation of the Plan, consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan.

## 14.4.    Good Faith

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  The Debtors have participated in good faith and in compliance with Section 1125(e) of the Bankruptcy Code in the offer and issuance of the New Common Stock under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the New Common Stock under the Plan.

## 14.5.    Discharge of Liabilities

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date,  the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets,

properties, or interests in property shall be discharged from all Claims and Causes of Action to the fullest extent permitted by Section 1141 of the Bankruptcy Code, and all holders of Claims and Interests shall be precluded from asserting against the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date for any act or omission in connection with, relating to, or arising out of, these Cases, the pursuit of Confirmation of the Plan, consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE DEBTORS, REORGANIZED TXCO, THEIR RESPECTIVE SUCCESSORS OR ASSIGNS, OR THEIR ESTATES, ASSETS, PROPERTIES, OR INTERESTS IN PROPERTY, SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE, OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THESE CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTORS AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO REORGANIZED TXCO OR ITS RESPECTIVE SUCCESSORS OR ASSIGNS, OR ITS ESTATES, ASSETS, PROPERTIES, OR INTERESTS IN PROPERTY.

### 14.6. Discharge of the Debtors

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property, shall be deemed fully discharged and released from any and all Claims for any act or omission in connection with, relating to, or arising out of, these Cases, the pursuit of Confirmation of the Plan, consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto. As provided in Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtors, Reorganized TXCO, their

54

respective successors or assigns, or their Estates, assets, properties, or interests in property, to the extent it relates to a discharged Claim.

### 14.7.    Permanent Injunction

**Except as otherwise provided in the Plan, from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors prior to the Effective Date are permanently enjoined from taking any of the following actions against the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property, on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan or under the PSA.**

### 14.8.    Releases by the Debtors, Reorganized TXCO and their Estates

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors, Reorganized TXCO and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Debtors, Reorganized TXCO and their Estates, for themselves and on behalf of their respective successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Released Parties and (ii) the Debtors', Reorganized TXCO's and their Estates' past and present directors, managers, officers, employees, attorneys and other representatives from any and all claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, causes of action, remedies, and liabilities of any kind or character whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, Reorganized TXCO, and their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, Reorganized TXCO or their respective Affiliates or Estates ever had, now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, against any (i) of the Released Parties and (ii) the Debtors', Reorganized TXCO's and their Estates' current and former directors, managers, officers, employees, attorneys and other representatives arising from or relating to, directly or indirectly from, in whole or in part, the Debtors, the Debtors' restructuring, the Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements among any two or more of any of Debtors, Reorganized TXCO or any of the Released Parties (and the acts or omissions of any other

Released Party in connection therewith), the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence, including the management and operation of the Debtors, taking place on or before the Effective Date. Notwithstanding the foregoing, nothing in this Section 14.8 shall release any of the Released Parties or other individual included within this release from liability for (i) any act or omission by such of the Released Parties or other individual that is found by a court of law in a final, non-appealable judgment to constitute Fraud, willful misconduct, or gross negligence, or (ii) any obligation for borrowed money owed by the Released Parties to the Debtors, Reorganized TXCO or their respective Affiliates or Estates.

### 14.9. Releases by Holders of Claims and Interests

**Except as otherwise specifically provided in the Plan or the Confirmation Order, on and after the Effective Date, in consideration of the Distributions under the Plan, holders of Claims and Interests, for themselves and on behalf of their respective successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property, from any and all claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, causes of action, remedies, and liabilities of any kind or character whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, Reorganized TXCO or their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereafter arising, in law, equity or otherwise, that such Entity ever had, now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert (whether individually or collectively or directly or derivatively), against any of the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property, arising from or relating to, directly or indirectly, in whole or in part, the Debtors, the Debtors' restructuring, the Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements among any two or more of any of the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property (and the acts or omissions of any of the Debtors, Reorganized TXCO, their respective successors or assigns, or their Estates, assets, properties, or interests in property, in connection therewith), the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence, including the management and operation of the Debtors, taking place on or before the Effective Date.**

### 14.10. Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, Reorganized TXCO may setoff against any Allowed Claim

and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before such distribution is made), any claims, rights, and causes of action of any nature that such Debtor or Reorganized TXCO, as applicable, may hold against the holder of such Allowed Claim, to the extent such claims, rights, or causes of action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by Reorganized TXCO of any such claims, rights, and causes of action that Reorganized TXCO may possess against such holder.  In no event shall any holder of Claims or Interests be entitled to setoff any Claim or Interest against any claim, right, or cause of action, except as set forth in the Plan, of the Debtors or Reorganized TXCO, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

### 14.11.  Recoupment

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or Reorganized TXCO, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### 14.12.  Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Reorganized TXCO's Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to Reorganized TXCO and its successors and assigns.

In addition to, and in no way a limitation of, the foregoing, to the extent the Debtors' property or assets are encumbered by mortgages, security interests or Liens of any nature for which any holder of such mortgages, security interests or Liens does not have an Allowed Claim against such Debtor, such mortgages, security interests or Liens shall be deemed fully released and discharged for all purposes and such holder shall execute such documents as reasonably requested by Reorganized TXCO or the Trustee, as applicable, in form and substance as may be necessary or appropriate to evidence the release of any such mortgages, security interests or Liens of any nature. If such holder fails to execute such documents, Reorganized TXCO or the Trustee, as applicable, is authorized to execute such documents on behalf of such holder and to cause the filing of such documents with any or all governmental or other entities as may be necessary or appropriate to effect such releases.

**14.13. Satisfaction of Subordination Rights**

All Claims against the Debtors and all rights and claims between or among Claim holders relating in any manner whatsoever to Claims against the Debtors, based upon any claimed subordination rights (if any), shall be deemed satisfied by the distributions under the Plan to Claim holders having such subordination rights, and such subordination rights shall be deemed waived, released, discharged and terminated as of the Effective Date. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any Claim holder by reason of any claimed subordination rights or otherwise, so that each Claim holder shall have and receive the benefit of the distributions in the manner set forth in the Plan.

## ARTICLE XV
## RETENTION OF JURISDICTION

Under Sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement or the Confirmation Order;

(b) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

(c) hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(d) issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order,

(e) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(f) hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement or the Confirmation Order;

(g) enforce all orders, judgments, injunctions, releases, exculpations and rulings entered in connection with the Chapter 11 Cases;

(h)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(i)     hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtors and to enter or enforce any order requiring the filing of any such Claim before a particular date;

(j)     hear and determine motions, application, adversary proceedings, contested matters and other litigation matters filed or commenced after the Effective Date, including proceedings with respect to the rights and claims of the Debtors to recover property under the applicable provisions of Chapter 5 of the Bankruptcy Code or to bring any Litigation Claims, or otherwise to collect or recover on account of any Litigation Claim;

(k)     determine all applications, Claims, adversary proceedings and contested matters pending on the Effective Date; and

(l)     enter a final decree closing the Chapter 11 Case.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

### 16.1.   Amendments and Modification

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date; however, the treatment of the Class 1 Allowed DIP Loan Secured Claim and Class 4 Allowed Secured Claims of the Term Loan Lenders may not be modified without their express consent. After the Confirmation Date and prior to "substantial consummation" as provided in the Plan, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 16.2.   Payment of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

### 16.3.   Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims against and Interests in the Debtors, their respective successors and

assigns, including, but not limited to, Reorganized TXCO, and all other parties-in-interest in these Cases.

### 16.4.   Term of Injunctions or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

### 16.5.   Dissolution of Committee

On the Effective Date, the Committee, if any, shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Cases.

### 16.6.   No Admissions

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth in the Plan, including liability on any Claim.

### 16.7.   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to Reorganized TXCO; provided, however, that corporate governance matters relating to the Debtors or Reorganized TXCO, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor or Reorganized TXCO.

### 16.8.   Subordination

The right of the Debtors to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Interest that becomes a Subordinated Claim or subordinated Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim or subordinated Interest.

### 16.9.   Plan Supplement

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court not later than ten (10) days

prior to the Plan Voting Deadline or such other filing deadline as may be approved by the Bankruptcy Court. Holders of Claims or Interests may also obtain a copy of the Plan Supplement upon written request to the Debtors. Notwithstanding the foregoing, the Debtors may amend the Plan Supplement, and any attachments thereto, through and including the Confirmation Date.

### 16.10. Notices

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

TXCO RESOURCES INC.
777 E. Sonterra Blvd.
Suite 350
San Antonio, Texas  78258

with a copy to:

Deborah D. Williamson
Cox Smith Matthews Incorporated
112 E. Pecan, Suite 1800
San Antonio, Texas  78205
Facsimile:  (210) 226-8395

If to the Purchasers:

Anadarko E&P Company LP
1201 Lake Robbins Drive
The Woodlands, Texas  77380
Attn:  Joseph F. Carroll, Vice President - Transactions
Facsimile:  (832) 636-5889

Anadarko E&P Company LP
1201 Lake Robbins Drive
The Woodlands, Texas  77380
Attn:  Robert K. Reeves, General Counsel
Facsimile:  (832) 636-3214

with a copy to:

Lydia T. Protopapas
Brenda Funk
Weil, Gotshal & Manges, LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Facsimile:  (713) 224-9511

If to Purchasers:

Newfield Exploration Company
363 N. Sam Houston Pkwy. E., Suite 2020
Houston, Texas 77060
Attn: W. Mark Blumenshine,
Vice President – Land
Facsimile:  (281) 405-4242

Newfield Exploration Company
363 N. Sam Houston Pkwy. E., Suite 2020
Houston, Texas 77060
Attn:  Darrell R. Jones
Legal Counsel
Facsimile: (281) 405-4228

with copy to:

Charles A. Beckham, Jr.
Haynes and Boone LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Facsimile:  (713) 236-5638

If to DIP Lenders or their affiliates:

James Donnell
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166-4193
Facsimile:  (212) 294-4700


Christopher Dawe
Trammell Crow Center
2001 Ross Avenue
Suite 3700
Dallas, TX 75201-2975
Facsimile:  (214) 999-7837

### 16.11. Severability of Plan Provision

If, before the Confirmation Order, the Bankruptcy Court holds that any provision of the Plan is invalid, void or unenforceable, the Debtors, at their option and if acceptable to the DIP Lenders at any time prior to their being irrevocably paid in full, may amend or modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable.

### 16.12. U.S. Trustee Fees

The Debtors will pay pre-confirmation fees owed to the U.S. Trustee on the Effective Date or as reasonably practical thereafter.  After confirmation, the Trustee will file with the Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Trustee will pay post-confirmation quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. §1930(a)(6).

### 16.13. Default under the Plan

Except as otherwise provided for in this Plan, in the event of an alleged default by the Debtors under the Plan, any party alleging such default shall provide written notice of the default (the "Default Notice") to the Debtors and Debtors' counsel at the addresses set forth in Section 16.10 of the Plan.  The Debtors shall have thirty (30) days from receipt of the Default Notice to cure any actual default that may have occurred.  The Debtors reserve the right to dispute that a default has occurred and shall notify the party alleging the default that the Debtors contend no default has occurred, with such notice to be sent within the thirty (30) day time period following receipt of the Default Notice.  In such event, the Bankruptcy Court shall retain jurisdiction over the dispute relating to the alleged default.  In the event the Debtors fail to either dispute the alleged default or timely cure such default, the party alleging such default shall be entitled to assert its rights under any and all applicable bankruptcy and/or non-bankruptcy law.  Debtors shall be allowed to cure no more than two Default Notices from the Texas Comptroller of Public Accounts.  A third default cannot be cured.

[Signature Page Immediately Follows]

2850243.1

Dated: January 27, 2010

Respectfully Submitted,

TXCO RESOURCES INC. AND ITS SUBSIDIARIES
AND AFFILIATES THAT ARE ALSO DEBTORS
AND DEBTORS-IN-POSSESSION IN THE
CHAPTER 11 CASES

By: _____
    James E. Sigmon

Counsel:

By: */s/ Deborah D. Williamson*
    Deborah D. Williamson
    State Bar No. 21617500
    Patrick L. Huffstickler
    State Bar No. 10199250
    Thomas Rice
    State Bar No. 24025613
    Meghan Bishop
    State Bar No. 24055176
    Cox Smith Matthews Incorporated
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    554-5500
    226-8395 (Fax)

    **ATTORNEYS FOR DEBTORS
    AND DEBTORS-IN-POSSESSION**

Dated: January \_\_\_\_, 2010

Respectfully Submitted,

TXCO RESOURCES INC. AND ITS SUBSIDIARIES
AND AFFILIATES THAT ARE ALSO DEBTORS
AND DEBTORS-IN-POSSESSION IN THE
CHAPTER 11 CASES

By: _____
    James E. Sigmon

Counsel:

By: _____
    Deborah D. Williamson
    State Bar No. 21617500
    Patrick L. Huffstickler
    State Bar No. 10199250
    Thomas Rice
    State Bar No. 24025613
    Meghan Bishop
    State Bar No. 24055176
    Cox Smith Matthews Incorporated
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    554-5500
    226-8395 (Fax)

    **ATTORNEYS FOR DEBTORS
    AND DEBTORS-IN-POSSESSION**

# Exhibit "B"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11 CASE** |
| | § | |
| **TXCO RESOURCES INC.,** *et al.,* | § | **CASE NO. 09-51807** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

## NOTICE OF (A) ENTRY OF ORDER CONFIRMING SECOND AMENDED PLAN OF REORGANIZATION FOR TXCO RESOURCES INC., ET AL., DEBTORS AND DEBTORS-IN-POSSESSION BASED ON SALE OF DEBTORS' ASSETS, AND (B) BAR DATES FOR FILING PROFESSIONAL FEE/SUBSTANTIAL CONTRIBUTION CLAIMS AND REJECTION DAMAGES CLAIMS

| Name of Debtor | Other Names Used (Last 8 Years) | Address | Tax I.D. | Case No. |
|---|---|---|---|---|
| TXCO Resources Inc. | The Exploration Company of Delaware, Inc., a/k/a TXCO, The Exploration Company | 777 E. Sonterra Blvd. Suite 350 San Antonio, TX 78258 | 84-0793089 | 09-51807 |
| Eagle Pass Well Service, L.L.C. | | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 42-1547634 | 09-51808 |
| TXCO Drilling Corp. | Maverick-Dimmit Operating, Inc. | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 42-2110514 | 09-51809 |
| Charro Energy, Inc. | Texas Tar Sands, Inc. | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 35-2346186 | 09-51810 |
| Output Acquisition Corp. | Output Exploration, LLC | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 20-8455239 | 09-51811 |
| TXCO Energy Corp. | | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 20-5811556 | 09-51812 |
| Opex Energy, LLC | White Oak Energy, LLC | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 38-3645124 | 09-51813 |
| Texas Tar Sands, Inc. | | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 20-5043839 | 09-51814 |
| Maverick Gas Marketing, Ltd. | | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 04-3691394 | 09-51815 |
| Maverick-Dimmit Pipeline, Ltd. | | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 04-3661325 | 09-51816 |
| PPL Operating, Inc. | | 777 E. Sonterra Blvd. Ste. 350 San Antonio, TX 78258 | 74-2846224 | 09-51817 |

TO: ALL PARTIES IN INTEREST

PLEASE TAKE NOTICE THAT:

1.      On _____, 2009, the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") entered its *Order Confirming Second Amended Plan of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession based on Sale of Debtors' Assets,* as modified (the "Confirmation Order").  Unless otherwise defined herein, capitalized terms used in this Notice shall have the meanings ascribed to such terms in the *Second Amended Plan of Reorganization for TXCO Resources Inc., et al., Debtors and Debtors-in-Possession based on Sale of Debtors' Assets,* as modified (the "Plan").

2.      Copies of the Confirmation Order and the Plan may be obtained by accessing http://www.administar.net/.

3.      The Plan will become effective in accordance with its terms on the date on which all conditions to the effective date of the Plan as set forth in Section 13.2 of the Plan have been satisfied or waived as provided in Section 13.4 of the Plan (the "Effective Date").  The Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court, mail a copy thereof to all parties on the Limited Service List maintained in these cases, and post a copy at http://www.administar.net/.

4.      In accordance with Section 11.1 of the Plan, all final requests for payment of Professional Fee Claims pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code must be filed with the Bankruptcy Court and served on the Reorganized Debtors, the undersigned counsel for the Reorganized Debtors, and any other necessary parties-in-interest no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Holders of Professional Fee Claims who fail to timely file and serve a final request for payment shall be forever barred from seeking payment of any such Professional Fee Claims from the Estates, the Debtors or the Reorganized Debtors.  Objections to such requests for payment must be filed with the Bankruptcy Court and served on the requesting Professional or other entity seeking payment, the Reorganized Debtors and the undersigned counsel for the Reorganized Debtors no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for payment was served.

5.      In accordance with Section 11.2 of the Plan, all requests for payment of Administrative Claims, under 11 U.S.C. § 503(b) other than Professional Fee Claims, must be filed with the Bankruptcy Court and served on the Reorganized Debtors, the undersigned counsel for the Reorganized Debtors, and any other parties-in-interest no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Holders of Administrative Claims who fail to timely file and serve a final request for payment shall be forever barred from seeking payment of any such Administrative Claims from the Estates, the Debtors or the Reorganized Debtors.  Objections to such requests for payment must be filed with the Bankruptcy Court and served on the requesting Claimant, the Reorganized Debtors and the undersigned counsel for the Reorganized Debtors no later than forty-five (45) days (or such

longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for payment was served.

6. In accordance with Section 8.11 of the Plan, if the rejection by the Debtor of a contract or lease pursuant to any provision of the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor or the properties of any of them unless a Proof of Claim is filed with the Bankruptcy Court and served upon the undersigned counsel for the Reorganized Debtors within thirty (30) days after the entry of the Confirmation Order. If a contract or lease is rejected by separate order of the Bankruptcy Court, the deadline for filing a Proof of Claim for any Claim resulting therefrom shall be set forth in such separate order.

7. When making any Cash payments under the Plan on the Effective Date or other required Distribution Date, the Debtors are not required to recognize, and may disregard without liability, any transfer of Claim that is not filed of record on the Court's docket prior to or on the Closing Date. With respect to any transfer of Claim not so timely filed, the Debtors are authorized to recognize and deal for all purposes under the Plan only with the original holder of the Claim.

Dated: _____, 2010

Respectfully submitted,

**COX SMITH MATTHEWS INCORPORATED**
112 East Pecan Street, Suite 1800
San Antonio, TX 78205
(210) 554-5500
(210) 226-8395 (Fax)


By: _____
　　Deborah D. Williamson
　　Texas State Bar No. 21617500
　　Patrick L. Huffstickler
　　Texas State Bar No. 10199250
　　Thomas Rice
　　Texas State Bar No. 24025613

**ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**

# Exhibit "C"

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<u>**RELEASE OF LIENS**</u>

STATE OF TEXAS          §

                                 §       KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF **[COUNTY]**     §

| | |
|---|---|
| Effective Date: | **[CLOSING DATE]** |
| From: | **[VENDOR NAME]** ("Lien Holder") <br> **[VENDOR ADDRESS]** |
| To: | The Public |
| Liens: | The Liens being released (the "<u>Liens</u>") are described in the Following documents: |

Mineral Lien Affidavit dated **[date of filing]**, recorded in Book/Volume **[VOLUME]**, Page **[PAGE]**, Official Public Records of **[COUNTY]** County, Texas.

| | |
|---|---|
| Property: | The Property, including all property subject to the Lien pursuant to Chapter 56 of the Texas Property Code (the "<u>Property</u>") – See attached <u>Exhibit "A"</u>. |

Lien Holder is the owner and holder of the Liens and, for value received, does hereby forever waive, release, quitclaim, surrender and discharge all right, title and interest in and to the Property from the Liens created by the Lien Holder, its predecessors, successors and assigns and hereby declares that the Property is fully released and discharged from the Liens (the "Release").

Such Release includes, but is not limited to, all rights, title and interests of EnCana Oil & Gas (USA) Inc., whose address is 370 17th Street, Suite 1700, Denver, CO 80202; St. Mary Land & Exploration Company, whose address is 777 North Eldridge Parkway, Suite 1000, Houston, Texas 77079; Anadarko E&P Company LP, whose address is 1201 Lake Robbins Drive, The Woodlands, Texas 77380; Nemex Energy (USA) Inc. and its affiliates, including Pearl Exploration and Production Ltd., Pearl E&P Canada Ltd., Pearl Exploration and Production USA Ltd., Pearl Montana Exploration and Production Ltd., Valkyries Texas Corp. and Valkyries Texas Gas Ltd., whose address is 700,444 – 7th Avenue S.W., Calgary, AB T2P 0X8, Canada; Capital Well Service, LLC, whose address is 1437 E. Street, Jourdanton, Texas 78026; and TXCO Resources Inc., TXCO Energy Corp., Output Acquisition Corp., OPEX Energy, LLC, Maverick Gas Marketing, Ltd.,

TXCO Drilling Corp., Eagle Pass Well Service, LLC, Texas Tar Sands, Inc., Maverick-Dimmit Pipeline, Ltd., and PPL Operating, Inc., whose address is 777 East Sonterra Blvd., Suite. 350, San Antonio, Texas 78258, and any and all other owners of the Property, whether such owners are of record or not of record.

Lien Holder expressly waives and releases all present and future rights to establish or enforce the Liens as security for the payment of any past, present, future or other advances or indebtedness.

When the context requires, singular nouns and pronouns include the plural.

**[VENDOR NAME]**

By: _____

Name: _____

Title: _____

STATE OF TEXAS       §
                                   §

COUNTY OF _____ §

    This instrument was acknowledged before me on the _____ day of _____, 2010, by _____, _____ of _____, on behalf of said entity.

_____

Notary Public State of Texas

After recording, return to:

Ms. Meghan E. Bishop
Cox Smith Matthews Incorporated
112 E. Pecan Street, Ste. 1800
San Antonio, Texas 78212

## EXHIBIT A

**[To Be Attached]**

2796076.1